## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | : CIVIL ACTION No. 15-724 |
| | : |
| Plaintiffs | : |
| | : |
| v. | : |
| | : |
| Ascena Retail Group, Inc., et al. | : |
| | : |
| Defendants | : |

## [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2015, upon consideration of the Plaintiffs' Motion For Award Of Attorneys' Fees, Expenses And Incentive Awards, and Defendants' response thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **GRANTED** as follows:

Class Counsel are hereby awarded $14,111,455.85 for fees and expenses, payable as follows: fifty percent (50%) of the approved Fee Award shall be paid contemporaneously with issuing payments to Class Members and no later than twenty (20) days after the Effective Date; twenty-five percent (25%) of the approved Fee Award shall be paid ninety (90) days after the Effective Date; twenty-five percent (25%) of the approved Fee Award shall be paid upon the earlier of One Hundred and Eighty (180) days after the Effective Date or an Order approving early distribution based upon a certification filed by Class Counsel describing the complete efforts to distribute settlement proceeds to Settlement Class Members.

Representative Plaintiffs Carol Rougvie, Marguerite Sinkler Gilder, Caroline Mansour,

Melinda Mehigan, Fonda Kubiak, Carol Cowhey, Kara Bell and Tiffany Bolton are each hereby awarded a $6,000 Incentive Award.

                                                                              _____

                                                                                         J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Carol Rougvie, et al.,

      Plaintiffs

    v.

Ascena Retail Group, Inc., et al.

      Defendants

:   CIVIL ACTION No. 15-724
:
:
:
:
:
:
:
:
:

## MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

Plaintiffs Carol Rougvie, Marguerite Sinkler Gilder, Caroline Mansour, Melinda Mehigan, Fonda Kubiak, Carol Cowhey, Kara Bell and Tiffany Bolton (the "Named Plaintiffs"), through counsel, for themselves and behalf of all those similarly situated (collectively the "Plaintiffs") respectfully move the Court, for the reasons set forth in the accompanying Memorandum of Law, for an Order awarding Class Counsel their attorneys' fees and expenses and granting the Incentive Awards for the Named Plaintiffs.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By:   /s/ William Pietragallo, II
      WILLIAM PIETRAGALLO II, ESQ.
      KEVIN E. RAPHAEL, ESQ.
      I.D. Nos. 16413 and 72673
      1818 Market Street, Suite 3402
      Philadelphia, PA 19103
      (215) 320-6200

MANSOUR GAVIN LPA
ERNEST MANSOUR, ESQ.
ANTHONY COYNE, ESQ.
BRENDON P. FRIESEN, ESQ.
emansour@mggmlpa.com
acoyne@mggmlpa.com
bfriesen@mggmlpa.com
1001 Lakeside Avenue, Suite 1400
Cleveland, OH 44114
(216) 523-1500

EDWARD J. WESTLOW, ESQ.
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219-3532
(804) 780-0305

ROBERT MANSOUR, ESQ.
23611 Chagrin Blvd., Suite 270
Beachwood, Ohio 44122
(216) 514-3127
Rmansour@competitivetitle.com

Attorneys for Plaintiffs

Date: March 18, 2016

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carol Rougvie, et al., | : | CIVIL ACTION No. 15-724 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| Ascena Retail Group, Inc., et al. | : | |
| | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

## I.  INTRODUCTION

Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin LPA, Edward J. Westlow, Esquire, and Robert Mansour, Esquire (collectively "Class Counsel") diligently pursued this action and effectively brought this case to a resolution with tremendous value to the Class. As a result of Class Counsel's efficient work, important and very discreet investigation and vigorous prosecution, Class Counsel achieved a settlement of $50.8 Million ("Cash Settlement Fund") along with an automatic distribution of vouchers to identified Class Members, who do not affirmatively make claims, valued at approximately $402 Million. Class Counsel handled this matter on a wholly contingent basis and, accordingly, has not received payment for any of their services or reimbursement for their out-of-pocket expenses.  Plaintiffs respectfully request that the Court award: (1) to Class Counsel, payment of their attorneys' fees in the amount of $14,111,455.85 inclusive of Class Counsel's expenses and (2) Incentive Awards in the amount of $6,000.00 for each of the eight Named Plaintiffs.

## II. BACKGROUND

### A. Plaintiffs' Claims Against Justice

The Named Plaintiffs brought this class action suit against Defendants Tween Brands, Inc. d/b/a Justice and Ascena Retail Group, Inc., d/b/a Justice Brand (collectively "Justice") on behalf of all persons in the United States who purchased items that were purportedly on sale for at least 40% off, but which were actually sold at their regular or everyday price (the "Class Members") in violation of the various consumer protection laws of the states of this nation.

Justice is operated by Tween Brands, Inc., a subsidiary of Ascena Retail Group, a Delaware Corporation headquartered in New Jersey. Tween Brands, a Delaware corporation, is headquartered in Ohio. There are over 900 brick and mortar Justice stores across the continental United States. Justice also maintains a website and accepts orders from customers over its website and by phone.

The Plaintiffs, who were all Justice customers during the time of the underlying allegations, purchased items from Justice that were advertised as being at least 40% off. However, Plaintiffs allege that, because these sale items were never sold above the 40% off price, the "sale price" was in fact the regular, or every day, price. Plaintiffs further allege that such misleading advertising practices violate state consumer protection statutes, state administrative regulations, and common law. Justice denies these allegations and believes that no customers were ever harmed by Justice's price advertising and discounting practices; and, in fact, the customers received the value of the bargain that they made.

### B. Procedural Background

Plaintiff Carol Cowhey, through Class Counsel, initially brought a Pennsylvania class action lawsuit against Justice in the Philadelphia County Court of Common Pleas on February 5, 2015 ("*Cowhey* action"). That case was subsequently removed by Justice on March 19, 2015.

Carol Rougvie, along with Fonda Kubiak and Melinda Mehigan, also filed suit against Justice, bringing identical allegations, in the United States District Court for the Eastern District of Pennsylvania on February 12, 2015 ("*Mehigan* action"). ECF Doc. No. 1. The *Mehigan* action was amended on February 17, 2015, ECF Doc. No. 3, and consolidated with the *Cowhey* action on April 8, 2015 under the master caption, *Mehigan, et al. v. Ascena Retail Group, Inc. et al.*, 2:15-cv-0724-MAK, ECF Doc. No. 34. On September 22, 2015, the Third Amended Complaint was filed by Plaintiffs, modifying the class definition, adding common law claims, and thereby seeking certification of a class of residents of all 50 states and the District of Columbia, excluding only those residents of Ohio who were subject to, and made purchases within the pertinent time period of, the *Perez* settlement.[1]

## C.    Critical Investigations and Factual Development

Class Counsel began very discreetly investigating the claims alleged against Justice beginning in early 2014. Class Counsel obtained documentary evidence and information as proof that the deceptive advertising practices at issue in the litigation were pervasive and nationwide. The investigation also included extensive research on consumer laws nationwide. Following these critical legal and factual investigations, Class Counsel determined that a class action was appropriate and initiated the drafting and filing of the *Cowhey* action in Philadelphia and later the *Mehigan* action in this court.

## D.    Settlement Negotiations

Shortly after filing the initial complaints, Justice's counsel, Morgan Lewis & Bokius LLP (Justice's Counsel) and Class Counsel engaged in preliminary discussions based upon the factual investigation done to date by Class Counsel. These discussions, over the course of several

---

[1] There was a previous unrelated action filed in state court in Ohio which resulted in a settlement. *See, Perez v. Tween Brands, Inc.*, No. 14CV001119 (Ct. Comm. Pl. Lake Cty. Ohio) (the "*Perez* Settlement").

meetings, included: (1) issues of legal liability under the laws of various states; (2) issues of fact regarding representative Plaintiff purchases; (3) issues of knowledge of Justice management; and (4) issues of discovery of documents and testimony via depositions of key Justice personnel. Thereafter, Justice produced thousands of pages of discovery documents in response to Plaintiffs' requests and in connection with their initial disclosures. Intense dialogue occurred over many meetings, resulting in a fuller understanding of the sales practices and corresponding damages. Later, the settlement negotiations centered on how to notify as many Class Members as possible and how to fairly compensate them given the disparities in state law and the value and number of purchases made by the individual Class Members.

The Parties met in Philadelphia multiple times over a period of several months and held over thirty phone conferences. Justice provided materials and documentation and testimony by affidavit to verify and confirm the information that it provided. On July 2, 2015, conscious of the Court's encouragement to reach settlement by the Fourth of July holiday, after an all-day, in-person meeting attended by Class Counsel, Justice's Counsel and Justice's in-house counsel, the Parties finally reached an agreement in principle ("Settlement Agreement in Principle"). Many details were to follow, and typically the "devil" was in the details.

Following the July 2, 2015 meeting, Class Counsel and Justice's Counsel painstakingly negotiated in tremendous amount of detail the several documents drafted to capture, in certain respects revise, and memorialize the terms of the Settlement Agreement in Principle. Finally, on September 23, 2015, the Parties executed the Settlement Agreement and related documents that were subsequently filed with this Court (the "Settlement Agreement"). After the Parties' respective briefing and the hearing on October 19, 2015, this Court preliminarily approved the Settlement Agreement on October 27, 2015.

### E. The Settlement Agreement

The contentiously negotiated Settlement Agreement had to address all of the complex issues arising from a national class action. One of the many issues Class Counsel had to analyze and evaluate was how to fairly compensate the Class Members given the difference in each of their individual claims and state law differentiations. After extensive analysis by Class Counsel, with the assistance of Smart Devine LLP, (subsequently, "Marcum") the Parties agreed on a formula for compensation.[2]

The Settlement Agreement provides a substantial benefit for all Class Members, with a thorough notice program, including emails, postcards and publications, user-friendly and simple web-based and paper claims processes, a significant cash settlement fund and an automatic voucher to all known class members that do not opt out or choose one of the other remedies available under the Settlement Agreement.[3] The automatic vouchers to be sent to Class Members are valued to be at least approximately Four Hundred Million Dollars ($400,000,000.00) by Class Counsel's consultant.

Under the Settlement Agreement, Justice paid into a common fund Fifty Million, Eight Hundred Thousand Dollars ($50,800,000.00), distributed as follows: Twenty-Seven Million, Eight Hundred Thousand Dollars ($27,800,000.00) to pay affirmative claims made by Class Members under Options One and Two, Eight Millions Dollars ($8,000,000.00) for administration costs and up to Fifteen Million Dollars ($15,000,000.00) for attorneys' fees and expenses (the "Cash Settlement Fund").

---

[2] As outlined in Class Counsel's Memorandum in Support of the Joint Motion for Final Approval of Settlement.
[3] The details of the Settlement Agreement are set forth at length in Plaintiffs' Motion for Preliminary Approval and Memorandum in Support. (ECF Doc. No. 71).

However, in January 2016, during the administration of the class and processing of claims made, the Claims Administrator advised and recommended to Class Counsel that a supplemental notice by postcard be issued to those Class Members that received notice by email but had not yet filed a claim. Based on this recommendation, the Parties negotiated and ultimately agreed to amend the Settlement Agreement to provide for the supplemental notice program ("Supplemental Notice Program"). The funding for the Supplemental Notice Program would come from Justice and Class Counsel, each sharing fifty percent of that cost. Accordingly, Class Counsel agreed to reduce their maximum recoverable fees from $15 Million to $14,111,455.85. On February 15, 2016, the Parties filed a Joint Motion for Approval of an Amendment to the Class Action Settlement Agreement Regarding Supplemental Notice Program. (Doc. 93). This Court granted the Parties' motion on February 16, 2016. (Doc. 94). Accordingly, the reduced attorneys' fees award now constitutes 27.8% of the Cash Settlement Fund. Further, if the vouchers distributed automatically are included, with the vouchers valued at approximately Four Hundred Million Dollars ($400,000,000.00), the attorneys' fees and cost fee request constitutes just 3.1% of the value created for the class.

Again, based upon their evaluation, Class Counsel determined that the Settlement Agreement was in the best interest of, and confers substantial benefits upon, the Class Members. Class Counsel invested, to date, over $200,000 in out-of-pocket expenses, while operating on a contingency fee basis, in order to achieve this result for the Class. For all the reasons set forth herein, Class Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards, and therefore, should be awarded by the Court. Finally, the incentive awards to the Named Plaintiffs should be upheld as reasonable compensation for their efforts.

III.  **ARGUMENT**

A.  **Class Counsel's Fee Award Is Fair And Reasonable**

Class Counsel seeks an award of attorneys' fees and expenses in the amount of $14,111,455.85 paid from the Cash Settlement Fund. Justice has agreed to this amount. As demonstrated below, the fee award is fair and reasonable.

An attorney who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Supreme Court has stated that the importance of providing a financial incentive is to entice qualified attorneys to devote their time to complex cases in which they risk non-payment. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338–39, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Third Circuit in *Gunter v. Ridgewood Energy Corp.* affirmed this principle, noting that if the lower court had denied counsel their requested fee award merely because counsel was able to settle the "complicated matter, then the [c]ourt ignored the stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation." 223 F.3d 190, 198 (3d Cir. 2000) (internal citations omitted). Here, Class Counsel was at risk of non-payment at the time their investigation began. That Class Counsel was successful in effectively investigating, analyzing and negotiating a settlement with significant value to the class should be to their credit.

There are two general methods that courts use in assessing the reasonableness of attorneys' fees—the percentage-of-recovery method or the lodestar method. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013). Under the percentage-of-recovery method a court must (1) value the proposed settlement and (2) decide what percentage of the proposed settlement should be awarded as attorneys' fees. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 811 (3d Cir. 1995).

The Third Circuit has consistently favored the percentage-of-recovery method in cases involving a common fund since it is designed to allow courts to award fees from the fund in a way that rewards counsel for success and penalizes it for failure. *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). In essence, the percentage-of-recovery method resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class. *In re Baby Prods.*, 708 F.3d at 176. As demonstrated below, the requested fee award is fair and reasonable under the percentage-of-recovery calculation method.

### B. The Fee Award In The Amount Of 27.8% Of The Cash Settlement Fund Is Fair And Reasonable Under The Percentage-Of-Recovery Method

The Third Circuit has identified a non-exhaustive list of the factors for courts to consider when determining the reasonableness of attorneys' fees in a class action settlement where fees are calculated as a percentage of recovery. The factors are:

(1) the size of the fund created and the number of persons benefitted;
(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
(3) the skill and efficiency of the attorneys involved;
(4) the complexity and duration of the litigation;
(5) the risk of nonpayment;
(6) the amount of time devoted to the case by the plaintiffs' counsel; and
(7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005), *as amended* (Feb. 25, 2005); *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *Gunter*, 223 F.3d 190 at 195. The appellate court identified three other factors to consider, namely:

(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement.

*In re AT & T Corp.*, 455 F.3d at 165 (citing *In re Prudential*, 148 F.3d at 338-40). Because the facts of each case are different, the factors "need not be applied in a formulaic way" and some factors may be afforded greater weight than others. *In re Rite Aid*, 396 F.3d at 301; *Gunter*, 223 F.3d at 195 n. 1. In applying these factors to the present case, a 27.8% fee award of the Cash Settlement Fund to Class Counsel for achieving a favorable settlement is both justified and appropriate.

### 1. The Fee Award Is Reasonable Based On The Value Of The Common Cash Settlement Fund And The Number Of Class Members Benefitted

The quality of work performed in a case that settles before trial is best measured by the benefit obtained. *Serio v. Wachovia Sec., LLC*, No. 06-4681, 2009 WL 900167, *11 (E.D. Pa. Mar. 31, 2009). The amount of the Settlement Fund and number of Class Members supports approving Class Counsel's fee request.

The Cash Settlement Fund is $50.8 million and the Parties estimate that the known Class Members total approximately 18,422,784 persons.[4] As outlined above, the Settlement Agreement provides significant benefits by offering Class Members a choice of either cash or a voucher to Justice stores.[5] In addition, the Settlement provides Class Members with two options. Option One applies to all Class Members, and provides the Class Members a choice of either cash or a Justice voucher. Option Two is for Class Members who had six or more purchases during the Class Period and/or at least one purchase over $105. These Class Members can choose between cash or a Justice voucher, the value of which is 14% or 20%, respectively, of the Class Members' total purchases during the Class Period. And, again, all participating Class Members who do not affirmatively file a claim will receive a voucher under Option One for their

---

[4] Order, ECF Doc. No. 78 at 36.
[5] Order, ECF Doc. No. 78 at 36.

respective states of residence. The automatic vouchers, while the final value is to be determined, have a value of approximately $400,000,000.00. Based on the substantial benefits awarded to Class Members as a result of the Settlement Agreement, this factor weighs in favor of granting Class Counsel's request.

### 2. The Lack Of A Substantial Amount Of Objections Weighs In Favor Of Class Counsel's Request

Courts look at the amount or presence of objections to attempt to gauge whether members of the class support the settlement. *In re Prudential*, 148 F.3d at 318. In *In re CertainTeed Fiber Cement Siding Litig.*, there were seven objections and twenty-one opt-outs out of a settlement class of approximately 300,000. 303 F.R.D. 199, 217 (E.D. Pa.2014), appeal dismissed (Aug. 11, 2014). Finding that this factor counted in favor of settlement approval, the court noted that this number of objectors and opt-outs was "extremely low" and in line with other cases in the Third Circuit. *Id.*

As of this date, there have been five objections filed by Class Members out of the estimated 18,422,784 identified settlement Class Members[6] or .00000028% of the Class. All objections to the Settlement are to be filed on or before April 15, 2016.[7] While it may be premature to determine since the objection period is not over, the current number of objections constitutes such a miniscule percentage of the class members that this factor is likely to weigh in favor of Class Counsel's request. Each of those objections is opposed by Class Counsel. To date, there have been only 252 Class Members who have registered to be excluded, or approximately .00001% of the known Class.

---

[6] Order, ECF No. 78 at 36.
[7] Joint Motion to Amend the Court's October 27, 2015 Scheduling Order, ECF No. 87 at 4.

### 3. Class Counsel Are Skilled And Efficient Litigators

Class Counsel is highly experienced in litigating complex and class actions. As stated in Plaintiffs' Motion to Appoint Interim Co-Lead Class Counsel (ECF Doc. No. 41), Class Counsel has a wealth of experience in class, mass, and other types of complex litigation, having worked on over twenty class action cases. The skill and efficiency of counsel is measured by:

> [T]he quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). By securing a settlement of a $50.8 Million cash Settlement Fund, plus automatic voucher distribution, within a year of filing, Class Counsel proved to be very efficient and effective litigators.

Class Counsel recognized and accepted the risk associated with this action. Moreover, Class Counsel weighed and considered a variety of factors throughout the course of this litigation before reaching a settlement: (1) the potential expense and length of time necessary to prosecute the action through trial; (2) the uncertainty of outcome at trial; (3) the possibility of an appeal by either side following the trial; (4) the possibility that a contested class might not be certified, and if certified, the possibility that such certification would be reversed on appeal; (5) the differences in state laws on relevant issues and how that would complicate dispositive motions or trial, even if a class was certified; and (6) the need for substantial benefits to be made available to Plaintiffs and the Class Members under the terms of the Settlement Agreement.

Class Counsel also had to address how best to implement a voucher program as part of the overall benefits being awarded to the Class as a result of the Settlement. Coupons, such as the ones awarded in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, may suggest that some segments of the class are being benefitted more than others if the coupons are

to be used on items that are either expensive or infrequently bought. 55 F.3d 768, 808 (3d Cir. 1995). However, in *New York v. Nintendo of America, Inc.*, the $5 discount coupons for video game purchases were upheld since there was no sign that a poorer member of the settlement may not be receiving as substantial of a benefit. 775 F.Supp. 676, 679 (S.D.N.Y. 1991); *see also In re Gen. Motors Corp.* 55 F.3d at 808.

Class Counsel was faced with the task of negotiating a voucher that would prove to be equally beneficial to Class Members nationwide. Weighing all these considerations, Class Counsel developed a voucher that was practical and efficient. The voucher could be used to purchase items that would certainly not be as expensive or bought as infrequently as a new truck, as in *Gen. Motors Corp.* The vouchers are transferable, are valid for a year, and are, in many cases, sufficient to purchase a wide range of Justice merchandise with little or no additional out-of-pocket money from the Class Member.

The Settlement also gives the Class Member the choice to pick cash instead of receiving a voucher, so as to alleviate any concerns of unfairness. This factor weighs in favor of the requested fee award, as shown through the combined efforts expended and the substantial benefits efficiently secured by Class Counsel.

### 4. At The Beginning, The Litigation Was Complex And Would Be Enduring

This factor is intended to capture the probable costs, in both time and money, which would incur if litigation were to continue. *In re Gen. Motors Corp.*, 55 F.3d at 812. Courts can thereby gauge the benefit of settling the claim amicably. *Id.*

In gauging the probable costs, the court in *Sullivan v. DB Invsestments, Inc.* looked at the expense, complexity and imprecision involved with weighing the relative strengths of various state law claims when dealing with claims in all fifty states. *See Sullivan v. DB Invs., Inc.*, 667

F.3d 273, 29 (3d Cir. 2011). In *In re Cendant Corp. Litigation*, the court determined that while the issue of liability did not present numerous complex legal and factual issues, the issue of determining damages was complicated and difficult to follow. *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001). Therefore, the court found this factor to be in favor of the fee request since the damages issue had the potential to appreciably lengthen and complicate the litigation. *Id.*

Here, Class Counsel employed its very effective investigation during negotiation to undermine the multiple defenses presented by the defense. Thereafter, Class Counsel had to develop a settlement structure in order to satisfy the 18.4 million known Class Members and the additional estimated 1.2 million unknown Class Members' claims in all fifty states. Even though the issue of liability was efficiently determined over numerous meetings, the more extended issue of damages for the Class Members nationwide required a thoughtful and nuanced approach. Class certification and the determination of damages had the potential to lengthen and complicate the potential litigation. Therefore, these factors weigh in favor of Class Counsel's fee request.

### 5.  Class Counsel Faced A Risk Of Nonpayment

In assessing the risk of nonpayment, courts often remain cognizant that the possibility of bankruptcy is quite real when the settlement numbers sufficiently increase. *In re Cendant Corp.*, 264 F.3d at 241. Yet in a class action where class counsel brings a case on a contingency basis, that is not the only factor contributing to the risk of nonpayment. *Stagi v. Natl. R.R. Passenger Corp.*, 880 F.Supp.2d 564, 570 (E.D. Pa. 2012) (stating that "[i]n every class action in which class counsel bring a case on a contingency basis, there is always some risk of nonpayment).

In *Hall v. Best Buy Co.*, the court noted that while the case was pending, class counsel had not received any payment, and by proceeding under a contingent-fee arrangement, ran a

substantial risk of nonpayment. 274 F.R.D. 154, 173 (E.D. Pa. 2011). In the event of an unsuccessful trial, class counsel faces an acute risk of nonpayment. *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013). Even when the plaintiffs succeed in proving liability, there is no guarantee of recovering substantial damages at trial. *Id.* Here, Class Counsel represented Plaintiffs on a contingency fee basis and faced a high risk of nonpayment.

### 6. Awards In Similar Cases Demonstrate That The Fee Request Is Reasonable

Fee awards in class action settlements up to $50 million often see a range of 22–33% for fee awards. *See Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002) *aff'd*, 391 F.3d 516 (3d Cir. 2004) (citing *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998)). In fact, many of the recent Third Circuit cases, as shown below, have awarded attorneys' fees in the range of 27-33.3% of the total recovery.

| Case | Settlement | Attorneys' Fees | Fees as % of Recovery |
|---|---|---|---|
| *In re Fasteners Antitrust Litigation*, No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) | $17.55 million | $5.85 million | 33.3% |
| *In re Flonase Antitrust Litigation*, 291 F.R.D. 93 (E.D. Pa. 2013) | $35 million | $11.66 million | 33.3% |
| *Milliron v. T-Mobile USA, Inc.*, 423 Fed.Appx. 131 (3d Cir. 2011) | $13.5 million | $4.5 million | 33.3% |
| *McCoy v. Health Net, Inc.*, 569 F.Supp.2d 448 (D.N.J. 2008) | $215 million | $69.72 million | 32% |
| *McDonough v. Toys R Us, Inc.*, 80 F.Supp.3d 626 (E.D. Pa. 2015) | $35.5 million | $11.09 million | 31.2% |
| *Boone v. City of Philadelphia*, 668 F.Supp.2d 693 (E.D. Pa. 2009) | $5.9 million | $1.8 million | 30% |
| *Brady v. Air Line Pilots Ass'n*, 2015 WL 5601279 (3d Cir. Sept. 23, 2015) | $53 million | $15.9 million | 30% |

| | | | |
|---|---|---|---|
| *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) | $50 million | $15 million[8] | 30% |
| *In re Sterling Financial Corp. Securities Class Action*, No. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) | $10.25 million | $3.07 million | 30% |
| *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) | $14 million | $4.2 million | 30% |
| *In re Staples Inc. Wage & Hour Emp. Practices Litigation*, 2011 WL 5413221, *5 (D.N.J. Nov. 4, 2011) | $42 million | $11.5 million | 27.5% |
| *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006). | $27.4 million | $7.5 million | 27.4% |

In *In re Ikon Office Solutions*, the Parties requested approval of a settlement of a class action for $111 million, with class counsel seeking 30% of the fund as attorneys' fees. 194 F.R.D. at 170. In determining whether thirty percent was the appropriate percentage for class counsel, the court noted that in looking at awards in other cases, the factor tends to favor a request of 30% of the fund for attorneys' fees since "most fees appear to fall in the range of nineteen to forty-five percent." *Id.*

The court concluded that the only factor that tends to support a smaller percentage or a decrease in the percentage awarded is when the settlement fund is a "very large" settlement, in excess of $100 million. *Id.* at 195; *see also In re Prudential*, 148 F.3d at 331 (where the exceptional size of the class recovery, valued at $1.987 billion, counseled in favor of a lower percentage of recovery for attorneys' fees); *In re AT & T Corp.*, 455 F.3d at 165 (where attorneys' fees of 21.25% of the $100 million settlement fund were awarded).

The attorneys' fees awarded pursuant to the settlement agreement in *In re Computron Software, Inc*, were deemed to be fair by the court in consideration of the "professional efforts

---

[8] The $15 million includes both attorneys' fees of $6,425,103.84 and expenses of $8,574,896.16.

extended and the fair and adequate settlement reached by counsel." 6 Fed. Supp. 2d 313, 323 (D.N.J. 1998). The settlement amount was $15 million with attorneys seeking fees of 25% of the amount of recovery. *Id.* Likewise, the court in *In re Greenwich Pharm. Sec. Litig.*, dealing with a settlement fund of $4,375,000, deemed a fee award of 33.3% to be "in line with the fee awards approved by other courts." No. 92-3071, 1995 WL 251293, *6 (E.D. Pa. Apr. 26, 1995).

Here, the settlement amount is well below the $100 million threshold that is generally held to be the standard for a settlement to be deemed "very large," as contemplated by the court in *In re Ikon Office Solutions, supra.* Since typically only cases with very large settlement amounts see a reduction in attorneys' fees, the attorneys' fees here should be upheld. For class action settlements up to $50 million, the fee awards range between 22-33%. Class Counsel is asking for 27.8% of the $50.8 million Cash Settlement Fund. And, again, the percentage shrinks to just 3.1% of the value of the Settlement Agreement to the Class when considering the value of the automatic vouchers of at least $400 Million.

### 7. The Benefits Accruing To Class Members Are Attributable To The Efforts Of Class Counsel, As Opposed To The Efforts Of Others

Courts will also evaluate attorneys' fee requests based on "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations." *In re AT & T Corp.*, 455 F.3d at 165. The development and prosecution of this case was based entirely on the very effective investigation, pleading, discovery, analysis and negotiation of Class Counsel. This is not the type of the case that is the result of a government lawsuit or investigation. Therefore, no federal or state agency assisted Class Counsel in its prosecution of this case or contributed in any way to the $50.8 Million Cash Settlement Fund that was created for the Class. The Settlement's

substantial benefits to the Class are attributable solely to the efforts of Class Counsel and thus, this factor weighs heavily in favor of Class Counsel's fee request.

### 8. The Requested Fee Is Consistent With The Percentage Fee That Would Have Been Negotiated In A Private Contingent Fee Arrangement

Plaintiffs' requested fee award is further supported in light of the potentially higher fee that would be expected in a privately negotiated contingency fee agreement. In private contingency fee cases, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery. *In re Ikon Office Solutions*, 194 F.R.D. at 194. The fee agreement in place between Class Counsel and the Representative Plaintiffs calls for 35% of the gross recovery. Since Class Counsel's request for fees constitutes 27.8% of the recovery fund, this factor weighs strongly in favor of granting Class Counsel's requested fee award.

### 9. The Terms Of The Settlement Are Innovative

Whether class counsel have promoted any "innovative" terms of settlement must be considered. *In re Prudential*, 148 F.3d at 339. As discussed above as well as in Plaintiffs' Memorandum in Support of the Joint Motion for Final Approval, the nuanced structure of the Settlement is a factor weighing in favor of Class Counsel's fee request.

### C. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

As set forth above, the *Gunter* analysis demonstrates that Class Counsel's fee request: 1) is fair and reasonable; 2) the requested percentage falls within the benchmark range of percentage recoveries applied in similar cases; 3) the requested fee award is comparable to awards in similar cases; and 4) the fee award is appropriate given the significant value the Settlement provides to all Class Members by the efforts of efficient and effective Class Counsel. Courts in the Third Circuit will sometimes benchmark the reasonableness of the percentage of

recovery Fee Award against an abridged lodestar analysis. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 735 (3d Cir. 2001); *Kirsch v Delta Dental*, 534 Fed. Appx. 113 (3d Cir. 2013).

However, as the Third Circuit recently stated:

> At the same time, we reiterate that the percentage of common fund approach is the proper method of awarding attorneys' fees. The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records. Furthermore, the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award. Lodestar multipliers are relevant to the abuse of discretion analysis. But the lodestar cross-check does not trump the primary reliance on the percentage of common fund method.

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d at 306-07 (internal citations omitted).

> Additionally, the Third Circuit Task Force has found that:

> Given the substantial problems with the lodestar approach generally, the Task Force is highly skeptical about the use of the lodestar even as a cross-check when awarding a percentage of the common fund. The inherent flaws of the lodestar method are diminished, but certainly not eliminated, by making the lodestar a relevant rather than dispositive factor. The Task Force notes that in the Third Circuit the lodestar cross-check is only a "suggested" and not a mandated procedure. We emphasize that the lodestar is at most a relevant factor if it is to be used at all, and it should not receive exaggerated importance in assessing the appropriate fee.

THIRD CIRCUIT TASK FORCE ON THE SELECTION OF CLASS COUNSEL, p. 104, available at http://www.ca3.uscourts.gov/sites/ca3/files/final%20report%20of%20third%20circuit%20task%20force.pdf.

Furthermore, the Third Circuit Task Force has pointed to some of the shortcomings engendered by the lodestar approach:

> the lodestar approach "creates a disincentive for the early settlement of cases" because of the emphasis on hours worked; "there appears to be a conscious, or perhaps unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar."

*Id.* at n. 38 (citing *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 248 (1985)); *Goldberger v. Integrated Res.*, 209 F.3d 43, 48 (2d Cir. 2000) (noting that the lodestar "created an unanticipated disincentive to early settlements."); *see also* THIRD CIRCUIT TASK FORCE ON THE SELECTION OF CLASS COUNSEL, n.38 ("The lodestar method also can create unfortunate incentives for a plaintiff's lawyer to engage in unnecessary work to prolong the litigation in an effort to justify a larger fee, which, of course, causes inefficiency, inhibits settlement, and misaligns the interests of counsel and class.") (quoting Statement of Professor Arthur Miller, submitted to the Task Force, at 3).

The abridged lodestar value is calculated through multiplying the number of hours Class Counsel worked on a case by a reasonable hourly rate for such services. *In re Diet Drugs*, 582 F.3d 524, 533 n.14 (3d Cir. 2009). The billing rate should be a blended billing rate of all attorneys who worked on the matter, and should be reasonable in light of "the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re AT & T Corp.*, 455 F.3d at 164 n.3 (internal citation omitted). Here, Class Counsel's collective lodestar, to date, is $2,652,716.71. *See* Declarations of Class Counsel, attached hereto as Exhibits 1 – 4 and Lodestar Summary, attached hereto as Exhibit 5. This lodestar will increase as Class Counsel continues to zealously represent the Class through the remainder of the litigation.

An abridged cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. *In re AT & T Corp.*, 455 F.3d at 164. A court will only reconsider its calculation under the percentage-of-recovery method if the multiplier is deemed by the Court to be too great under the particular circumstances of the case. *Id.* However, courts should still rely primarily on the percentage-of-recovery method calculation. *Id.* The Third Circuit has recognized that multipliers ranging from one to four are frequently awarded in

common fund cases when the lodestar cross-check method is employed. *Meijer, Inc. v. 3M*, Civ.

A. No. 04-5871, 2006 WL 2382718, citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742.

In dividing the proposed fee award of $14.111 Million by the lodestar calculation of

$2,652,716.71, the resulting lodestar multiplier is 5.3. Courts have regularly approved fee

awards in class action cases with similar or greater multipliers, as demonstrated the table below:

| Case | Settlement | Attorneys' Fees | Fees as % of Recovery | Lodestar Multiplier |
|---|---|---|---|---|
| *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. CIV.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) | $100 million | $20 million | 20% | 15.6 |
| *Weiss v. Mercedes-Benz of N. Am.*, 899 F.Supp. 1297, 1304 (D.N.J.1995). | $75 million | $11,250,000.00 | 15% | 9.3 |
| *Muchnick v. First Fed. Sav. & Loan Assoc.*, Civ.A.No. 86-1104, 1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986). | $4-6.8 million | $250,000.00 | 3.7-6.25% | 8 |
| *In re Rite Aid Corp. Sec. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005). | $126,641,315.00 | $31,660,328.75 | 25% | 6.96 |
| *In re R.J.R. Nabisco Sec. Litig.*, MDL No. 818(MBM), 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992). | $72.5 million | $18,125,000.00 | 25% | 6 |
| *Frederick v. Range Resources-Appalachia, LLC*, No. 08-288, 2011 WL 1045665 (W.D. Pa. Mar. 17, 2011). | $22 million | $4,650,382.00 | 20.58% | 5.95 |
| *Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997). | $115 million | $19,154,144.62[9] | 16.66% | 5.5 |
| *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006). | $27,393,384.51 | $7.5 million | 27.4% | 4.77 |
| *In re AremisSoft Corp. Securities Litig.*, 210 F.R.D. 109 (D.N.J. 2002). | $194 million | $42 million | 28% | 4.3 |

*See, also, In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa.

June 2, 2004) amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (noting

---

[9] Reduced from $28,750,000.00.

that from 2001 – 2003 the average lodestar multiplier was 4.35 and for the thirty years before that the average multiplier was 3.89). Accordingly, the lodestar cross-check confirms that Class Counsel's fee request of 27.8%, which falls within the benchmark range for percentage of the recovery fee awards, is eminently reasonable and appropriate.

Further, Class Counsel obtained the opinion of Mike Boni, Esq. to confirm the reasonableness of their fees assessed in this case. Upon concluding his review and analysis, Mr. Boni determined, based on his professional experience and expertise in the area, to a reasonable degree of certainty, that Class Counsel's fee request was fair and reasonable. (Declaration of Mike Boni, Esq., attached hereto as Exhibit 6).

Finally, while the lodestar cross check confirms the percentage of the recovery fee award calculation is reasonable here, there are factors particular to this case that provide additional reasons why the Court should rely on the benchmark percentage of the settlement recovery calculation for the fee award in this case. First, Class Counsel secured a Settlement for the Class Members that offers Class Members significant flexibility in the type of award they can obtain. As explained more fully above, there are two options available in the Settlement structure. Option One provides a set value for a cash or voucher award, based on the Class Members' state of residence. Option Two provides those Class Members with six or more purchases during the Class Period and/or a single purchase of $105 or more, the choice to obtain a percentage of their total purchases during the Class Period in either cash or voucher.

Class Members who no longer wish to shop at Justice, or whose children have outgrown Justice fashion, can choose the cash award. A sizeable fund of Twenty Seven Million Eight Hundred Thousand Dollars ($27,800,000) is available to cover the cash awards for those Class Members who choose cash. Those Class Members who wish to continue shopping at Justice,

and who feel that a voucher offers them the greatest value, can choose vouchers. In addition, Class Members who wish to receive Option One vouchers do not have to affirmatively do anything, as the vouchers will be distributed to them automatically upon approval of the Settlement by the Court. Class Counsels' efforts have provided significant value to the Class Members, and offer the individual Class Members the flexibility to choose the recovery that best suits their individual needs.

Second, Class Counsel accomplished this extremely favorable settlement for the Class in a highly efficient manner. Class Counsel conducted an investigation before filing the initial complaints, and used the information obtained during this investigation to streamline the litigation process. The lodestar crosscheck on the percentage of the recovery fee award is intended to offer a secondary guide as to the reasonableness of Class Counsel's fees, to ensure that Class Counsel have not expended time inefficiently and that Class Counsel's fees are not disproportionate to the value Class Counsel's efforts have obtained for the Class. Neither is the case here. *See, In re SmithKline Beckman Corp. Sec. Litig.,* 751 F. Supp. 525, 554 (E.D. Pa. 1990) ("it would be the height of folly to penalize an efficient attorney for settling a case on the ground that less total hours were expended in the litigation".) Class Counsel have achieved a settlement that makes available $27,800,000 to pay cash awards to Class Members who choose to receive cash, and automatic vouchers that add approximately $400,000,000 in value to the Class. Given the large number of Class Members who have affirmatively chosen vouchers when submitting claims under Option One and Option Two, the data evidences that these vouchers are desirable to the Class and bring significant value to the Class Members. Accordingly, the particular facts of this case warrant a greater deference to the percentage of the recovery method of calculating Class Counsel's fees.

## D.    Class Counsel Should Be Reimbursed Its Expenses

This court has stated that "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *In re Ikon Office Solutions*, 194 F.R.D. at 192; *see also Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 335-36 (E.D. Pa. 2007). Even in *Ikon* where the expenses were deemed to be high, the court found that the expenses were reasonable and that they should be reimbursed. *Id.*

Here, Class Counsel requests a fee award of $14,111,455.85, *inclusive* of their $200,000 in out-of-pocket expenses incurred to date in this litigation. Since the expenses here were incurred with no guarantee of recovery, Class Counsel had a strong incentive to incur only reasonable and necessary expenses, and did so. While Class Counsel does not separately seek an award for expenses, the court should certainly be made aware of the $200,000 in expenses Class Counsel seeks to include in its requested fee award of $14,111,455.85.

## E.    Incentive Awards Are Warranted for Named Plaintiffs

Finally, Class Counsel requests that the Court award $6,000 to each of the eight Named Plaintiffs for the time they have expended in representing the Class members. Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation. *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 296 F.R.D. 351, 371 (E.D. Pa.2013). Courts have consistently found incentive awards to be reasonable compensation in consideration of the extent of the named plaintiffs' involvement in a case and the sacrifice of their anonymity. *In re Am. Investors Life Ins. Co. Annuity Mkg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa.2009).

*In American Investors*, class counsel requested incentive awards for the named plaintiffs in the aggregate amount of $115,000, with an award of $10,500 to go to ten of the named

plaintiffs and an award of $5,000 to go to two of the named plaintiffs. *Id.* The difference in distribution reflected the difference in the named plaintiffs' involvement in the prosecution of the case and in discovery. *Id.* Noting that the named plaintiffs overall undertook efforts that benefitted the class, the court found these awards to be justified. *Id.*

While courts may recognize the difference in the named plaintiffs' involvement in the case through approving different amounts of the incentive awards, the Third Circuit has also upheld equal incentive payment awards. In *In re Ins. Brokerage Antitrust Litig.*, the court approved a $10,000 incentive award for each of the fifteen named plaintiffs, resulting in a total incentive award of $150,000. 579 F.3d 241, 259 (3d Cir. 2009).

Here, the eight Named Plaintiffs are each receiving an incentive award of $6,000, for an aggregate total amount of $48,000. The Named Plaintiffs not only sacrificed their anonymity to be involved in this case, but also attended meetings and/or phone conferences with Class Counsel. Based on the foregoing precedent, the incentive awards to the Named Plaintiffs should be upheld as reasonable compensation for their efforts.

## IV.   **CONCLUSION**

WHEREFORE, based on the foregoing reasons, Plaintiffs request that the Court award the following: (1) Class Counsel payment of their attorneys' fees in the amount of $14,111,455.85, inclusive of their expenses to date in the amount of $200,000, and (2) Incentive Awards in the amount of $6,000 for each of the eight Named Plaintiffs and grant all further relief this Court deems just and appropriate.

Respectfully submitted,

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

By: /s/ William Pietragallo, II
WILLIAM PIETRAGALLO II, ESQ.
KEVIN E. RAPHAEL, ESQ.
I.D. Nos. 16413 and 72673
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200

MANSOUR GAVIN LPA
ERNEST MANSOUR, ESQ.
ANTHONY COYNE, ESQ.
BRENDON P. FRIESEN, ESQ.
emansour@mggmlpa.com
acoyne@mggmlpa.com
bfriesen@mggmlpa.com
1001 Lakeside Avenue, Suite 1400
Cleveland, OH 44114
(216) 523-1500

EDWARD J. WESTLOW, ESQ.
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219-3532
(804) 780-0305

ROBERT MANSOUR, ESQ.
23611 Chagrin Blvd., Suite 270
Beachwood, Ohio 44122
(216) 514-3127
Rmansour@competitivetitle.com

Attorneys for Plaintiffs

Date: March 18, 2016

3123801v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carol Rougvie, et al., | : | CLASS ACTION |
| | : | |
| vs. | : | No. 15-724 |
| | : | |
| Ascena Retail Group, Inc., et al. | : | |
| | : | |

## CERTIFICATE OF SERVICE

This is to certify that on March 18, 2016, true and correct copies of the Motion For Award Of Attorneys' Fees, Expenses And Incentive Awards, were electronically filed and served on the following via the Court's electronic filing system as well as Electronic Mail:

Gregory T. Parks
Ezra D. Church
Christopher J. Mannion
Morgan Lewis & Bockius
gparks@morganlewis.com
echurch@morganlewis.com
cmannion@morganlewis.com
1701 Market St.
Philadelphia, PA 19103-2921
(215) 963-5000

*Attorneys for Defendants*

Daniel Goetz
Eric Kennedy
dgoetz@weismanlaw.com
ekennedy@weismanlaw.com
Weisman, Kennedy & Berris, CO., LPA
101 W. Prospect Ave. Midland Building Suite 1600
Cleveland, OH 44115
(216) 781-6747

Gerard McCabe
Mitts Law, LLC
1822 Spruce St.
Philadelphia, PA 19103
(215) 866-0120

*Attorneys for Traynor-Lufkin Plaintiffs*

By: */s/ Kevin E. Raphael*
    KEVIN E. RAPHAEL, ESQ.
    I.D. No. 72673
    1818 Market Street, Suite 3402
    Philadelphia, PA 19103
    (215) 320-6200

    Attorney *for Plaintiffs*

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Carol Rougvie, et al.,

        Plaintiffs

           v.

Ascena Retail Group, Inc., et al.

        Defendants

CIVIL ACTION No. 15-724

## DECLARATION OF WILLIAM PIETRAGALLO, II IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

I, William Pietragallo, II, declare as follows:

1. I am a partner and Managing Partner of the law firm, Pietragallo Gordon Alfano Bosick & Raspanti, LLP ("Pietragallo"). My firm worked on behalf of Plaintiffs and the Class in this litigation. I make this Declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I am over the age of 18, competent to testify and have personal knowledge as to the facts set forth in this Declaration and, if called upon to do so, I could and would testify to them.

2. The time and expenses that Pietragallo expended on this case were logged and recorded on a daily basis, and formatted collectively on a monthly basis in the ordinary course of our business. Only the time and expenses that my law firm expended on this case are being submitted in connection with this Declaration.

3. My firm along with co-counsel, Mansour Gavin LPA, Edward J. Westlow, Esq. and Robert Mansour, Esq. act as lead counsel on behalf of Plaintiffs in the Class. As lead counsel, my office participated in the pre-litigation investigation of the allegations giving rise to the claims set forth in the Complaint; prepared various pleadings, motions and other documents filed with the Court; arranged and attended meetings and phone conferences with Plaintiffs; reviewed voluminous documents produced in discovery by Defendants; strategized with co-lead counsel as to the litigation and the resolution of this case; attended numerous in-person meetings, phone conferences and other correspondence among co-lead counsel as well as with counsel for Defendants; intensely negotiated the resolution of this case on behalf of Plaintiffs and the Class; prepared the voluminous documents to memorialize and effectuate the settlement of the litigation; attended numerous hearings and pretrial conferences scheduled by the Court; and all other attending legal research, communication, analysis and strategy in connection with the case.

4.   My firm has expended and recorded 2,152 hours on this case, from its inception through March 11, 2016. My firm's blended hourly rate is $537, comprised of the hourly rates charged for each professional staff member including senior and junior partners, associates, paralegals and clerks in effect at the time the work was performed and consistent with the applicable locale. Accordingly, as of March 11, 2016, the total Loadstar for Pietragallo is $1,154,875.00. The Loadstar amount is for work completed on behalf of Plaintiffs and the Class and was performed by our professional staff at Pietragallo.

5.   All of the work performed by Pietragallo was done so on a contingent basis pursuant to the contingent fee agreement with our clients at the negotiated rate of 35%. Pietragallo, along with co-lead counsel, negotiated a reduced percentage fee of 27.8%. Pietragallo has not received any compensation for these services from any source.

6.   Pietragallo incurred costs in the prosecution of this matter in the amount of $73,313.00 from the inception of the case through March 11, 2012. These costs were incurred on behalf of Plaintiff and the Class on a contingent basis and have not yet been reimbursed. The percentage fee award includes the expenses of Pietragallo.

7.   I have reviewed the time and expenses reported by Pietragallo in this case which are included in our Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I affirm that they are true and correct.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed this ___15th___ day of March, 2016 in Pittsburgh, Pennsylvania.

_____
WILLIAM PIETRAGALLO, II
Managing Partner

3123461v1

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carol Rougvie, et al., | : | CIVIL ACTION No. 15-724 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| Ascena Retail Group, Inc., et al. | : | |
| | : | |
| Defendants | : | |

**DECLARATION OF ANTHONY J. COYNE IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES**
**AND INCENTIVE AWARDS**

I, Anthony J. Coyne, declare as follows:

1.  I am a shareholder and president of the law firm, Mansour Gavin LPA. My firm worked on behalf of Plaintiffs and the Class in this litigation. I make this Declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I am over the age of 18, competent to testify and have personal knowledge as to the facts set forth in this Declaration and, if called upon to do so, I could and would testify to them.

2.  The time and expenses that Mansour Gavin LPA expended on this case were logged and recorded on a monthly basis in the ordinary course of our business. Only the time and expenses that my law firm expended on this case are being submitted in connection with this declaration.

3.  My firm along with co-counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Edward J. Westlow, Esq. and Robert Mansour, Esq. act as lead counsel on behalf of Plaintiffs in the Class. As lead counsel, my office participated in the pre-litigation investigation of the allegations giving rise to the claims set forth in the Complaint; prepared various pleadings, motions and other documents filed with the Court; arranged and attended meetings and phone conferences with Plaintiffs; reviewed voluminous documents produced in discovery by Defendants; strategized with co-lead counsel as to the litigation and the resolution of this case; attended numerous in-person meetings, phone conferences and other correspondence among co-lead counsel as well as with counsel for Defendants; negotiated the resolution of this case on behalf of Plaintiffs and the Class; prepared the voluminous documents to memorialize and effectuate the settlement of the litigation; attended numerous hearings and pretrial conferences scheduled by the Court; and all other attending legal research, communication, analysis and strategy in connection with the case.

4.    My firm has spent 1,864.7 hours on this case, from its inception through March 11, 2016. My firm's blended hourly rate is $539.30, comprised of the hourly rates charged for each professional staff member including senior partners, junior partners and associates in effect at the time the work was performed and consistent with the applicable locale. Accordingly, the lodestar amount for Mansour Gavin LPA is $1,005,632.71 for work completed on behalf of Plaintiffs and the Class by our professional staff at Mansour Gavin LPA.

5.    All of the work performed by Mansour Gavin LPA was done so on a contingent basis pursuant to the contingent fee agreement with our clients at the negotiated rate of 35%. Mansour Gavin LPA, along with co-lead counsel, negotiated a reduced percentage fee of 27.8%. Mansour Gavin LPA has not received any compensation for these services from any source.

6.    Mansour Gavin LPA incurred costs in the prosecution of this matter in the amount of $68,898.38 from the inception of the case through March 11, 2016. These costs were incurred on behalf of Plaintiff and the Class on a contingent basis and have not yet been reimbursed. The percentage fee award includes the expenses of Mansour Gavin LPA.

7.    I have reviewed the time and expenses reported by Mansour Gavin LPA in this case which are included in our Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I affirm that they are true and correct.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed this 15th day of March, 2016 in Cleveland, Ohio.

Anthony J. Coyne, Shareholder and President of
Mansour Gavin LPA

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Carol Rougvie, et al.,        :    CIVIL ACTION No. 15-724

         Plaintiffs       :

v.                    :

Ascena Retail Group, Inc., et al.    :

         Defendants     :

## DECLARATION OF ROBERT MANSOUR IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

I, Robert Mansour, declare as follows:

1. I am an attorney licensed in the State of Ohio. I worked on behalf of Plaintiffs in the Class in this litigation. I make this Declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I am over the age of 18, competent to testify and have personal knowledge as to the facts set forth in this Declaration and, if called upon to do so, I could and would testify to them.

2. Only the time and expenses that I spent on this case are being submitted in connection with this declaration.

3. I, along with co-counsel, Mansour Gavin LPA, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Edward J. Westlow, Esq. act as lead counsel on behalf of Plaintiffs in the Class. In connection with my role as lead counsel I participated in the pre-litigation investigation of the allegations giving rise to the claims set forth in the Complaint; prepared various pleadings, motions and other documents filed with the Court; arranged and attended meetings and phone conferences with Plaintiffs; reviewed voluminous documents produced in discovery by Defendants; strategized with co-lead counsel as to the litigation and the resolution of this case; attended numerous in-person meetings, phone conferences and other correspondence among co-lead counsel; negotiated the resolution of this case on behalf of Plaintiffs and the Class; prepared the voluminous documents to memorialize and effectuate the settlement of the litigation; and all other attending legal research, communication, analysis and strategy in connection with the case.

4. I spent approximately 500 hours on this case, from its inception through March 11, 2016. My hourly rate is $600 which was in effect at the time the work was performed and consistent with the applicable locale. Accordingly, my lodestar amount is $300,000.00 for work completed on behalf of Plaintiffs and the Class.

5.     I incurred expenses in the prosecution of this matter in the amount of approximately $2,000.00 from the inception of the case through March 11, 2016. These expenses were incurred on behalf of Plaintiff and the Class on a contingent basis and have not yet been reimbursed.

6.     I have reviewed the time and expenses reported by me in this case which are included in our Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I affirm that they are true and correct.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States. Executed this 16th day of March, 2016 in Cleveland, Ohio.

_____
Robert Mansour, Esq.

# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carol Rougvie, et al., | : | CIVIL ACTION No. 15-724 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| Ascena Retail Group, Inc., et al. | : | |
| | : | |
| Defendants | : | |

## DECLARATION OF EDWARD J. WESTLOW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS

I, Edward J. Westlow, declare as follows:

1.    I am an attorney admitted to practice in the State of New York, First Department (Atty. Reg. No. 1651686). I am also admitted to the United States District Court for the Southern District of New York, as well as the Eastern District of Michigan and the Middle District of Pennsylvania. I have been admitted Pro Hac Vice herein, and I have worked on behalf of Plaintiffs and the Class in this litigation. I make this Declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards. I am over the age of 18, competent to testify and have personal knowledge as to the facts set forth in this Declaration and, if called upon to do so, I could and would testify to the same.

2.    I practice as a solo practitioner, and the time and expenses that I have expended on this case were logged and recorded on a monthly basis in the ordinary course of my practice. Only the time and expenses that I expended on this case are being submitted in connection with this declaration.

3.    Along with co-counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin LPA and Robert Mansour, Esq. I act as lead counsel on behalf of Plaintiffs in the Class. As co-lead counsel, I participated in the pre-litigation investigation of the allegations giving rise to the claims set forth in the Complaint; prepared various pleadings, motions and other documents filed with the Court; arranged and attended meetings and phone conferences with Plaintiffs; reviewed documents produced in discovery by Defendants; strategized with co-lead counsel as to the litigation and the resolution of this case; attended in-person meetings, phone conferences and other correspondence among co-lead counsel as well as with counsel for Defendants; negotiated the resolution of this case on behalf of Plaintiffs and the Class; aided in preparation of the documents necessary to memorialize and effectuate the settlement of the litigation; attended hearings and numerous pretrial

and telephone conferences scheduled by the Court; as well as all other concomitant legal research, communication, analysis and strategy in connection with this case.

4.    I have spent 319.10 hours on this case, from its inception through March 15, 2016. My hourly rate is $600. This hourly rate is my standard rate, and has been a part of recent fee awards including me in two nationwide class actions: *In Re Static Random Access Memory Chips Antitrust Litigation*, MDL 1819 (N.D.Ca. 2011) (Wilken, J) and *In re TFT-LCD Flat Panel Antitrust Litigation*, MDL 1827 (N.D.Ca. 2014) (Illston, J.). Accordingly, my total Loadstar is $191,460.00. This Loadstar amount is entirely for work performed by me on behalf of Plaintiffs and the Class.

5.    All of the work performed was done so on a contingent basis pursuant to the contingent fee agreement with the representative Plaintiffs at an initial negotiated rate of 35%, and a subsequently negotiated reduced percentage fee of 27.8%. I have not received any compensation for these services from any source.

6.    I have incurred out-of-pocket incurred costs in the prosecution of this matter in the amount of 3,090.24, from February 1, 2015 through March 15, 2016. These costs were incurred on behalf of Plaintiffs and the Class on a contingent basis and have not yet been reimbursed. The percentage fee award includes these expenses.

7.    I affirm that the time and expenses reported by me in this case and included in the Motion for an Award of Attorneys' Fees, Expenses and Incentive Awards are true and correct.

I declare that the foregoing is true and correct under penalty of perjury under the laws of

the United States. Executed this 15th day of March, 2016 in Richmond, Virginia.

Edward J. Westlow

# EXHIBIT 5

**Tween Brands**
**Lodestar Calculations as of March 11, 2016**

| Class Counsel | Hours | Rate | Lodestar | Expenses |
|---|---|---|---|---|
| Mansour Gavin LPA | 1864.70 | $ 539.30 | $ 1,005,632.71 | $ 68,898.38 |
| Pietragallo | 2152.00 | $ 537.00 | $ 1,155,624.00 | $ 73,313.00 |
| Westlow | 319.10 | $ 600.00 | $ 191,460.00 | $ 3,090.24 |
| Robert Mansour | 500.00 | $ 600.00 | $ 300,000.00 | $ 2,000.00 |
| **Total** | **4835.80** | | **$ 2,652,716.71** | **$ 147,301.62** |

| | |
|---|---|
| **Fee Request** | $14,111,455.85 |
| **Lodestar** | $ 2,652,716.71 |
| **Multiplier** | 5.3 |

# EXHIBIT 6

Carol Rougvie, et al.,

  Plaintiffs,

  v.

Ascena Retail Group, Inc., et al.,

  Defendants.

COMPLAINT - CLASS ACTION

JURY TRIAL REQUESTED

CIV. NO. 2:15-cv-00724-MAK

## DECLARATION OF MICHAEL J. BONI

### I. BACKGROUND AND QUALIFICATIONS

1. My name is Michael J. Boni. I have been an attorney since 1988, when in May of that year I graduated from the University of Pennsylvania School of Law. My first full-time law employment (i.e., not counting summer clerkships) was as an associate at Schnader, Harrison, Segal & Lewis. I decided I would rather work on the plaintiffs' side, and in 1991 was recruited to work at Greenfield & Chimicles, at the time a class action firm of over 50 attorneys. There I worked exclusively on class and shareholder derivative actions. In an ERISA class action in which I was co-counsel with a partner at Kohn, Savett, Nast & Graf, P.C. (now Kohn, Swift & Graf, P.C.), I was recruited by that partner. I began work as an associate at that firm in 1992, and made partner in 1994, just six years out of law school. There I worked almost exclusively on plaintiffs' side class action litigation. Several years later, I was asked to serve as one of four directors of the firm, which oversaw and managed the activities of the firm. I worked at Kohn, Swift & Graf for approximately 13 years, when in 2007 I decided to form my own law firm, Boni & Zack LLC, which exists today. The firm's address is 15 St. Asaphs Road, Bala Cynwyd, PA 19004, and its telephone number is (610) 822-0200. We work primarily on plaintiffs' side class actions, in the fields of antitrust, intellectual property, consumer, and securities law. Our

website is www.bonizack.com. As indicated above, I have specialized in plaintiffs' side class action litigation for approximately 25 years. As such, I am very familiar with the law on plaintiffs attorneys' fees in class action settlements, here in this District and in federal courts around the country. Further, based on my experience, I have an understanding of the market-based hourly rates in this District.

## II.    CASE BACKGROUND

2.    I have reviewed the pleadings and briefs in support of settlement and fee approval. It is the assumptions made based on such review, and my personal knowledge based on 25 years of experience prosecuting class actions, that I make the statements and conclusions below.

3.    The facts and details of the litigation and settlement negotiations are summarized here, because they are stated in detail in the other papers supporting final settlement approval and class counsel's fee petition.

4.    I understand Plaintiffs brought this class action suit against the clothing retailer Justice Brand ("Justice") on behalf of all persons in the United States who purchased items from Justice that were purportedly on sale for at least 40% off of its regular retail prices, but which were allegedly sold at its regular, or every day, prices.

5.    I understand that Plaintiffs, who were all Justice customers during the time of the underlying allegations, purchased items from Justice that were advertised as being at least 40% off. However, Plaintiffs allege that, because these sale items were never sold above the 40% retail price, the "sale price" was in fact the regular, or every day, price. Plaintiffs allege that such misleading advertising practices are in violation of state consumer protection statutes, state administrative regulations, and common law of the various states.

6.     I understand the Parties commenced settlement negotiations in March 2015.  The

Parties met more than ten times over five months.  The Parties also participated in conference

calls over a dozen times. Justice provided additional materials and documentation subject to an

agreement to provide, as necessary, affidavits and depositions to verify and confirm the

information provided by Justice. After an all-day in person meeting attended by counsel for the

Plaintiffs and Justice, including authorized representatives of Justice, the Parties finally reached a

settlement agreement in principle on July 2, 2015 ("Settlement Agreement in Principle").

Thereafter, for over two months, Plaintiffs' Counsel and counsel for Justice negotiated the

remaining details and issues not addressed in the Settlement Agreement in Principle, modified

some terms in the Settlement Agreement in Principle, and memorialized the final terms in a

Settlement Agreement executed on September 23, 2015 ("Settlement Agreement"). ECF Doc.

No. 71.

7.     I understand that, on September 24, 2015, the Parties filed their Joint Motion for

Approval of Settlement, Preliminary Certification of the Class, Appointment of Plaintiffs'

Counsel, Approval of Notice to the Class, and Scheduling of Hearing on Final Approval. ECF

Doc. No. 71. Following a hearing, the Court granted preliminary settlement approval and issued

a Scheduling Order on October 27, 2015. ECF Doc. No. 78.

8.     The details of the settlement benefits to the class are contained in the

memorandum in support of preliminary settlement approval, and, accordingly, will not be

repeated here except as to the amounts and a proposed allocation of the settlement funds.

9.     I understand that, under the terms of the Settlement, Justice has set aside a

Settlement Fund of $50,800,000. $27,800,000 of that amount has been designated to pay the

Class Members. $8,000,000 has been designated to pay for administration of the settlement[1]; and up to $14,111,455.85 has been designated for attorneys' fees and costs, subject to Court approval.

10.     I have been advised that the estimated value of vouchers that are to be automatically distributed under the Settlement is approximately $400,000,000. I understand, however, that such estimated value will not factor in Class Counsel's application for fees.

11.     Plaintiffs have moved for an award of fees and expenses equal to 27.8% of the $50.8 million Settlement Fund. As I reason below, in my opinion, 27.8% of the Settlement Fund is in the range of fair and reasonable awards for a settlement of this size.

## III.     ASSESSMENT OF THE REASONABLENESS OF THE REQUEST FOR ATTORNEYS' FEES

12.     Based on the law in this Circuit (which is set forth in Class Counsel's fee petition), there are two methods by which courts in this Circuit assess the reasonableness of fee requests in class action settlements. The first, and the method that is favored by courts in this Circuit, is the percentage-of-the-recovery method. The second, which courts in this Circuit use as a cross-check against the percentage-of-the recovery method, is a lodestar analysis. I will discuss both methods below.

13.     **Percentage-of-Recovery Method.** An attorney who recovers a common fund for the benefit of a settlement class is entitled to a reasonable attorneys' fee from the fund. The United States Supreme Court has stated that the importance of providing a financial incentive is to entice qualified attorneys to devote their time to complex cases in which they risk non-payment. The Third Circuit affirmed this principle, and has consistently favored the percentage-

---

[1]     Any balance of the $8,000,000 not used for administrative costs will accrue to the Net Settlement Fund for distribution to the Class Members.

of-recovery method in cases involving a common fund because it is designed to allow courts to award fees from the fund in a way that rewards counsel for success and penalizes it for failure. In essence, the percentage-of-recovery method resembles a contingent fee in that it awards counsel a variable percentage of the amount recovered for the class.

14.     The Third Circuit has identified a non-exhaustive list of the factors for courts to consider when determining the reasonableness of attorneys' fees in a class action settlement where fees are calculated as a percentage of recovery. The factors are:

(1)  the size of the fund created and the number of persons benefitted;

(2)  the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3)  the skill and efficiency of the attorneys involved;

(4)  the complexity and duration of the litigation;

(5)  the risk of nonpayment;

(6)  the amount of time devoted to the case by the plaintiffs' counsel;

(7)  the awards in similar cases;

(8) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations;

(9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and

(10) any 'innovative' terms of settlement.

15.     I believe that, under this analysis, the amount of the Settlement Fund and number of Class Members supports approving Class Counsel's fee request. The Settlement Fund is $50.8 million and the parties estimate that the known Class Members total approximately 18,422,784

persons.[2] As the fee request here is $14,111,455.85, this yields a percentage of the recovery of 27.8%.

16.     As outlined in the fee petition, I believe the Settlement Agreement provides significant benefits to the Class. Based on the substantial benefits awarded to Class Members as a result of the Settlement Agreement, a consideration of the factors applied in this Circuit weighs in favor of granting Class Counsel's request.

17.     Here, Class Counsel's fee petition states that Class Counsel employed a thorough, effective investigation during negotiations to overcome the multiple defenses presented by the defense. Thereafter, Class Counsel had to develop a settlement structure that would satisfy the Class Members in all fifty states. Even though the issue of liability was eventually resolved over numerous meetings, the issue of damages for the Class Members nationwide required a thoughtful and nuanced approach. Assuming the veracity of Class Counsel's statements in the fee petition, I believe the percentage of the recovery of 27.8% is fair and reasonable in this matter.

18.     In my experience, and based on the law presented in Class Counsel's fee petition, fee awards in class action settlements up to $50 million often garner a range of 22–33% for fee awards. In fact, many recent Third Circuit cases, as shown in the first table in Class Counsel's fee petition, have awarded attorneys' fees in the range of 27% -33.3% of the total recovery.

19.     **Lodestar Cross-Check.** As discussed in Class Counsel's fee petition, courts in the Third Circuit generally cross check the reasonableness of a fee award calculated on the percentage of recovery against a lodestar analysis. "Lodestar" is calculated by multiplying the number of hours Class Counsel worked on a case by a reasonable, market-based hourly rate for such services. The billing rate should be a blended billing rate of all attorneys who worked on the

---

[2] Order, ECF No. 78 at 36.

matter, and should be reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys (quotations and citations removed). Here, Class Counsel's collective lodestar, to date, is $2,652,716.71. This lodestar will increase as Class Counsel continues to represent the Class through the remainder of the litigation. I understand, however, that the lodestar used to cross check the percentage-of-recovery value will not include such continuing work performed by Class Counsel.

20.     A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier. Courts in this Circuit typically reconsider their calculation under the percentage-of-recovery method if the Court finds the multiplier to be too high under the circumstances of the case.

21.     In dividing the proposed fee award of $14,111,455.85 million by the lodestar calculation of $2,652,716.71, the resulting lodestar multiplier is 5.3.

22.     A lodestar multiplier of 5.3 is generally high for class action settlement fee petitions nationwide. In the Third Circuit, however, there is ample precedent for the approval of attorneys' fees with a multiplier in that range. The second table in Class Counsel's fee petition lists nine cases in this Circuit in which the district court approved fee requests with multipliers in this range.

23.     As stated in Class Counsel's fee petition, and based on my experience filing and receiving approval of fee petitions in this District, based on the facts and circumstances of this case, I conclude that the lodestar cross-check confirms that Class Counsels' fee request of 27.8% of the recovery, which falls within the benchmark range for percentage-of-the-recovery fee awards, is fair and reasonable.

24.     For all these reasons, it is my professional opinion that the fee award requested here is within the range of reasonable awards, to a reasonable degree of certainty.

25.     My compensation in this matter is $750 per hour plus expenses.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 17, 2016 in Bala Cynwyd, Pennsylvania.

Michael J. Boni, Esq.