# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | CLASS ACTION |
| vs. | No. 15-724 |
| Ascena Retail Group, Inc., et al. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT

Defendants Ascena Retail Group, Inc. and Tween Brands, Inc. d/b/a Justice Brand ("Justice") join the Motion for Final Approval of Settlement filed by Class Counsel and file this memorandum in support to emphasize three perspectives that Justice feels the Court should consider in determining whether the Settlement is "fair, reasonable and adequate" under Rule 23(e)(3). First, the Settlement is fair, reasonable and adequate given the significant litigation challenge Plaintiffs would have faced in proving an injury. Second, the Settlement is fair, reasonable and adequate in light of the difficulties Plaintiffs would have faced in obtaining class certification for purposes of litigation and trial, given the manageability challenges involved in the need to apply differing state laws. Finally, the Settlement is fair, reasonable and adequate because it is the result of vigorous arm's length negotiation.

**I.   THE SETTLEMENT SHOULD BE APPROVED BECAUSE OF THE LITIGATION CHALLENGE INVOLVED IN PROVING INJURY.**

The Court should find that the Settlement is fair, reasonable and adequate considering, among other things, the risk that the Settlement Class would incur in attempting to establish that Justice's sales practices violated state consumer protection laws. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (on final approval, the Court should consider the fairness of the settlement

in light of, among other things, "the risks of establishing liability"). Perhaps the most significant challenge would be the need to show that class members suffered a cognizable "injury" when they elected to purchase goods pursuant to the "40% off" promotion. Plaintiffs received exactly the product they bargained for, and there is no allegation to the contrary.

Multiple recent cases have dismissed similar claims by plaintiffs arguing that they were harmed by misleading price advertising, holding that consumers in these situations did not actually suffer any harm due to the alleged wrongful practices. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (affirming dismissal of complaint under Illinois Consumer Fraud Act alleging misleading price advertising because plaintiff had not "sufficiently pleaded that he paid more than the actual value of the merchandise he received."); *Mulder v. Kohl's Dept. Stores, Inc.*, No. 15-11377, 2016 WL 393215, at * 5-6 (D. Mass. Feb. 1, 2016) (dismissing claim under the Massachusetts Consumer Protection Act because there was no allegation that the plaintiff had actually been harmed as a result of misleading comparative price ads); *Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 50-52 (D. Mass. 2015) (holding that plaintiff who purchased a product with allegedly false advertised savings of 77% could not allege any damage since she "got exactly what she paid for, no more and no less").

For example, in *Shaulis*, the plaintiff purchased a cardigan sweater at Nordstrom Rack for $49.97. *Shaulis*, 120 F. Supp. 3d at 42. The price tag included a "Compare At" price of $218.00 and identified the difference between the two figures as amounting to "77%" worth of savings. *Id.* at 42-43. The sales receipt for the cardigan stated, "You SAVED: $168.03 Congratulations! You saved more than you spent. You're a shopping genius!" *Id.* at 43. The plaintiff alleged that she was "enticed to purchase the sweater by a price tag that made her believe she was obtaining a deal." *Id.* at 42. The *Shaulis* Court distinguished the *actual* value of the item

purchased from the plaintiff's *perceived* value of the item purchased, finding that there could be no cognizable injury where the plaintiff actually received her money's worth: "[T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm: she arguably got exactly what she paid for, no more and no less." *Id.* at 51-52.

Similarly, here plaintiffs purchased products from Justice pursuant to a promotion advertising a "40% off" discount. *See* Third Am. Compl., at ¶¶ 23-28 (Dkt. No. 70). Sales receipts listed the purported "regular" price, the purchase price, and the "alleged savings that the Defendants purported to give their customers." *Id.* at ¶ 28. Although Plaintiffs claim that they "suffered injury" because these customers did not receive the bargain that they expected, *id.* at ¶ 55, this claim is susceptible to the same challenge that defeated the complaints in *Shaulis*, *Mulder*, and *Camasta*. Absent the Settlement, the members of the Settlement Class would face significant litigation risk involved in establishing, in each state, that they suffered an actual injury.

The opt out and objection notices received by the Class Administrator confirm the risk for the Settlement Class, as multiple individuals have opted out or objected to the Settlement based on their perception that the class members received the full benefit of their bargain and were not harmed by the conduct alleged in the Complaint:

- One opt-out noted "I shopped at Justice many times since 2010 and never felt that the store or its marketing promotions were dishonest or reflected any sort of misrepresentation of purchase price." (Opt Out No. 900000144).

- Another individual objected to the settlement via letter: "The customers of Justice knew the prices for the garments they were purchasing and willingly purchased them at the offered price. **It is disingenuous for those individuals to now claim they were deceived.**" (emphasis added) (Objection No. 600000004).

- A Justice customer explained her opt-out in a voicemail left with Defense Counsel: "I don't want anything to do with the settlement. I believe that Justice is innocent. I was a

3

shopper there for many years. And I've always gotten very reasonable savings and prices for everything that I've gotten. Personally, I don't care whether it was 40% off or whether it was the original price. It has no bearing on the fact that all of the merchandise was extremely cheap. . . . Even if it was marked 40% off when it wasn't, who cares . . . **it certainly didn't do any damage.** (emphasis added) (Opt Out No. 900000124).

See Exhibit "A" (collection of Opt Outs and Objection).

Given the considerable litigation risk faced by Plaintiffs in proving that the members of the Settlement Class suffered some actual injury, an inquiry that would (as described below) depend on a state-by-state analysis of law, the Settlement is eminently fair, reasonable and adequate to the Class.

## II. THE SETTLEMENT AVOIDS THE RISK OF DENIAL OF CLASS CERTIFICATION FOR A LITIGATION CLASS.

Not only does this case involve risk on merits issues such as the difficult of demonstrating actual injury, but the Plaintiffs also faced an uphill battle in obtaining class certification for purposes of litigation, given that the need to apply differing state law for 50 states and the District of Columbia would render the case unmanageable.[1] Although these management problems are irrelevant to the question of whether the Class could be certified for Settlement purposes, the manageability issues presented an obstacle to the certification of a proposed litigation class, and thus further demonstrate that the Settlement is fair, reasonable, and adequate. *See Girsh*, 521 F.2d at 157 (citing "the risks of maintaining the class action through trial" as a factor in determining the fairness of a class action settlement).

In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that the courts may certify a settlement class—such as the one proposed in this matter—without determining whether it presents "intractable management problems" that would preclude

---

[1] Plaintiffs have correctly declined to include any discussion of manageability in their Memorandum on the grounds that such a showing is not required in a motion to certify a proposed settlement class. *See* Pl.'s Memo. of Law at 15.

certification under Fed. R. Civ. P. 23(b)(3)(D). *See Amchem*, 521 U.S. at 619-20 ("Confronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class."). Proposed litigation classes, on the other hand, must satisfy each of the requirements of Fed. R. Civ. P. 23(a) and (b)(3)—including the requirement that they do not present insurmountable management difficulties. *See id.* (noting that "the difference [between a proposed settlement class and a proposed litigation class] is key.").

The Third Circuit has held that variation in potentially-applicable state laws is one management difficulty that could preclude certification of a proposed litigation class. *See id.* ("In certification of litigation classes for claims arising under the laws of the fifty states, we have previously noted that the district court must determine whether variations in state laws present the types of insuperable obstacles which render class action litigation unmanageable."). The variations in state law in this case, while irrelevant for the purposes of approving this proposed settlement class, *see id.*, would likely render a litigation class unmanageable and therefore not certifiable. *Powers v. Lycoming Engines*, 272 F.R.D. 414, 427 (E.D. Pa. 2011) (denying motion to certify proposed litigation class, and holding "[a] single nationwide class action is unmanageable when the law of many different jurisdictions must be applied.").

Courts in the Third Circuit have routinely declined to certify proposed litigation classes under the circumstances presented in this case because the variation in state laws rendered the

proposed litigation classes unmanageable at trial.[2] *See*, *e.g.*, *In re Actiq Sales & Marketing Practices Litig.*, 307 F.R.D. 150, 172 (E.D. Pa. 2015) (denying motion to certify proposed litigation class asserting unjust enrichment claims and holding "[h]ere, the largest impediment to a finding of superiority is the difficulty of managing a class action in which the laws of [class plaintiffs'] various home states apply and individual questions of fact predominate."); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 192 (E.D. Pa. 2007) (denying certification of proposed litigation class and holding "[c]onflicts among the laws of the various jurisdictions render a class action as proposed by the plaintiffs unmanageable.").

This case, which includes a variety of claims from all fifty states and the District of Columbia—and the accompanying variety of defenses—would present the same management issues as the cases cited above, and the Settlement Class faced a risk that the case would not be certified as a class action for purposes of litigation. The Settlement is fair, reasonable and adequate in light of this additional risk.

**III.  THE SETTLEMENT IS THE RESULT OF VIGOROUS, ARMS-LENGTH NEGOTIATION.**

Finally, the Court should conclude that the Settlement is fair, reasonable and adequate because it was the result of vigorous and arm's length negotiations between Class Counsel and undersigned counsel for Justice. *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at * 7 (S.D.N.Y. Jan. 29, 2014) (concluding that it was appropriate to "grant[ ] final approval where settlement was the result of arm's-length negotiation involving vigorous back and forth by

---

[2] The Plaintiff class has alleged five different causes of action: (1) violations of the consumer protection statutes of forty-three states and the District of Columbia, *see* Third Am. Compl. ¶¶ 50-103 (Dkt. No. 70); (2) breach of contract under the laws of all fifty states and the District of Columbia, *see id.* at ¶¶ 104-109; (3) breach of contract under the implied covenant of good faith and fair dealing under the laws of all fifty states and the District of Columbia, *see id.* at ¶¶ 110-112; (4) breach of express warranty under the laws of all fifty states and the District of Columbia, *see id.* at ¶¶ 113-120; and (5) unjust enrichment under the laws of all fifty states and the District of Columbia, *see id.* at ¶¶ 121-130.

counsel") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at * 8 (S.D.N.Y. Oct. 2, 2013)); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006) (granting final approval in part because "the proposed Settlement has been negotiated vigorously and at arm's-length by Plaintiffs and their counsel on behalf of the Plans and the Plaintiff Class"); *Williams v. Securitas Sec. Services USA, Inc.*, No. 10-7181, 2012 WL 5451802, at * 3 (E.D. Pa. Nov. 8, 2012) (finding a settlement to be a "fair and reasonable resolution" in light of the parties' "good faith" and "vigorous" negotiations).

Shortly after Plaintiffs filed the initial complaints in the *Cowhey* case on February 6, 2015 and *Mehigan* case on February 12, 2015, Class Counsel and Defense Counsel began discussions about the litigation, including the potential for a class-wide resolution. At the request of Class Counsel, Justice made at least nine productions of documents and information to Class Counsel, consisting of 3,131 pages of documents, including information regarding its advertising practices, sales and marketing data, and information regarding the composition of the class.

In addition, counsel for the parties participated in dozens of phone calls and at least ten in-person meetings during the five months between February and July 2015 focused on understanding the allegations and facts involved in the litigation and negotiating the Settlement. Efforts by both sides culminated in an all-day meeting on July 2, 2015 at which Class Counsel, Defense Counsel, and representatives from Justice reached an agreement in principle to resolve the claims, memorialized in a term sheet executed on July 2. The parties continued to negotiate aspects of the Settlement, including the particular structure of the Settlement and notice program over the next few months and signed the Settlement Agreement on September 23, 2015.

The exchange of information and extensive negotiation involved in reaching the Settlement further support a conclusion that the Settlement is fair, reasonable and adequate and

7

that the Court should grant final approval.

## IV. CONCLUSION

Based on the foregoing, Justice supports the joint motion for final approval of the Proposed Settlement.

DATE: March 18, 2016                                    Respectfully submitted,

                                                                                      *s/* Gregory T. Parks

                                                                                      MORGAN, LEWIS & BOCKIUS, LLP
                                                                                      Gregory T. Parks
                                                                                      gparks@morganlewis.com
                                                                                      Ezra D. Church
                                                                                      echurch@morganlewis.com
                                                                                      Christopher J. Mannion
                                                                                      cmannion@morganlewis.com
                                                                                      1701 Market Street
                                                                                       Philadelphia, PA 19103
                                                                                      Telephone: 215-963-5000
                                                                                      Facsimile: 215-963-5001

                                                                                      *Counsel for Ascena Retail Group, Inc. and Tween Brands, Inc.*