**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL ROUGVIE, *et al.*,<br><br>                                   *Plaintiffs*,<br><br>          v.<br><br>ASCENA RETAIL GROUP, INC. d/b/a/<br>JUSTICE STORES<br><br>and<br><br>TWEEN BRANDS, INC. d/b/a<br>JUSTICE STORES<br><br>                                   *Defendants*. | No. 2:15-cv-00724-MAK |
| BARBARA COMLISH and KATHRYN<br>ARTLIP,<br><br>                    *Objectors*. | |

**OBJECTION OF BARBARA COMLISH AND KATHRYN ARTLIP**

**TO SETTLEMENT APPROVAL AND TO REQUEST FOR ATTORNEYS' FEES**

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................1

**I.**   Objectors Barbara Comlish and Kathryn Artlip are class members and intend to appear through counsel at the fairness hearing............................................................................ 1

**II.**   The Court has a fiduciary duty to the absent members of the class................................... 3

**III.**   The proposed settlement would unfairly allow class counsel to obtain a disproportionate amount of the settlement proceeds..................................................................................... 5

    A.   Disproportionate fee request ..................................................................................... 8

    B.   Clear sailing agreement........................................................................................... 13

    C.   Kicker/segregated fee fund ..................................................................................... 13

**IV.**   Plaintiffs have failed to prove that the named representatives and class counsel are adequate representatives for the class. ............................................................................. 15

**V.**   If the Court does not deny settlement approval, it should limit counsel's fee award to 25% of the true constructive common fund. .............................................................................. 18

    A.   Percentage-based awards should be based upon actual claims made, not upon a fictitious 100% claims rate ...................................................................................... 18

    B.   The lodestar cross-check confirms the need to reduce class counsel's award.............. 19

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

Cases

*Amchem Prods. Inc. v. Windsor*,
　521 U.S. 591 (1997) ........................................................................................................15

*In re AT&T Corp.*,
　455 F.3d 160 (3d Cir. 2006) .............................................................................................4

*In re Baby Products Antitrust Litig.*,
　708 F.3d 163 (3d Cir. 2013) ..................................................................................*passim*

*Berckeley Inv. Grp., Ltd. v. Colkitt.*,
　455 F.3d 195 (3d Cir. 2006) ...........................................................................................18

*Better v. YRC Worldwide Inc.*,
　2016 U.S. Dist. LEXIS 32664 (D. Kan. Mar. 14, 2016) ............................................ 16-17

*In re Bluetooth Headset Prods. Liab. Litig.*,
　654 F.3d 935 (9th Cir. 2011) ................................................................5, 7, 8, 10, 13, 14

*Boeing v. Van Gemert*,
　444 U.S. 472 (1980) ........................................................................................................19

*Broussard v. Meineke Discount Muffler Shops*,
　155 F.3d 331 (4th Cir. 1998) ..........................................................................................15

*Buchet v. ITT Consumer Fin. Corp.*,
　858 F. Supp. 944 (D. Minn. 1994) ..................................................................................12

*Carrera v. Bayer Corp.*,
　727 F.3d 300 (3d Cir. 2013) ...........................................................................................17

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001) ......................................................................................18, 19

*In re Cendant Corp. PRIDES Litig.*,
　243 F.3d 722 (3d Cir. 2001) ......................................................................................19, 20

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
　662 F.3d 913 (7th Cir. 2011) ..........................................................................................15

*Daniels v. Aeropostale West*,
　No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081 (N.D. Cal. May 29, 2014) ...........17

*Davis v. Cole Haan, Inc.*,
　2015 U.S. Dist. LEXIS 153434 (N.D. Cal. Nov. 12, 2015) .............................................12

*Dennis v. Kellogg*,
    697 F.3d 858 (9th Cir. 2012)................................................................10

*Dewey v. Volkswagen AG*,
    681 F.3d 170 (3d Cir. 2012)................................................................17

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013)........................................................ *passim*

*Erie County Retirees Ass'n.*,
    192 F. Supp. 2d 369 (W.D. Pa. 2002) ................................................8

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014)................................................................16

*Fitzgerald v. Gann Law Books*,
    2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) ............................10, 14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)........................................................ *passim*

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) .................................................................4

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013)..............................................9, 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) .................................................................17

*Karvaly v. eBay Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ...........................................................10

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) ....................................................8, 10

*In re Literary Works in Elec. Databases Copyright Litig.*,
    509 F.3d 136 (2d Cir. 2007)................................................................17

*McDonough v. Toys "R" Us*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) .................................................2, 20

*In re NFL Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014).................................................................3

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006).............................................................15

*O'Brien v. Brain Research Labs, LLC*,
 2012 U.S. Dist. LEXIS 113809 (D.N.J. Aug. 9, 2012) .................................................... 9

*In re Online DVD*,
 779 F.3d 934 (9th Cir. 2015) ...................................................................................... 10

*Pearson v. NBTY, Inc.*,
 772 F.3d 778 (7th Cir. 2014) ............................................................................ *passim*

*Perdue v. Kenny A.*,
 559 U.S. 542 (2010) .................................................................................................... 20

*In re Pet Food Prods. Liab. Litig.*,
 629 F.3d 333 (3d Cir. 2010) ........................................................................................ 8

*Petrovic v. AMOCO Oil Co.*,
 200 F.3d 1140 (8th Cir. 1999) ................................................................................... 16

*Petruzzi's Inc. v. Darling Delaware Co.*,
 983 F. Supp. 595 (M.D. Pa. 1997) ............................................................................ 19

*Radcliffe v. Experian Info Solutions*,
 715 F.3d 1157 (9th Cir. 2013) ................................................................................... 16

*In re Razorfish, Inc. Sec. Litig.*,
 143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................. 17-18

*Redman v. RadioShack Corp.*,
 768 F.3d 622 (7th Cir. 2014) .................................................... 4, 5, 10, 12, 13, 16

*Seidman v. Am. Mobile Sys.*
 965 F. Supp. 612 (E.D. Pa. 1997) ............................................................................... 8

*In re Southwest Airlines Drink Vouchers Litig.*,
 799 F.3d 701 (7th Cir. 2015) ..................................................................................... 16

*Strong v. Bellsouth Tel. Inc.*,
 137 F.3d 844 (5th Cir. 1998) ..................................................................................... 19

*Sobel v. Hertz Corp.*,
 No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) ........... 12

*Tramonte v. Chrysler Corp.*,
 136 F.3d 1025 (5th Cir. 1998) ................................................................................... 17

*True v. Am. Honda Motor Co.*,
 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................................................... 12

*In re Volkswagen & Audi Warranty Extension Litig.*,
    89 F. Supp. 3d 155 (D. Mass. 2015) ................................................................11

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012)..............................................................13

*Weinberger v. Great Northern Nekoosa Corp.*,
    925 F.2d 518 (1st Cir. 1991) ............................................................................13

*In re Wells Fargo Sec. Litig.*,
    157 F.R.D. 467 (N.D. Cal. 1994) .....................................................................11


Rules and Statutes

28 U.S.C. § 1712...........................................................................1, 9, 11, 12, 18

28 U.S.C. § 1712(a) ...........................................................................................11

Fed. R. Civ. P. 23(a)(4)................................................................................. 15-18

Fed. R. Civ. P. 23(e) ............................................................................................7

Fed. R. Civ. P. 23(g)(4)................................................................................. 15-18

Fed. R. Civ. P. 23(h) .......................................................................................7, 18


Other Authorities

Advisory Committee Notes on 2003 Amendments to Rule 23(h)..................................9

American Law Institute,
    *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010) .................................4

Fitzpatrick, Brian T.,
    *An Empirical Study of Class Action Settlements and their Fee Awards*,
    7 J. Empirical Legal Stud. 811 (2010) ........................................................ 8-9

Hantler, Steven B. & Robert E. Norton,
    *Coupon Settlements: The Emperor's Clothes of Class Actions*,
    18 Geo. J. Legal Ethics 1343 (2013) ...............................................................12

Rothstein, Barbara J. & Thomas E. Willging,
    Fed. Jud. Center, *Managing Class Action Litigation: A Pocket Guide for Judges*
    (2010) ...............................................................................................................5

Tharin, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO.
    J. LEGAL ETHICS 1443 (2005) ............................................................................12

Henderson, William D.,
    *Clear Sailing Agreements: A Special Form of Collusion in Class Action*
    *Settlements*, 13
    77 TUL. L. REV. 813 (2003) .............................................................................13

Wolfman, Brian & Alan B. Morrison,
    *Representing the Unrepresented in Class Actions Seeking Monetary Relief*,
    71 NYU L. REV. 439 (1996) ............................................................................19

## INTRODUCTION

This Court now confronts a classic question of fiction versus reality. Urging the Court to defer to settling counsel, the settling parties would have this Court reflexively adopt the notion that this settlement provides a $50.8 million benefit to class members. Objectors Barbara Comlish and Kathryn Artlip instead ask this Court to the take the realistic approach required by Fed. R. Civ. P. 23 and Third Circuit case law, and to recognize what the class will ***actually*** receive from this settlement—$9.4 million in cash plus coupons that should not be valued until redemption (and in any event can reasonably be valued at no more than $4.17 million right now). Through a claims-made process and the award of coupons disfavored by the Class Action Fairness Act ("CAFA"), this settlement is designed to create the illusion of class relief. In reality, because they will rake in more than 50% of the actual settlement benefit, the class attorneys are impermissibly designating themselves the "foremost beneficiaries" of the settlement. *In re Baby Products Antitrust Litigation.*, 708 F.3d 163, 179 (3d Cir. 2013) ("*Baby Prods.*").

It would be error to approve the settlement, class certification, and the fee award. The settling parties are entitled to reach an arms-length agreement that Justice's total settlement liability will only be about $28 million. They are not entitled to structure that liability so that class counsel collects more than their fair share of those proceeds.

## ARGUMENT

### I.   Objectors Barbara Comlish and Kathryn Artlip are class members and intend to appear through counsel at the fairness hearing.

Objector Comlish's mailing address is 320 S. Talbot Court, Roswell, GA 30076. Declaration of Barbara Comlish at ¶2. During the period from 2012-2015, she purchased merchandise from a Justice Store in Georgia. *Id*. at ¶3. On April 2, 2016, Comlish submitted a claim via the website with confirmation code ULGVKIOC. *Id*. at ¶7. Objector Artlip's mailing address is 5106 Huisache Street, Bellaire, Texas 77401. Declaration of Kathryn Artlip at ¶2.

During the period from 2012-2015, she purchased merchandise from a Justice Store in the Houston area. *Id*. at ¶3. On April 4, 2016, Artlip submitted a claim via the website with confirmation code ISSMHEON. *Id*. at ¶6. Comlish and Artlip (collectively "Comlish") are therefore members of the class as defined in the preliminary approval order and settlement agreement.

Comlish's attorney, Adam Schulman of the non-profit Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"), is representing her *pro bono*, and will appear at the Fairness Hearing, scheduled for May 20, 2016. Comlish reserves the right to make use of all documents entered on to the docket. She also reserves the right cross-examine any witnesses who testify at the hearing in support of final approval. She joins by reference any substantive objections made by other class members not inconsistent with those made here.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) (Posner, J.) (CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) ("*Pampers*") (CCAF's client's objections "numerous, detailed, and substantive"). CCAF has won tens of millions of dollars for class members. *See, e.g., McDonough v. Toys "R" Us,* 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted). Because settlement proponents often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are styled "professional objectors." A "professional objector" is a specific term referring to for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees. This is not CCAF's *modus operandi*. CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; it has never withdrawn an objection in exchange for payment to CCAF. Instead, it is funded entirely through

charitable donations and court-awarded attorneys' fees. Nonetheless, to preempt any possibility of an unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Comlish and Artlip would stipulate to an injunction prohibiting themselves from accepting compensation in exchange for the settlement of this objection. Comlish Decl. ¶9; Artlip Decl. ¶8.

## II.   The Court has a fiduciary duty to the absent members of the class.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval. In contrast, class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. And thus there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Pampers*, 724 F.3d at 715. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Baby Prods.*, 708 F.3d at 175 (internal quotation omitted); *accord In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*"). As such, the Court itself assumes a derivative "fiduciary"[1] role on behalf of absent class members to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *GM Trucks*, 55 F.3d at 785 (internal quotation omitted).

The Court's oversight role does not end at making sure that the settling parties engaged in arm's length settlement negotiations. "In class-action settlements, the adversarial process—or what the parties here refer to as their 'hard-fought' negotiations—extends only to the amount the

---

[1] *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members. For the economic reality [is] that a settling defendant is concerned only with its total liability, and thus a settlement's allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Pampers*, 724 F.3d at 717-18 (quoting *GM Trucks*, *inter alia*).

Although it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient. See Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014) (calling it "naïve" to base confidence in settlement fairness on arm's length negotiations). Due to the defendant's indifference as to the allocation of the settlement funds, courts must look for "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 724 F.3d at 718 (internal quotation omitted). "In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05 (c) (2010). "The burden of proving the fairness of the settlement is on the proponents." *Pampers*, 724 F.3d at 718; *accord GM Trucks*, 55 F.3d at 785. In this case, that burden is yet heightened because this settlement has been proposed before class certification. Delaying certification until settlement poses various problems, *see GM Trucks*, 55 F.3d at 786-800, and calls for heightened judicial scrutiny of the certification and the accompanying settlement. *Id.* at 807; *Pampers,* 724 F.3d at 721.

In their memorandum in support of final approval ("MFA") (Dkt. 98), the plaintiffs focus on the nine factors for settlement fairness described in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975). MFA at 18-26. It cannot be overemphasized that—like the factor test of other circuits—the *Girsh* test is not exhaustive. "[B]ecause of a 'sea-change in the nature of class actions' since *Girsh* was decided in 1975, district courts should also consider other potentially relevant and appropriate factors." *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Non-*Girsh* factors can be dispositive. For example, in *Baby Products*, the Third Circuit reversed settlement approval even though there was no dispute that the district court correctly applied the

*Girsh* factors. Nevertheless, the district court abused its discretion by approving a settlement without investigating the number of claims that absent class members had submitted and without ensuring that the benefits provided by the settlement were fairly allocated to the class. 708 F.3d at 174-75.

So, the Court's first step must be "affirmatively seek[ing] out" the necessary claims data to ascertain class benefit. *Id.* at 175. This information is critical to the vital second step of the analysis: ensuring that class members and not their counsel are the "foremost beneficiaries" of the settlement. *Id.* at 179. Appeals courts will reverse when a settlement accords "preferential treatment" to class counsel and/or to the class representatives at the expense of absent class members. *See Pampers*, 724 F.3d at 718; *Pearson*, 772 F.3d at 781-83; *Redman*, 768 F.3d 622; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Preferential treatment to class counsel is the gist of Comlish's objection here. She does not argue that Justice must pay the $50.8 million "made available"; but if the parties agree to reversion provisions that will lead to Justice paying barely half of that, the parties cannot pretend that the settlement was actually worth $50.8 million. The settlement is unfair because class counsel is appropriating an excessive amount of the real settlement value for itself.

## III.   The proposed settlement would unfairly allow class counsel to obtain a disproportionate amount of the settlement proceeds.

Fundamentally, there are two possible lenses through which to view this "claims-made" settlement.[2] The first, preferred by settling parties when attempting to maximize attorneys' fees

---

[2] A "claims-made" settlement is one under which class members must submit a claims form to obtain monetary compensation. The abuse of claims-made settlements to inflate attorneys' fees and deflate defendants' obligations to class members has been the subject of substantial criticism. *E.g.* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 30 (2010), *available at* www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf; *Pearson*, 772 F.3d at 787 (7th Cir. 2014) (reversing an attorney-centric "selfish" arrangement where a needless claims process was employed instead of distributing checks to the known class members). That said,

while minimizing defendant expense, looks at a hypothetical world where the settlement fund *might have been* exhausted, however unlikely. From this perspective, one sees a $50.8 million fund endowed by Justice, of which class counsel seek $14.1 million as their attorney award, amounting to 27.8% of the $50.8 million settlement. Even more ambitiously, the plaintiffs at times suggest that their attorney award is just 3.1% of $450 million settlement value when one includes the face value of the coupons that will be disseminated as a default to non-claimants. *See* Brief in Support of Motion for Award of Attorneys' Fees (Dkt. 99) ("Fee Brief") at 6. On this view, it is of no consequence how the funds are ultimately distributed among the settlement administrator's costs, those class members claiming cash, those class members claiming coupons, and the reversion to the Defendants. Nor does this view consider how many of the coupons issued will be redeemed. This approach exalts fiction over reality, even though cases—especially class action cases that determine the rights of millions of consumers—"are better decided on reality than on fiction." *Pampers*, 724 F.3d at 721 (internal quotation omitted).

The better view is to judge a settlement by what the class *actually* receives. In *Baby Products*, the Third Circuit agreed, disavowing the hypothetical, bird's-eye method of settlement review, requiring instead an acute appraisal: the "inquiry needs to be, as much as possible, practical and not abstract. If the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information. Making these findings may also require a court to withhold final approval of a settlement until the actual distribution of funds can be estimated with reasonable accuracy." 708 F.3d at 174 (internal quotation omitted). An accurate appraisal is even more essential in cases involving coupon settlements like this because "Congress require[s] courts to base attorneys' fees… 'on

---

Comlish does not object to the claims-made process as *per se* unreasonable in this case, but the parties must not be permitted to create the illusion of class benefit with respect to money that will revert to the defendants.

the value to class members of the coupons that are redeemed' rather than on the face value of the coupons." *Id.* at 179 n.13 (quoting 28 U.S.C § 1712).

As of the date of this filing, the parties have not yet submitted the settlement's claims data into the record. To approve a settlement without an accounting of settlement funds is reversible error under Third Circuit law. *Id.* at 174-75; *GM Trucks*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees.").

However, Class Counsel has shared via email with Comlish's counsel several pieces of settlement accounting information[3] as of April 8, four days after the claims deadline:

- 592,086 class members have submitted claims, equating to a claims rate of just over 3% of the 18.4 million known class members.

- The total value of cash claims is $9.45 million.

- The total face value of coupons claimed is $6.25 million.

- The administrative and notice costs are projected to consume their $8 million budget.

This claims data demonstrates that the $50.8 million settlement valuation is illusory and enables the Court to differentiate real value from illusory value, a task that matters because, in analyzing the fairness of a proposed settlement under Rule 23(e) and the reasonableness of fees under Rule 23(h), district courts "need to consider the level of direct benefit provided to the class" to ensure that the class members rather than their counsel are the "foremost beneficiaries" of the settlement. *Baby Prods.*, 708 F.3d at 170, 179. Affording "preferential treatment" to the named plaintiffs or to class counsel is impermissible. *Pampers*, 724 F.3d at 718 (internal quotation omitted); *see also Bluetooth*, 654 F.3d at 947 (red flag for class counsel to receive a "disproportionate distribution of the settlement"). "Such inequities in treatment make a

---

[3] This email is attached as Exhibit 3 to accompanying Declaration of Adam Schulman.

settlement unfair" for neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718 (internal quotation omitted). District courts must be "vigilant and realistic" in their review, nixing "selfish deal[s]" when they "disserve" the class. *Pearson*, 772 F.3d at 787.

### A.  Disproportionate fee request

Because adversarial negotiation does not ensure that class relief is appropriately "commensurate with [the] fee award," *Pampers*, 724 F.3d at 720, the most common settlement defect is one of allocation. "[I]f the 'fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'" *Id*. at 718 (quoting *Staton v. Boeing Co*., 327 F.3d 938, 964 (9th Cir. 2003)).

This settlement provides class counsel with the right to seek unopposed by Justice an attorney award of $15 million; ultimately they seek $14.1 million. Settlement (Dkt. 71-1) ¶42; Fee Brief. For the Court's fairness analysis, the "ratio that is relevant is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at 781 (quoting *Redman*, 768 F.3d at 630). A proportionate attorney award adheres to the 25% of the fund benchmark established in the Ninth Circuit and followed by courts of this Circuit.[4] Plaintiffs declare that

---

[4] *See e.g., Bluetooth*, 654 F.3d at 942; *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 361 (3d Cir. 2010) (Weis, J., concurring and dissenting) (25% benchmark is "a beginning point for determining whether a particular fee is reasonable" although "[t]oo often that is the end of the discussion"); *Erie County Retirees Ass'n. v. County of Erie,* 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002) ("the 25% benchmark is often appropriate … to prevent a windfall to counsel."); *Seidman v. Am. Mobile Sys.,* 965 F. Supp. 612, 622 (E.D. Pa. 1997); *Lachance v. Harrington*, 965 F. Supp. 630, 648 (E.D. Pa. 1997); *see generally* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. 811, 833 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a

their fee request is only 27.8% of the gross cash settlement fund, and only 3.1% of the total "value" created by the settlement if you include the dissemination of coupons to non-claimants. Fee Brief at 6, 16.

As discussed below, plaintiffs' error lies in employing a faulty denominator. Peeling away layers of the onion, the only demonstrable benefit to class members is the $9.45 million in cash claimed by class members plus the redemption value of the coupons actually used by class members. 28 U.S.C. § 1712; *Baby Prods.*, 708 F.3d at 179 n.13. When class benefit will only be achieved over time, it is appropriate for a court to award partial fees until the full benefit is known. *Baby Prods.*, 708 F.3d at 179; *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1187 n.19 (9th Cir. 2013) ("*Inkjet*"); Advisory Committee Notes on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payments to class members are known."). Given the fact that coupons, unlike cash, expires, and are subject to limitations on use, discussed in more detail below, they should not be viewed as equivalent to full cash value. Even if one generously ascribes some immediate subjective value to those coupons that were affirmatively claimed, it would be no more than 2/3 of their face value,[5] amounting to only $4.17 million. When added to the cash benefit that equates to a total benefit of $13.62 million.

Thus, with these generous assumptions, class counsel is seeking 51% of the $27.73 million net settlement benefit demonstrated so far in this case, unjustifiably appointing themselves the foremost beneficiary of the settlement. This exceeds the 38.9% that the Ninth

---

median of 25.4% for the award of attorneys' fees "with almost no awards more than 35 percent").

[5] The reason to reduce the value of the claimed coupons to 2/3 of their face value is simply that the corresponding cash option for claimants was only between 65-70% of value of the coupon option. *See O'Brien v. Brain Research Labs, LLC.*, 2012 U.S. Dist. LEXIS 113809, at *60 n.8 (D.N.J. Aug. 9, 2012) (evaluating a similar cash/coupon settlement and finding only that a class member who chooses the latter "values it at least as much as the cash option").

Circuit calls "clearly excessive." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *see also Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 n.29 (E.D.N.Y. 2007) (declaring that 43% of the common fund as a fee "would clearly be excessive").

Plaintiffs will likely respond that the $13 million that was "made available" to class members, but was never claimed and will instead revert to Defendants should be considered part of the settlement value. Not so. *Pearson*, 772 F.3d at 781-82; *Fitzgerald v. Gann Law Books*, 2014 U.S. Dist. LEXIS 174567, at *41 (D.N.J. Dec. 17, 2014) (true settlement value does not include relief "which will effectively revert to the defendant, not accrue to the class members."). Second, they may assert that the $8 million set-aside for the administrator constitutes class value. Again, as a matter of law, this view is mistaken. *Redman*, 768 F.3d 622, 630 ("administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class"); *Pearson*, 778 F.3d at 781 (same); *cf. also Bluetooth*, 654 F.3d at 944 ("[T]he standard is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)); *contra In re Online DVD*, 779 F.3d 934 (9th Cir. 2015) (not an abuse of discretion to use include administrative expenses in denominator without discussing contrary precedent).

Excluding amounts that revert to the defendants and amounts that are paid to the administrator is a natural corollary to *Baby Products*'s reasoning. Just as the class is "not indifferent" as between money that goes to them and money that goes to third-party *cy pres* beneficiaries, they are likewise not indifferent as between money that goes to them and money that reverts to the defendants or goes to third-party settlement administration companies. *Baby Prods.*, 708 F.3d at 178; *Lachance v. Harrington*, 965 F. Supp. 630, 648 (E.D. Pa. 1997) (explaining the importance of incentivizing counsel to maximize the class's recovery). "[C]lass counsel should not be [indifferent] either"; if they are only paid on the amount of the benefit received, they will be encouraged to minimize costs and maximize benefit. *Baby Products*, 708

10

F.3d at 178; *see also In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 170 (D. Mass. 2015). "[I]ncentives to minimize expenses and to allocate resources properly go much farther toward cost efficiency than can *post hoc* judicial review" *In re Wells Fargo Sec. Litig*, 157 F.R.D. 467, 471 (N.D. Cal. 1994).

Plaintiffs would prefer that this Court attribute to the coupons, both solicited and unsolicited alike, their full face value (over $400 million), or alternatively a $40 million value, given "an extremely conservative voucher redemption rate of 10%." MFA at 24. Federal law, specifically the Class Action Fairness Act ("CAFA"), prohibits the plaintiffs' proposed valuation methodology. *See* 28 U.S.C. § 1712(a); *accord Baby Prods.*, 708 F.3d at 179 n.13; *Inkjet*, 716 F.3d 1173. Section 1712 instructs that the value of the coupons is not the face value of those distributed; rather it is the value of those *actually redeemed* by class members. The primary problem with coupons is that they "mask[] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *Inkjet*, 716 F.3d at 1179 (internal quotation omitted). "[C]ourts aim to tether the value of an attorneys' fees award to the value of the class recovery… Where both the class and its attorneys are paid in cash, this task is fairly effortless… But where class counsel is paid in cash, and the class is paid in some other way, for example, with coupons, comparing the value of the fees with the value of the recovery is substantially more difficult." *Inkjet*, 716 F.3d at 1178-79.

Coupons are often riddled with restrictions that prevent class members from realizing their full face value. The "vouchers" here are no different: they expire within a year of distribution; they require a minimum purchase of $25; they can only be used one-at-a-time and cannot be combined with other discounts (like the very "sales" at issue in this case); they cannot be used to purchase gift cards; nor is any excess unspent value returned to the customer. *See* Sample Coupons, Exhibit 7 to Settlement Agreement, Dkt. 71-1. Burdens like this are a principal reason that "CAFA requires greater scrutiny of coupon settlements." *Inkjet*, 716 F.3d at 1178 (quoting S. Rep. No. 109-14, at 27). Thus, given § 1712's mandate, Comlish's acknowledgment

that it would not be unreasonable to value the claimed coupons at 2/3 of their face value is if anything overly generous.

As for the "extremely conservative" 10% redemption estimate of the unsolicited coupons, there is nothing conservative or realistic about that valuation. As the defendant could surely demonstrate with records in its possession, where coupons are distributed to class members without any expression of interest, the "redemption rates are tiny" "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%." James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005). Coupon redemption rates "may be particularly low in cases involving low value coupons." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH, 2011 U.S. Dist. LEXIS 68984, at *35 (D. Nev. Jun. 27, 2011) ($10 discount "certificate" for car rental). Cases abound in which few class members redeem their coupons.[6] A 1% redemption rate here would equate to a potential additional benefit of $4 million, but even then the fee award amounts to an excessive 46% of the net $30.68 million recovery. CAFA may allow such *ex ante* predictive judgments when approving a coupon settlement as fair, though it would require deferring any fee award until after the coupons have been redeemed. *Compare Redman*, 768 F.3d at 634 (allowing estimation of redemption rate based upon considered economic judgment at settlement approval stage), *with Inkjet*, 716 F.3d at 1181-83 & 1187 n.19 (requiring actual accounting of coupons redeemed before an attorneys' fee attributable to them may be awarded; further suggesting bifurcating or staggering the fee award).

---

[6] *See, e.g.*, *Davis v. Cole Haan, Inc.*, 2015 U.S. Dist. LEXIS 153434 (N.D. Cal. Nov. 12, 2015) (2.3% of unsolicited vouchers were redeemed); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1074-75 (C.D. Cal. 2010) (rebuffing witness's suggested redemption rate and citing two cases with redemption rates under 2%); *Buchet v. ITT Consumer Fin. Corp.*, 858 F. Supp. 944 (D. Minn. 1994) (redemption rates well below 1%); Steven B. Hantler & Robert E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS 1343, 1347 (2005) (in one settlement, only 2 of more than 96,000 coupons were redeemed).

In short, the first symptom of an unfair settlement is clear: class counsel is attempting to seize an excessive portion of the settlement proceeds.

**B.  Clear sailing agreement**

In addition to a discrepancy between fees and class benefit, the settlement contains a second telltale indication of an unfair deal: a "clear sailing" agreement. *See Redman*, 768 F.3d at 637; *Bluetooth*, 654 F.3d at 947. A clear sailing clause stipulates that attorney awards will not be contested by the defendants. *See* Settlement ¶42. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991). The clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees" and "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 524-25; *accord Redman,* 768 F.3d at 637.

"Provisions for clear sailing clauses…potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1100 (C.D. Ill. 2012) (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., respecting the denial of certiorari)); *accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions."). "[T]he defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider." *Redman*, 768 F.3d at 637.

Clear-sailing is the second indication that the deal is skewed in favor of class counsel.

**C.  Kicker/segregated fee fund**

Although this settlement has the *prima facie* appearance of a pure common fund, in reality the class recovery here is segregated from counsel's fee fund. The settlement agreement

effectuates this by capping class members' claims and stipulating that excess portions of the settlement fund will revert to the Defendants. Settlement ¶¶40-41. This segregation forms a "constructive common fund," colloquially known as a "kicker." *See, e.g.*, *Pearson,* 772 F.3d at 786; *GM Trucks*, 55 F.3d at 820-21 (A severable fee structure "is, for practical purposes, a constructive common fund").

 A constructive common fund structure is an inferior settlement structure for one principal reason—the segregation of parts means that the Court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949. It constitutes the third red flag of a lawyer-driven settlement and begets a "strong presumption of…invalidity." *Pearson*, 772 F.3d at 787; *accord Redman*, 768 F.3d at 637 (segregation is a "defect"); *Bluetooth*, 654 F.3d at 949 (segregation "amplifies the danger" that is "already suggested by a clear sailing provision"). "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. With a typical common fund, the district court can reduce the fees requested by plaintiffs' counsel—and when it does so, the class will benefit from the surplus. *See Pearson*, 772 F.3d at 786 (calling this the "simple and obvious way" to remedy a misallocation).  However, with a constructive common fund structure, if this Court reduces the 51% request to 25%, it can do nothing to remit additional value to class members. It is "not enough" simply to lower the fee request. *Pearson*, 772 F.3d at 787. The parties have hamstrung the Court, preventing it from returning the constructive common fund to natural equilibrium.

The District of New Jersey's recent decision in *Fitzgerald v. Gann Law Books*, 2014 U.S. Dist. LEXIS 174567 (D.N.J. Dec. 17, 2014) is instructive. There, the parties negotiated a $1 million attorney fee, excessive in relation to class member recovery of $180,000. Judge McNulty found this untenable, but the settlement was salvageable because of a provision that distributed excess amounts of the cash fund *pro rata* to non-claimant class members. This ensured that "a low response rate does not inure to the benefit of the defendant or class counsel." *Id.* at *48. By

decreasing class counsel's proposed fee from $1 million to almost $400,000, Judge McNulty was able to augment the class's residual distribution by a reciprocal $600,000, and bring the settlement back into proportion without sacrificing funds that the defendant was willing to pay. Unfortunately, this settlement lacks a similar provision that would allow the Court to save the agreement. The only solution is denying settlement approval.

### IV.    Plaintiffs have failed to prove that the named representatives and class counsel are adequate representatives for the class.

Rule 23(a)(4), constitutionally grounded in the Due Process Clause, conditions class certification upon a demonstration that "the representative parties will fairly and adequately protect the interests of the class." 23(g)(4) imparts an equivalent duty on class counsel, most weighty "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Together these provisions demand that the representatives manifest "undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).  Class counsel must "prosecute the case in the interest of the class . . . rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts"[7] and the named representatives may not "leverage" "the class device" for their own benefit. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006).

As a bedrock principle, the specifications of (a)(4) "demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); *Pampers*, 724 F.3d at 721. Inadequacy can manifest itself right from the case's inception based upon background facts, but perhaps more commonly, it can reveal itself in the course of the

---

[7] *Creative Montessori*, 662 F.3d at 917.

proceedings. Therefore, it is not surprising that conflicts can sometimes be discerned from "the very terms of the settlement." *GM Trucks*, 55 F.3d at 801.

Here, several facts evidence inadequate representation. First, there exists a prototypical 23(a)(4) defect: proceeding with a class representative who has a close preexisting relationship, here a familial one, with class counsel. *See, e.g.*, *Eubank v. Pella Corp.*, 753 F.3d 718, 721-22 (7th Cir. 2014) (rejecting class representative who was father-in-law of class counsel); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1155 (8th Cir. 1999) ("a close familial bond between a class counsel and a class representative… is a clear danger…."). In this case, Class Counsel acknowledges that Caroline Mansour is a relative of class counsel Ernest and Robert Mansour. See Ex. 1 to Declaration of Adam Schulman, Letter from William Pietragallo of March 28, 2016. Ms. Mansour's appointment as a class representative is "palpably" improper. *Eubank*, 753 F.3d at 722. A familial relationship creates an inherent conflict of interest, one that cannot be assuaged by class representatives' subject belief that they were aware of their duties and acted in accordance with them. *See Radcliffe v. Experian Info Solutions*, 715 F.3d 1157, 1166 (9th Cir. 2013).

Compounding the conflict itself is the class notice's failure to disclose it. *In re Southwest Airlines Drink Voucher Litig.*, 799 F.3d 701, 714 (7th Cir. 2015). Given Class Counsel's attempt to proceed with a categorically improper representative, and failure to disclose the conflict to the class or the Court, there can be no confidence that either class counsel is adequate, or that the other class representatives are independent of counsel.[8] *See Radcliffe*, 715 F.3d at 1167 (class representative's conflict imputed to class counsel because of class counsel's "fiduciary duty" that "includes reporting potential conflict issues to the district court."); *Better v. YRC Worldwide Inc.*,

---

[8] As another example, it appears that class representative Fonda Kubiak is a law school classmate of class counsel Kevin Raphael. *Compare* https://www.linkedin.com/in/fonda-dawn-kubiak-552907a0 *with* https://www.linkedin.com/in/kevinraphaelesquire. "Named plaintiffs [are supposed to] be genuine fiduciaries, uninfluenced by family ties…or friendships." *Redman*, 768 F.3d at 638. There may be other connections we have not easily divined.

2016 U.S. Dist. LEXIS 32664 (D. Kan. Mar. 14, 2016) (class counsel inadequate where they permitted the case to proceed with inadequate named representatives).

Second, the proposed settlement indicates inadequate representation. The class definition as propounded fails to make basic and necessary exclusions for (1) judicial officers presiding over the case;[9] (2) employees or officers of the defendant;[10] or (3) those individuals who purchased items for resale.[11] The settlement terms themselves leave a discrete segment of the class with no recovery at all, namely those class members who are not in the defendants' records and who do not possess documentary proof of purchase. *See Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014) ("No one should have to give a release…in exchange for zero (or virtually zero) dollars."); *see also Dewey v. Volkswagen AG*, 681 F.3d 170, 187-90 (3d Cir. 2012) (violates (a)(4) to freeze out an entire subclass). Under binding law, these "unascertainable" class members should not be part of the class either. *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).

Beyond the subjective question of whether it is class counsel or the named representatives steering the action, both have now signed off on a settlement that objectively confers more than 50% of the demonstrated settlement benefit upon class counsel. *See supra* § III. An "extremely expedited settlement of questionable value accompanied by an enormous legal fee" casts doubt on the adequacy of counsel's representation. *GM Trucks*, 55 F.3d at 801-803; *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (Rakoff, J.) ("an

---

[9] *See, e.g., In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 136 (2d Cir. 2007); *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1029 (5th Cir. 1998) (discussing required recusal under 28 U.S.C § 455).

[10] *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006) (noting district court amended class definition to exclude individuals with involvement in the allegedly illegal practices).

[11] *See, e.g., GM Trucks*, 55 F.3d at 800-01 (finding an intra-class conflict between fleet owners and individual owners).

excessive compensation proposal can cast in doubt the ability of proposed lead counsel to adequately represent the class.").

Plaintiffs fail to demonstrate that the class representation satisfies either (a)(4) or (g)(4).

## V.   If the Court does not deny settlement approval, it should limit counsel's fee award to 25% of the true constructive common fund.

If the Court overrules Comlish's preceding objections, and reaches the question of what counsel award is reasonable under Rule 23(h), Comlish asks the Court to reduce the award from the $14.1 million sought.[12] As a fiduciary for the class, the Court maintains a duty of keen oversight of all settlement proceedings, especially fee awards. *GM Trucks*, 55 F.3d 768, 819-20 (requiring "a thorough judicial review of fee applications . . . in all class action settlements"). Judicial involvement is singularly important since it is to be expected that class members with small individual stakes in the outcome will not file objections. *Id.* at 812.[13]

### A.   Percentage-based awards should be based upon actual claims made, not upon a fictitious 100% claims rate.

To minimize the likelihood of unreasonable fee awards, this Circuit recognizes that the percentage-of-recovery ("PoR") fee methodology is the generally superior method to use. *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) (citing *Court Awarded Attorney Fees: Report of the Third Circuit Task Force*, 108 F.R.D. 237, 256 (1985)); *GM Trucks*, 55 F.3d at 821 ("[T]he court should probably use the percentage of recovery rather than the lodestar method as

---

[12] Current indications are that the constructive common fund (the fee + the amounts claimed) will be around $28 million. 25% of this is $7 million. Under CAFA, Class Counsel could then return to the Court later to request further fees of 25% of the value of those coupons that class members actually redeem.

[13] The declaration of Michael J. Boni (Dkt. 99, Ex. 6) must be disregarded as attempting to opine on the ultimate legal issue (*i.e.* the reasonableness of the $14.1 million fee request, as 27.8% of the gross settlement fund, or as a 5.3 multiple of the lodestar). *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("the District Court must ensure that an expert does not testify as to the governing law of the case.")).

the primary determinant."); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001). Plaintiffs correctly recognize the primacy of the PoR methodology. Fee Brief at 8. However, when they get into the PoR analysis, they err by using a faulty denominator. *See supra* § III.A. This "total benefits" methodology is outmoded, "premised upon a fictive world" rather than reality. *Pampers*, 724 F.3d at 721; *accord Pearson*, 772 F.3d at 781 ("The 14.2 million 'benefit' to class members was a fiction...").[14] A fee award needs to be attuned to the result actually achieved for the class, to the money the settlement actually puts in class members' hands. *See, e.g., Baby Prods.*, 708 F.3d at 179. Absent class members will only be protected if class counsel negotiates for a result that maximizes payment to the class, not one that inflates an artificial baseline from which to draw a large fee.

**B.   The lodestar cross-check confirms the need to reduce class counsel's award.**

While the Third Circuit has been a leader in adopting the PoR approach, it nevertheless has steadfastly encouraged district courts to employ a lodestar cross-check "to ensure that the proposed fee award does not result in class counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a "windfall" to...counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001); *GM Trucks*, 55 F.3d at 821 n.40. Because of the potential to discourage hasty undervalued settlements with generous attorney payments, respected commentators have even gone so far as to call the lodestar cross-check "essential." Brian Wolfman & Alan B. Morrison, *Representing the Unrepresented in Class Actions Seeking Monetary Relief*, 71 N.Y.U. L. REV. 439, 503 (1996).

---

[14] Admittedly, some courts have awarded PoR fees on the basis of the entire fund, not just the amount of the fund that is claimed by the class. *E.g., Boeing v. Van Gemert*, 444 U.S. 572 (1980). *Boeing*, however, involved a litigated judgment fund and has no relevance to a claims-made settlement. *See Pearson*, 772 F.3d at 782 (distinguishing *Boeing* as a case where the "harvest created by class counsel was an actual, existing judgment fund"); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 852 (5th Cir. 1998) (similar); *Petruzzi's Inc. v. Darling Delaware Co.*, 983 F. Supp. 595, 613 n.11 (M.D. Pa. 1997) (similar).

The Third Circuit's preeminent case on the lodestar cross-check is *Cendant PRIDES*. 243 F.3d 722. There, the district court granted a PoR award that equated to a lodestar cross-check multiplier of 7 using the district court's findings, or 10 by the objector's calculation. *Id*. at 742. The Third Circuit concluded that such an award could not stand: "**we strongly suggest that a lodestar multiplier of 3 (the highest multiplier of the cases reviewed above) is the appropriate ceiling for a fee award**, although a lower multiplier may be applied in the District Court's discretion." 243 F.3d at 742 (emphasis added).

Here, even taking class counsel's time submissions at face value, the proposed multiplier is 5.3, nearly double the "strongly suggest[ed]" "ceiling" of *Cendant PRIDES*. Class counsel point out that other district courts in this Circuit have previously awarded multipliers exceeding 5.68, but none of those appear to have considered the "ceiling" established by *Cendant PRIDES*. Fee Brief at 20. Moreover, these cases almost all preceded the Supreme Court's most forceful admonition to date against excessive use of lodestar multipliers in *Perdue v. Kenny A.*, 559 U.S. 542 (2010). *Kenny A*. delineates a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Id*. at 546. *Kenny A*. allocates "the burden of proving that an enhancement is necessary [to] the fee applicant." *Id.* at 553. Third and most significantly, it holds that a lodestar enhancement for performance is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id*. at 554.

## CONCLUSION

If given another chance, Class Counsel may well be able to reach a better settlement. *See McDonough*, 80 F. Supp. 3d 626 ($15 million more for class than settlement rejected in *Baby Products*). But, in light of the lack of adequate representation to date, and the fact that several other rival class counsel appeared poised to fill the void (*See* Dkt. 79), the superior course of action is to refuse to certify the class under the current leadership.

Dated: April 14, 2016                   Respectfully submitted,

                                        */s/ Adam E. Schulman*
                                        Adam E. Schulman
                                        COMPETITIVE ENTERPRISE INSTITUTE
                                        CENTER FOR CLASS ACTION FAIRNESS
                                        1899 L Street, NW, 12th Floor
                                        Washington, DC 20036
                                        adam.schulman@cei.org
                                        (610) 457-0856

                                        *Attorney for Objectors Barbara Comlish and Kathryn Artlip*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case. Additionally, I served true and correct copies upon the following attorneys via U.S. mail at the addresses below:

| | |
|---|---|
| PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP 1818 Market Street Suite 3402 Philadelphia, PA 19103 | Gregory T. Parks MORGAN, LEWIS & BOCKIUS LLP 1701 Market Street Philadelphia, PA 19103 |
| MANSOUR GAVIN LPA 1001 Lakeside Avenue Suite 1400 Cleveland, Ohio 44114 | |

DATED: April 14, 2016

*(s) Adam Schulman*
Adam Schulman

22