IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROUGVIE, et. al.<br>  Plaintiff<br><br>         vs.<br><br>ASCENA RETAIL GROUP, INC., et. al.<br>  Defendants | Civ. No. 2:15-cv-00724-MAK<br><br>Assigned to the Honorable<br>Mark A. Kearney |

## OBJECTION TO CLASS SETTLEMENT

Objector, Michelle W. Vullings, herby objects to the Settlement in *Carol Rougvie, et. al. v. Ascena Retail Group, Inc., et. al.*, Case No. 2:15-cv-00724-MAK as follows:

### PRELIMINARY STATEMENT

Objector, Michelle W. Vullings, residing at 3093 Township Line Road, Collegeville, Pennsylvania 19426, phone number (610) 489-4778, is a class member in *Carol Rougvie, et. al. v. Ascena Retail Group, Inc., et. al.*, Case No. 2:15-cv-00724-MAK. Objector Michelle W. Vullings received a post card notice in the mail with Access Code 26243228093780 indicating she is a class member, which is attached hereto and incorporated herein as Exhibit "A." Objector, Michelle W. Vullings, upon submitting her claim online received #FPXQSLGD as her confirmation code. Objector, Michelle W. Vullings, does not intend to attend the Final Approval Hearing.

## INADEQUATE AND UNFAIR RELIEF

The Settlement Agreement says that "Plaintiffs will seek an Incentive Award in the amount of Six Thousand Dollars ($6,000.00) each to be paid from the Gross Settlement Fund." The service awards are excessive and unfair to the Class. If class representatives and their attorneys routinely expect the Court to award thousands of dollars in awards on top of their share of the settlement benefits, class representatives may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to protect. The named plaintiffs should not be permitted to recover class benefits on top of a service award. Such amounts are unreasonable in comparison to the results achieved for Class Members. The Court should reduce the service awards or eliminate named plaintiff recovery under the settlement.

The relief is inadequate because it neither protects the Class nor the public from Defendant's conduct going forward. What steps will Defendant take to ensure compliance with state consumer protection statutes? What steps will Defendant take to ensure Defendants do not enrich at the expense of and to the detriment of consumers? What expectations should the public have regarding Defendant's conduct? This settlement does not provide any specific injunctive relief that would prohibit Defendant or its agents from engaging in similar wrongful conduct. The Court should order some form of specific injunctive relief against the Defendants to the benefit of the Class and the public.

The Class cannot determine the reasonableness, adequacy, or fairness of the cash relief because Class Counsel only estimates the Class size. The Class cannot determine settlement fairness without knowing precisely how many people are valid Class Members. Class Counsel estimates that Claimants will receive at least $7 but up to 20% in a voucher of documented

purchases. Is that after fees, notice and administrative costs, and incentive awards? Do these awards take into account the average claims rate for claims-made settlements? If not, claims-made settlements have an average claims rate of 1 out of 10. It is unfair to the Class that only 1 out of 10 Class Members will receive payment in exchange for a full release of all claims.

The relief also is unfair because it does not adequately compensate Class Members for their waiver of any applicable state fraud claims. There are many applicable state fraud claims which were never pled in this case and it would be unreasonable and unfair for the Defendant to sweep those claims into the Class Release. Unless Defendant increases the total settlement amount, the Court should limit the scope of the release to the claims which were pled.

## REQUIREMENTS OF RULE 23 HAVE NOT BEEN MET

To the detriment of the class, class counsel and the Defendants have failed to properly apply the Rule 23 requirements in respects to the manageability of the class. Upon their reliance on the *Amchem* case that they reference in their memorandum of law, the parties appear to misguide the Court when requesting the proposed class certification for settlement purposes only. In relevant part, the U.S. Supreme Court in *Amchem* held:

> Confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the rule--those designed to protect absentees by blocking unwarranted or overbroad class definitions-- demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. See Fed. Rule Civ. Proc. 23(c), (d). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997).

The U.S. Supreme Court in *Anchem* appears to require stringent scrutiny when requesting class certification for settlement purposes only. As in *Sullivan*, it would be inappropriate for this Court, due to class counsel's and Defendants' failure to inform the Court of the proper choice of law, to certify the class. *Sullivan v. DB Invs., Inc.*, 613 F.3d 134, 153 (3rd. Cir. 2010).

## INADEQUATE NOTICE

Class Counsels' fee request violates Rule 23(h) because notice of the fee motion was not directed to class members in a reasonable manner. Class Members should be given a full and fair opportunity to examine and object to fee motions. Rule 23(h) clearly requires that any class member be provided with an opportunity to object to the fee motion itself. The fee motion is an essential settlement document and, given that essential settlement documents are posted on the settlement website, the fee motion should have been posted to the website in order to provide the Class with a full and fair opportunity to examine, and if necessary, object to it.

It is unreasonable to expect Class Members to travel to the court or call the clerk to request and pay for a copy of the fee motion. Such an effort would require more time and expense than their settlement benefits are worth. It also would be unreasonable to force Class Members to create a PACER account to purchase the documents. Much like reaching out to the clerk, downloading the documents would be cost prohibitive as well. Finally, it is unreasonable to expect Class Members to contact Class Counsel for a copy of the fee motion. Class Members should not be required to disclose their identities and address to Class Counsel in exchange for a copy of the fee motion, especially if the Class Member intends to oppose the settlement. Class Members are not expected to make a specific request for the settlement agreement, preliminary

order, or claim form, so why should they be expected to contact Class Counsel for the fee motion? The fee motion should have been posted online for the Class to review (at least two weeks before the objection deadline). Because it was not, Class Counsel violated Rule 23(h).

The notice program is not the best practicable notice under the circumstances. Did an expert submit a report regarding the sufficiency of the notice program? The Claims Administrator is using email, postcard, and publication notice to reach the class; however, there is no indication as to how many valid mailing or email addresses the Claims Administrator has. More significantly, there is no indication as to whether or not the Administrator is performing a change of address search for claimants that already submitted claims under the Initial Settlement Agreement, or for other class members in defendants' records. There also is no explanation as to what steps the Claims Administrator will take if mailed notice is returned as undeliverable. What is the likelihood that the notice program will notify the majority of the class? There is also no indication as to whether or not the Administrator is performing a change of address search other class members in defendants' records.

The settlement is inadequate because it provides that "if all claimants have been paid according to this Agreement and funds remain in the Net Settlement Fund 180 days following the Effective Date, *the remaining funds shall revert to Justice* following payment of any outstanding Claims Administration Expenses, Fee Award and Incentive Awards" (emphasis added). In a fair settlement, excess settlement funds should be redistributed to the class. In the alternative, excess settlement funds could go to *cy pres* for the benefit of consumers such as the present class members. Excess settlement funds certainly should not be returned to the Defendant.

The notice does not contain the release. Defendants are providing settlement benefits in exchange for a release; however, neither a full release nor a summary is in the notice for the class to evaluate. The notice merely refers class members to the settlement agreement for the release. The purpose of a notice is to provide class members with the necessary information to make an informed decision as to whether to remain in the class, opt-out, or object. Class members cannot make an informed decision without the release and it should be included in the notice.

## EXCESSIVE FEE AWARD

The notice states that the lawyers plan to ask for attorneys' fees in an amount not to exceed twenty nine and one half percent (29.5%) of the Gross Settlement Fund, or Fifteen Million Dollars ($15,000,000.00). However, there is no explanation, much less a credible explanation why class counsel should recover such a high percentage. There is no indication how much will be paid out under the settlement and no way to determine how the requested fees compare to that number. Class counsel should have posted its motion for fees and costs on the settlement website for class members to evaluate.

Class Counsel's fee request is excessive and unreasonable. The results achieved for the Class do not support a fee award of up to twenty-nine and one half percent of the settlement. Other class action fee awards do not sufficiently support Class Counsel's request. If less than 10% of the class members submit a valid form, the Court should apply a lodestar analysis and award a fee accordingly. The Court performed a singular analysis in *American Art China Company, Inc. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243 (7th Cir. Feb. 18, 2014). In that settlement there was a claim rate of only 7%. Concerned about inadequate distribution of

attorney's fees in light of the final payout to class members, the district court applied a lodestar analysis instead of awarding the requested thirty-three and one-third percentage. The Court should perform a similar analysis here, taking into account a reasonable hourly rate and the fact that this is not Class Counsel's first similar class action and that Class Counsel likely used past research and analysis from prior litigation in this case.

## OPT-OUT PROCESS

The opt-out process is unreasonably burdensome for class members. In order to request exclusion, a class member must mail a written document containing his or her intent to opt out. The Notice clearly states that, "you must mail your exclusion request so that it is postmarked no later than April 20, 2016 … You cannot exclude yourself by phone or email." There is no reason why an electronic method could not have been made available for exclusion requests. An exclusion form should have been made into an electronic form, much like the online claim form. The current opt-out requirements harm the class insofar as class members incur out-of-pocket costs. An electronic process would have saved the class both time and money.

## UNFAIR WINDFALL TO DEFENDANTS

First, under the Settlement Agreement, if, after all claims have been paid, any settlement funds remain, the remaining cash will revert to defendants. This will result in an unfair windfall to the defendants and the ultimate intended beneficiaries, *the class*, will not be compensated as should be the intent.

Second, the voucher distribution results in an additional windfall to defendants. The voucher benefits result in a windfall to defendants and are not adequate benefits for the class. A voucher is not a true benefit because class members will necessarily incur additional out-of-pocket expenses in order to redeem the voucher. Given the amount of time that has passed and the purchase dates on many of the eligible products (2012-2015), there are very few class members that are able to take advantage of the *de minimis* benefit. Finally, the majority of the eligible products exceed the value of the vouchers; some items being well over the suggested voucher value. Why should the class members even be put into a situation where they are arguably forced into purchasing Justice merchandise again when they have been deceived from the Defendants' previous business tactics?  As a result, the vouchers end up benefiting defendants more than they do the class.

## ADMINISTRATION COST UNCAPPED AND UNFAIR TO THE CLASS

The Settlement Agreement states that "Class counsel must pay from the Cash Settlement Amount to the Claims Administrator, without further appeal from the Court, the reasonable costs and expenses up to the sum of Eight Million Dollars for Claims Administration Expenses." Administration Costs are not capped. In response to the added expense of the Supplemental Notice Program, Class Counsel and the Defendants entered into an Amended Settlement Agreement. In this Amended Settlement Agreement, Class Counsel agreed to reduce the amount of their maximum "not to exceed" Fee Award, currently Fifteen Million Dollars ($15,000,000.00) (as set forth in Paragraph 42 of the Class Action Settlement Agreement), by 50% of the total cost of this Supplemental Notice Program (but the maximum "not to exceed"

Fee Award shall never be reduced by more than One Million Dollars ($1,000,000.00)). Instead of increasing the Settlement for the betterment of the Class Members, class counsel are only willing to reduce their fees by a maximum of One Million Dollars while reducing the remaining Settlement Fund by 50% of the additional expense. The Settlement Fund should have been increased due to this additional expense, or the Administration Costs should be capped; the Class should not bear the added cost.

### CLAIM PROCESS UNREASONABLY BURDENSOME

The Claim process is unreasonably burdensome and unfair to the Class; Claimants are forced to incur great time and costs in order to submit a claim. The claims process is designed to reduce Class Member participation and save the Defendant money.

The Claims Process requires unnecessary documentation. The Claim Form requires documentation from purchases Class Members have made from the Defendant anywhere from one to four years ago. Such a request is unreasonable and an unnecessary administrative hurdle. A Claimant's claim form submission and declaration that he or she spent a specified dollar amount should be sufficient to demonstrate the Claimant's award entitlement. Furthermore, insomuch as many purchases were undoubtedly made by credit card, Class counsel should be able to access the dollar amounts of some of these purchases.

The example above demonstrates that the Claims Process is unfair and unreasonable. The Parties have not created a claims process that is designed to identify and compensate Class Members. Instead, the parties designed a process that effectively limits Class Member participation and recovery.

## ADEQUATE AND FAIR FOR ALL INVOLVED, EXCEPT THE CLASS

Class counsel stands to make Fourteen Million Dollars ($14,000,000) in the present matter. The Class Administrators stand to make Ten Million Dollars ($10,000,000) or more. Out of an approximate Fifty-One Million Dollar ($51,000,000) settlement, this leaves a mere Twenty-Six Million Dollars for the class, or almost fifty percent of the total Settlement. Of the slightly more than 50% of the Class Settlement which could go to the class, some of the remainder will go towards *de minimis* cash payments and vouchers. To add proverbial "salt to the wound", the proposed vouchers appear to ultimately benefit the Defendants more than the Class. Further, as noted above, historically only a average of 7% to 10% of the class members will likely even submit a valid claim form for cash or vouchers. Therefore, as proposed, the cash which is not claimed in the Settlement Fund will simply revert back to the Defendants. How can this possibly be adequate and fair to the Class? It couldn't be, and it isn't.

WHEREFORE, Objector Michelle W. Vullings objects to the Settlement in *Carol Rougvie, et. al. v. Ascena Retail Group, Inc., et. al.*, Case No. 2:15-cv-00724-MAK as for the reasons outlined herein.

Dated: April 15, 2016

Vullings Law Group, LLC

By: /s/ Brent F. Vullings
Brent F. Vullings, Esq.
Vullings Law Group, LLC
3953 Ridge Pike Suite 102
Collegeville, PA 19426
610-489-6060
Attorney for Objector Michelle W. Vullings

Michelle W. Vullings
3093 Township Line Rd.
Collegeville, PA 19426
610-489-4778