## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL ROUGVIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  2:15-CV-00724-MAK |
| | ) | |
| ASCENA RETAIL  GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER DENYING MOTION FOR FINAL APPROVAL OF
## SETTLEMENT AND MOTION FOR ATTORNEYS' FEES

---

**AND NOW**, this           day of                     , 2016, it is hereby

**ORDERED** that the motion for final approval of the proposed settlement and motion for attorneys' fees, expenses, and incentive awards is Denied.

_____

J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL ROUGVIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  2:15-CV-00724-MAK |
| | ) | |
| ASCENA RETAIL  GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### OBJECTION OF MANDA HIPSHIRE TO PROPOSED SETTLEMENT, MOTION FOR ATTORNEYS' FEES, AND INCENTIVE AWARDS

---

**NOW COMES** Manda Hipshire ("Hipshire")[1], by and through her undersigned counsel, pursuant to (1) the Notice of Proposed Class Action Settlement, (2) Rule 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and would respectfully submit her Notice of Objection, Intention to Appear and Request to Be Heard.

Miles Dumack
DUMACK LAW
1621 McKean Street
Philadelphia, PA 19145
Tel: 267-259-3962
Email: miles@dumacklaw.com

Christopher T. Cain
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Tel: (865) 525-2150
cain@scottandcain.com

---

[1]Hipshire is a citizen of the United States.  She resides at 3413 Grassy Pointe Lane, Knoxville, Tennessee 37931.  Her telephone number is 865-599-5525.  She is a class member, Access Code:2028694980400, and submitted an online claim on March 14, 2016, Claim Confirmation Code: 9NTIQBMO.

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PERTINENT PROCEDURAL AND FACTUAL BACKGROUND . . . . . . . . . . . . . . . . 3

III.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   STATEMENT OF OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Intra-Class Conflicts Serve as Impenetrable Barriers to Final Approval . . . . . . . . 5

                1.    The settlement unfairly discounts the claims of Tennessee
                      Class members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                2.    Class Counsel unreasonably omitted a TCPA claim . . . . . . . . . . . . . . . . 7

        B.    Class Counsel's Request for Attorneys' Fees is Rife With Problems . . . . . . . . . . 8

                1.    Class members were not afforded an adequate opportunity to
                      review all of the materials submitted in support of Class
                      Counsel's attorneys' fee motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.    Class Counsel's red-carpet treatment of attorneys' fees is
                      indicative of collusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.    Class Counsel are not entitled to a fee of $14.111 million
                      when they performed less than $2.9 million of work . . . . . . . . . . . . . . . 15

                4.    The lodestar method is the better approach to reward class
                      counsel for their work in this case . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                  5.    The record does not support the requested fee and point to
                      class counsel's failure to adequately represent class members
                      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.    The Settlement Is Not Fair, Reasonable or Adequate Because the Release Is
             Overbroad in Failing to Track the Allegations of the Third Amended
             Complaint and Violates the Identical Factual Predicate Rule . . . . . . . . . . . . . . 18

        D.    The Voucher Component of the Proposed Settlement Is Largely Illusory and
             Does Not Substantially Benefit Class Members . . . . . . . . . . . . . . . . . . . . . . . 19

E.      Due to Their Limited Efforts, the Eight Named Plaintiffs Are Not Entitled to
Incentive Awards of $6,000 Each . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

NOTICE OF INTENTION TO APPEAR AND REQUEST TO BE HEARD . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I.   PRELIMINARY STATEMENT

> *"The settlement papers commonly stress the dollar size of the settlement.  After all, a large number is presented as the result of substantial efforts by class counsel capped by a wonderful result.  But dollars alone are not the full story."*[2]

Plaintiffs and Class Counsel rave about achieving a settlement of $50.8 Million ("Cash Settlement Fund") and vouchers purportedly valued at approximately $402 Million.  For this, Class Counsel seek fees and expenses of $14,111,455.85 and incentive awards in the amount of $6,000 each for the eight named Plaintiffs.  In reality, the proposed settlement is largely smoke and mirrors.  Broken down, the artificially-inflated settlement yields much for Class Counsel and the Plaintiffs, but little for Class members, suffering from myriad deficiencies which compel its rejection.

*First*, the proposed nationwide class settlement unreasonably and irrationally discounts the legitimate Consumer Protection Act ("CPA") claims of some Class members (*e.g.*, Class members who reside in Tennessee) while at the same time fully funding the CPA claims of consumers who have, at best, marginal or dubious claims, or in some cases, no valid claim at all.  For instance, Class Counsel mistakenly discounted the claims of Tennesseans purportedly because Tennessee's ("TCPA") allegedly prohibits them from maintaining a class action[3] while fully-funding the CPA claims of Class members in states whose' CPAs restrict their claims in other ways.  This vast inequity – sacrificing the legal remedies of one group to benefit another group – violates *Amchem Products, Inc. v. Windsor*, 521 591 (1997), turning the proposed Settlement into one rife with intra-

---

[2]Hon. Elaine Bucklo and Thomas R. Meites, *What Every Judge Should Know about a Rule 23 Settlement (But Probably Isn't Told),* 41 Litigation 1, 3 (ABA Litig. Spring 2015).

[3]As demonstrated below, Class Counsel's decision to not assert a claim for Tennesseans under the TCPA was ill-advised and clearly in error, as this is a federal diversity case in which Federal Rule of Civil Procedure 23 governs, not the procedural laws of the various states.

class conflicts which should have demanded sub-classing and separate counsel to satisfy adequacy concerns.

*Second*, Class members were also handicapped in assessing Class Counsel's fee request as Class Counsel failed to afford them an adequate opportunity to review the materials submitted in support of it.  Although the motion was filed on March 18, 2016, Class Counsel failed to make it available to Class members on the settlement website, leaving most Class members in the dark as to the basis for their fee request.[4]

*Third*, the red-carpet treatment given Class Counsel's attorneys' fees compels heightened scrutiny of the settlement and fee request.  For example, all three of the "subtle signs" of collusion exist in this case: (1) Class Counsel's fee award, examined by "economic realities," is at least almost one-half of and may very well exceed the total cash-benefit to the Class, (2) Justice agreed not to dispute an award of $15 Million in fees to Class Counsel out of the Cash Settlement Fund; and (3) the money that does not go toward Class members' claims reverts back to Justice.

Foremost among the problems is the reverter clause, which steers unused or uncashed check funds back to the coffers of Justice, completely negating the Third Circuit's directive that district courts insure that the parties have provided "sufficient direct benefit" to Class members.  *In re Baby Products*, 708 F.3d 163, 175-76 (3rd Cir. 2013).   Such provisions are (a) generally regarded as a "red flag" for collusion, (b) considered a "windfall" to defendants, and © lack a deterrent effect.

---

[4]The Class Notice informed Class members that Class Counsel would be asking the Court for up to $15 Million in attorneys' fees, and that this award "will not reduce the recovery for Class Members."  [Class Notice, at p. 2].  Clearly though, for every dollar not charged to the Cash Settlement Fund for attorneys' fees, that dollar would logically remain in the fund to benefit Class members.

*Fourth*, Class Counsel seek an exorbitant amount of attorneys' fees – $14.111 Million – notwithstanding their concession that they performed less than $2.9 Million worth of work in the case.  The Third Circuit has encouraged district courts to lower attorneys' fee awards when they have "reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class."  *In re Baby Prods.*, 708 F.3d at 177.  Here, Class Counsel's fee award is more appropriately calculated by the lodestar method.  The record does not support their requested fee, and points to their failure to adequately represent Class members.

*Fifth*, the proposed settlement is not fair, reasonable or adequate because the Release is overbroad, failing to track the allegations of the operative Complaint and violating the identical factual predicate rule.  And *sixth*, due to their limited efforts, the eight named Plaintiffs are not entitled to incentive awards of $6,000 each.

## II.    PERTINENT PROCEDURAL AND FACTUAL BACKGROUND

This class action litigation involves "a three-year class period, approximately 10.6 million class members and – and something on the order of about eighty million transactions."  [Doc. 60, Transcript, at p.16].  Plaintiffs commenced this action against Justice on February 12, 2015 asserting claims on behalf of all persons in the U.S. who purchased items purportedly on sale for at least 40% off, but which were actually sold at their regular price (the "Class Members") in violation of the various consumer protection laws of the states.  [Doc. 1].  Plaintiffs alleged that, because these sale items were never sold above the 40% off price, the "sale price" was in fact the regular, or every day, price.  Plaintiffs further alleged that such misleading advertising practices violated various state consumer protection statutes, state administrative regulations, and common law.

Immediately following the filing, the parties began "in earnest settlement discussions" [Doc. 60, Transcript, at p.6]. On July 2, 2015, the parties finally reached an agreement in principle. [Doc. 99, at p. 8]. Under the settlement agreement, Justice paid into a common fund $50,800,000, distributed as follows: $27.8 Million to pay affirmative claims made by Class members, $8 Million for administration costs, and up to $15 Million for attorneys' fees and expenses ("Cash Settlement Fund"). [Doc. 99, at p. 9]. Class Counsel later agreed to reduce their fees from $15 Million to $14,111,455.85. [Doc. 99, at p. 10]. The reduced fees would constitute 27.8% of the Cash Settlement Fund. Further, vouchers distributed automatically are valued at approximately $402 Million. [Doc. 99, at pp. 10, 20].

The proposed settlement provides two options. Option One provides a set value for a cash or voucher award, based on the Class members' state of residence. [Doc. 71-1, at p. 53]. Option Two provides those Class members with six or more purchases during the Class Period and/or a single purchase of $105 or more, the choice to obtain a percentage of their total purchases during the Class Period in either cash or voucher. [Doc. 99, at p. 25]. Class members who do not submit a Claim Form but for whom the Administrator has a valid email or postal address will automatically receive a voucher based on the current state of residence.

On March 18, 2016, the parties moved for final approval [Doc. 98] and Class Counsel moved for an award of attorneys' fees, expenses, and incentive awards. [Doc. 99].

## III.   STANDARD OF REVIEW

A district court approves a settlement by determining it is "fair, reasonable, and adequate." *In re Prudential Ins. Co.*, 148 F.3d 283, 316 (3d Cir. 1998). The burden of proving the fairness of the settlement is on the proponents. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir.

2013).  Moreover, "district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *In re Baby Products*, 708 F.3d 163, 175 (3rd Cir. 2013).

When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

## IV.   STATEMENT OF OBJECTIONS

### A.   Intra-Class Conflicts Serve as Impenetrable Barriers to Final Approval.

#### 1.   The settlement unfairly discounts the claims of Tennessee Class members.

Class Counsel have unreasonably discounted the settlement benefits to Tennessee Class members, *e.g.*, Tennessee Class members may not receive enhanced damages.  The rationale purportedly is based on the mistaken belief that Tennesseans are prohibited from filing class actions under the TCPA.  Even if Class Counsel are correct (and they are not), why should the fact that the TCPA bans class actions impact a Tennessee consumer's individual recovery?  What's more, Class members in states with a two-year CPA statutes of limitations (*e.g.*, Virginia, Kentucky, and Montana) are unexplainedly allowed enhanced damages – notwithstanding the fact that their CPA claims may be altogether barred.

Class Counsel's rationale makes no sense.  The gist is that Tennesseans must receive less for their valid individual claims under the TCPA because of limitations in pursuing those claims in a

class action, while Class members in other states will receive more for barred claims. It is inappropriate for Class Counsel to engage in actions which benefit some Class members to the detriment of others. The problem is not that the settlement may include consumers with marginal or dubious CPA claims, but that it includes consumers who have no legitimate CPA claims at all, while simultaneously punishing Tennesseans with valid TCPA claims. This dichotomy endorses the chimeric creation of adding substantive rights where none exist while extinguishing other valid substantive rights. This inequity makes the settlement rife with conflicts between Class members.

To be sure, Plaintiffs and Class Counsel cannot represent conflicting interests. Nor can they hold interests antagonistic to other Class members. As the Third Circuit astutely observed, "[o]ne sign that a settlement may not be fair is that some segments of the class are treated differently from others." *In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F. 3d 768, 808 (3d Cir. 1995). This settlement would sacrifice the remedies of one group of Class members to benefit another. *See Amchem Products, Inc. v. Windsor*, 521 591 (1997) (upholding Third Circuit's decision to vacate settlement class certification that aggregated into one settlement class subgroups with different interests); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) (Court rejected a settlement class that failed to distinguish between more valuable and less valuable claims); *In re Southeastern Milk Antitrust Litigation*, 2012 U.S. Dist. LEXIS 76817 (E.D. Term. June 1, 2012) (subclass was decertified until it had separate legal representation due to conflict with another subclass that made joint representation inappropriate).

Here, Class Counsel are trying to be all things to all of the Class, favoring some Class members over others. Thus, there is a "fundamental" conflict because the Court failed to appoint separate counsel to represent the subclasses implicitly created and the settlement must be rejected.

### 2.    Class Counsel unreasonably omitted a TCPA claim.

The TCPA permits individual actions, but not class actions.[5]  If this case were proceeding in state court, these statutes would undoubtedly preclude Plaintiffs from proceeding with a class action for injured Tennesseans.  But, obviously, this case is in federal court.

In *Lisk v. Lumber One Wood Preserving, LLC*, No. 14-11714, 2015 U.S. App. LEXIS 11891 (11th Cir. July 10, 2015), the Eleventh Circuit addressed the issue of whether the prohibition on private litigants bringing a class action under the Alabama Deceptive Trade Practices Act ("ADTPA"), applied to a class brought in federal court in light of the Supreme Court's holding in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).  As the Eleventh Circuit admitted, "[i]f this case were pending in an Alabama state court, the statute would preclude presentation of the ADTPA claims in a private class action." 2015 U.S. App. LEXIS 11891 at * 5.  Because the plaintiff had invoked federal jurisdiction under the Class Action Fairness Act, however, "[t]he issue, then, is whether Rule 23 applies or is instead displaced by the contrary provision of the ADTPA."  *Id.* at *6.

In finding that Rule 23 controlled, the Court explained that *Shady Grove* involved a "separate New York statute allowed class actions on conditions tracking those in Federal Rule of Civil Procedure 23 but prohibited class actions for claims seeking statutory penalties."  *Id.* at * 6.  "The issue there, as here, was which provision controlled – Rule 23 or the state-law prohibition on class actions for claims of this kind.  The Supreme Court held that Rule 23 governed.  The decision compels the same result here."  *Id.* at * 6-7.

---

[5] "No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part."  Tenn. Code Ann. § 47-18-109(g).

The opinion further explained: "If Rule 23 did not abridge, enlarge, or modify a substantive right under the New York statute, even though the statute precluded class actions altogether, it is difficult to conclude that Rule 23 abridges, enlarges, or modifies a substantive right in Alabama, when all the statute does is prescribe1 who can bring a class claim based on the very same substantive conduct." *Id*. at * 10. "The bottom line is this.  The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court.  Rule 23 controls." *Id*. at * 12.

The decision in *Lisk* applies with equal force and logic to the Tennessee proscription on TCPA class actions. *See also* 7A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1758 (3d ed.) ("It now is clear that Rule 23 controls whether a class action may be maintained, regardless of a conflicting state law").  The bottom line is this: the TCPA, like the New York statute in *Shady Grove* and the Alabama statute in *Lisk*, does not apply in federal court.  Rule 23 controls.  By omitting a viable claim under the TCPA, Class Counsel unnecessarily and unreasonably restricted the benefits due Tennessee Class members.

**B.      Class Counsel's Request for Attorneys' Fees is Rife With Problems.**

      **1.      Class members were not afforded an adequate opportunity to review all of the materials submitted in support of Class Counsel's attorney's fee motion.**

At the outset, Class Counsel failed to post their March 18, 2016 motion for attorneys' fees [Doc. 99] on the settlement website – https://www.justiceclassaction.com – prior to the objection and exclusion deadline of April 15, 2016.  Consequently, the millions of Class members who do not happen to have a subscription access to the Public Access to Court Electronic Records ("PACER") site were without information necessary to assess the reasonableness of the request.  Put simply,

every Class member – not merely those who are also attorneys – was entitled to know precisely why Class Counsel thought they have earned an attorneys' fee more than fives times the value of their actual time expended in the case.

Aside from its basic unfairness, setting the objection deadline at a date without having first provided Class members with the information necessary to assess the reasonableness of Class Counsel's requested attorneys' fee appears to contravene Rule 23(h), and what's more, might also result in a denial of due process, as it deprived unsatisfied Class members of a full and fair opportunity to contest the fee motion.  The rule's plain language rightly requires that Class members be given a meaningful opportunity to object to the fee "motion" itself, not merely to the preliminary summary notice that such a motion will be filed.  *See also* 5 *Moore's Federal Practice* § 23.124[4] (Matthew Bender 3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request.")

As one court correctly observed, "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *In re Mercury Interactive Corp. Securities Litig.,* 618 F.3d 988, 994(9th Cir. 2010).

The Court provided twenty-eight (28) days from the filing of the motion until the objection date, but Class Counsel failed to make the motion available to Class members.  Accordingly, the Court should continue the "fairness hearing" to allow Class members time to assess the motion.

### 2.    Class Counsel's red-carpet treatment of attorneys' fees is indicative of collusion.

As the Ninth Circuit observed in *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011) ("*Bluetooth*"), district courts are required to look for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 947. The Court identified three signs: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.* Each sign exists here: (1) when the attorneys' fee award is examined in terms of "economic reality," the award may very well exceed the cash benefits to the Class, (2) Justice agreed not to dispute the award of fees to Class Counsel out of the Cash Settlement Fund, as long as that award did not exceed $15 Million; and (3) all of the money that does not go toward claims actually made reverts to Justice.

"Cases are better decided on reality than on fiction." *United States v. Priester*, 646 F.3d 950, 953 (6th Cir. 2011). Unfortunately, the stark reality of this particular settlement is that it benefits Class Counsel vastly more than it does the Class. To be sure, Class Counsel had numerous opportunities throughout the settlement proceedings to shield their absent clients from the numerous calamities produced by this settlement. Yet, at practically every turn, those opportunities were squandered. In the end, by taking every precaution to protect their own self-interests, Class Counsel all but abandoned their duty to adequately represent Class members.

***Class Counsel's fees is disproportional to Class members' benefits.*** Class Counsel seek $14.111 Million in fees. After deductions for administrative costs, attorneys fees, and incentive

awards, the amount available to pay Class members would be $28,688,544.15.   Thus, Class Counsel's attorneys' fees will at least equal 49.2% of the cash available to Class members.  But, the reality is that there is no meaningful gauge to measure the percentage of uncashed checks that might be expected.   As Mrs. Hipshire demonstrates, Class members are just as likely to deposit the settlement check envelopes into their trash cans as to deposit the checks into their bank accounts. In a nutshell, it is inevitable that a substantial number of checks simply will not be cashed by Class members.   Those untold funds will ultimately revert to Justice, for a tidy windfall for its bargain.

The Court has alternatives.  For instance, in *Ferreira v. Browne (In re Groupon Mktg. & Sales Practices Litig.)*, 593 Fed. Appx. 699, 702 (9th Cir. 2015), the Ninth Circuit recently remanded a case, directing the parties and the district court to:

> explore the extent to which values may be quantified by reference to factual or expert testimony, or reliably bounded within a specific range of values that are expected, or illustrated by proxy evidence. After appropriately supplementing the record, the district court may exercise its discretion to reapprove the settlement and class counsels' fee, reapprove the settlement but modify class counsels' fee, to disapprove the settlement, or take other appropriate actions depending on its inquiry, findings, and evaluation of whether the settlement is fair, reasonable, and adequate.

*Groupon* 593 Fed. Appx. at 702.

***Class Counsel's clear-sailing agreement warrants heightened scrutiny.***  The proposed settlement further reveals that Justice agreed to a clear-sailing clause – not to oppose any fee which Class Counsel might eventually seek.  [Doc. 71-1, at p. 55] ("Defendant shall neither object to nor challenge Class Counsel's application for a Fee Award that does not exceed $15,000,000.00").  *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991) (a clear-sailing agreement "is one where the party paying the fee agrees not to contest the amount to be awarded by

-11-

the fee-setting court so long as the award falls beneath a negotiated ceiling"). When confronted with such provisions, courts have a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the Class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

The reason provisions such as these are disfavored is their propensity to uncover subtle collusion. Because collusion "may not always be evident on the face of settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest . . . to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Judge Posner described the problem:

> Another questionable feature of the settlement is the inclusion of a "clear-sailing clause" – a clause in which the defendant agrees not to contest class counsel's request for attorneys' fees. Because it's in the defendant's interest to contest that request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation – namely *a reduction in the part of the settlement that goes to the class members*, as that is the only reduction class counsel are likely to consider. The existence of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members.

*Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015) (emphasis added).

Absent any evidence to the contrary, it stands to reason that Justice received something of value and Class Counsel sacrificed something of value to Class members in return. In the end, it is up to Class Counsel and the District Court to ensure that Class members get the compensation they deserved. By failing to protect Class members, Class Counsel failed in to safeguard Class members.

***The Reverter provision fails to provide sufficiently direct benefits to Class members***.  The

proposed settlement purports to make payments exceeding $28 Million to Class members who

submitted valid and timely claims.  Problematically, the proposed Settlement also provides:

> 41.     If all Claimants have been paid according to this Agreement
> and funds remain in the Net Settlement Fund 180 days following the
> Effective Date, ***the remaining funds shall   revert to Justice***
> following payment of any outstanding Claims Administration
> Expenses, Fee Award and Incentive Awards.

[Doc. 71-1, at pp. 54-55] (emphasis added).[6]

The gist of this provision is that any unclaimed cash will ultimately be returned to Justice.

Under the circumstances, this could be a substantial sum.  As numerous district courts have pointed

out, "in a reversionary common fund or a claims-made settlement, the defendant is likely to bear only

a fraction of the liability to which it agrees." *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp.

2d 395, 405 (D. Mass. 2008) (emphasis added); *see also Sylvester v. Cigna Corp.*, 369 F. Supp. 2d

34, 52 (D. Me. 2005) (stating that parties' evidence indicated that "'claims made' settlements

regularly yield response rates of 10 percent or less"; adding that "the parties' expectations of a low

response rate gives the reverter clause real value for Defendants").[7]

---

[6]*See also* Detailed Class Notice, at p. 2 (" If money remains after all class members' cash claims, and all fees and costs are paid, the money will be returned to Justice.") (emphasis added).

[7]While results vary from case to case, it is common that only a fraction of the class in class action settlements  actually submit claims.  *See, e.g.*, Max Helveston, *Promoting Justice Through Public Interest Advocacy in Class Actions*, 60 Buff. L. Rev. 749, 782-83 (2012) (noting that there are "a variety of different explanations" for low claims rates — *e.g.*, "the difficulty of notifying class members, the overly complex and technical notifications that class members receive, the effort required to pursue a claim, the lack of interest of class members in the types of relief available, and the failure of fund designers to design claim procedures in ways that take into account cognitive biases" — but adding that, at the end of the day, "class members in large class action suits typically file claims at rates that are much lower than one would expect").

Here, because of the clause, the cash benefits to the Class are vastly overstated and are likely largely illusory. Some courts have rejected the reversion option because it "risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *In re Baby Prods.*, 708 F.3d at 172. Other courts are skeptical about reversion clauses primarily because such provisions leave it difficult to ascertain precisely what the defendant will pay in exchange for resolving the class's claims. As one court has put it:

> [S]ettlement agreements containing reversionary clauses often raise concerns about whether the settlement is in the best interests of the class. In particular, without knowing the claim rate, it is not possible to calculate the actual value of the settlement, and therefore it is difficult to assess the proportionality between the settlement's value and Plaintiffs' expected recovery at trial, which is the single most important factor in determining whether the settlement is substantively fair and adequate.

*Minor v. FedEx Office & Print Servs.*, 2013 U.S. Dist. LEXIS 18224, at *4 (N.D. Cal. Feb. 8, 2013).[8]

What's more, legal scholars and commentators also criticize reversion clauses. *See e.g.,* Sam Yospe, *Note, Cy Pres Distributions in Class Action Settlements*, 2009 Colum. Bus. L. Rev. 1014,

---

[8]Other courts are in accord, *e.g., Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (labeling a reversion provision a "questionable feature" of a settlement agreement); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("[R]everter clauses are generally suspect and need to be viewed cautiously since they undercut the deterrent effect of class actions.") (internal quotation marks and alterations omitted); *Zawikowski v. Beneficial Nat'l Bank*, No. 98 C 2178, 2001 U.S. Dist. LEXIS 3098, 2001 WL 290402, at *2 (N.D. Ill. Mar. 22, 2001) ("[R]eversion provisions need careful scrutiny."); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577, 2014 U.S. Dist. LEXIS 67235, 2014 WL 1927309, at *4 (N.D. Cal. May 14, 2014) ("courts are justifiably "skeptical of reversion clauses"); *Dalton v. Lee Publ'ns, Inc.*, 2014 U.S. Dist. LEXIS 148240, *12 (S.D. Cal. Oct. 17, 2014) ("the possibility of reversion is an area of particular concern to the Court"); *Small v. Target Corp.*, 53 F. Supp. 3d 1141, 1143 (D. Minn. 2014) (the reversion of unclaimed funds to the Interline is a red flag); *Stewart v. USA Tank Sales & Erection Co.*, 2014 U.S. Dist. LEXIS 27560 (W.D. Mo. Mar. 4, 2014) (reversionary provisions viewed as a red flag of potential collusion, particularly where the settlement contains a "clear sailing" agreement on attorneys' fees).

1044 ("Returning the money to the defendant is often contrary to the purpose of the statute in the underlying litigation."); Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 Geo. Wash. L. Rev. 767, 768 (2014) (reversion to the defendant provides "a windfall to the alleged wrongdoer."); *see also* Stewart R. Shepherd, *Comment, Damage Distribution in Class Actions: The Cy Pres Remedy*, 39 U. Chi. L. Rev. 448, 456 (1972) (noting that a cy pres distribution is "preferable to the unjust enrichment of the defendant").

For all of this, Class Counsel's inclusion of disproportionate fees, a clear-sailing clause, and a reverter clause greatly undermine the fairness of the proposed settlement. The Court should, for the foregoing reasons, and those which follow, reject the proposed settlement.

### 3. Class Counsel are not entitled to a fee of $14.111 million when they performed less than $2.9 million of work.

Class Counsel seek attorneys' fees in the amount of 27.8% of the Cash Settlement Fund, or $14,111,455.85. [Doc. 99, at p. 10]. Class Counsel ignore that the percentage of the total settlement allocated to fees tends to decrease as the total size of the settlement increases. *Gehrich v. Chase Bank United States*, 2016 U.S. Dist. LEXIS 26184, at *49 (N.D. Ill. Mar. 2, 2016). Indeed, empirical studies confirm this rule. In fact, such studies reveal that fees for settlements in the range of the one at bar range from 20.5% to 21.9%. *See* Theodore Eisenberg & Geoffrey P. Miller, *"Attorney Fees and Expenses in Class Action Settlements: 1993-2008,"* 7 J. Empirical Legal Stud. 248, 265 (2010) (finding that between 1993 and 2008, in settlements between $38.3 million and $69.6 million, the median attorney fee (inclusive of administrative costs) was 20.5% and the mean was 21.9%, while in settlements between $22.8 million and $38.3 million, the median attorney fee was 24.9% and the mean was 22.1%); Brian T. Fitzpatrick, *"An Empirical Study of Class Action Settlements and Their*

*Fee Awards,"* 7 J. Empirical Legal Stud. 811, 839 (2010) (finding that for settlements ranging from $30 million to $72.5 million, the median attorney fee was 22.3% and the mean was 24.9%); Theodore Eisenberg & Geoffrey P. Miller, *"Attorney Fees in Class Action Settlements: An Empirical Study,"* 1 J. Empirical Legal Stud. 27, 28 (2004) ("A scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases.").

In the end, both studies fully support Mrs. Hipshire's objection that the fees requested by Class Counsel in this case are grossly excessive.[9]

### 4. The lodestar method is the better approach to reward Class Counsel for their work in this case.

Class Counsel argue that the lodestar cross-check confirms that Class Counsel's fee request of 27.8%. [Doc. 99, at p. 25]. Significantly, however, "Class Counsel's collective lodestar, to date, is $2,652,716.71." [Doc. 99, at p. 23]. "In dividing the proposed fee award of $14.111 Million by the lodestar calculation of $2,652,716.71, the resulting lodestar multiplier is 5.3." [Doc. 99, at p. 24]. Here, Class Counsel have calculated a lodestar well above the range of multipliers approved as reasonable in this Circuit. *See e.g., In re Cendant Corp.*, 243 F.3d at 742 (3d Cir. 2001) (suggesting a lodestar multiplier of 3 "is the appropriate ceiling for a fee award"). Where, as here, the multiplier that must be used in order to obtain the result reached by application of the percentage-of-recovery method "is too great, the court should reconsider its calculation under the

---

[9]What's more, neither the Court nor the undersigned (and certainly not other Class members), have the requisite information before them to assess the reasonableness of the time spent by partners, associates, attorneys, research assistants or paralegals on any task in this litigation. By requesting a 5.3% multiplier of their purported actual charges, Class Counsel have opened the door to discovery of their time records and Mrs. Hipshire respectfully asks the Court to either require Class Counsel to turn over copies of those records or at least present them to the Court for an *in-camera* inspection.

percentage-of-recovery method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). Accordingly, this fee request should be denied and the lodestar approach should be utilized to calculate Class Counsel's fee, as the percentage method will inevitably result in over-compensation.

On the other hand, the lodestar method would likely fairly compensate them. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (explaining that the lodestar method has an advantage over the percentage method in that it alleviates "concerns that a percentage approach resulted in over-compensation for attorneys"). All of this appears to demonstrate the lodestar method is the more appropriate way to assess Class Counsel's value to the Class, with a percentage of recovery cross-check.

### 5. The record does not support the requested fee and point to Class Counsel's failure to adequately represent Class members.

Equally dubious is Class Counsel's assertion that they engaged in substantial work in the case before reaching a settlement. Their time and effort simply fail to justify $14.111 Million.

Notably, settlement negotiations began immediately after the case was filed and the docket demonstrates that the parties engaged in no formal discovery, no party or third-party depositions were taken, no adversarial class certification proceedings were held, no dispositive motions of any type were filed, not a single substantive motion was contested and decided, and the bulk of the lawyers' work appears to have come *after* the parties reached their settlement. In a nutshell, Class Counsel's fee request is exorbitant in view of the trifling amount of work completed.

All of this strongly suggests the impropriety of Class Counsel's settlement assessment, impugning not only their decision to settle at such an early stage, but also their fee request.

-17-

### C.    The Settlement Is Not Fair, Reasonable or Adequate Because the Release Is Overbroad in Failing to Track the Allegations of the Third Amended Complaint and Violates the Identical Factual Predicate Rule.

The proposed settlement provides no relief whatsoever for harm caused under Tennessee (and other states) common law fraud theories that might warrant recovery of punitive damages.  No such claims were pleaded or litigated in this action.    Plaintiffs merely asserted contract claims.  Nevertheless, the Release Class Counsel negotiated is broad enough to include such claims.

The Release, as written, instead of tracking the claims and allegations of the Third Amended Complaint, broadly releases all claims.  The broad sweep of any claim of any kind related to any of the four complaints, only the last of which are operative, may be argued by Justice later to encompass claims not pleaded in the Complaint, which are distinct and different claims it has paid no consideration to settle in this action.  Thus, the release improperly extended beyond the scope of the facts in this action, which were limited to the alleged misleading representations that everything in its stores was 40% off the regular price, when the "sale" price was in reality the regular price, not any claim of any kind.[10]  For that reason, the Release is woefully overbroad and patently unfair.

Courts routinely decline to approve settlements with such overbroad releases that potentially cover claims not within the operative complaint, particularly where, as here, class members will receive nothing in payment for such releases.  Based on the overbroad Release, this proposed settlement is neither fair, reasonable, nor adequate to the Class, as required by Rule 23(e).

_____

[10]*See Hendricks v. StarKist Co.*, 2016 U.S. Dist. LEXIS 20628, at *9-10 (N.D. Cal. Feb. 19, 2016); *Lovig v. Sears, Roebuck & Co.*, 2014 U.S. Dist. LEXIS 183105, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (holding that the factual basis for the release "impermissibly extend[ed] beyond the factual predicate of the operative complaint – here, the Fourth Amended Complaint" where the "terms of the release specifically identif[ied] claims that 'could have been asserted in the Action based on the facts pled in any of the complaints filed in the Action.'").

**D.      The Voucher Component of the Proposed Settlement Is Largely Illusory and Does Not Substantially Benefit Class Members.**

To boost the Court's perception of the proposed Settlement, Class Counsel maintain that Justice is providing over $402 Million in vouchers to Class members.  First, this purported $400 Million benefit is nothing more than a marketing gimmick to lure more than 18 million former Justice customers, who have already made approximately 80 million purchases from Justice, back into the stores to make still more purchases.  Sure, these vouchers are offered to Class members, but the only way a Class member can avail herself of the maximum benefit offered is to do more business with the very retailer who has already picked her pocket – Justice.

The modern view is for courts to view coupon-based settlements with skepticism, as the reality is that most consumers will not redeem the coupons that are issued, making the relief obtained worthless to the consumer.  *See* Christopher R. Leslie, "*The Need to Study Coupon Settlements in Class Action Litigation*," 18 GEO. J. Legal Ethics 1395, 1396-97 (2005) (Identifying three problems with coupon settlements: (1) it is doubtful that they "provide meaningful compensation to most class members," (2) they often fail to disgorge ill-gotten gains from the defendant, and (3) they may force class members "to do future business with the defendant").   *See Synfuel Technologies v. DHL Express (USA),* 463 F.3d 646, 653 (7th Cir. 2006)*;* Geoffrey P. Miller & Lori Singer, "*Nonpecuniary Class Action Settlements*," 60 Law & Contemp. Probs, 97, 108 (1997) (noting that for many consumers "the right to receive a discount [or a coupon] will be worthless").   *See also Synfuel Technologies*, 463 F.3d at 653.

**E.      Due to Their Limited Efforts, the Eight Named Plaintiffs Are Not Entitled to Incentive Awards of $6,000 Each.**

Finally, Class Counsel seek incentive awards of $6,000 for each of the named Plaintiffs, totaling $48,000, to be paid from the Cash Settlement Fund.  [Doc. 99, at p. 27].  Class Counsel suggest that because these named Plaintiffs purportedly "sacrificed their anonymity" and "attended meetings and/or phone conferences," they are entitled to such an award.  [Doc. 99, at p. 28].  However, there is no evidence that any of the Plaintiffs did much more than allow his or her name to be placed on a Complaint.  Their participation was, at best, *de minimis*: they did not have to respond to discovery, were not deposed, did not have to execute affidavits or declarations for class certification or summary judgment purposes, and obviously, did not have to testify.

The Court should consider " whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 718 (6th Cir. 2013); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013).  Frankly, it appears their only contribution was permitting Class Counsel to use their names to file the cases.  An award of $500 each would appear to be a reasonable award for the named Plaintiffs.

## V.      CONCLUSION

This Court should reject the settlement, deny Class Counsel's motion for attorney's fees, deny, in part, the request for incentive fees, declare that misrepresentation claims and claims for knowing/willful violation of CPA are not released for any of the Limited Class Recovery jurisdictions, and award such other relief as is just and necessary in this matter.[11]

---

[11]Mrs. Hipshire joins by reference any substantive objections made by other Class members not inconsistent with those made here.

**NOTICE OF INTENTION TO APPEAR AND REQUEST TO BE HEARD**

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Mrs.

Hipshire in the above-styled action.  Counsel requests that Mrs. Hipshire's counsel be allowed to be

heard via telephone at the Fairness Hearing.  If the Court will not permit participation by telephone,

counsel will make every effort to appear in-person.

Respectfully submitted, this 15th day of April, 2016.


*/s/ Miles Dumack* _____
Miles Dumack
PA ID#: 202278
DUMACK LAW
1621 McKean Street
Philadelphia, PA 19145
Tel: 267-259-3962
Email: miles@dumacklaw.com

Christopher T. Cain
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Tel: (865) 525-2150
cain@scottandcain.com

*Pro Hac To Be Filed*


DATED: April 15, 2016

Manda Hipshire

-21-

## CERTIFICATE OF SERVICE

I do hereby certify, that on April 15, 2016, a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF").  Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF.  A copy of the foregoing was also served on the following recipients, via U.S. First Class Mail, postage prepaid:

Justice Class Action Objections
P.O. Box 3240
Portland, OR 97208-3240

Clerk of the Court
United States District Court
Eastern District of
Pennsylvania
601 Market Street
Room 2609
Philadelphia, PA 19106

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103

MANSOUR GAVIN LPA
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114

*Class Counsel*

Gregory T. Parks
MORGAN, LEWIS &
BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

*Defendants' Counsel*

-22-

This 15th day of April, 2016.

/s/ Miles Dumack
Miles Dumack