## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA MEHIGAN<br>    Plaintiff | CIVIL ACTION |
| v. | NO.  15-724 |
| ASCENA RETAIL GROUP, INC., et al.<br>    Defendants | |

## OBJECTIONS TO CLASS SETTLEMENT

To The Honorable District Judge:

Jeffrey Weinstein, ("Objector"), files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Attorneys' Fees, Objections to Incentive Awards, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

## I.   Objector

Objector is a member of the settlement class, as shown by Objector's attached declaration. Objector's address, telephone number and signature are included in the attached declaration, which is incorporated herein by reference.

Objector intends to appear at the hearing and request that they be allowed to talk about these objections and to otherwise participate in the final approval hearing.

## II.  Objections to Class Certification

Objector objects to class certification for the following reasons.

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23 (a)(4)(permitting certification "only if … the representative parties will fairly and adequately protect the interests of the class"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members").  The MANUAL FOR COMPLEX LITIGATION 4th explains that the requirement means that the class representative and Class Counsel must represent the interests of *all* members of the class, which includes their interests vis-à-vis each other:

> Divergent interests must be taken into account and fairly accommodated before
> the parties negotiate a final settlement. Consider whether the counsel who have

negotiated the settlement have fairly represented the interests of _all_ class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added).

Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." _Amchem Prods., Inc. v. Windsor,_ 521 U.S. 591, 625 (1997).  Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." _Id._ at 625-26.

The MANUAL FOR COMPLEX LITIGATION also says that if significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass.  MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272.  The Supreme Court addressed the adequacy requirement in _Amchem Prods., Inc. v. Windsor,_ 521 U.S. 591 (1997) and _Ortiz v. Fibreboard Corp._, 527 U.S. 815 (1999), where it mandated separate class representatives _and counsel_ for subgroups within the class, even in the settlement context:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.  Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency.  In another asbestos class action, the Second Circuit spoke precisely to this point:  "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups.  The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class.    But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups."  In re Joint Eastern and Southern Dist. Asbestos Litigation, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom.  In re Findley, 993 F.2d 7 (1993).

_Amchem Prods., Inc. v. Windsor,_ 521 U.S. at 742.

The Supreme Court reiterated this rule in _Ortiz_:

> [I]t is obvious after Amchem that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel.  See _Amchem_, 521 U.S., at 627, 117 S.Ct. 2231 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed.

2

1998) (an attorney who represents another class against the same defendant may not serve as class counsel). FN31

> FN31. … In Amchem, we concentrated on the adequacy of named plaintiffs, but we recognized that the adequacy of representation enquiry is also concerned with the "competency and conflicts of class counsel." Id., at 626, n. 20, 117 S.Ct. 2231 … ; see also 5 Moore's Federal Practice § 23.25[3][a] (adequacy of representation concerns named plaintiff and class counsel).

*Ortiz*, 527 U.S. at 856.

### 1. The conflicts between the laws of different states render the class representatives inadequate

Separate class representatives must be appointed, even in a settlement class, when the laws of the states differ regarding the underlying claim. *Smith v. Sprint Communications Co.,* 387 F.3d 612, 614-15 (7th Cir.2004); *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 627 (3d Cir.1996) *aff'd,* 521 U.S. 591 (1997); *Cole v. General Motors Corp.*, 484 F.3d 717, 728 (5th Cir. 2007). This rule of law applies even in the settlement context. *Smith v. Sprint Communications Co.,* 387 F.3d at 614-15. As the Supreme Court has said, settlement is not a cure-all:

> [The] other specifications of [Rule 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). These requirements include the requirement that the class representatives' claims be typical of those of the class and that the representatives will adequately protect the class's interests. FED. R. CIV. P. 23(a)(3), (4).

The underlying claims in this case are based on state law. State laws vary on a variety of critical issues here: whether the conduct is actionable, whether there is even an "injury" when the consumer got exactly what they bargained for at exactly the price they agreed to pay, whether the voluntary payment rule bars recovery, the applicable statute of limitations, etc. Class members in some states had very strong claims, while class members in other states had no viable claims. Yet, the class representatives and counsel purported to represent all of them without separate representatives or subclasses.

Separate class representatives and counsel should have been appointed for states with dissimilar laws for the underlying claims. The settlement class here does not satisfy the adequacy or predominance requirements of Rule 23.

### 2. The fact that no litigation class could be certified disarmed the Plaintiffs and renders them inadequate to negotiate a class settlement

If the underlying *litigation* class cannot be certified, then the class representatives cannot adequately represent the interests of a settlement class:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Smith v. Sprint Communications Co.,* 387 F.3d 612, 614 (7th Cir.2004).   The representative parties here were similarly disarmed and, therefore, could not adequately represent the interests of the class.   *Powers v. Lycoming Engines*, 272 F.R.D. 414, 427 (E.D. Pa. 2011) (denying motion to certify proposed litigation class, and holding "[a] single nationwide class action is unmanageable when the law of many different jurisdictions must be applied."); *In re Actiq Sales & Marketing Practices Litig*., 307 F.R.D. 150, 172 (E.D. Pa. 2015) (denying motion to certify proposed litigation class asserting unjust enrichment claims and holding "[h]ere, the largest impediment to a finding of superiority is the difficulty of managing a class action in which the laws of [class plaintiffs'] various home states apply and individual questions of fact predominate."); *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 192 (E.D. Pa. 2007) (denying certification of proposed litigation class and holding "[c]onflicts among the laws of the various jurisdictions render a class action as proposed by the plaintiffs unmanageable.").

As Defendants themselves admit, "Multiple recent cases have dismissed similar claims by plaintiffs arguing that they were harmed by misleading price advertising, holding that consumers in these situations did not actually suffer any harm due to the alleged wrongful practices." Doc. 100, citing, *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) (affirming dismissal of complaint under Illinois Consumer Fraud Act alleging misleading price advertising because plaintiff had not "sufficiently pleaded that he paid more than the actual value of the merchandise he received."); *Mulder v. Kohl's Dept. Stores, Inc.*, No. 15-11377, 2016 WL 393215, at * 5-6 (D. Mass. Feb. 1, 2016) (dismissing claim under the Massachusetts Consumer Protection Act because there was no allegation that the plaintiff had actually been harmed as a result of misleading comparative price ads); *Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 50-52 (D. Mass. 2015) (holding that plaintiff who purchased a product with allegedly false advertised savings of 77% could not allege any damage since she "got exactly what she paid for, no more and no less").

### 3.   Conflict between subgroups within the class requires separate representatives and counsel

The Supreme Court has held that separate class representatives and class counsel must be appointed when there is a conflict between subgroups within the class.   *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), mandate separate class representatives and counsel in such a case.   In *Amchem* and *Ortiz* the Supreme Court held that there was inadequate representation, even though the basis for the claims was the same for both groups, because the *type* of damages sought differed.

Even within states here there are conflicts of interest.   For example, the statute of limitations for the DTPA claim under Texas law is 2 years.   TEX. BUS. & COMM. CODE §17.565.   When the case was filed in February 2015, claims prior to February 2013 were barred.   Yet the class representatives purport to represent the interests of class members who made purchases between

January 1, 2012 and January 31, 2013, without separate representation, and provided them the exact same relief as Texas class members whose claims were not barred by limitations.

## III. Objections to the Settlement

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlements that take place prior to formal class certification, as was the case here, require a higher standard of fairness:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). This is the position adopted by the Third Circuit in *GM Pick-Up Litig.,* 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."); the Second Circuit in *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"); and the Seventh Circuit in *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust,* 834 F.2d 677, 681 (7th Cir.1987) ("*Simer* and *Weinberger* emphasize ... that when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required. We agree...."). *See also Manual for Complex Litigation* § 30.45 (3rd. ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial scrutiny than approval of settlements where class certification has been litigated."). No circuit has held to the contrary. Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Third Circuit agrees:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted).

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### A. The Settlement has a presumption of unfairness

The proposed settlement is a claims-made settlement with a "reversion" to the Defendant and a "clear sailing" agreement regarding fees. The Federal Judicial Center calls this combination a "hot button indicator" of an unfair settlement:

> ***The addition of a "clear sailing" agreement*** (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) ***to an agreement with a reversion clause adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.***
>
> A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated settlement amount as a basis for attorney fees.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18 (emphasis added)(identifying this as a "hot button indicator," which the Center defines at p. 15 as a term of "potential unfairness on [its] face.").

The Court should disapprove the settlement as not being fair, reasonable or adequate.

### B. The settlement fails to take into account the strengths and weaknesses of the claims of different subgroups within the class.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because it fails to take into account the significant differences between the claims of various subgroups. The underlying claims in this case are based on state law. State laws vary on a variety of critical issues here: whether the conduct is actionable, whether there is even an "injury" when the consumer got exactly what they bargained for at exactly the price they agreed to pay, whether the voluntary payment rule bars recovery, the applicable statute of limitations, etc.

For instance, consider the claim under New Mexico law.

> Any person who suffers any ***loss of money or property***, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act [57-12-1 NMSA 1978] may bring an action … .

N.M. Stat. Ann. § 57-12-10 (B). Given that consumers did not lose any money or property here – they received the exact item advertised for the exact price advertised – New Mexico consumers have no viable claim. Conversely, Texas consumers have a viable claim:

> A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish

Tex. Bus. & Com. Code § 17.50.

Despite the fact that New Mexico consumers, as well as consumers in other states, have no viable claim, they are paid the highest amount of the three groups under the settlement, and the same as class members in Texas. That is per se unfair, unreasonable, and inadequate. The money being used to pay the claims of class members without viable claims should have been used to pay higher amounts to class members with viable claims.

### C. The amount of the requested attorneys' fees is evidence that the settlement is not fair, reasonable, or adequate.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the requested attorneys' fees are excessive. The amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate. MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335. As shown below, the requested fees here are excessive.

### D. The amount of the requested incentive award is evidence that the settlement is not fair, reasonable, or adequate.

Just as the amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate, Manual For Complex Litigation 4th § 21.7, p. 335, so too is the amount of the incentive awards. The incentive award is also a good indication of whether the class representatives put their interests ahead of the interests of the class. In this case, the settlement provides an incentive award of $6,000 to each class representative despite the fact that they did not have to appear at any deposition, testify, or be subject to any formal discovery. There is no evidence to substantiate that excessive amount, and the fact that they accepted such a large amount is indicative that they sold out the class for a higher payment to themselves.

## IV. Objections to an Award of Attorneys' fees

A Defendant only cares about the bottom line: how much it will cost to reach a settlement. The Defendant has no interest in how that amount is split between the class and class counsel. When class counsel seeks to shift some of the money a Defendant is willing to pay, it becomes an adversary of the class and the district court becomes a fiduciary to protect the class:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

7

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).

Objector objects to Class Counsel's fee request for the following reasons.

### A.  The attorneys' fee award must be based on the coupons actually redeemed

The Class Action Fairness Act provides:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712 (a).  The portion of the fees attributable to the non-cash benefits should be based on the benefits actually redeemed, not the maximum potential benefits.

The Federal Judicial Center calls a provision wherein claims are required and permitting the Defendant to keep the unclaimed coupons a "hot button indicator" of an unfair settlement. Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18 (identifying this as a "hot button indicator," which the Center defines at p. 15 as a term of "potential unfairness on [its] face.").  The Center recommends exactly what Objector proposes here:

> To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class.

*Id*. at 18.

The Court should limit Class Counsel fees to no more than fair percentage of the face value of the certificates actually redeemed.

### B.  No attorneys' fee should be awarded on amounts that revert to Defendant

The U.S. Supreme Court has distinguished between a "common fund" case and a "claims made" case, like this one:

> Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims.  Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 481, n. 5 (1980).  In a "claims made" case like this, Class Counsel's fees should be based on the benefits actually paid to class members.  No fee should be awarded on amounts that Defendants never actually pay.  Allowing Class Counsel to

base their fees on hypothetical claims rather than actual benefits to class members leads to many "troubling consequences:"

> Under the terms of the settlement, the portion of the fund not claimed by class members and not paid to respondents in attorney's fees and expenses was to revert to petitioners. … We had no occasion in *Boeing* [*Co. v. Van Gemert,* 444 U.S. 472 (1980)] to address whether there must at least be some rational connection between the fee award and the amount of the actual distribution to the class. The approval of attorney's fees absent any such inquiry could have several troubling consequences. Arrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class. And they could encourage the filing of needless lawsuits where, because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery, the actual distribution to the class will inevitably be minimal.

*International Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000)(Statement of Justice O'CONNOR respecting the denial of the petition for a writ of certiorari.). This settlement creates the same problems identified by Justice O'Connor, so the fee should be based on a reasonable percentage of the funds actually distributed to the class.

Indeed, that is exactly what the Federal Judicial Center recommends. The Center calls a provision wherein claims are required and permitting the Defendant to keep the unclaimed funds a "hot button indicator" of an unfair settlement. Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18 (identifying this as a "hot button indicator," which the Center defines at p. 15 as a term of "potential unfairness on [its] face."). The Center recommends exactly what Objector proposes here:

> To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class.

*Id.* at 18.

The Court should not award a fee that exceeds a reasonable percentage of the claims that will actually be paid to class members under the settlement.

### C.  Class counsel failed to itemize their tasks

In a case that involved not a single contested motion, not a single piece of formal discovery, that was filed in February of 2015 and immediately went straight to settlement talks that culminated in a term sheet on July 2, 2015, Plaintiffs claim to have spent thousands of hours on this case. The claimed hours are clearly excessive, but class counsel failed to produce anything other than

self-serving claims of the total hours spent. They have wholly failed to meet their burden of proving the reasonableness of the time they allegedly spent.

**D.  Class counsel failed to prove up their reasonable hourly rate**

Class counsel similarly provided merely a conclusory statement regarding hourly rates and wholly failed to meet their burden of proving the reasonableness of the rates.

**E.  If the Court uses the percentage method to set fees, the percentage should be 4%**

For the percentage of the fund method, courts should use a sliding scale percentage award in mega fund cases:

> "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent."

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2nd Cir. 2005), quoting, *In re Indep. Energy Holdings PLC,* 2003 WL 22244676, at *6 (S.D .N.Y. Sept. 29, 2003). The Federal Judicial Center's MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES supports a 4% fee in a mega fund case like this:

> In [mega] cases, you should be looking at a percentage of recovery far less than the typical range and perhaps as low as 4%. MCL 4th § 14.121. Generally, as the total recovery increases the percentage allocated to fees should decrease. Consider using a sliding scale to advance the goal of awarding reasonable fees in relation to the hours expended.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 31.

Given the alleged size of this settlement and the lack of any meaningful contested litigation, the percentage fee award should be 4%.


**V.  Objections to an Incentive Award**

Incentive awards must not give special treatment to named Plaintiffs; they are intended solely to compensate them for the time and risk they incur in bringing a lawsuit on behalf of the class. Here there is no showing that the proposed incentive awards are even close to a reasonable compensation for the time and risk the Plaintiffs incurred. There is no evidence at all of the time each class representative actually spent on the case. Given the lack of any contested hearings or formal discovery, $6000 is excessive.

**VI. Prayer**

Regarding the proposed class settlement, the Court is limited to a single decision:  approve or disapprove the settlement.  *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986).  The Court may not amend the settlement.  *Id.*  Thus, Objector prays that the Court disapprove the settlement and deny the motion to certify.

If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel and the request for incentive awards.

Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled.

Jeffrey Weinstein
518 East Tyler Street
Athens, TX 75751
903/677-5333
903/677-3657 – facsimile

## Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by mail by the Clerk of the Court on April ___14th___, 2016, including the following:

Justice Class Action Objections
P.O. Box 3240
Portland, OR 97208-3240

Clerk of the Court
United States District Court
Eastern District of Pennsylvania
601 Market Street, Room 2609
Philadelphia, PA 19106

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103

MANSOUR GAVIN LPA
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114

Gregory T. Parks
MORGAN, LEWIS &
BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Jeffrey Weinstein

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MELINDA MEHIGAN**
   Plaintiff

v.

**ASCENA RETAIL GROUP, INC., et al.**
   Defendants

**CIVIL ACTION**

**NO. 15-724**

## DECLARATION OF JEFFREY WEINSTEIN

1.  My name is Jeffrey Weinstein. I am capable of making this Declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2.  I am an individual who purchased children's apparel, fashion accessories, or other products from Justice during the period from January 1, 2012 to February 28, 2015. The parties sent me a notice indicating I am a class member and assigned me Access Code 2208979943962.

3.  My address is 518 East Tyler Street, Athens, TX 75751. My telephone number is 903/677-5333.

4.  I do not believe the proposed settlement is fair, reasonable, or adequate and I believe that approval of the settlement is not in the best interests of the class. My objections are set out in the Objections document to which this declaration is attached.

5.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 13th, 2016 in Athens, Texas.

Jeffrey Weinstein