# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL ROUGVIE *et al.,* | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:15-cv-00724-MAK |
| | ) | |
| ASCENA RETAIL GROUP, INC. *et al.,* | ) | |
| Defendants, | ) | |
| | ) | |

---

## NOTICE OF APPEARANCE AND SUPPLEMENTAL OBJECTIONS TO CLASS SETTLEMENT

### I.     Notice of Appearance by Counsel

Undersigned counsel, Paul Lawless, Esq., files his Notice of Appearance on behalf of class members and objectors, Leah Harrington, Beth Yoes, and Leighan Sonnier.  All three objectors timely mailed letters to the appropriate addresses and now are supplementing and re-confirming the contents of their letter objections. Undersigned counsel complies with the Notice instructions that a Notice of Appearance by counsel must be filed with the court by April 20, 2016.  Undersigned Counsel requests that he be provided notice of all filings through the ECF system.  Undersigned Counsel intends to appear at the Fairness Hearing and requests a reservation of right to speak at the Hearing.

### II.     Supplemental Objections

### II. Objections to Class Certification
#### A.  The settlement class is too diverse and unwieldy.

Separate subclasses need to be created and separate class representatives need to be appointed for each subclass.  *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 620, 742 (1997); *Smith v. Sprint*

*Communications Co.,* 387 F.3d 612, 614-15 (7th Cir.2004).  The variations of the laws of the different states render a "one fit all" settlement across the country futile.  *Id.*  States like Texas where these objectors reside have specific statutory provisions that provide relief.  *See* Tex. Bus. & Com. Code § 17.50.  Other states do not allow consumers any relief for these wrongful acts; presumably relying the state attorney general to protect their interests.

**B.  Settlements without class certification require a higher degree of scrutiny.**

It is axiomatic that settlements done without a class certification hearing require a closer look. The risk that a settlement is clouded by the incentive to get the case done is increased when a settlement arrives without a separate class certification proceeding.  *In re Pet Food Products Liability Litigation,* 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted); *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011,1026 (9 th Cir. 1998).

**C.  The proposed settlement includes a claims- made settlement, a reversion to the Defendants, and a clear-sailing provision regarding attorney fees.**

Commentators have identified these three issues --- claims made settlement, a reversion, and a clear-sailing provision as significant causes of concern on the fairness and adequacy of a settlement.  The obvious complaint is that the attorneys are receiving the benefits in fees while the class members are releasing their meritorious claims to shut the case down.

*The addition of a "clear sailing" agreement* (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) *to an agreement with a reversion clause adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.* [emphasis added]

A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated settlement amount as a basis for attorney fees.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18

**The projected payout is unreasonably low.**

Objectors, through counsel, incorporate verbatim large sections of Doc 112, OBJECTION BY

ROBERT GALLAGHER, REBECCA JOINER, ANDREA KALLAY, DAVID LEGENDRE,

YANETSY LOOR, DIANA AMAYA, TERRI HOLCOMB, DORLENE GOLDMAN AND EMILY

MOHR TO CLASS SETTLEMENT IN *ROUGVIE ET AL v. ASCENA RETAIL GROUP, INC., ET*

*AL*  in this objection pleading including  paragraphs D through E in this pleading.

      While the settlement purports to be valued at over $425 million, Defendants will

almost certainly payout less than $7 million in cash to class members to settle

damages claims worth approximately $800 million, with no minimum payout

required. That is because any unclaimed funds will revert back to Defendants. The

unclaimed money will likely exceed $20 million, as Defendants well know, based on

historical claims rates in similar settlements. Such a reverter undermines the deterrent

purpose of the state consumer protection laws that class counsel are purportedly

seeking to enforce. With the reverter, the proposed settlement is nothing more than a

wink and nod at Defendants' illegal conduct. This is further illustrated by the fact that

any amount of the $14 million in attorneys' fees not awarded to Plaintiffs' counsel

reverts back to Defendants.

Under the terms of the settlement, the maximum recovery of any class member is a voucher

representing 50% of their damages. See Plaintiffs' Memo in Support (Doc No. 98), pg. 35 of

94,n. 9 and 10. The total possible voucher value of the class is $400 million. Id. at pg. 18 of 94.

Because the vouchers represent a maximum recovery of half of a class member's damages, this

means that the parties have concluded that the total value of the class claim is over $800 million.

That $800 million presumably represents a fictitious discount of 40% off of $2 billion in sales.

To compensate the class members for their $800 million in damages, the parties have negotiated

for the creation of a settlement fund of $27.8 million against which class members can make

claims. The $27.8 million equals 3.5% of the total damages. But even that 3.5% of the total

damages will not be paid out in cash. Of the approximately 500,000 class members who have

filed claims to date, 72% chose to receive cash. See Plaintiffs' Memo in Support (Doc. No. 98),

pg. 33 of 94. Assuming, very generously, that all of those approximately 360,000 class members

who chose cash are treble recovery class members entitled to recover $20, the total cash claims

to date would amount to $7.2 million. (Obviously, that assumption is not correct, as some class

members are from single and limited recovery states and will only receive $13 and $7; thus,

Defendants will payout significantly less than $7.2 million in cash. But, given the paucity of the

data that the parties have provided in their briefing, a guesstimate is the best information

available.) That means that less than 1% of the total value of the damages claim will be paid out

in cash. What happens to the remaining $20 million plus of unclaimed cash? Astonishingly, this

amount reverts to Defendants. Settlement Agreement (Doc. No. 71-1) at ~ 41. So, for the 18

million class members who have been identified (Plaintiffs' Memo in Support (Doc. No. 98), pg.

26 of 94), Defendants will payout less than 40 cents per class member in cash. That is where the

proposed settlement fails.


The proposed settlement, which allows Defendants to payout less than 1% of the total damages

in cash, defeats the purpose of state consumer protection laws and should not be approved.

> **D. The Purpose Of Consumer Protection Statutes Is To Deter Deceptive Conduct In Consumer Transactions. This Settlement, As Drafted, Will Do Nothing To Deter Violations Of Any Consumer Protection Statute In The Country.**

**1.   An Essential Purpose Of Consumer Protection Statutes Is To Deter Deceptive Conduct. The Cash Available For Class Members Represents A Miniscule Percentage Of The Total Damages.**

Consumer protection laws were drafted, not with the intent of stuffing money into the pockets of class action attorneys, but to nip deceptive practices in the bud. For example:

- Under Illinois law, the "purpose of [Illinois'] Consumer Fraud Act [is] to deter all forms of unfair and deceptive conduct[.]" *Heastie* v. *Community Bank of Greater Peoria,* 690 F. Supp. 716, 722 (N.D. 1ll. 1988);
- The Texas Deceptive Trade Practices Act has an "announced purpose" of deterring violations of the Act. Mercer v. Long Mfg. N.c., Inc., 665 F.2d 61,74 (5th Cir. 1982);
- The New Jersey Consumer Fraud Act "was enacted to deter fraudulent practices by merchants in the marketplace[.]" Boyko v. Am. Int'l Group, Inc., 2012 U.S. Dist. LEXIS 59125, at *57 (D. N.J. Apr. 26, 2012);
- The D.C. Consumer Protection Act "is meant to protect the public and deter potentially fraudulent conduct[.]" Wells v. Allstate Ins. Co., 2006 U.S. Dist. LEXIS 4694, at *17-18 (D. D.C. Jan. 24, 2006);
- Under Colorado law, the "'CCPA is a remedial statute intended to deter ... deceptive trade practices committed by businesses in dealing with the public.'" *Seabron* v. *Am. Family Mut. Ins. Co.,* 2012 U.S. Dist. LEXIS 59650, at *7 (D. Col. Apr. 30, 2012);
- The legislative intent of the Idaho CPA is to deter deceptive trade practices. *State ex rel. Lance* v. *Hobby Horse Ranch Tractor* & *Equip. Co.,* 129 Idaho 565, 567 (1996); and
- North Dakota's Consumer Fraud Act is intended "to deter future seller misconduct[.]" *A & R Fulgeberg Farms, Inc.* v. *Triangle Ag, LLC,* 2010 U.S. Dist. LEXIS 34325 (D. N.D. Apr. 7,2010).

The current settlement, which will allow the vast majority of the purported settlement fund to revert back to Defendants, will not deter future seller misconduct.

**2.   Dishonest Corporations Are Deterred From Committing Deceptive Practices By Being Compelled To Disgorge Their Ill-Gotten Gains.**

Dishonest conduct is deterred by requiring a defendant to disgorge its ill-gotten gains. The Supreme Court of California observed that protecting "'unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society[,]'" *Fletcher* v. *Sec. Pac. Nat'l Bank,* 23 Cal.3d 442, 451 (1979). In furtherance of that goal, the *Fletcher* court observed that disgorgement of "improperly obtained moneys" serves as a "strong deterrent." *Id.*

At 450. The *Fletcher* court cited the Southern District of New York for the proposition that "'[t]o permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom.'" *Id.* at 451, quoting *Securities & Exchange Comm'n* v. *Golconda Mining Co.,* 327 F. Supp. 257,259-60 (S.D. N.Y. 1971).

Other courts agree that disgorgement deters future violations of the law. "The Seventh Circuit has explained that disgorgement is a remedial measure to deter future violations of the securities laws and to deprive wrongdoers of their ill-gotten gains .... In determining the amount of disgorgement, all doubts should be resolved against the defrauding party." *SEC* v. *Randy,* 38 F. Supp. 2d 657, 674 (N.D. Ill. 1999). The Tenth Circuit noted that "[d]isgorgement, which deprives wrongdoers of their ill-gotten gains, deters violations of the law by making illegal activity unprofitable." *United States* v. *RxDepot, Inc.,* 438 F.3d 1052,1061 (10th Cir. 2006). Here, the parties offer no evidence that Defendants have disgorged their ill-gotten gains. The parties' briefs do not disclose Defendants' profits on their scheme. Instead, the evidence submitted by the parties indicates that amount disgorged into the settlement fund will mostly revert back to Defendants-resulting in nothing more than temporary, illusory disgorgement. Such minimal disgorgement is highly unlikely to deter retailers contemplating implementing such schemes in the future.

> **3.   Where, As Here, Deterrence Is A Statutory Goal, A Settlement That Permits Unclaimed Funds To Revert To Defendants Have Not Been Approved.**

Under Third Circuit law, "[r]eversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *In re Baby Prods. Antitrust Litig.,* 708 F3d 163, 172 (3d Cir. 2013). Here, the concern is undermining the deterrent effect of state consumer protection statutes. In *Six Mexican Workers,* 904 F.2d 1301,1308 (9th Cir. 1990), the Ninth Circuit explained that "reversion to the defendant *may* be appropriate when *deterrence is not a goal* of the statute[.]" (Emphasis added.) But, "reversion is not appropriate where deterrence is a statutory goal[.]" *Harris* v. *Vector Mktg. Corp.,* 2011 U.S. Dist. LEXIS 48878, at *38 (N.D. Cal. 2011). "[W]hen faced with statutes that have deterrence as a goal, courts have declined to allow reversion of unclaimed settlement funds to a settling defendant[.]" *Diamond Chem. Co.* v. *AkzoNobel Chems. B. V,* 517 F. Supp. 2d 212,218 (D. D.C. 2011).

In *La Parne* v. *MonexDeposit Co.,* No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010), Plaintiffs brought an FLSA claim. In rejecting a reverter to the defendant, the court noted that "Congress intended the FLSA to have a deterrent effect." *Id.* at *4. "Requiring Defendant to pay the full amount of the settlement fund serves this deterrent goal." *Id.* The court expressly rejected the defendant's argument that a low claims rate made a reverter appropriate: "Relatively low interest in the settlement does not mean that Defendant should receive a windfall benefit as a result of absent class members failing to submit claims.... Requiring Defendant to pay the full amount of the settlement fund serves this deterrent goal." *Id.* Here, deterrence is a statutory goal, and a settlement that allows such a substantial reversion to Defendants should not be approved. In this case, it appears that under the settlement as currently structured approximately $20 million of unclaimed class funds will revert to Defendants, with

Defendants paying less than $7 million in cash as compensation for 18 million defrauded class members across the country.

In comparison, in *Perez* v. *Tween Brands,* Lake County, Ohio Common Pleas Case No. 14C0011l9, a case challenging the same practice in Ohio involving 588,474 known class members, one of the counsel for the objectors, Dworken & Bernstein, acting as class counsel in *Perez,* negotiated for a minimum payment by the defense of $3 million. That is *one* state. There are *fifty* states involved in this case, and Defendants are paying out only a little more than double the Ohio settlement. This is inexcusable in the context of consumer protection claims with deterrence as a goal. Additionally, other courts have indicated that reverter clauses raise concerns of collusion: "[R]everter clauses are generally 'suspect' and need to be viewed cautiously since they 'undercut [] the deterrent effect of class actions' and can 'suggest a lack of full diligence in representing the class.'" *Sylvester* v. *Cigna Corp.,* 369 F. Supp. 2d 34, 45 (D. Me. 2005).

### 4.    The Coupon Settlement In This Case Will Not Deter Dishonest Conduct.

As one district court noted, in passing the Class Action Fairness Act, "Congress put significant limits on so-called 'coupon settlements' which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for the class attorneys." *Kearns* v. *Ford Motor Co.,* 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. 2005) (overruled on other grounds). Vouchers that require a class member to do business with the defendant are coupons. *Martina* v. *L.A. Fitness International, LLC,* No. 2:12-cv-2063 (WHW), 2013 WL 5567157, *5 (D.N.J. Oct. 8,2013). The majority of "vouchers" that are offered to class members here are just that. The coupons available to the majority of class members only offer a discount off of a purchase of $25 or more. Settlement Agreement (Doc. No. 71-1) at ~ 40 ("limited recovery" class members

receive a coupon for $10 off a purchase of $25 or more, and "single recovery" class members receive a coupon for $20 off a purchase of $25 or more).

Coupon settlements pose three common problems: "they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation." *Figueroa* v. *Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007). Those problems are present here.

The issuance of coupons by Defendants is not meaningful compensation to the class members. The class members in this case who have indicated a preference for cash or coupons have overwhelmingly chosen cash. Of the class members who responded to class notice, 72% of them rejected Defendants' coupons. Plaintiffs' Memo in Support (Doc. No. 98), pg. 33 or 94. That is not surprising. After all, not everyone who was purchasing children's apparel in 2012 is still purchasing children's apparel today. The coupons are also not meaningful compensation because they require the class members to do future business with Defendants in order to use the "benefit." A Massachusetts court described one coupon settlement as "little more than a $2.58 million marketing program that will benefit class members only if they continue to use [the defendant's] products[.]" *In reMassachusetts Smokeless Tobacco Litig.,* 23 Mass. L. Rptr. 719 (Sup. Ct. 2008). The same is true here.

The settlement will also not result in Defendants disgorging their ill-gotten gains. As discussed above, the settlement results in Defendants paying out, at most $7 million in cash (less than 1%

of the damages at issue). The coupons do not add anything significant to the amount Defendants will have to payout. First, as mentioned above, the majority of the vouchers are actually coupons which require the class member to spend money at the Defendant's stores. Second, while some vouchers are redeemable like gift cards, the parties have provided no evidence as to the cost to the defense. The parties have provided no information regarding the likely redemption rate of people using these vouchers, and no information regarding the cost to Defendants of honoring the vouchers. After all, a retailer's marginal cost of honoring a coupon is not the same as the face value of the coupon. See *Martina,* 2013 WL 5567157, at \*7. Finally, the parties have not discussed the benefits to Defendants in issuing thousands of coupons to encourage current and former customers to shop at Defendants' stores, and how that benefit will offset any detriment to Defendants incurred in issuing the coupons.

In sum, the parties have introduced no evidence that this settlement would serve one of the primary purposes of state consumer protection statutes on which the claims are based: deterring dishonest conduct by retailers. The evidence is that Defendants made hundreds of millions of dollars in sales based on a deceptive marketing campaign, which promised class members savings of 40%. Those savings were fictional. Although the parties have recognized that the class members have hundreds of millions of dollars in damages, less than 1% of those damages will be compensated in cash. This settlement will result in Defendants' retaining the lion's share of their ill-gotten gains. Put another way: the bigger the lie, the bigger the profits.

### 5.   The Reverter Of Unawarded Attorneys' Fees Will Not Deter Defendants' Dishonest Conduct.

Not only will Defendants get a reverter for any unclaimed funds by class members, they also negotiated for themselves a reverter of any unawarded attorneys' fee. This does not promote

deterrence goals, but rather suggests collusion. "[W]hen the parties arrange for fees not awarded

to revert to defendants rather than be added to the class fund," that is a sign of collusion. *In re*

*Bluetooth,* 654 F.3d at 947, citing *Mirfasihi* v. *Fleet Mortg. Corp.,* 356 F.3d 781, 785 (7th Cir.

2004). The Ninth Circuit describes such an agreement a "kicker arrangement." *In re Bluetooth,*

654 F.3d at 949. The Ninth Circuit explained: "If the defendant is willing to pay a certain sum in

attorneys' fees as part of the settlement package, but the full fee award would be unreasonable,

there is no apparent reason the class should not benefit from the excess allotted for fees. The

clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the

class of that full potential benefit if class counsel negotiates too much for its fees." *Id.*

### E.  Attorney fees are unreasonable and excessive.

The Ninth Circuit has spoken concisely regarding the actual conflict between

Class counsel and the class at the fee stage of the proceedings.

During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, ... become[s] a claimant against the fund created for the benefit of the class." This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

*In re Mercury Interactive COlp. Securities Litigation,* 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).

The fees should be based on the coupons actually redeemed as set forth in The Class

Action Fairness Act.  No fee should be awarded for the amount that reverts to the

Defendant.   Class counsel has not met their burden to itemize their tasks; identify

what fees are attributable to contract attorney time, carry their burden on a reasonable hourly rate, or justify their percentage fee sought.

F.   **Objectors hereby adopts and incorporates any and all other properly-filed objections not inconsistent with the foregoing as if set forth fully herein.**

WHEREFORE. Objectors Leah Harrington, Beth Yoes, and Leighan Sonnier respectfully requests that this Court sustain these Objections and enter such Orders as are necessary and just to adjudicate these Objections so as to alleviate the inherent unfairness, inadequacy and unreasonableness of the proposed Settlement and request for attorney fees.


Respectfully submitted,

/s/ Paul A. Lawless
PAUL A. LAWLESS
Attorney for the Objectors Harrington, Yoes and Sonnier
PA. Bar#: 33843
160 Abbey Terrace
2nd Floor
Drexel Hill, PA 19026
PH: 610-803-4557
lawlesspa@gmail.com


## CERTIFICATE OF SERVICE

I HEREBY certify that on April 20, 2016, I electronically filed a PDF of the foregoing NOTICE OF APPEARANCE AND SUPPLEMENTAL OBJECTIONS TO CLASS SETTLEMENT with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.


 /s/ Paul A. Lawless
Paul A. Lawless