IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA MEHIGAN, et al. <br><br> Plaintiffs, <br><br> v. <br><br> ASCENA RETAIL GROUP, INC. d/b/a JUSTICE STORES <br><br> Defendants. | Case No. 2:15-cv-00724-MAK <br><br> CIVIL ACTION <br><br> OBJECTIONS OF SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR |



FILED
APR 25 2016
MICHAEL E. KUNZ, Clerk

Susan House objects to the settlement

## I. INTRODUCTION

### A. Summary of the Settlement

The claims against Justice clothing were initially made February 12, 2015 alleging various violations tantamount to misleading false advertisements. Justice prolifically advertised both in stores and online boasting "40% off entire store." It appeared that the discount, although advertised as for a limited period of time, was ongoing. Luring customers to purchase products on this basis, the customers bought clothing under the false pretense that it was 40% off, when in actuality the prices represented as the discount prices were the regular prices of the garments.

Within a few months from the first filing, there were several other Plaintiffs in other parts of the United States that filed similar claims and the Court consolidated all the cases on April 8, 2015. Defendants assert in their Memorandum supporting the Settlement that they produced "3,131 pages of documents" during that time period, while simultaneously having settlement discussions for "five (5) months between February and July 2015" until a settlement was reached on July 2, 2015. For the following two (2) months, the parties spent their time working out the terms of the Settlement.

The Settlement consists of cash reimbursements, vouchers, and gift card options depending upon if the customer has receipts and the state in which the customer resides. Defendants are to pay a Cash Settlement Amount of $50,800,000.00 into an escrow account and agreed to approve up to $8,000,000.00 for Claims Administration Expenses, with any

remaining funds to go back into the Net Settlement Fund. Defendants agreed that class counsel for Plaintiffs can apply for a Fee Award not exceeding the amount of $15,000,000.00 and Plaintiffs can receive an Incentive Award of $6,000.00.

### B. The Standard for Approving a Proposed Class Action Settlement

In reviewing the settlement, the district court has the duty to ensure the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2) Appellate courts accord considerable deference to the district court's "knowledge of the litigants and of the strengths and weaknesses of their contentions".... and recognize that the district court "is in the best position to evaluate whether the settlement constitutes a reasonable compromise." *Grant v. Bethlehem Steel Corp. v. Bethlehem Steel Corporation*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and Class Members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfashi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The Court must be protective of unnamed Class Members. "In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that "settlement is fair and not a product of collusion, and that the Class Members' interests were represented adequately.'" *Grant*, citing *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986). *See also Silber v. Mahon*, 957 F. 2d 697, 701 (9th Cir. 1992) ("Both the class representative and the courts have a duty to protect the interests of absent Class Members.")

Courts also may refuse to approve a settlement if insufficient notice is provided to Class Members to protect their due process rights. Fed. R. Civ. Proc. 23(e)(1) specifies that "direct notice" of a proposed settlement must be provided "in a reasonable manner to all Class Members who would be bound by the proposal."

Recent Ninth Circuit case law has established certain additional guidelines for considering the fairness of class action settlements. In *In re Bluetooth Headset Products Liability Litig.*, 654 F. 3d 935 (2011), the court noted that "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during

settlement. Such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.*, at 946, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Circ. 1998), *et al*. The court observed, "Collusion may not always be evident on the face of the settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* (citations omitted) The court noted that the following may be signs of such impropriety," (2) "when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*, at 947.

## II.   ARGUMENT AND OBJECTIONS

### A. The Settlement Consideration is Illusory

The Settlement involves a cornucopia of benefits, mostly vouchers, whereas in order to receive the benefit, a certain amount of money has to be spent on purchases, which equates to a coupon. The Claim Form confusingly requests the customer to check mark one of four boxes and labels them "Option 1 Cash," "Option 1 Voucher," "Option 2 Cash," "Option 2 Voucher." To add to the confusion, the two "Option 1" boxes reference a "Benefit Matrix" that describes the type and amount of recovery depending upon which State the customer resides. This broad array of benefits complicates the ability to evaluate the overall fairness of the settlement.

#### 1. *The vouchers are coupons and provide little value to class members*

"And some claimants are entitled only to "coupons" … — a warning sign of a questionable settlement." *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). In *Synfuel Technologies, Inc. v. DHL Express*, the Seventh Circuit reversed the settlement approved in the trial court because the pre-paid shipping envelopes were "in-kind compensation" akin to a coupon, forcing class members to continue doing business with defendants, and subject to higher scrutiny by the trial court.

3

One third of the "vouchers" for Option 1 are essentially coupons offering $10 off with the caveat of a minimum purchase of $25 (aka 40% off) or $20 off with a minimum purchase of $25 (aka 80% off). This is not a settlement, this is another advertising campaign that only benefits Justice by obliging the class members to shop at Justice. Defendants have created a continuing business relationship where the value to the class is indiscernible.

It is unclear whether the vouchers are "stackable," meaning they can be combined with other discounts. A class member has no way of distinguishing this voucher from a regular coupon when attempting to use it in store or online. The exhibit attached to the Settlement exemplify the vouchers which look exactly like the prolific 40% off coupons that got Justice involved in these lawsuits. If these vouchers are not stackable, there are no protocols in place to ensure class members receive the benefit of the settlement.

Since the vouchers are potentially not stackable or transferable, they cannot be valued at face value. This makes the actual value of the vouchers differ significantly from the face value, and difficult to ascertain the actual value to the class. The Class Action Fairness Act, particularly 28 U.S.C. § 1712 was born of recognition that "[c]ompensation is kind and worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). Coupons are particularly problematic when class members need to spend their own money to realize any benefit from the settlement. Here class members need to spend $10 or $25 of their own money in order to take advantage of the vouchers. Having been misled to purchase discounted items from Justice in the past, many class members may prefer not to have a business relationship with Justice. The coupon offer is simply Justice marketing.

### 2. *The cash payments are no more than average discounts already provided by Justice*

Option 2 on the Claim Form offers either a 14% cash payment or 20% off coupon with documentation on Justice purchases only if the class member "made more than five (5) purchases or a single Justice purchase of $105 or more…" A new customer signing up on the Justice website is eligible for 15% off their next purchase. The 14% cash back creative option is no more than a discount 1% below Justices' current offer to new customers and the 20% voucher is nothing more than a coupon. The class members that have spent the most

4

money at Justice will likely receive the same amount as the Option 1 cash payment with no documentation, e.g. the $105 minimum purchase equates to $14.70.

With all of these "Options" varying from State to State, the Settlement makes no explanation as to why or the basis for the amount of incentives. The common marketing practice for Justice has been and remains the merchandise is considerable discounted. These vouchers are simply the normal discounts Justice already provides their customers. There is no justice for the class members.

### 3. *Reversion of the remainder of funds to Justice rewards bad behavior*

The court should have all red flags going up with a settlement where all remaining funds in the escrow account revert back to Justice. Document 71-1, p. 54-55. "Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement." *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 177-178 (3d Cir. 2013). This settlement is a self-serving marketing campaign where the only groups that truly benefit are the attorneys and the Defendants.

### B. Attorney's Fees Disproportionate to Fee Award

Under CAFA, "the portion of any attorney's fee award to class counsel that is attributable to ... coupons shall be based on the value to class members of the coupons that are redeemed," not the value of coupons available. 28 U.S.C. § 1712(a). This calculation is absent from the settlement and needs to be determined in order to fairly and adequately assess the fee award. Similar to this case, *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 197 (3d Cir. 2013), the court vacated the attorneys' fee award and have the Court consider reducing the "attorneys' fees based on the level of direct benefit provided to the class." It is requested that the court appoint an independent agency to determine the reasonable accuracy of the distribution of the funds that will result from the claims process in order to evaluate the proportionality of the fee award as suggested by the court in *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 192 (3d Cir. 2013).

There also needs to be a "relationship between the amount of the fee awarded and the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Whereupon the attorney fees are disproportionate to the amount of underlying relief, there is exists a disparity.

5

California courts largely favor the lodestar method of calculating attorney's fee award by multiplying the market billing rate by the hours reasonably expended. The issue in class actions with many law firms, wanting their proverbial "piece of the pie" is making them accountable for actual hours worked, expenses that were necessary to the case, and hourly rates commensurate with experience and market rates. Aptly stated, the court in *Hensley* pointed out that it is "far from inevitable that attorneys will attempt to charge those hours to their client," referring to "fee request hours that are excessive, redundant, or otherwise unnecessary." Id at 434.

Here, counsels spent merely five (5) months working on the consolidated cases, with all their time spent negotiating a settlement that was quickly achieved. It is not feasible to expect a court to accept a fee award of fifteen million dollars when counsel have only expended five months' time working on the case. The other objector, aptly stated in his Objections regarding this type of "'clear sailing" agreement' is a red herring for an unfair deal. The Court should find this questionable without supportive billing records reflecting how Class Counsel actually reached their lodestar calculation. Regardless of the lodestar, the fees actually being sought are still 29.5% of the total Settlement Fund seem excessive given this type of case especially in light of the exceedingly short amount of time spent on litigation.

It is hereby requested that the Court to consider requiring Class Counsel to produce accurate and detailed contemporaneous billing records for verification and comparison to the Declarations submitted in support of the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards. It is also requested that the Court appoint an independent agency or person to review such records to verify the validity and analyze for a variety of claims including, but not limited to, duplication and miscalculation of the lodestar.

**III.   JOINDER IN OTHER OBJECTIONS**

Objector joins in, adopts and incorporates by reference as though fully stated herein each objection by other class members, which are not inconsistent with these objections.

//
//
//

## IV. CONCLUSION

For the foregoing reasons and all others to be presented at oral argument, this objector requests that the court sustain her objections and grant the following relief:

- Upon proper hearing, sustain these Objections.
- Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

Dated: April 15, 2016                    By: _____
                                              Susan House, Pro Se

                                         4436C Lubbock Drive
                                         Simi Valley, CA 93063
                                         Phone: 805-915-8864
                                         Email: dochousemom@gmail.com

cc:
**COURT**
Clerk of the Court United States District Court
Eastern District of Pennsylvania
601 Market Street Room 2609
Philadelphia, PA 19106

**PLAINTIFFS' COUNSEL**
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103

MANSOUR GAVIN LPA
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114

**DEFENDANT'S COUNSEL**
Gregory T. Parks
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

7