## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | : |
| Plaintiffs, | : COMPLAINT - CLASS ACTION |
| | : JURY TRIAL REQUESTED |
| v. | : CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc.,et al., | : |
| Defendants. | : |

### [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2016, upon consideration of the Motion for Appeal Bond, it is hereby **ORDERED** that the Motion is **GRANTED**. Objectors Gretchen A. Carey, Sheila Ference, Michelle Vullings, Robert Gallagher, Rebecca Joiner, Andrea Kallay, David Legendgre, Yanetsy Loor, Diana Amaya, Dorelene Goldman, Terri Holcomb, Emily Mohr, Amanda Hipshire, Kelsey Foligno, Vicki Mager, Melissa Schultz, Leah Harrington, Leighann Sonnier, Beth Yoes, Stephen Cassidy, and Pamela Sweeney ('the Objectors") must (1) post an appeal bond in the amount of $121,200 within 10 days of the date of this Order; or (2) file a notice of dismissal of appeal.   The Objectors shall be jointly and severally liable for the posting of the bond.

_____
**Kearney, J.**
**United States District Court judge**

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | COMPLAINT - CLASS ACTION |
| Plaintiffs, | JURY TRIAL REQUESTED |
| v. | CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc.,et al., | |
| Defendants. | |

### PLAINTIFFS' MOTION FOR APPEAL BOND

Plaintiffs Carol Rougvie, Marguerite Sinkler Gilder, Caroline Mansour, Melinda Mehigan, Fonda Kubiak, Carol Cowhey, Kara Bell and Tiffany Bolton ("Plaintiffs"), by and through their attorneys, hereby move this Court, pursuant to Federal Rule of Appellate Procedure 7 and this Court's inherent powers, to require Objectors Gretchen A. Carey, Sheila Ference, Michelle Vullings, Robert Gallagher, Rebecca Joiner, Andrea Kallay, David Legendgre, Yanetsy Loor, Diana Amaya, Dorelene Goldman, Terri Holcomb, Emily Mohr, Amanda Hipshire, Kelsey Foligno, Vicki Mager, Melissa Schultz, Leah Harrington, Leighann Sonnier, Beth Yoes, Stephen Cassidy, and Pamela Sweeney to post an appeal bond in the amount of $121,200, whereby objectors shall post such a bond for which they will be jointly and severally liable.

The Class also asks the Court to hear this motion on an expedited briefing schedule such that the resources of the Settlement Fund can be preserved.

Dated: September 23, 2016                    Respectfully submitted,


                                             BY: */s/ Kevin E. Raphael*
                                             William Pietragallo, II, Esquire
                                             Kevin E. Raphael, Esquire
                                             PIETRAGALLO GORDON ALFANO
                                             BOSICK & RASPANTI, LLP
                                             1818 Market Street, Suite 3402
                                             Philadelphia, PA 19103
                                             Tel: 215.320.6200
                                             WP@pietragallo.com
                                             KR@pietragallo.com

                                             -and-

                                             MANSOUR GAVIN LPA
                                             Ernest Mansour, Esquire
                                             Anthony Coyne, Esquire
                                             Brendon P. Friesen, Esquire
                                             emansour@mggmlpa.com
                                             acoyne@mggmlpa.com
                                             bfriesen@mggmlpa.com
                                             1001 Lakeside Avenue, Suite 1400
                                             Cleveland, OH 44114
                                             Tel: 216.523.1500

                                             Edward J. Westlow, Esquire
                                             EJW@Whitehall1756.us
                                             Bank of America Center
                                             1111 East Main Street, 16th Floor
                                             Richmond, VA 23219-3532
                                             (804) 780-0305

                                             -and-

                                             Robert Mansour, Esquire
                                             23611 Chagrin Blvd., Suite 270
                                             Beachwood, Ohio 44122
                                             (216) 514.3127
                                             Rmansour@competitivetitle.com

                                             *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | : |
| Plaintiffs, | :     COMPLAINT - CLASS ACTION |
| | :     JURY TRIAL REQUESTED |
| v. | :     CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc., et al., | : |
| Defendants. | : |

### PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR APPEAL BOND

Plaintiffs' attorneys, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin, LPA, and Edward Westlow, Esq. ("Class Counsel") file this brief in support of their Motion for Appeal Bond. Note that while Objectors Gretchen A. Carey, Sheila Ference, Michelle Vullings, Robert Gallagher, Rebecca Joiner, Andrea Kallay, David Legendgre, Yanetsy Loor, Diana Amaya, Dorelene Goldman, Terri Holcomb, Emily Mohr, Amanda Hipshire, Kelsey Foligno, Vicki Mager, Melissa Schultz, Leah Harrington, Leighann Sonnier, Beth Yoes, Stephen Cassidy, and Pamela Sweeney ("the appealing objectors") have appealed, many have jointly appealed and a large number are represented by the same counsel.[1] Per Fed. R. App. 4(a)(4), the deadline to appeal was September 8, 2016. Accordingly, the matter is now ripe for adjudication.

### I.    THE PROPRIETY OF AN APPEAL BOND

Rule 7 of the Federal Rules of Appellate Procedure sets out that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."[2] Fed. R. App. P. 7. Appeal bonds

---

[1] Accordingly, the number of appellants is misleading in that there are effectively ten distinct groups of appellants.

[2] While the law is less established as to the imposition of bonds through a court's inherent powers, it is also within this Court's power to mandate a bond pursuant to that inherent authority. A Court has broad inherent authority to police its own affairs in managing the cases before it. See generally Chambers v. NASCO, 501 U.S. 32, 49 (1991).

apply equally to class action objectors as they do to conventional appellants.  See e.g., Glaberson v. Comcast Corp., CV 03-6604, 2015 WL 7887788, at *1 (E.D. Pa. Dec. 3, 2015); see also In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig., 11-MD-2247 ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012) ("Appeal bonds are often required on appeals of class action settlements or attorneys' fee awards because the appeal effectively stays the entry of final judgment, the claims process, and payment to all class members.").

   a.   **The First Four Factors**

   Courts look to a number of factors in determining where the imposition of an appeal bond is warranted, including, but not limited to:

> (1) whether the amount of the bond is necessary to assure adequate security; (2) the risks that the appellant will not pay the costs if it loses the appeal; (3) the appellant's financial ability to post the bond; and (4) whether the amount of the bond will effectively preclude pursuit of the appeal.

Id.

   As to the first and second factor, the Objectors are spread throughout the country, with the vast majority outside the jurisdiction of the Third Circuit.  This weighs in favor of requiring an appeal bond, given the consequent difficulty that would inhere in pursuing costs from multiple objectors in multiple jurisdictions.  See, e.g. id. (because appellant resided in Tennessee, that supported imposition of an appeal bond); In re Initial Pub. Offering Securities Litig., 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (requiring appeal bond where, *inter alia*, "the Objectors are dispersed around the country"); In re Certainteed Fiber Cement Siding Litig., 2270, 2014 WL 2194513, at *2 (E.D. Pa. May 27, 2014) (noting that because the objectors resided "outside of the Third Circuit [that] will arguably make it more difficult for the settling class to collect their costs should they prevail on the appeal" and finding that that fact weighed in favor of requiring

---

This inherent authority includes the Court's power to require security for costs. See Ehm v. Amtrak Bd. of Directors, 780 F.2d 516, 517 (5th Cir. 1986); Zebrowski v. Hanna, 973 F.2d 1001, 1006 (1st Cir. 1992).

an appeal bond); Embry v. ACER Am. Corp., C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012).  Moreover, already evincing a disinclination to pay in an appropriate manner, Objector Sweeney has violated Fed. R. App. P. 3(e) by failing to pay the fee that must be filed with a Notice of Appeal.

As to factors three and four, there is no evidence that the objectors will face an "impermissible barrier," Adsani v. Miller, 139 F.3d 67, 76 (2d Cir. 1998), in their ability to appeal should a bond be required.  For example, Objector Carey is the wife of Robert Carey, a partner at Hagens Berman Sobol Shapiro LLP, one of the largest plaintiffs' firms in the nation, and it has been reported that they recently purchased a $3.25 million mansion in Scottsdale, Arizona.  http://www.azcentral.com/ story /money / real-estate /done -deals/2015/07/05/july-expensive-homes-sold-metro-phoenix-past-week/29737065/.   It therefore appears highly unlikely that Objector Carey will face any substantial burden in pursuing her appeal.  See e.g., Comcast, 2015 WL 7887788, at *4 ("objector, a practicing attorney, has the apparent financial ability to post the bond, and we find that the bond requirement will not effectively preclude his pursuit of the appeal"); In re Air Cargo Ship. Services Antitrust Litig., 06MD1775 JG VVP, 2010 WL 1049269, at *2 (E.D.N.Y. Mar. 22, 2010) (because objectors had "not submitted any financial information" the court "conclude[d] that the appellants ha[d] the financial ability to post the requested bond.").  There is no evidence that Objector Vullings, represented by Brent Vullings (himself, a professional objector) or the other objectors, are unable, by themselves or through counsel, to post such a bond.  It is highly likely the Objectors have not themselves borne the burden of litigating their objections given the low value of their claims and the undercurrent of gamesmanship that too often underlies class action objections;[3] rather it is nearly certain that

---

[3] The incentives that drive most class action objectors (or perhaps more aptly, their counsel) and the deleterious effects that those objectors have on the class are well known and ill regarded.  In re Polyurethane Foam Antitrust

their well-heeled attorneys have agreed to cover those costs.[4]  For example, publicly available copies of Christopher Bandas's retainer agreements with objectors in other matters (Mr. Bandas represents Objector Foligno here) show that Mr. Bandas, and not his client, are responsible for litigation costs.  (Ex. A, § 3.3 & pg. 5; Ex. B § 3.3).[5]  In any event, at least one court has required objector's counsel to post a bond in addition to the objector.  Baker v. Urb. Outfitters, Inc., 01 CV 5440 LAP, 2006 WL 3635392, at *2 (S.D.N.Y. Dec. 12, 2006) (appellant and counsel required to post $50,000 each).

b.      **The Merits & Motives Underlying the Objections**

While it remains unclear if a District Court must weigh the merits of the appeal or evidence of bad faith or vexatious conduct,[6] for the same reasons set out in this Court's opinion of July 29, 2016 and myriad filings previously docketed in this action by Plaintiffs, Plaintiffs

---

Litig., 1:10 MD 2196, 2016 WL 1452005, at *3 (N.D. Ohio Apr. 13, 2016) (describing the conduct of serial objectors as "resemble[ing] scavenger ants on a jelly roll, scrambling to extort money from the approved settlements"); Brian T. Fitzpatrick, The End of Objector Blackmail?, 62 Vand. L. Rev. 1623, 1634 (2009) ("[A]ppeals by objectors can disrupt settlements by requiring class counsel to expend resources fighting appeals, and, more importantly, by delaying the point at which settlements become final.").  As one commentator noted:

> In at least two ways, professional objectors harm the class members whose interests they claim to represent. First, professional objectors' almost invariably groundless objections delay the provision of relief to class members who, in most instances, have already waited years for resolution. Second, by feeding off the fees earned by class counsel who took the risk of suing defendants on a purely contingent basis, as is the normal practice in class actions, professional objectors create a disincentive for class counsel to take on such risky matters. That disincentive clashes with the public interest, repeatedly recognized by courts, to incentivize class counsel to handle such cases.

Bruce D. Greenberg, Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements, 84 St. John's L. Rev. 949, 951 (2010); see also John E. Lopatka & D. Brooks Smith, Class Action Professional Objectors: What to Do About Them?, 39 Fla. St. U.L. Rev. 865, 909 (2012).

[4] If Objectors' contentions in fact have merit, then they have nothing to lose in that a successful appeal would allow them to recover the full sum of their bond and much more.

[5] Which is to say nothing of the fact that those retainers state that Mr. Bandas requires tight limits ($5,000) on the sums his clients may recover, despite Mr. Bandas requesting hundreds of thousands more which itself is in contravention of his agreements with clients.  (Ex. A. § 3.2, Ex. B § 3.2); Pa. RPC 1.5 (conflicts of interest), 1.8(i) (excessive fees); Tx. Disc. RPC 1.04 (conflicts of interest), 1.08(h) (excessive fees).

[6] Regardless of the motives of the Objectors and the merits (or lack thereof) of their appeals, a bond is still warranted per the first four factors.

assert that the issues objectors have broached with this Court are squarely frivolous.[7]  See In re

Ins. Brokerage Antitrust Litig., CIV A 04-5184 GEB, 2007 WL 1963063, at *2 (D.N.J. July 2,

2007) ("[A] district court, familiar with the contours of the case appealed, has the discretion to

impose a bond which reflects its determination of the likely outcome of the appeal." (citations

omitted); Comcast, 2015 WL 7887788, at *3 n. 5 (finding that it is unclear whether a court is to

consider the merits of an appeal in adjudicating a motion for appeal bond); Barnes v. Fleetboston

Fin. Corp., CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) (requiring a

bond and explaining that "professional objectors can levy what is effectively a tax on class action

settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is

gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal

is purportedly raised, gains nothing."); Hill v. State St. Corp., CIV.A. 09-12146-GAO, 2015 WL

1734996, at *3 (D. Mass. Apr. 16, 2015) ("Given the lack of merit in the Franzes' objections and

Cain's status as a serial objector, a bond is appropriate here.")[8]; In re Polyurethane Foam

Antitrust Litig., 1:10 MD 2196, 2016 WL 1452005, at *1 (N.D. Ohio Apr. 13, 2016).

---

[7] Suggestive of frivolity, for example, is the fact that Objector Vullings provided 9 reasons she believes the settlement must be rejected but provided but three citations to case law, and scant argument amounting to little more than conclusory, boilerplate prose, in order to support those arguments.  She has therefore filed a notice of appeal for issues that she has largely, if not entirely, failed to preserve for appeal and which evince a tendency to object not in order to benefit the class but to create the predicate for extortionate behavior.  See e.g., Maverick Recording Co. v. Harper, 598 F.3d 193, 198 (5th Cir. 2010) (cursory legal arguments do not preserve an issue for appeal); In re Espino, 806 F.2d 1001, 1002 (11th Cir. 1986); U.S. v. Spillman, 924 F.2d 721, 724 n. 1 (7th Cir. 1991); c.f. Hannan v. City of Philadelphia, 408 Fed. Appx. 581, 583 (3d Cir. 2010) (unpublished); Fields v. Lapeer 71-A Dist. Ct. Clerk, 2 Fed. Appx. 481, 483 (6th Cir. 2001) (unpublished) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Fields's conclusory objections are insufficient to preserve his appeal of the district court's judgment." (internal citations omitted)).  Objector Vullings has even appealed aspects of the settlement which she clearly has no standing to object to (e.g., the settlement's requirement that there be evidence of class membership) and regarding issues she never even attempted to object to (e.g. compensation to named plaintiffs).

Meanwhile Objector Cassidy, an attorney, claims that the settlement should have covered conduct in 2011 and parts of 2015 but there is no evidence that the deceptive practices at issue occurred during those periods and, in any event, the release is co-extensive with the facts of the Complaint which does not cover the time periods that Objector Cassidy points to.  (Third Am. Compl., Docket No. 70, ¶ 4).  Thus, it appears that Objector Cassidy may very well have objected without reading the Complaint or the Settlement Agreement.

[8] Mr. Cain represents Objector Hipshire in the case before this Court.

A review of the objections reveals not just a lack of merit but also a lack of good faith. To begin, Ms. Carey has no substantial evidence that she is even a member of the class. Her only evidence that she shopped at Justice is her lone filing in this Court, which is devoid of any evidence other than her own uncorroborated assertions. She has no receipts of her purchases and is not within Justice's database.[9] She has not provided any substantive details of her purchases, other than vague statements that she purchased items from Justice on several occasions. This is squarely inconsistent with the Settlement Agreement itself which mandates that an Objector provide details (e.g., date and location of purchase) or documentary evidence of their class membership and standing (e.g. receipts).  (Settlement Agreement, Docket No. 71-1, at 49). This suggests that Ms. Carey and her attorney may not have read the Settlement Agreement. Allowing class members to object without adequate proof of standing is squarely problematic.[10] Yet Ms. Carey would like to delay relief to the Class in order to pursue her meritless objections. Curiously, Ms. Carey's objection was signed by her alone as "pro se" and not by counsel, (Docket No. 123), yet it is very likely the work of her attorney, Amy Wilkins, replete with Bluebook formatted citations and legalese, which itself would violate Rule 11 and the ethical rules that guide the legal profession.[11]

---

[9] A search by the Claims Administrator yielded no evidence of Objector Carey's membership in the class. (Ex. C).

[10] See e.g., Feder v. Elec. Data Sys. Corp., 248 Fed. Appx. 579, 581 (5th Cir. 2007) (unpublished) ("Allowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence [that is, the objector's own word] would inject a great deal of unjustified uncertainty into the settlement process."); In re Initial Pub. Offering Securities Litig., 21 MC 92 SAS, 2011 WL 3792825, at *2 (S.D.N.Y. Aug. 25, 2011) (following Feder); In re WorldCom, Inc. Securities Litig., 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005) ("Moulton did not file a proof of claim and therefore does not have standing to bring her objections.").

[11] See e.g., Ellis v. State of Me., 448 F.2d 1325, 1328 (1st Cir. 1971) ("If a brief is prepared in any substantial part by a member of the bar, it must be signed by him."); Delso v. Trustees For Ret. Plan For Hourly Employees of Merck & Co., Inc., CIVA 04-3009 AET, 2007 WL 766349, at *18 (D.N.J. Mar. 6, 2007) ("The Court further finds that Shapiro's ghostwriting activity violated the [Rules of Professional Conduct], the spirit of Fed.R.Civ.P. 11 and L.Civ.R. 11.1, as well as public policy."); Laremont-Lopez v. S.E. Tidewater Opportunity Ctr., 968 F. Supp. 1075, 1079–80 (E.D. Va. 1997) ("the practice of ghost-writing legal documents to be filed with the Court by litigants designated as proceeding pro se is inconsistent with the  procedural, ethical and substantive rules of this Court."); see generally Fed. R. Civ. P. 11.

Similarly, Sheila Ference's filing raises questions.  While she scanned a copy of a claims form and submitted it to the Court, that form, curiously, omits the required access code. (Ference Objection, Docket No. 105).  The Claims Administrator has searched for Ms. Ference in their database and has found no evidence that she is a class member (i.e. she did not receive nor submit an access code and provided no proof of purchase).  (Ex. C.)  Even taking Ms. Ference at her word, she has only claimed that she made a purchase from Justice sometime between January 1, 2012 and February 28, 2015.  (Id. at 1).  However, as an Ohio resident, this settlement only covers Ohio residents that purchased items from Ohio stores between January 1, 2012 and June 30, 2012 and from September 1, 2014 to February 28, 2015.  (Settlement Agreement, Docket No. 71-1, at 40).  In other words, even if Ms. Ference's vague claim is true, it is still more likely than not that her purchase did *not* fall within the applicable period given that the Ohio state court action covered *most* of the time period here.   Her vague assertions without details or other corroborating evidence also falls well short of the aforementioned mandates of the Settlement Agreement, (Docket No. 71-1, at 49), and again suggests that Ms. Ference and her attorney[12] may not have read the Settlement Agreement before objecting.[13]

Other Objectors have also shown a lack of familiarity with the settlement which raises red flags concerning not just the merits of their filings but also their motivations.  For example, Objectors Harrington, Sonnier, and Yoe's chief objection is that they did not want voucher relief, (Docket No. 135, Ex. 17-19).  However, the Settlement Agreement and the claims form could not have made it clearer that *cash* relief was readily available to all class members.  Accordingly, it is likely that they have not even reviewed the documents underlying their objections.

---

[12] Ms. Ference is represented by Mardi Harrison, who has representing an objector in at least one other class action. Dimare v. Shop-Vac Corp., 4:12md2380 (M.D. Pa.).

[13] The notion that an objector and his/her attorney would delay relief to the Class by appealing a case they have not even taken the time to review and understand is inappropriate and an affront to the judicial system which exists to afford relief to those harmed by the acts of another.

The Objectors here are no more than armchair quarterbacks who, without the benefit of actually litigating the case and understanding its contours, have chosen to second guess the decisions of Class Counsel in order to hopefully qualify for a fee from this Court or extort one from Class Counsel, who have no intention of bankrolling extortionate actors.  As one court aptly noted:

> class actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.

In re Cardinal Health, Inc. Securities Litig., 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). These Objectors, realizing that they have not substantially benefited the class such as to provide reason for this Court to award them fees, let alone sizable fees,[14] have instead attempted to use the leverage of appeal to make up for those shortcomings.

Objectors Gallagher, Joiner, Kallay, Legendre, Loor, Amaya, Holcomb, Goldman, and Mohr ("the Gallagher Objectors") are all represented by counsel for plaintiffs in various similar suits against Justice, including the Ohio state action.[15]   Accordingly, it appears that these Objectors are simply attempting to extort class counsel through an appeal.  These Objectors, disappointed that they were incapable of wresting lead counsel status from Class Counsel

---

[14] See e.g., Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir. 2002) (fees for objectors require "substantial" benefit to the class); Spark v. MBNA Corp., 289 F. Supp. 2d 510, 513 (D. Del. 2003) (following Microsoft and explaining that "the cases in which objectors are awarded attorneys' fees are few and far between"); Petruzzi's Inc. v. Darling-Delaware Co., Inc., 983 F. Supp. 595, 599 (M.D. Pa. 1996) (objector who provided substantial benefit provided fee based on lodestar with no multiplier); Sobel v. Hertz Corp., 53 F. Supp. 3d 1319, 1335 (D. Nev. 2014).

[15] Joiner v. Tween Brands, No. 1:15-01590 (D. Md.); Gallagher v. Tween Brands, 4:15-00833 (E.D. Mo.); Kallay v. Tween Brands, 2:15-02238 (S.D. Oh.), Perez v. Tween Brands, No. 14-cv-001119 (C.C.P Lake Cnty. Oh.); see also Loor v. Tween Brands, Inc., 615CV953ORL37DAB, 2015 WL 6704579, at *1 (M.D. Fla. Nov. 3, 2015).

through the Multi-District Litigation Panel, have instead attempted to gain compensation collaterally by engaging in the extortionate practice of professional objectors. In fact, part of these Objectors' claims is that the Court should have awarded the Objectors' counsel $6.6 million in fees in this litigation (more than Class Counsel was initially awarded), an assertion that has no basis in law and reveals their position to be little more than pleading sour grapes, a manifestly vexatious motive. Moreover, those Objectors have no standing to pursue those claims, in that the manner in which the finite attorneys' fees are awarded to counsel would not harm, or even effect, the named Objectors' relief (i.e. they would not receive more or less for their claims given the settlement structure). What is more, these Objectors continue, on appeal, to pursue boilerplate, vague, and non-substantive claims, revealing their appeals to be little more than an indolent attempt to hold up the settlement in order to exact an undue fee. In the Concise Summaries of the Case docketed in their appeals, (3d. Cir. 16-3471, 16-3472, 16-3473), they have identified their "issue" on appeal as "[t]he settlement terms do not meet the requirements for approval under substantive law and federal civil rule 23."[16]

Moreover, Objector Foligno (herself an attorney and serial objector)[17] is represented by serial objectors Glenn Manochi and Christopher Bandas. (Docket No. 113, at 6). Both are notorious in the class action world with Mr. Bandas being perhaps the most noted serial objector in the country, criticized by both litigators and the bench alike.[18] Mr. Bandas "has been

---

[16] Perhaps the only way that filing could be vaguer and less substantive would be if it read "Objectors object to the objectionable settlement."

[17] See In re Static Random Access Memory Antitrust Litig., 2011 U.S. Dist. LEXIS 112915, *1 (N.D. Cal. Sept. 23, 2011) (ordering Objector Foligno to be deposed); In Re: Countrywide Financial Corp. Customer Data Security Breach Litigation, 3:08md1998, Docket No. 334 (W.D. Ky.).

[18] As one District Court explained, "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." In re Cathode Ray Tube (CRT) Antitrust Litig., 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted). For a non-exclusive list of Mr. Bandas's and Mr. Manochi's unsuccessful objections and appeals, see https://www.serialobjector.com/persons/4 (Mr. Bandas); https://www.serialobjector.com/persons/379 (Mr. Manochi); see also Landsman & Funk, P.C. v. Skinder-Strauss Associates, 2:08cv3610 (D.N.J.)

repeatedly admonished for pursuing frivolous appeals of objections to class action settlements. . .

[and is] a known vexatious appellant." <u>In re Gen. Elec. Co. Securities Litig.</u>, 998 F. Supp. 2d

145, 156 (S.D.N.Y. 2014).   Mr. Bandas's extortionate practices[19] have proven so unscrupulous

that he has been sanctioned multiple times throughout the country. <u>Embry v. ACER Am. Corp.</u>,

C 09-01808 JW, 2012 WL 3777163, at *2 (N.D. Cal. Aug. 29, 2012) (holding Mr. Bandas in

contempt for his actions representing an objector); <u>Dennings v. Clearwire</u>, No. C10–1859JLR,

Docket No. 166 (W.D. Wash. Aug. 20, 2013) (revoking Mr. Bandas's authorization to practice in

the Western District of Washington for his actions representing an objector); <u>see also</u> <u>In re</u>

<u>Hydroxycut Mktg. and Sales Practices Litig.</u>, 09CV1088 BTM KSC, 2013 WL 5275618, at *5

(S.D. Cal. Sept. 17, 2013) ("In light of Mr. Bandas's scheme, the Court finds that Ms. McBean's

objections were filed for the improper purpose of obtaining a cash settlement in exchange for

withdrawing the objections."); <u>In re Alan Barinholtz</u>, 2010pr0070 (Ill.) *available at*

---

(Mr. Manochi);<u>Hahn v. Massage Envy Franchising</u>, 3:12cv153, (S.D. Cal) (Mr. Manochi); <u>Bodnar V. Bank of America</u>, 5:14-cv-03224 (E.D. Pa) (Mr. Manochi and Mr. Bandas).

According to a study by the Federal judicial Center, which mentions Mr. Bandas over 100 times, Mr. Bandas has filed 24 notices of appeal in class settlement in just three circuits between 2008 and March 2013. http://www.fjc.gov/public/pdf.nsf/lookup/class-action-objector-appeals-leary-fjc-2013.pdf/$file/class-action-objector-appeals-leary-fjc-2013.pdf .  Insofar as the study only covers three Circuits and given Mr. Bandas's tendency to pursue objections without entering his appearance, the true number of cases in which he has objected to and appealed is likely well north of 100.  The undue burden that Mr. Bandas places on the justice system is therefore immense.

[19] In at least one case, Mr. Bandas's client admitted that he had "purchased [the] computer [at issue in the class action] in order to be able to object to th[e] proposed settlement and to the proposed award of attorneys' fees," making a mockery of the class action device and the judicial system as a whole. <u>Kacsuta v. Lenovo</u>, 8:13cv00316, Docket No. 79 (C.D. Cal.).  In another case, Mr. Bandas:

> told [an agent of the Defendant] that he didn't care about changing one word of the settlement. Mr. Bandas explained that he could tie up the settlement for two to three years during the appeals process and that he was willing to wager that the settling parties would gladly pay him close to $400,000 to make the objections go away.

<u>In re Hydroxycut Mktg. and Sales Practices Litig.</u>, 09CV1088 BTM KSC, 2014 WL 815394, at *1 (S.D. Cal. Mar. 3, 2014) (internal cites omitted); <u>see also Dennings v. Clearwire Corp.</u>, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. 2013) ("Plaintiffs eventually deposed Mr. Morgan and Mr. De La Garza [Mr. Bandas's clients] and learned that Mr. Morgan had no personal objection to the settlement, neither of them had read the settlement agreement or their own objections to it, and both have worked with the same attorney on other class action cases."); <u>In re Baby Products Antitrust Litig.</u>, 708 F.3d 163, 169 n. 3 (3d Cir. 2013) (noting that Mr. Bandas filed an objection and appeal but did not even bother to file a brief in the Circuit Court).

https://www.iardc.org/rd_database/rulesdecisions.html (disciplining Mr. Bandas's local counsel for simply acting as a pawn to pursue Mr. Bandas's meritless objections). Even professional objector Ted Frank of the Competitive Enterprise Institute/Center for Class Action Fairness, who previously worked with Mr. Bandas, has since labeled Mr. Bandas's tactics "repugnant" and "unethical."[20] http://blogs.reuters.com/alison-frankel/2015/06/25/the-ted-frank-interview-i-was-doing-it-for-the-greater-good/ (reporting that Mr. Frank received $250,000 from Mr. Bandas for his work aiding Mr. Bandas in objector cases).

In this case Mr. Bandas has chosen not to enter his appearance. This appears to be a strategic choice. By entering an appearance he would squarely fall within this Court's jurisdiction, exposing him to potential sanctions. See e.g. Hydroxycut, 2014 WL 815394, at *3 (Mr. Bandas avoided a sanctions motion because the court determined it did not have jurisdiction given his failure to enter an appearance in the matter).[21] As the Honorable Valerie E. Caproni of the Southern District of New York recently noted in chastising Mr. Bandas: "[y]ou usually don't have lawyers doing what you do, which is expressly not filing a notice of appearance apparently so you can avoid the possibility of sanctions."[22] Garber v. MLB, 12cv-3704, Docket No. 596 (S.D.N.Y. July 14, 2016), at 19. It is clear that Mr. Bandas and his ilk represent the very sort of vexatious litigants that the judiciary need not, and should not, tolerate.

Notably, Mr. Bandas has been repeatedly sanctioned for failing to properly post an appeal bond. In re Wal-Mart Wage and Hour Empl. Practices Litig., 206CV00225PMPPAL, 2010 WL 2132094, at *1 (D. Nev. May 25, 2010) (sanctions for failing to post an appeal bond); Dennings

---

[20] Mr. Bandas or other objectors may argue that they have been involved in successful appeals in the past. However, Class Counsel is aware of no such victories (i.e. cases where their objection and appeal ultimately resulted in remand as opposed to that of another objector), other than Mr. Bandas's role with Ted Frank in Eubank v. Pella Corp., 753 F.3d 718 (7th Cir. 2014), and has no reason to believe that Objectors will otherwise buck the trend of their lengthy losing streak. In any event, even a broken clock is right twice a day.

[21] This suggests that Class Counsel will have difficulty collecting sums due from Mr. Bandas following the appeal.

[22] As will be set out below, this troubling practice is unfortunately not limited to Mr. Bandas.

v. Clearwire, No. C10–1859JLR, Docket No. 166 (W.D. Wash. Aug. 20, 2013) (revoking his pro hac vice admission due to failure to post full bond amount).   If Mr. Bandas flouts judges' directives, it stands to reason that Class Counsel will have an even more difficult time pursuing costs from him and his client after the appeal.

Similarly, Objector Vullings[23] is represented by Brent Vullings.  Brent Vullings is also a serial objector whose reputation precedes him:

> the attorney representing Objector Caligiuri, Brent Vullings of the Vullings Law Group, has recently filed objections in at least four other cases and has demonstrated tactics that were deemed so suspicious as to sway courts to grant requests to conduct discovery into the value of his claims, and in other cases to prompt motions for sanctions for filing frivolous claims. It appears that these two Objectors are either serial objectors themselves or are represented by counsel who are themselves serial objectors. Courts routinely reject such attempts to interfere with class action settlements based on questionable motives.

Khoday v. Symantec Corp., 11-CV-180 (JRT/TNL), 2016 WL 1637039, at *13 (D. Minn. Apr. 5, 2016), report and recommendation adopted, 2016 WL 1626836 (D. Minn. Apr. 22, 2016) (internal citations omitted); see also e.g., In Re: Domestic Drywall, 15-3560 (3d. Cir); Chaudhri v. Osram Sylvania, Inc., 2:11cv5504 (D.N.J.); Allen v. JPMorgan Chase, 1:13cv8285 (N.D. Il.).

Objector Pamela Sweeney is also a serial objector, as is her husband Patrick Sweeney who often represents her;[24] See https://www.serialobjector.com/persons/154 (Pamela);

---

[23] Michelle Vullings appears to be the wife of Brent Vullings.

[24] See also Roberts v. Electrolux Home Products, Inc., CV13-2339-CAS VBKX, 2014 WL 4568632, at *12 (C.D. Cal. Sept. 11, 2014) ("The Court has considered the objections of Mr. Sweeney, overrules them in their entirety, finds that they are not made for the purpose of benefitting the Class[], and finds that they are meritless in all respects. The objections are filed by counsel who routinely files objections to class settlements."); Larsen v. Trader Joe's Co., 11-CV-05188-WHO, 2014 WL 3404531, at *7 (N.D. Cal. July 11, 2014) ("attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings. Lison Decl. 6. While not formally appearing for his wife and daughter here, Patrick Sweeney has previously represented them as objectors"); Gay v. Tom's of Maine, Inc., 2016 WL 3577504 (S.D.Fla. Mar. 11, 2016 ) ("Both the Sweeney objection and Weaver objection are facially specious and without merit. Sweeney's and Weaver's objections are the same recycled, boilerplate arguments they have previously (and unsuccessfully) used in the past in a number of other class action settlements."); In re Polyurethane Foam Antitrust Litig., 1:10 MD 2196, 2016 WL 1452005, at *3 (N.D. Ohio Apr. 13, 2016)

https://www.serialobjector.com/perso ns/115 (Patrick).[25]  In fact, Objector Sweeney's objection, while filed pro se, at times tracks her filing in yet another class action she objected to, Barron v. Snyders-Lance, Inc., 13cv62496, Docket No. 201 (S.D. Fl.), as well as a class action to which her husband objected, Brown v. Hain Celestial Group, 11-cv-03082, Docket No. 365 (N.D. Cal.). Thus, not only are her objections meritless boilerplate, they appear to have been unethically ghostwritten by her attorney husband.

What is more, Objector Hipshire is represented by Christopher Cain, yet another serial objector.[26]  Objectors Harrington, Yoes,[27] and Sonnier are represented by serial objector Paul Rothstein.[28]  Their objection is mostly a verbatim cut-and-paste job of the Gallagher Objector's

---

(excoriating Mr. Sweeney for submitting "objections [that] amount to pure boilerplate language, wholly untethered from the actual terms of the settlement. [The objectors] neither sought to argue nor appeared at the fairness hearing. Their behavior needlessly increased the burdens on Class Counsel and this Court. Conduct of this sort falls squarely within the definition of vexatious conduct.").

[25]  Mr. Sweeney is currently facing disciplinary proceedings relating to as of yet unproven allegations that he practiced law with a suspended license and stole over $1 million from companies he had an ownership interest in. Wisconsin Law J., Aug. 2015, at 12, *available at* https://www.scribd.com/doc/281251734/Wisconsin-Law-Journal-August-2015.

[26]  While Mr. Cain appears to be primarily a personal injury attorney, he has objected to many class action settlements. Bezdek v. Vibram, 1:12cv10513, (D. Mass); Hill v. State St. Corp., 794 F.3d 227, 228 (1st Cir. 2015); In re Netflix Privacy Litigation, 5:11cv379 (N.D. Cal); Chambers v. Whirlpool, 8:11cv1733 (C.D. Cal); see also Kolinek v. Walgreens, 1:13-cv-04806, (N.D. Il.), Docket No. 192 (putting in question whether Mr. Cain was representing the objector).  To Class Counsel's knowledge, Mr. Cain has never had a Court of Appeals find his objector-appeal to be meritorious.

[27]  Ms. Yoes, of Beaumont, Texas, appears to be related to professional objector attorneys William and Stuart Yoes, also of Beaumont.  See In re UnitedHealth Group Inc. PSLRA Litig., 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (labeling Stuart Yoes and three other objectors' attorneys "remoras" (i.e. suckerfish) and, in "emphatically den[ying,]" their motion for fees finding that "Objectors' Counsel are entitled to an award equal to their contribution … nothing."); Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 227 (D.N.J. 2005) (William Yoes); Shield v. Bridgestone/Firestone, Inc., CAUSEB-170462, 2004 WL 546883, at *35 n. 17 (Tex. Dist. Mar. 12, 2004) (William Yoes).  Whether the Yoes attorneys are involved in this action remains unclear.

[28]  While Paul Lawless entered his appearance on the matter for these objectors, Mr. Lawless relayed to Class Counsel that his role was simply that of local counsel and that Mr. Rothstein was the primary representative of these objectors.  For a non-exhaustive list of Mr. Rothstein's professional objector cases see https://www.serialobjector.com/persons/41; see also In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.. Brown, v. American Home Products Corp., 1203, 2002 WL 32154197, at *14 (E.D. Pa. Oct. 3, 2002) (refusing to provide Mr. Rothstein attorneys' fees for his objections given their failure to benefit the settlement); Azizian v. Federated Dept. Stores, Inc., C-03-3359 SBA, 2007 WL 425850, at *1 (N.D. Cal. Feb. 8, 2007) (denying fees to Mr. Rothstein and other objectors); Blessing v. Sirius XM Radio Inc., 507 Fed. Appx. 1, 3 (2d Cir. 2012) (unpublished); In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 236 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004); Tennille v. Western Union, No. 1:09cv938 (D. Co.).

filing. Compare Harrington, Yoes, and Sonnier Objections (Docket No. 127) with the Gallagher Objections (Docket No. 112).

Oddly, while Objectors Mager and Schultz jointly objected, their objections repeatedly tout the accomplishments of the *Perez* counsel (who are, at least nominally, representing other objectors). (Docket No. 135, Ex. 15). Meanwhile, Ms. Schultz's signature on her objection appears markedly different than that appearing on her Notice of Appeal, which also raises the specter of impropriety. (Compare Docket No. 135, Ex. 15 with Docket No. 207). In any event, the two are represented on appeal by serial objector[29] George A. Cochran.[30] Mager and Schultz allege that a claims form should not be required given Justice's customer database, yet class members will receive relief even if they do not file a claim, (Docket No. 135, Ex. 15; Settlement Agreement, Docket No. 71-1, at 39). Accordingly, Mager and Schultz's objections suggest that they may not have reviewed the settlement to which they have objected.

Objectors' conduct is particularly troubling in that a number of Class Members will receive vouchers redeemable at a store aimed at a particular age demographic. Thus, a not insignificant number of Class Members may substantially suffer at the hand of an eminently small number of unscrupulous objectors (i.e. by "growing out of" Justice's items and making their choice of relief less than ideal). Twenty-one objectors have filed appeals (although many are represented by the same counsel).[31] 45 members of the class objected in total, out of a class of 18,422,784. Accordingly, only 0.0036% of the class objected, which is *222 times below the*

---

[29] https://www.serialobjector.com/persons/91; see also In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.. Brown v. American Home Products Corp., 1203, 2002 WL 32154197, (E.D. Pa. Oct. 3, 2002); In Re Toyota Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation, 8:10ml2151 (S.D. Cal); In Re: Vioxx Prod. Liability, 14-30109 (5th Cir.), Automotive Parts Anti-Trust Litigation, 2:12md2311 (D. Mi.); Dennis v. Metromail Corp., D-1-GN-96-004451 (TX. Travis Cnty.).

[30] The two appeared at the trial court pro se but within 2 hours of Class Counsel attempting to contact the "pro se" Objectors, Mr. Wallace entered his appearance in the Third Circuit, a curious timeline.

[31] For example, the Gallagher Objectors are all represented by the same counsel but have, for reasons ostensibly unrelated to a concern for judicial economy, split their appeals in three.

*norm* in approved class action settlements.[32]  See Theodore Eisenberg & Geoffrey Miller, The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 Vand. L. Rev. 1529, 1558 (2004) (the mean percentage of the class that objects in approved settlements is 0.8% and in unapproved settlements 4.5%).

This weighs "heavily in favor of requiring a bond."  See Glaberson v. Comcast Corp., CV 03-6604, 2015 WL 7887788, at *3 (E.D. Pa. Dec. 3, 2015) (where an objector with a claim valued at $15 appealed, the court noted that such an effort "to significantly delay receipt by the other Class members of their settlement benefits — while causing the Class to incur substantial additional costs without some guarantee that those costs, if taxed, will be recoverable — weighs heavily in favor of requiring a bond for the full amount sought by the Class."); see also Tenille v. W. Union Co., 968 F. Supp. 2d 1107, 1108 (D. Colo. 2013) (appeal bond required where, *inter alia*, the appeals "w[ould] operate to delay the implementation of a hard-fought nationwide class-action settlement that has already been deemed to be fair and to provide 'excellent relief' to the class").  As Professor John E. Lopatka and Judge D. Brooks Smith of the Third Circuit have explained, "requir[ing] that any objecting nonnamed member of a Rule 23(b)(3) class post as a condition of appeal a bond calibrated to deter extortion" is the best method to counteract the perverse motives that too often drive class action objectors to engage in "lawful extortion."  John E. Lopatka & D. Brooks Smith, Class Action Professional Objectors: What to Do About Them?, 39 Fla. St. U.L. Rev. 865, 867, 909 (2012) (further noting that "[professional objectors] 'can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements.'  Not surprisingly, they are unpopular, 'perhaps the least popular parties in the history of civil procedure.'" (citations and footnotes omitted ).

---

[32] Perhaps tellingly, the Center for Class Action Fairness, which is generally involved in objecting to and appealing class action settlement on professed sincere ideological grounds, has not appealed.

The notion that Objectors and their counsel[33] are acting in the best interests of the class is as farfetched as the legal arguments Objectors have presented to this Court.   See e.g., In re Polyurethane Foam Antitrust Litig., 1:10 MD 2196, 2016 WL 1452005, at *8 (N.D. Ohio Apr. 13, 2016) ("To now have Objectors file frivolous appeals in pursuit of a payoff is not simply a detriment to the settling parties—it is an insult to the judicial system."); In re Initial Pub. Offering Securities Litig., 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (concurring "with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients"); see generally In re Target Corp. Customer Data Sec. Breach Litig., MDL142522PAMJJK, 2016 WL 259676, at *1 (D. Minn. Jan. 21, 2016) (in mandating an appeal bond, explaining that "the Court treats with particular disapproval the objections and appeals of professional objectors whose objections amount to a tax that has no benefit to anyone other than to the objectors' but serves to tie up the execution of a Settlement and further delay payment to the members of the Settlement Class." (internal quotes and cites omitted)). Requiring an appeal bond fits squarely within this Court's role as a fiduciary of the class as well as the clear trend toward holding professional objectors' accountable for their actions. Therefore, all the relevant factors, as well as the trend in the law, favor requiring an appeal bond.

---

[33] This is not to say that class action objectors are, in their entirety, a farcical and pernicious side effect of the class action process.  Even though the courts primarily responsible for preventing class action abuse, objectors driven by legitimate motives may play an important role in policing settlements.  However, it remains the case that objectors, as is the case here, generally target "big ticket" cases given the tendency for larger settlements to provide for higher extortionate payouts and that most class action objectors do not serve a beneficial purpose. See e.g., Theodore Eisenberg and Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. Empirical Legal Stud. 27, 66 (2004) ([T]he median recovery in a case with an objector is $35 million; the median recovery in a case without an objector is $6.7 million."); http://www.bna.com/solutions-afoot-curbing-n57982074748/ (Professor Brian Fitzpatrick notes that while only 10% of class action settlements attract objectors, they arise in every settlement where fees are sufficiently large to provide for the potential of an extortionate settlement); Newberg on Class Actions § 13:21 (5th ed.) (the "potential of the class action objector's [beneficial] role [is] more myth than reality in most cases . . . [O]ne might wonder why anyone ever bothers to object. It turns out that some lawyers have found a way to profit financially by doing so.").

## II.     THE SUM OF THE APPEAL BOND

In requiring an appeal bond a court must determine the amount required for the bond. "Requiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." Page v. A. H. Robins Co., Inc., 85 F.R.D. 139, 140 (E.D. Va. 1980).  The costs under Rule 7 include those standard taxable expenses set out in Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920.  See U.S. ex rel. Ryan v. Endo Pharm., Inc., CIV.A. 05-3450, 2014 WL 4209219 (E.D. Pa. Aug. 25, 2014), at *3.  Those expected costs amount to approximately $1,200, a conservative estimate given the fee rates mandated by the Third Circuit.

Third Circuit Local Appellate Rule 39.3(a) sets out that costs are taxed as to ten copies of the briefing, two copies to the prevailing party, and one copy to each party separately represented, which amounts to 22 copies of the brief in opposition to the appeal. Plaintiff believes that the brief will total at least 80 pages.  Local Rule 39.3(a) provides the rate for copying ($0.10 per page), binding ($4.00 each), and covers ($40.00 each).  Sales tax (8%) is also applied.  Accordingly, production of the brief in opposition to the appeals would cost $56.16 copy, for a total of $1,235.52 for all copies.[34]

However, the Court's inquiry does not end there.  See generally Fed. R. App. P. 7, Advisory Committee Note (the 1979 amendment to Rule 7 "leave[s] the question of the need for a bond for costs and its amount in the discretion of the court").  Rather, the administrative costs related to the delayed effectuation of the settlement are also includable in the appeal bond amount.[35]  For the same reasons cited above as to the propriety of mandating an appeal bond,

---

[34] Plaintiffs are assuming an omnibus response.  Separate briefing would markedly increase these costs.  Moreover, this estimate excludes the cost of any appendices with materials the Appellants do not supply, briefing related to summary action under 3d Cir. L.A.R. 27.4 and I.O.P 10.6, or any supplemental briefing.  Therefore, $1,200 is a conservative estimate for these costs.

[35] See e.g., In re Nutella Mktg. and Sales Practices Litig., 589 Fed. Appx. 53, 61 (3d Cir. 2014) (unpublished) (affirming the District Court's finding "over the Bochenek Appellants' objection, that administrative costs could be

requiring the appeal bond to include administrative costs is just, practical, and consistent with case law from the Third Circuit and elsewhere. See Comcast, 2015 WL 7887788, at *3 ("[T]he factors we consider on the question of the need to post the bond and the amount of the bond are linked.")

Per the attached Declaration, Plaintiffs expect the administrative expenses for 16 months, the estimated time to resolve the appeals,[36] to amount to $120,000 (16 months x $7,500 per month estimate of the Administrator). (Ex. C). Therefore, an appeal bond should be required in the total amount of $121,200. This sum is in line with appellate bonds required by other District Courts.[37] Insofar as the sum of the bond may be shared, if we assume the objectors

---

secured by a Rule 7 bond"); Glaberson v. Comcast Corp., CV 03-6604, 2015 WL 7887788, at *3 (E.D. Pa. Dec. 3, 2015) (following Nutella and including administrative costs in the objector's appeal bond); Heekin v. Anthem, Inc., 1:05-CV-01908-TWP, 2013 WL 752637, at *1 (S.D. Ind. Feb. 27, 2013) ("In class action cases, therefore, bonds are used to cover excess administrative costs that otherwise would not have been incurred."); Polyurethane Foam, 2016 WL 1452005, at *7 (collecting cases); Miletak v. Allstate Ins. Co., C 06-03778 JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012); In re Pharm. Indus. Average Wholesale Price Litig., 520 F. Supp. 2d 274, 279 (D. Mass. 2007); Target Corp., 2016 WL 259676, at *1; Dennings v. Clearwire Corp., 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013); In re Netflix Priv. Litig., 5:11-CV-00379-EJD, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013).

This is distinct from "delay damages." It is unclear whether "delay damages" may be included in an appeal bond. Compare In re Netflix Priv. Litig., 5:11-CV-00379-EJD, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013) ("Delay damages fall within the purview of 28 U.S.C. § 1912" not Rule 7) with Polyurethane Foam, 2016 WL 1452005, at *7 ("Other courts agree that, in appropriate circumstances, damages flowing from the delay caused by an appeal may be included.").

[36] The median time in the Third Circuit from the filing of a civil appeal to its disposition is 10.5 months. See http://thirdcircuitbar.org/newsletters/ThirdCircuitBarAssociationNewsletter_7-3_August_2013.pdf. However, class actions often take well over 10.5 months to adjudicate in the Third Circuit. See e.g., Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170 (3d Cir. 2012) (19.5 months); Larson v. AT&T Mobility LLC, 687 F.3d 109 (3d Cir. 2012) (28 months); In re Nutella Mktg. and Sales Practices Litig., 589 Fed. Appx. 53, 57 (3d Cir. 2014) (unpublished) (24 months); Carrera v. Bayer Corp., 12-2621, 2014 WL 3887938, at *1 (3d Cir. May 2, 2014) (23 months). In this case, twelve appeals have been filed, covering virtually every imaginable issue in the case, no matter how frivolous or insignificant. While Class Counsel will endeavor to resolve the appeal as quickly as possible by, for instance, pursuing an expedited briefing schedule and summary affirmance, such motions are rarely granted in their entirety. Thus, a conservative estimate of the time for these appeals to be adjudicated is 16 months.

[37] See e.g., Comcast, 2015 WL 7887788, at *4 ($28,150 imposed on one objector); Clearwire, 928 F. Supp. 2d at 1272 ($41,150); Chaudri v. Sylvania, Inc., 2:11cv5504, Docket No. 116 ($42,941.00); Tri-Star Pictures, Inc. v. Unger, 32 F. Supp. 2d 144, 150 (S.D.N.Y. 1999), aff'd, 198 F.3d 235 (2d Cir. 1999) ($50,000); In re Currency Conversion Fee Antitrust Litig., 1:01-md-01409, Docket No. 810 (S.D.N.Y.) ($50,000); Miletak, 2012 WL 3686785, at *2 ($60,000); Embry, 2012 WL 2055030, at *2 ($70,650); Hill v. State St. Corp., No. CIV.A. 09-12146-GAO, 2015 WL 1734996, at *2 (D. Mass. Apr. 16, 2015) ($75,300); Schuh v. HCA Holdings, Inc., 3:11-01033, Docket No. 579 (M.D. TN.) ($80,000); Baker v. Urb. Outfitters, Inc., 01 CV 5440 LAP, 2006 WL 3635392, at *2 (S.D.N.Y. Dec. 12, 2006) ($50,000 bond required by both plaintiff and his attorney, for a total of $100,000);

share evenly in the bond, each objector would only be responsible for $5,771.43, a small sum in the world of appeal bonds and an infinitesimally small sum compared to the amount of relief that is being delayed to the class.[38]   Moreover, the sum of the bond is not by any means the actual "cost" of the bond. The true cost is simply a function of the time value of the money secured during the appeal, which is eminently small given the current financial environment (money market stagnant, low inflation, low interest rates, stocks and bonds near all-time highs).

## III.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court require the appealing Objectors to either (1) post an appeal bond in the amount of $121,200; or (2) file a notice of dismissal.  Each appealing objector should be jointly and severally liable for the appeal bond.[39]   See e.g., Polyurethane Foam, 2016 WL 1452005, at *8 ("Courts routinely require multiple objectors who are appealing the same order to post a bond jointly and severally. This arrangement allows the objectors to pool their resources, making the bond less onerous for any given appellant."); see also Powers v. Citizens Union Nat. Bank & Trust Co., 329 F.2d 507, 508–09 (6th Cir. 1964) ("[F]ailure to execute [an appeal] bond unless exempted by law, is grounds for dismissal of the appeal.").

---

Polyurethane Foam, 2016 WL 1452005, at *8 (N.D. Ohio Apr. 13, 2016) ($145,463); In re Cardizem CD Antitrust Litig., 391 F.3d 812, 814 (6th Cir. 2004) ($174,429.00); In re Netflix Priv. Litig., 5:11-CV-00379-EJD, 2013 WL 6173772, at *5 (N.D. Cal. Nov. 25, 2013) (requiring 11 objectors to each post a $21,519 bond, for a total of $236,709); Heekin v. Anthem, Inc., 1:05-CV-01908-TWP, 2013 WL 752637, at *4 (S.D. Ind. Feb. 27, 2013) ($250,000, including $235,000 in administrative costs alone); In re Wal-Mart Wage and Hour Empl. Practices Litig., 2:06CV00225-PMPPAL, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) ($500,000 required for each of the four objectors; $2,000,000 total).

[38] An appeal bond will only cover the costs and not the double costs that the Class will likely be entitled to following an appeal, see Fed. R. App. P. 38, nor the additional liability that frivolous objectors incur in pursuing their appeals. Therefore, this is but a stopgap measure in class counsel's efforts to ensure that the Class receive the benefits conferred by the settlement. See also 28 U.S.C. §§ 1912, 1927; Fed R. App. P. 37.

[39] Courts also have the discretion to require each appellant to post the bond in its entirety. See e.g., Wal-Mart, 2010 WL 786513, at *2 ($500,00 bond required of each objector); Netflix, 2013 WL 6173772, at *5. This obviates any concern that the bond may have to be "managed" as the appeals are resolved in a piecemeal fashion.

Dated: September 22, 2016                    Respectfully submitted,


                              BY: */s/ Kevin E. Raphael*
                              William Pietragallo, II, Esquire
                              Kevin E. Raphael, Esquire
                              PIETRAGALLO GORDON ALFANO
                              BOSICK & RASPANTI, LLP
                              1818 Market Street
                              Suite 3402
                              Philadelphia, PA 19103
                              Tel: 215.320.6200
                              WP@pietragallo.com
                              KER@pietragallo.com

                              -and-

                              MANSOUR GAVIN LPA
                              Ernest Mansour, Esquire
                              Anthony Coyne, Esquire
                              Brendon P. Friesen, Esquire
                              emansour@mggmlpa.com
                              acoyne@mggmlpa.com
                              bfriesen@mggmlpa.com
                              1001 Lakeside Avenue, Suite 1400
                              Cleveland, OH 44114
                              (216) 523.1500

                              -and-


                              Edward J. Westlow, Esquire
                              EJW@Whitehall1756.us
                              Bank of America Center
                              1111 East Main Street, 16th Floor
                              Richmond, VA 23219-3532
                              (804) 780-0305

                              -and-

                              Robert Mansour, Esquire
                              23611 Chagrin Blvd., Suite 270
                              Beachwood, Ohio 44122
                              (216) 514.3127
                              Rmansour@competitivetitle.com

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Carol Rougvie, et al., | : |
| | : |
| Plaintiffs, | :   COMPLAINT - CLASS ACTION |
| | : |
| v. | :   JURY TRIAL REQUESTED |
| | : |
| | :   CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc., et al., | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2016, true and correct copies of the foregoing

were electronically filed and served on the following via the method indicated below:

### *VIA ELECTRONIC CASE FILING*

Daniel Goetz
Eric Kennedy
dgoetz@weismanlaw.com
ekennedy@weismanlaw.com
Weisman, Kennedy & Berris, CO., LPA
101 W. Prospect Ave. Midland Building Suite 1600
Cleveland, OH 44115

-and-

Gerard McCabe
Mitts Law, LLC
1822 Spruce St.
Philadelphia, PA 19103
*Counsel for the Gallagher Objectors*

Glenn Manochi
Lightman & Manochi
1520 Locust Street, 12th Floor
Philadelphia , PA  19102
*Counsel for Objector Foligno*

Amy M. Wilkins, Esquire
The Wilkins Law Firm PLLC

21

1197 East Oak Street Phoenix, AZ 85006
*Counsel for Objector Carey*

Brent Vullings, Esquire
Vullings Law Group
3953 Ridge Pike
Suite 102
Collegeville, PA 19426
*Counsel for Objector Vullings*

Mardi Harrison, Esquire
The Law Office of Mardi Harrison
125 Edison Furlong Road
Doylestown, PA 18901
*Counsel for Objector Ference*

### *OBJECTORS – VIA FIRST CLASS MAIL*

Christopher Todd Cain, Esquire
Scott & Cain
550 South Main Street, Suite 601
Knoxville, TN 37902
*Counsel for Objector Hipshire*

Stephen Cassidy
778 Joaquin Avenue
San Leandro, CA 94577
*Pro Se*

George W. Cochran, Esquire
Law Office of George W. Cochran
1385 Russell Drive
Streetsboro, Ohio 44241
*Counsel for Objectors Mager and Schultz*

Pamela Sweeney
2590 Richardson Street
Madison, WI 53711
*Pro Se*

Paul A. Lawless , Esquire
160 Abbey Terrace
2nd Floor
Drexel Hill, PA 19026
*Counsel for Objectors Yoes, Harrington, & Sonnier*

By: */s/ Kevin E. Raphael*_____
    KEVIN E. RAPHAEL, ESQ.
    I.D. No. 72673
    1818 Market Street, Suite 3402
    Philadelphia, PA  19103
    (215) 320-6200

    *Attorney for Plaintiffs*

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 27 of 44

# EXHIBIT A

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 28 of 44

CLASS ACTION OBJECTOR
POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ("Agreement") is made between Amirali S. Jabrani ("Client(s)" or "you") and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as follows:

1.      SCOPE AND METHOD OF REPRESENTATION

        1.1     Attorneys' Legal Services.  You agree Attorneys will: Prepare and file on your behalf an objection to proposed class action settlements in the following matter and represent you in any appeal therefrom (the "Objection"): Case No. 13-60749; *Hamilton v. SunTrust Mortgage, Inc., et al.*, In the United States District Court for the Southern District of Florida.

        1.2     Method of Representation. BLF is a Texas law firm located at 500 N. Shoreline, Suite 1020, Corpus Christi, Texas 78401, (361) 698-5200. Our lawyers are licensed in Texas and in certain federal courts. However, if necessary, Attorneys will seek admission before the Court *pro hac vice* and/or as required by the applicable federal and/or state and/or local rules of practice applicable this litigation and/or will seek to associate local counsel in order to effectuate this representation in compliance with any such rules. Client authorizes that Attorneys prepare any Objection(s) for filing with the Court and, if necessary, any appeals therefrom.

        1.3     Purpose of Representation: As a member of the above referenced class, your legal rights are affected by the proposed settlement in that case. As a class member, you have the right to comment and object to the proposed settlement as prescribed by the Court in the notice of proposed class action settlement and Rule 23 of the Federal Rules of Civil Procedure. *As a class member, you have the right to seek legal advice and have a lawyer represent you with respect to making any comments or objections to the proposed settlement.* You acknowledge that, prior to the execution of this agreement, you contacted me seeking legal advice about your rights and options as a class member. You further acknowledge the following: (1) that you were not solicited by me or any other lawyer; (2) you have not been paid or promised any money, incentive or any other consideration to assert your rights as a class member with an interest in the proposed settlement; and (3) you authorize the disclosure of this fee agreement to the Court or any counsel in the case if requested.

2.      YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR

        2.1     You represent that you are a member of the proposed settlement class based upon your review of the class definition contained in the class notice you have reviewed at the following website: www.hamiltonsettlement.com.

Power of Attorney and Contingency Fee Agreement- Page 1

Case 2:14-cv-00749-JIC   Document 188-3   Entered on FLSD Docket 12/02/2014   Page 3 of 8

2.2    If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3    In return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal therefrom without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal therefrom, including the right to approve any settlement or resolution of same.

3.    ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU

3.1    Class Action Settlement: If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (if a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so). Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member. You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2    Incentive Award or Payment: Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector. This is referred to herein as an Incentive Award or Incentive payment. You understand any incentive award or payment sought will never exceed $5,000. You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all. You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you. No incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award. In the event an incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

3.3    Attorneys' Fees: You will not be responsible to pay attorneys' fees or expenses of any kind. Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above. Attorneys are not sharing, and cannot share, any attorneys' fees they might earn in this case with you. You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal therefrom if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws. The

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 30 of 44
Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 30 of 44

Entered on FLSD Docket 12/02/2014

attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any. You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2.

4.     CONFLICTS OF INTEREST

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object. You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal therefrom.

5.     ADMINISTRATIVE MATTERS

5.1     Termination: Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

5.2     Association of Co-counsel: Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree in writing to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

5.3     No Guaranty of Results: Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter. You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4     Entire Agreement: This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto. This Agreement shall not be modified except by written agreement signed by both parties.

I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 31 of 44
Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 31 of 44
Case 0:13-cv-60749-JIC   Document 188-3   Entered on FLSD Docket 12/02/2014   Page 5 of 8

Signed and accepted on this 26ᵗʰ day of July 2014.

Client(s):

Ashfaq S. Jabrani

Atto

Christopher A. Bandas

Power of Attorney and Contingency Fee Agreement- Page 4

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 32 of 44

Oct 28 14 07:16p                                                                                    p.1



ATTORNEYS AT LAW   1010 Market Street   Suite 1620   St. Louis, MO 63101   314.241.2224   Fax 314.241.2227   haar-woods.com

October 28, 2014

**PERSONAL & CONFIDENTIAL—BY ELECTRONIC AND FIRST CLASS MAIL**

Amirali Jabrani
Janet Jabrani
Real Homes, Inc.
2038 Moondance Court
O'Fallon, MO 63368

    RE:   Ira Marc Fladell, et al. v. Wells Fargo Bank, NA, et al.

Dear Mr. and Mrs. Jabrani:

    This letter summarizes the terms of our agreement for the provision of certain limited legal representation related to the Wells Fargo Litigation ("the Litigation"). Specifically, as discussed in more detail with your attorney, Christopher A. Bandas, my firm and I will be representing you for the limited purposes of preparing you for, and defending, your depositions related to the Litigation. Notwithstanding the other terms of this agreement, the two of you, and your corporation Real Homes, Inc., are our clients. In that regard, we will exercise our independent professional judgment concerning all matters related to our limited role. On your part, you agree to disclose all information necessary for me to carry out my role and, specifically, agree that Mr. Bandas and I may share confidential information regarding your case.

    We will charge at the hourly billing rate of $375.00 per hour for my time and our standard rates for any of my partners. Lesser amounts are charged for associate lawyers ($275.00 per hour) and for paralegals ($150.00 per hour). In addition to our fees, we will be entitled to reimbursement of our out-of-pocket expenses, if any. Consistent with your agreement with the Bandas Law Firm, P.C., our fees and expenses will be paid, in the first instance, by that firm. In all other respects, your agreement with Mr. Bandas shall control your financial relationship. We are not sharing in any contingent fee which may result from the Litigation and have agreed to accept payment as described in this agreement as full and final amounts associated with your representation by us.

Oct 28 14 07:18p                                                                              p.2

Amirali Jabrani
Janet Jabrani
October 28, 2014
Page 2

We will require a retainer from the Bandas Law Firm in the amount of $5,000.00.
Bills will be rendered at the end of each calendar month for services provided and
expenditures made during that month and are payable upon receipt. To the extent that
they exceed the retainer amount, Mr. Bandas, and the Bandas Law Firm, by their
signatures below, are acknowledging responsibility in the first instance for payment of
our fees and expenses and for simple interest on overdue balances at the rate of 9% per
annum from the date first billed and for attorney's fees and costs associated with
collecting such amounts, if necessary. If our total fees and expenses are less than $5,000,
Mr. Bandas will be entitled to reimbursement of the difference in the amounts billed and
the retainer.

We each reserve the right to terminate this agreement at any time, except that (a)
the Bandas Law Firm agrees to confirm payment for the value of all services rendered
and expenses incurred up to such termination and in connection with any transfer of
documents to you, Mr. Bandas, and/or your new attorney and (b) we agree to provide
information and transfer such documents in drafts as may be in our possession to any
attorney you choose so that you will not lose the benefit of services previously rendered.

We will have the right to retain a copy of your records at the end of this
engagement. You will have two options with respect to any documents related to the
engagement that we do not wish to retain in our files. You can direct and authorize us to
(a) return all such documents to you, where practicable or (b) discard or destroy such
documents. If you do not select one of these options for the disposition of documents
within 60 days after our notice to you of your need to make such a decision, the notice
made by us by either electronic or regular mail at your last known address, we may
handle the documents as we see fit, including destroying them as one such option.

If you would like to proceed, and this letter reflects an arrangement that is
acceptable to you, please sign and return the original of this letter to us.

I look forward to working with you on these matters and to a prompt resolution.

Very truly yours,

Pete Woods

PCW/nda

Oct 28 14 07:16p                                                                p.3

Amirali Jabrani
Janet Jabrani
October 28, 2014
Page 3


ACCEPTED:


Amirali Jabrani, on behalf of himself and
Real Homes, Inc.

Dated: _____10/28/14_____


Janet Jabrani, on behalf of herself and
Real Homes, Inc.

Dated: _____10/28/14_____


Christopher A. Bandas, on behalf of himself
and the Bandas Law Firm, P.C.

Dated: _____10/28/14_____

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 36 of 44

# EXHIBIT B

Case 2:15-cv-00724-MAK    Document 219    Filed 09/20/16    Page 37 of 44

CLASS ACTION OBJECTOR
POWER OF ATTORNEY AND CONTINGENT FEE AGREEMENT

This agreement ("Agreement") is made between <u>Lindsey Thut</u> ("Client(s)" or "you") and BANDAS LAW FIRM, P.C. (hereinafter "Attorneys" or "BLF").

In consideration of the mutual promises contained herein, Client(s) and Attorneys agree as follows:

I.    SCOPE AND METHOD OF REPRESENTATION

    1.1    **Attorneys' Legal Services.**  You agree Attorneys will: Prepare and file on your behalf an objection to proposed class action settlements in the following matter and represent you in any appeal therefrom (the "Objection"): *In re: Life Time Fitness, Inc., Telephone Consumer Protection Act (TCPA) Litigation,* Case No. 14-md-02564 (JNE-SER), MDL No. 2564; In the United States District Court District of Minnesota..

    1.2    **Method of Representation.** BLF is a Texas law firm located at 500 N. Shoreline, Suite 1020, Corpus Christi, Texas 78401, (361) 698-5200. Our lawyers are licensed in Texas and in certain federal courts. However, if necessary, Attorneys will seek admission before the Court *pro hac vice* and/or as required by the applicable federal and/or state and/or local rules of practice applicable this litigation and/or will seek to associate local counsel in order to effectuate this representation in compliance with any such rules. Client authorizes that Attorneys prepare any Objection(s) for filing with the Court and, if necessary, any appeals therefrom.

    1.3    **Purpose of Representation:** As a member of the above referenced class, your legal rights are affected by the proposed settlement in that case. As a class member, you have the right to comment and object to the proposed settlement as prescribed by the Court in the notice of proposed class action settlement and Rule 23 of the Federal Rules of Civil Procedure. As a class member, you have the right to seek legal advice and have a lawyer represent you with respect to making any comments or objections to the proposed settlement. You acknowledge that, prior to the execution of this agreement, you contacted me seeking legal advice about your rights and options as a class member. You further acknowledge the following: (1) that you were not solicited by me or any other lawyer; (2) you have not been paid or promised any money, incentive or any other consideration to assert your rights as a class member with an interest in the proposed settlement; and (3) you authorize the disclosure of this fee agreement to the Court or any counsel in the case if requested.

    1.4    The scope of our representation is limited. Although we will craft the legal arguments used in your objection, and handle the logistics of filing the objection, Bandas Law Firm will not make an appearance in the district court and your objection will be submitted without oral argument at the fairness hearing. You understand and agree that this might affect the chances that the district court will approve a settlement or fee request over your objection. In the event of

adverse decisions that we believe raises meritorious appellate issues, we will file a notice of appeal on your behalf, and either make an appearance or retain an attorney to make an appearance in appellate proceedings.

2. **YOUR REPRESENTATIONS AND DUTIES AS AN OBJECTOR**

2.1    You represent that you are a member of the proposed settlement class based upon your review of the class definition contained in the class notice you have reviewed at the following website: www.lifetimetcpasettlement.com.

2.2    If requested, you represent you can demonstrate you are a member of the settlement Class through documentation or by affidavit.

2.3    In return for your agreement and representations made herein, attorneys agree that no settlement or resolution will be made of your objection or any appeal therefrom without your prior approval and you shall retain the right to determine whether to proceed with this objection or any appeal therefrom, including the right to approve any settlement or resolution of same.

3. **ATTORNEYS' FEES, EXPENSES AND PAYMENTS TO YOU**

3.1    **Class Action Settlement:**  If the proposed class action settlement is approved by the Court, you will receive the full amount of any benefits you are entitled to receive under the settlement as a class member (If a Claim is required you will usually need to file a claim to receive benefits; Attorneys may assist you in filing a claim, but they are not required to do so).  Attorneys shall not be entitled to receive any portion of your share of the benefits under the class settlement and have no interest in any benefits you may be entitled to receive as a class member.  You understand that by objecting to this particular settlement you may make your receipt of benefits under this particular settlement less likely in the event a court rejects the settlement based upon the arguments asserted by Attorneys on your behalf.

3.2    **Incentive Award or Payment:**  Attorneys may petition the Court for a payment to you, or may ask class counsel or defendant(s) to make a payment to you, in recognition of your service as an objector and/or for other factors related to your service as an objector. This is referred to herein as an Incentive Award or Incentive payment.  You understand any incentive award or payment sought will never exceed $5,000.  You understand that it cannot be determined with certainty in advance whether you will qualify for an incentive payment or award at all. You understand that Attorneys must follow all applicable laws and rules (including but not limited to seeking court approval, if applicable) as it may apply to incentive payments and awards, and such laws and/or rules may prevent or limit Attorneys' ability to obtain such an incentive award or payment for you. No incentive award or payment has been promised to you, and your service as an objector in this case is not conditioned on your receipt of any incentive payment or award. In the event an

incentive award or payment is not made, you will receive only the benefits set forth in section 3.1, if any.

3.3     **Attorneys' Fees:**  You will not be responsible to pay attorneys' fees or expenses of any kind.  Attorneys are not sharing any portion of your recovery under paragraphs 3.1 or 3.2 above, if any, and Attorneys have no contingent interest in your recovery under paragraphs 3.1 and 3.2 above.  Attorneys are not sharing, and cannot share, any attorneys' fees they might earn in this case with you.  You agree Attorneys may seek and/or receive a fee for their services if they are successful in pursuing an objection to the class settlement or any appeal therefrom if agreed to by opposing counsel and/or awarded by the Court, subject to applicable rules and laws.  The attorneys' fees will be paid by the defendants and/or as part of the attorneys' fees awarded to class counsel and/or by award of the Court, and never from your portion of any recovery or settlement under paragraphs 3.1 or 3.2. You acknowledge you do not have any interest in any such fees, if any.  You further acknowledge the attorneys' fees may substantially exceed any awards or payments to you as set forth above in Paragraphs 3.1 through 3.2.

4.     CONFLICTS OF INTEREST

Attorneys have explained and you understand that, if successful, the objection or any appeal there from may result in the disapproval or rejection of the proposed settlement which may, in turn, cause you to lose your right to receive settlement benefits under the proposed settlement, to which you object. You acknowledge and agree to this risk and waive any conflict of interest arising from the objection or any appeal therefrom.

5.     ADMINISTRATIVE MATTERS

5.1     **Termination:**  Attorneys reserve the right to withdraw from this matter if you fail to honor this Agreement or for any reason permitted or required under the rules of the court or state in which the class action is pending.

5.2     **Association of Co-counsel:**  Attorneys may associate lawyers apart from those with Bandas law Firm, P.C. to assist in representing you if, before any association becomes effective, you agree in writing to the terms of the arrangement including (1) the identity of all lawyers or law firms involved, (2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and (3) the share of the fee each lawyer or law firm will receive, or if the division is based on the proportion of services performed, the basis on which the division will be made.

5.3     **No Guaranty of Results:**  Attorneys will use their best efforts in representing you in this matter, but we cannot guarantee the outcome of any given matter.  You acknowledge Attorneys have made no promises or guarantees concerning the outcome of this matter, and nothing in this agreement shall be construed as such a promise or guarantee.

5.4     Entire Agreement:  This Agreement contains the entire agreement between us regarding this matter and the fees, expenses and payments relative thereto.  This Agreement shall not be modified except by written agreement signed by both parties.

I certify and acknowledge that I have had the opportunity to read this Agreement, that I have voluntarily entered into this Agreement fully aware of its terms and conditions, and that I have received a copy of this Agreement.

Signed and accepted on this   2nd   day of June, 2015.

**Client(s):**

*Lindsey Thut*

Lindsey Thut

**Attorneys:**

Christopher V. Bandas

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 41 of 44

# EXHIBIT C

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 42 of 44

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Carol Rougvie, et al.,

    Plaintiffs,

    v

Ascena Retail Group, Inc., et al.,

    Defendants.

COMPLAINT – CLASS ACTION

JURY TRIAL REQUESTED

CIV. NO. 2:15-cv-00724-MAK

DECLARATION OF FRANK BARKAN CONCERNING INCREASED
ADMINISTRATIVE COSTS & CERTAIN OBJECTORS

I, Frank Barkan, declare as follows:

1.    I am the Senior Director of RSM US, LLP ("RSM"), the settlement administrator in the above-captioned case.  I am familiar with actions taken by RSM with respect to the Settlement arising from the above-captioned case, and am competent to testify about them if called upon to do so. This declaration is based upon my personal knowledge and information provided to me by staff under my or common supervision, and review of the business records maintained by RSM.  It is accurate and truthful to the best of my knowledge.

2.    RSM's class action administration services include coordination of notice requirements, design of mail notices, notice fulfillment services, coordination with the United States Postal Service, settlement website notice, development, and maintenance, dedicated phone lines with recorded information for class members, receipt and processing of opt-outs, management of claims databases, claims adjudication, funds management, and award calculations and distribution services.  RSM works with the settling parties, the

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 43 of 44

Court, and the Class Members in a neutral role to implement the administration services based on the terms of the Settlement.

3. The undersigned was informed by Class Counsel that this Court's Orders of July 29, 2016 approving the Settlement have been appealed by certain objectors.

4. RSM estimates that the appeal will significantly increase administrative costs at a cost of approximately $7,500 per month.

5. This increased expense includes:

   a. Handling Class Member communications (received through Parties and directly from Settlement Class Members at the Post Office box and email inbox reserved for use in this matter);

   b. ad-hoc Notice request fulfillment (pursuant to Settlement Class Member requests);

   c. additional maintenance fees for the Escrow Account, Post Office box, Settlement Website, and toll-free line;

   d. toll-free line minutes of use;

   e. physical and digital document retention; and

   f. project management and systems support.

6. Moreover, at Class Counsel's request, Epiq, which RSM contracts with to perform certain administrative processes, performed searches to determine whether Sheila Ference of 320 Red Oak Road, Oregonia, OH 45054 and Gretchen Carey of Arizona had submitted claims with an access code or other evidence of class membership in the Justice matter or whether there was otherwise evidence in Epiq's possession of their membership in the class. While Ms. Ference did submit a claims form, it did not include

Case 2:15-cv-00724-MAK   Document 219   Filed 09/20/16   Page 44 of 44

an access code or proof of purchase.  A search for Gretchen Carey showed that two

individuals named Gretchen Carey are class members; however, they reside in Illinois

and Massachusetts, not Arizona.

7    I declare under penalty of perjury that the foregoing is true and correct and that this

Declaration was executed on September 16, 2016.


Frank Barkan
Senior Director
RSM US, LLP