# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL ROUGVIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  2:15-CV-00724-MAK |
| | ) | |
| ASCENA RETAIL  GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER GRANTING, IN PART, MOTION FOR APPEAL BOND

---

**AND NOW**, this          day of                    , 2016, it is hereby

**ORDERED** that the motion for appeal bond is Granted, in Part, to the extent that the

Appellant-Objectors shall, within ten (10) days of this Order, post an appeal bond in the amount of

$7,200, for which they shall be jointly and severally responsible.

_____
                                                                                                          J.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROL ROUGVIE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  2:15-CV-00724-MAK |
| | ) | |
| ASCENA RETAIL  GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

### MANDA HIPSHIRE'S RESPONSE TO MOTION FOR APPEAL BOND [Doc. 219]

---

**NOW COMES** Manda Hipshire ("Hipshire"), an objecting Class member, by and through her undersigned counsel, and responds to the Plaintiffs' Motion for Appeal Bond [Doc. 219] as follows:

Miles Dumack
DUMACK LAW
1621 McKean Street
Philadelphia, PA 19145
Tel: 267-259-3962
Email: miles@dumacklaw.com

Christopher T. Cain
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Tel: (865) 525-2150
cain@scottandcain.com

*Counsel for Manda Hipshire*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      The Court Should Require an Appeal Bond From Objectors in the Aggregate
                Amount of $7,200, To Be Borne Jointly and Severally by Appellants. . . . . . . . .  7

        B.      Examination of Public and Private Interest Factors Weighs Against
                Imposition of a $121,200 Appeal Bond. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

        C.      The Court Should Deny Plaintiffs' Motion to the Extent Plaintiffs Seek to
                Include Costs Not Enumerated in Rule 39. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.      PRELIMINARY STATEMENT

> *"Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous."*[1]

Following entry of the Final Judgment approving the class action settlement [Docs. 184] and the Order regarding Attorney's Fees, Expenses, and Incentive Awards [Doc. 185], Manda Hipshire (Mrs. Hipshire") and twenty (20) other Class members who objected to the proposed settlement filed a total of twelve separate appeals from the Court's judgment and order. [Doc. 205]. On September 20, 2016, Plaintiffs moved this Court to impose a $121,200 appeal bond on the objectors, jointly and severally, under Federal Rule of Appellate Procedure 7, consisting of $1,200 in taxable costs pursuant to Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920 and approximately $120,000 in so-called "increased administrative costs." [Doc. 219, at pp. 20-21].

Plaintiffs' motion for such a large appeal bond is contrary to the great weight of applicable authority in this Circuit, as only "costs" on appeal as enumerated in Federal Rule of Appellate Procedure 39 are appropriately included in a Rule 7 bond. While Plaintiffs characterize the inclusion of "increased administrative costs" in an appeal bond as "just, practical, and consistent with the case law from the Third Circuit and elsewhere" [Doc. 219, at p. 21], this is simply not the case, as such costs are not enumerated in Rule 39 and thus cannot be a component of a Rule 7 appeal bond.

At the outset, it is not the purpose of Rule 7 to discourage or "chill" meritorious appeals. Yet, the $121,200 bond sought here would have the potential effect of compelling Mrs. Hipshire and other objectors to abandon their appeals, a result plainly not intended by Rule 7. At its core, Plaintiffs' bond request is a tissue of machinations, the singular purpose of which is to pressure Mrs.

---

[1]*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Prods. Liab. Litig.)*, No. MDL-1203, 2000 U.S. Dist. LEXIS 16085, at *5 (E.D. Pa. Nov. 6, 2000).

Hipshire and other objectors to dismiss their appeals.  Plaintiffs seek to accomplish this by (1) artificially-inflating costs, and (2) manufacturing unreasonable and unjustified procedural obstacles to the appeals.  In the end, as Mrs. Hipshire demonstrates below, the only "costs" properly included in an appeal bond in this case are those minimal costs associated with printing and copying the appellate briefs.

Here, Plaintiffs' brief contains a lengthy section targeting the purported motives and histories of various objectors as justifying an appeal bond, wrongly implying that such motives or histories equates to unmerited appeals.  [Doc. 219, at pp. 7-19].  They also (incorrectly) insist that various factors weigh in favor of imposition of a appeal bond here. [Doc. 219, at pp. 5-7].

To be sure, Mrs. Hipshire does not oppose imposition of an appeal bond to secure those costs specifically enumerated by Rule 39.  Plaintiffs identify this amount as $1,235.52 and ask that $1,200 be included in an appeal bond for these costs.  [Doc. 219, at p. 20].  However, as Plaintiffs further note, this sum assumes an omnibus response to the twelve appeals, and does not contemplate the potential for any separate briefing.  [*Id.*].  Accordingly, Mrs. Hipshire submits that these costs should be increased to incorporate a reasonable amount for any such separate briefing.  Even if Plaintiffs file separate briefs for half of the appeals, which is highly unlikely considering the inefficiency of having separate briefs in the same case, an appeal bond in the amount of $7,200 (6 x $1,200) would therefore appear to fairly represent anticipated costs on appeal.  To that end, Mrs. Hipshire respectfully submits that an appeal bond in the amount of $7,200, equally borne by the appealing objectors, is more than sufficient to secure Plaintiffs' costs.

While Mrs. Hipshire does not oppose imposition of a reasonable appeal bond to secure Rule 39 costs, she does oppose inclusion of other so-called "costs" in any bond that are not enumerated

by that rule.  Notwithstanding her position that a reasonable bond is appropriate in this instance, Mrs.

Hipshire also demonstrates that the factors identified by Plaintiffs actually weigh against an appeal

bond of such magnitude.  First of all, Mrs. Hipshire respectfully submits that the factors are largely

unimportant here, as she has does not oppose an appeal bond to cover Rule 39 costs.  Nevertheless,

with respect to the merits of her appeal, and those of any other objector, it is not the province of

district courts within the Third Circuit to determine whether an appeal of the final approval orders

would have merit.  Such a decision rests exclusively with the Third Circuit.  Courts in this Circuit

have routinely found "that the Court of Appeals is the best forum to litigate the merits of the appeal

and to account for any frivolity that harms the plaintiffs."  *See, e.g., In re Am. Invs. Life Ins. Co.*

*Annuity Mktg. and Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010); *Rossi v. Proctor*

*& Gamble Co.*, No. 11-7238, 2014 U.S. Dist. LEXIS 34180, 2014 WL 1050658, at *2 (D. N.J.

March 17, 2014) ("Plaintiff cites no binding legal authority suggesting that a district court may step

into the shoes of an appellate court to decide whether an appeal is frivolous . . . .").

     Here as well, Plaintiffs can point to no binding authority which might permit this Court to

prematurely delve into the merits of the appeals.  Accordingly, the Court should decline the

invitation to consider the merits of these appeals.[2]  However, even if the Court did possess authority

to delve into the merits of Mrs. Hipshire's appeal, a fair examination of her arguments advanced

---

[2]Besides, there are other means available to Plaintiffs to adequately protect them against
any non-meritorious appeals.  For example, they may file an immediate motion to dismiss in the
Third Circuit.   Plaintiffs are also protected by Rule 38, under which just damages and single or
double costs, including attorney's fees, may be awarded to Plaintiffs if the Third Circuit
determines the appeals are frivolous.  *In re Diet Drugs*, at *5.

before final approval demonstrates that her appeal is not frivolous.  This is not to say that she forecasts that her appeal will ultimately succeed; rather, it simply cannot be said that her appeal is "not important" or "not deserving serious attention."

Although Plaintiffs also feign fear that they will not be able to collect their costs if Mrs. Hipshire and other objectors are unsuccessful in their appeals, the fact is, there is no evidence in the record to support such a self-serving assertion.  Plaintiffs, after all,  have presented no evidence that their costs under Rule 39 will remotely approach the sum of $121,200.  The only costs recoverable under Rule 39, and thus allowed in a Rule 7 appeal bond, are the "necessary copies of a brief or appendix" (certainly not an expensive undertaking), "preparation and transmission of the record" (which is the responsibility of appellants under Rule 30), and "the reporter's transcript" (also appellants' responsibility).  Accordingly, Plaintiffs' costs under Rule 39 will consist of copies and binding for a single brief, or possibly no more than a half dozen separate briefs.  Surely, such costs will not  exceed $7,200.

But Plaintiffs – in an effort to force Mrs. Hipshire and others to abandon their appeals – seek a substantially higher bond than to cover such costs.  Instead, they suggest the bond should be $121,200, mostly for anticipated administrative costs incurred during the appeals process. [Doc. 219, at p. 20] (citing *In re Nutella Mktg. & Sales Practices Litig.*, 589 F. App'x 53, 61 (3d Cir. 2014)). Plaintiffs' argument is well off-the-mark, however, as Mrs. Hipshire demonstrates.   Most importantly, *Nutella* did not reverse or otherwise abrogate the long line of cases by and within the Third Circuit – beginning with *Hirschensohn v. Lawyers Title Ins. Corp.*, 1997 U.S. App. LEXIS 13793 (3d Cir. 1997) – that have refused to include costs not enumerated in Rule 39 in a Rule 7 appeal bond.  Indeed, the Third Circuit's decision to affirm the $22,500 appeal bond in *Nutella* made

-4-

no mention of and did not even cite its earlier decision in *Hirschensohn*, much less expressly overrule it.  Moreover, *Nutella* did not analyze or examine decisions from this or other Circuits regarding the propriety of including "administrative costs" in an appeal bond.  Nor did the *Nutella* decision examine the language, purpose, or history of Rule 7 or Rule 39.  And the opinion, incidentally, as issued, was "not precedential" and "not binding."

What's more, the Third Circuit's conclusion in *Nutella* was also expressly based upon a set a facts demonstrably different than those presented here.  What is clear is that in *Nutella*, the Third Circuit was confronted by a unique set of facts and had to apply the most deferential standard of review (abuse of discretion), both of which presented it with a solitary choice: affirm the district court's appeal bond.  Thus, for all practical purposes, the appeal bond portion of the opinion in *Nutella* appears to be of limited, if any, value here.

Courts that refuse to impose appeal bonds to cover increased settlement administration costs rightly reason that such costs are not "costs on appeal" as they do not fit within the scope of Rule 39(e)'s enumerated taxable costs or another applicable fee-shifting statute.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 2013 U.S. Dist. LEXIS 156986, 2013 WL 5775118, at *3 (C.D. Cal. Oct. 21, 2013).

At bottom, Plaintiffs cannot succeed in their efforts to require a $121,200 appeal bond.  First, there is no binding precedent in the Third Circuit authorizing inclusion of such costs in an appeal bond.  And second, none of the cases cited by Plaintiffs – including *Nutella* – explains exactly how a rule that expressly allows requiring a bond only to secure payment of recoverable costs (which,

under some statutes, includes recoverable attorney's fees) can be read to authorize posting a bond to secure payment of expenses that are not recoverable costs.

Here, Plaintiffs' motion has no plausible motive or effect other than to force Mrs. Hipshire and other objectors to altogether abandon their meritorious appeals.[3]  *See Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (a district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal); *In re Countrywide*, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010) ("purpose of the appeals process is to permit objectors to challenge such rulings").  After all, a Rule 7 bond is not designed "to impose an independent penalty on the appellant."  *Capizzi v. States Res. Corp.*, 2005 U.S. Dist. LEXIS 7338, at *4 (D. Mass. Apr. 26, 2005).

For all of this, this Court should not diverge from the majority of decisions in this Circuit and should therefore limit the amount of the bond available to Plaintiffs under Rule 7 to those costs which are explicitly enumerated in Rule 39(e) – which do not include costs associated with continued administration of a settlement fund or alleged damages caused by delay incident to an appeal.

## II.     STANDARD OF REVIEW

Rule 7 provides in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The rule is permissive, allowing but not compelling a district court to

---

[3]As the court in *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) observed, imposing too great a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review.  *Vaughn,*, 507 F.3d at 300.

require a bond. Accordingly, the Court must first decide whether to exercise its discretion. "The power to impose an appeal bond under Rule 7 has been specifically given to the discretion of the district court." *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998). "A district court may not impose a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal." *Diet Drugs*, at *5.

## III.   LEGAL ARGUMENT

### A.   The Court Should Require an Appeal Bond From Objectors in the Aggregate Amount of $7,200, To Be Borne Jointly and Severally.

If the Court decides to require a bond, it then must decide the amount of the bond. Both decisions depend on the purpose of a bond, which according to Rule 7 is "to ensure payment of costs on appeal." A bond set at "costs on appeal" would perfectly "ensure payment" of those costs, and a bond set at any greater amount would not be "necessary" to the extent of the excess, and hence, would be unauthorized. *See id*. Conversely, a bond of a lesser amount may be all that is necessary to "ensure payment of costs on appeal." Indeed, no security may be necessary. Consequently, both the decision whether to require a bond pursuant to Rule 7 and the decision as to the amount of any bond turn on the meaning of "costs on appeal."

It is clear that "[c]osts' referred to in Rule 7 [include] those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39." *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, at *1 (3d Cir. June 10, 1997) (citation omitted). Rule 39 provides:

> [t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
>
> (1) the preparation and transmission of the record;

> (2) the reporter's transcript, if needed to determine the appeal;
>
> (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
>
> (4) the fee for filing the notice of appeal.

Fed. R. App. P. 39(e).

While an appeal bond request by necessity must be based on an estimate of the costs that a litigant may incur in defending against an appeal, Plaintiffs made no real effort to justify even a $1,200 appeal bond. Nor can they explain how filing a consolidated response brief in this Court could conceivably cause them to incur a $1,200 cost bill when the only costs recoverable under Rule 39, and allowed via a Rule 7 appeal bond, are the actual re-production costs of their response brief(s). *See* 3rd Cir. R. 39.3.[4] Moreover, a recent cost study by the Federal Judicial Center[5] indicates that in the Third Circuit, average costs awarded under Fed. R. App. P. 39(a)(2), where a judgment was affirmed, were just ***$222.65***. Imposition of a bond *more than five times that amount* is, to say the least, inflated. For instance, the excessiveness of the requested bond is plainly illustrated by *Cobell v. Salazar*, 816 F. Supp. 2d 10, 16 (D. D.C. 2011), a class action involving two separate classes, a multi-billion dollar settlement of dozens of different claims, fifteen years of litigation, thousands of docket entries with countless exhibits under seal, and over twenty reported

---

[4]Under Fed. R. App. 30, Appellants alone are responsible for the cost of the Appendix. Also, "the reporter's transcript" is Appellants' responsibility, if one is used.

[5]The Federal Judicial Center's Study: *The Comparative Study of the Taxation of Costs in the Circuit Courts of Appeals Under Rule 39 of the Federal Rules of Appellate Procedure* (April 2011), provides statistics as to average cost awards. *See* Table 3 of the FJC Study (addressing costs awarded over a two-year period (2009-10) in the federal circuits). The study is available at: http://www. uscourts.gov/file/frap39reppdf.

opinions.  There, the district court "agree[d] with [the objector appellant] that the plaintiff's actual taxable costs pursuant to Fed. R. App. P. 39 w[ould] be closer to $200 than the $34,000 or so asserted by the plaintiffs."[6] A litany of cases are of similar effect.  *See, e.g.*, *Hill v. State St. Corp.*, 2015 U.S. Dist. LEXIS 50161 (D. Mass. Apr. 16, 2015) (including the sum of "$300 for taxable costs under Rule 39."); *Azizian v. Fed. Dep't Stores, Inc.*, 499 F.3d 950, 962 (9th Cir. 2007) (vacating $40,000 of $42,000 initial bond order); *Vaughn v. American Honda Motor Co.*, 507 F.3d 295, 299-300 (5th Cir. 2007) (Fifth Circuit reduced bond for brief production costs from $150,000 to $1,000); *Tennille v. West Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014) (Tenth Circuit reduced $25,000 bond to $5,000 bond to cover printing, copying, and record preparation costs); *In re Enfamil Lipil Mktg. and Sales Pracs. Litig,*. 2012 U.S. Dist. LEXIS 49254 (S.D. Fla. Apr. 9, 2012) ($1,000 bond for costs); *In re Bayer*, 2013 U.S. Dist. LEXIS 125555, at *3 (E.D. N.Y.) (reducing $25,000 bond, which appellees "failed to justify," to $5,000 for printing and copying record); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 2011 U.S. Dist. LEXIS 23905, at *4-5 (E.D. N.Y. March 9, 2011) ($25,000 "plainly exceeds any reasonable expectation" of Rule 39 costs; $5,000 would be sufficient).

Notwithstanding all of this, Mrs. Hipshire believes a bond is reasonable in this instance and proposes that a bond in the amount of $7,200 be imposed, for which objectors shall be jointly and severally liable.  This amount is six times the amount of the bond proposed by Plaintiffs and reasonably secures them for all costs which might be associated with the appeals, even if multiple response briefs are required for as many as half of the total appeals.

---

[6]The eventual cost award in that case was $765.  *See* Bill of Costs Order, No 11-5205 (D.C. Cir.), filed July 23, 2012].

Accordingly, Mrs. Hipshire proposes an appeal bond in the aggregate sum of $7,200, to be paid jointly and severally by the objectors.

**B.     Examination of Public and Private Interest Factors Weighs Against Imposition of a $121,200 Appeal Bond.**

Plaintiffs point out that some courts consider several non-exhaustive factors in determining whether to impose an appeal bond, including,

   (1)     whether a bond is necessary to assure adequate security to protect the interests of the settlement class;

   (2)     the risks that the appellant will not pay the costs if it loses the appeal;

   (3)     the appellant's financial ability to post the bond;

   (4)     the merits of the appeal; and

   (5)     whether appellant has shown any bad faith or vexatious conduct.

*In re Certainteed Fiber Cement Siding Litig.*, 2014 U.S. Dist. LEXIS 71702, *2 (E.D. Pa. May 27, 2014) (citations omitted).  Plaintiffs argue that these factors support imposition of the appeal bond. They are wrong.

Mrs. Hisphire disputes only the inclusion of anticipated administrative costs in a bond order. She does not dispute the Court's general discretion to require an appeal bond.  Indeed, she stands ready to tender her portion of an aggregate appeal bond the Court might impose – not exceeding a total sum of $7,200 – to secure Plaintiffs' costs on appeal  to the District Court Clerk.  Those costs are the taxable costs of copying and printing permitted under Rule 39.

Nevertheless, a fair analysis of the factors also demonstrates that a bond of $121,200 is not only grossly excessive, but punitive, especially toward Mrs. Hipshire.  For example, there is no

evidence concerning Mrs. Hipshire's ability to pay a $121,200 appeal bond.  At best, this factor

favors neither Plaintiffs nor Mrs. Hipshire.  And while Plaintiffs argue that a risk of nonpayment

exists due to the fact objectors are geographically dispersed across the country, Mrs. Hipshire has

vowed – in the Court record – to pay her share of an appeal bond securing the costs on appeal under

Rule 39.  Thus, Plaintiffs' fear of non-payment – at least from Mrs. Hipshire –  is a red-herring and

not a legitimate basis for an appeal bond of the magnitude requested.[7]

Predictably, Plaintiffs make a concentrated effort to disparage many objectors or their

counsel, generally depicting objectors as "armchair quarterbacks" [Doc. 219, at p. 11] and

unscrupulous [Doc. 219, at p. 17].  They make specific arguments that certain objectors have brought

frivolous objections, *e.g.*, Vullings, Stephen Cassidy [Doc. 219, at p. 8].  They attack other objectors

for filing objections in bad faith, *e.g.*, Carey (may not be a class member and may not have read the

settlement agreement), Sheila Ferrence (may not be a class member and may not have read the

settlement agreement), Leah Harrington, Leighann Sonnier, and Beth Yoe's (Plaintiffs argue these

objectors lack familiarity with the settlement, raising "red flags" about the merits of their filings and

their motivations) [Doc. 219, at pp. 8-10].   Nine objectors, say the Plaintiffs are purportedly

---

[7]To the extent Plaintiffs argue that the status of a lawyer or individual as a purported "professional" or "serial" objector warrants an appeal bond, Mrs. Hipshire has never objected to a class action settlement, as Plaintiffs are undoubtedly aware.  While Mrs. Hipshire's attorney, Mr. Cain, who Plaintiffs describe as "primarily a personal injury attorney," has represented other objectors to class action settlements, this point has no merit:

> the fact that the objectors are represented by counsel who specialize
> in objecting to class-action settlements is not a reason to think that
> they will shirk their liability for costs on appeal.

*In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.*, 2010 U.S. Dist. LEXIS 123761, at *18 (E.D. Wisc. Nov. 2, 2010) (footnote omitted).

represented by disgruntled lawyers who have sued the Defendant previously (Plaintiffs label the nine as "extortionists") [Doc. 219, at pp. 11-12]. Plaintiffs also deride objectors Kelsey Foligno, Vullings, and Sweeney because they are represented by so-called notorious "serial objectors." [Doc. 219, at pp. 12-16]. And Plaintiffs chastize objectors Vicki Mager and Melissa Schultz for, among other things being represented by another so-called serial objector attorney and not having read the settlement documents. [Doc. 219, at p. 17].

As for Ms. Hipshire, however, Plaintiffs say nothing derogatory toward her, and for good reason. There is no record that she has ever been involved in civil litigation or a criminal case, much less as an objector or named party to a class action. All Plaintiffs can say about Ms. Hipshire is that her attorney, Mr. Cain, who Plaintiffs concede is "primarily a personally injury attorney," has represented others as objectors in the past. [Doc. 219, at pp. 15-16]. But this mere fact cannot aid Plaintiffs in their quest for a substantial appeal bond against Mrs. Hipshire. Notably,

> there is a recognition that objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges are more cognizant of their responsibilities under Rule 23(e), and they increasingly realize that counsel for objectors can help them carry out their responsibilities.[8]

And while Plaintiffs ridiculously impute some sort of improper motive to Mrs. Hipshire, such allegations demonstrate a fundamental misconception of the role played by objecting class members in the settlement process. After all, well-respected jurists[9] take a decidedly different view, acknowledging the importance of objecting class members in the final approval determination.

---

[8]Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

[9]*Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014).

Indeed, three of the leading class action cases of the last two decades – *Amchem, Ortiz,* and *Devlin*[10] – resulted when objectors litigated successfully all the way to the Supreme Court.

What is more, Plaintiffs do not directly allege that Mrs. Hipshire or her counsel have engaged in bad faith or vexatious conduct in this case to warrant a $121,200 appeal bond.  Nor is it the province of district courts to assess the strength of an appellant's appeal.  Indeed, the Fifth Circuit recently explicitly rejected this very argument:

> There is no provision in the rules of procedure for a district court to predict that an appellate court will find an appeal frivolous and to set a bond for costs on appeal based on an estimate of what "just damages" and costs the appellate court might award.  We have observed that Rule 38 only allows an appellate court to impose damages and costs in a frivolous appeal.  We have held that "the appellate court is generally better qualified to determine whether an appeal lacks merit."

*Vaughn,* 507 F.3d at 299 (emphasis added).

Besides, Mrs. Hipshire's objection [Doc. 110] sufficiently demonstrates that, while the Court may have overruled her non-fee-related arguments against the settlement, her appeal nonetheless has merit.  For instance, Mrs. Hipshire argues that (1) intra-class conflicts served as impenetrable barriers to final approval, *e.g.*, the settlement unfairly discounts the claims of Tennessee Class members and Class Counsel unreasonably omitted a Tennessee statutory claim [Doc. 110, at pp. 9-12]; (2) the settlement is not fair, reasonable or adequate because the release is overbroad in failing to track the allegations of the Third Amended Complaint [Doc. 110, at p. 22]; and (3) violates the identical factual predicate rule.  [Doc. 110, at pp. 23-24].

---

[10]*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845 (1999), and *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

C.     **The Court Should Deny Plaintiffs' Motion to the Extent Plaintiffs Seek to Include Costs Not Enumerated in Rule 39.**

Plaintiffs erroneously argue that "requiring the appeal bond to include administrative costs is just, practical, and consistent with case law from the Third Circuit and elsewhere." [Doc. 219, at p. 21]. To support inclusion of increased administrative costs in the bond, Plaintiffs have submitted a declaration of Mr. Frank Barkan, a Senior Director of the court-appointed Settlement Administrator, RSM US, LLP ("RMS") [Doc. 219, at pp. 42-44] ("Barkan Decl."). Mr. Barkan estimates increased monthly administrative costs of up to $7,500 during the appeal process, covering a variety of administrative tasks [Barkan Decl. ¶ 5].

Significantly, however, Mr. Barkan fails to identify the estimated monthly amount for each of those tasks; nor does he confirm or otherwise reveal the total amount of such costs to date, monthly or otherwise), notwithstanding the fact that the best barometer of "increased administrative costs" would logically be the costs actually incurred for the anticipated tasks to date. As Plaintiffs rightly concede, expedited briefing should significantly reduce time of the appeals, decreasing the period to substantially less than their sixteen (16)-month estimate. Furthermore, since RMS received email addresses from Class members through the claims submission process, Plaintiffs do not explain why RMS cannot email all Class members informing them of the appeal and that they will be notified once the appeals are complete. Such an undertaking would certainly not be cost-prohibitive.

In its essence, Plaintiffs' motion to include $120,000 in "increased administrative costs" in a $121,200 appeal bond hinges on its misguided reliance on *In re Nutella Marketing and Sales Practices Litigation*, 589 Fed. Appx. 53 (3rd Cir. 2014) and cases of its ilk. Plaintiffs imply that

-14-

*Nutella et al.* reversed and abrogated a long line of cases by and within the Third Circuit, beginning with *Hirschensohn v. Lawyers Title Ins. Corp.*, 1997 U.S. App. LEXIS 13793 (3d Cir. 1997), in which courts routinely refused to include attorneys' fees, delay costs, or administrative costs in appeal bonds because such items are not enumerated in Rule 39.   Yet, Plaintiffs do not address *Hirschensohn.*   They merely surmise that because of *Nutella*, *Hirschensohn* and its progeny – *e.g.*, *Rossi v. P&G*, 2014 U.S. Dist. LEXIS 34180, *5-7 (D. N.J. Mar. 17, 2014) (court declined to include "any administrative costs that are not specifically enumerated" in Rule 39 in an appeal bond) and *Demmick v. Cellco P'ship*, 2015 U.S. Dist. LEXIS 180323, 11-13 (D.N.J. Sept. 9, 2015) (same) – are simply no longer persuasive.

In *Rossi*, the court analyzed Rule 7 in the context of an objector's appeal of a class action settlement and the propriety of a $30,000 appeal bond which would include anticipated attorney's fees, costs for delay, and costs and damages for a frivolous appeal.  *Id*.  As many other courts within the Third Circuit have done, the Court correctly relied upon *Hirschensohn* and refused to include "administrative costs that are not specifically enumerated in Rule 39 in an appeal bond.  *See Rossi*, at **5-6 ("Because Rule 39 does not enumerate any additional administrative costs caused by delay in the disbursement of settlement funds, inclusion of these costs is denied.")(citing *Hirschensohn*, at *2-*3).

The court in *Rossi* also correctly made clear that "as a general matter . . . an appeal bond could be appropriate in a case such as this one to ensure payment of costs in the event of a failed appeal." *See also Demmick*, at *13 ("While this Court has reviewed the Third Circuit case upholding the inclusion of administrative costs in a Rule 7 bond, for the reasons set forth below, this Court will continue to follow the rationale outlined in *Hirschensohn* and will exclude administrative costs from

the bond amount in this case.")  Thus, Mrs. Hipshire does not oppose an appeal bond in the

aggregate sum of $7,200 for the twelve appeals – to cover costs actually enumerated in Rule 39.

Buoyed by the Third Circuit's decision in *Nutella*, Plaintiffs incorrectly suggest that *Nutella*

has greatly altered the landscape for appeal bonds within the Circuit, paving the way for district

courts to impose such bonds, presumably including anticipated administrative costs, attorneys' fees,

delay damages, and other costs not specifically enumerated in Rule 39.

Plaintiffs are wrong.  *Nutella*, a non-precedential, non-binding decision,[11] did not reverse

*Hirschensohn* or curtail its status as persuasive authority.  *Nutella* did not even cite *Hirschensohn*.

It certainly did not expressly overrule it.  Moreover, the Court in *Nutella* did not examine the

language, purpose, or history of Rule 7, or analyze other decisions – in this Circuit or elsewhere –

addressing the propriety of including delay costs in a Rule 7 appeal bond.

An analysis of what the Court did do in *Nutella* demonstrates its limited application to other

cases.  *Nutella* was an appeal of a class action settlement, the plaintiffs filed a motion requesting that

the appealing objectors be required to post a bond of $42,500 under Rule 7.  The bulk of the opinion

concerned a discussion of the district court's award of attorneys' fees to class counsel.  *Id.* at 57-60.

Notably, the Court listed what items may be properly included in a Rule 7 bond:

> According to 28 U.S.C. § 1920 and Federal Rule of Appellate
> Procedure 39(e), an appeal bond may include the costs of preparation
> of and transmission of the record, the costs of obtaining any necessary
> transcripts, printing costs and other copying costs, premiums or costs

---

[11]*Hirschensohn* was an unpublished decision.  However, there, the Third Circuit engaged in an analysis of Rule 7, Rule 39, 28 U.S.C. § 1920 and § 1927, Supreme Court precedent, the law of other Circuits, the prevailing law of the Third Circuit, and persuasive treatises on the Federal Rules.  *Hirschensohn v. Lawyers Title Ins. Corp.*, 1997 U.S. App. LEXIS 13793 (3d Cir. June 10, 1997).  This explains why courts within the Third Circuit have frequently turned to the decision for guidance.

> for supersedeas bonds or other bonds to secure rights pending appeal,
> and fees for filing the notice of appeal.

*Nutella*, at 60-61.  Conspicuously absent from this list are increased administrative costs.

The facts in *Nutella* were unique.  In affirming imposition of a $22,500 appeal bond, the Court took great care to pinpoint the district court's reasons for finding an appeal bond to be appropriate:

> "(1) the objectors did not respond in a meaningful way to the plaintiffs' contentions that their appeals were meritless; and (2) the objectors, who were a geographically diverse group, did not provide any representations that they were able to pay the costs of an appeal."

*Id*. at 61.  The Court also made clear that its own decision to affirm the imposition of the appeal bond was based upon:

> the fact that the objectors were nonresponsive in their briefing objecting to the imposition of the appeal bond, and because the bond was placed collectively on the ten objectors rather than individually, we cannot conclude that the District Court abused its discretion in requiring an appeal bond here.

*Id*.  Finally, the Court noted that it could not conclude that the district court's inclusion of administrative costs was an abuse of discretion, reasoning that the district court had also decreased the appeal bond by half, to $20,000.  *Id*.

Although *Nutella* affirmed the imposition of an appeal bond including administrative costs under the facts that were presented to it, the foregoing demonstrates that it did not overrule or abrogate *Hirschensohn* and the long line of cases subscribing to its reasoning.

Unsurprisingly then, courts in this and other Circuits continue to recognize *Hirschensohn* as the law of the Third Circuit.  *See, e.g., United States v. Endo Pharms., Inc.*, 2014 U.S. Dist. LEXIS 139221 (E.D. Pa. Oct. 1, 2014) ("The Third Circuit has interpreted costs under [Rule 7] for appellate

bond to include only the expenses enumerated in [Rule 39] and 28 U.S.C. § 1920") (citing *Hirschensohn*, 1997 U.S. App. LEXIS 13793, 1997 WL 307777, at \*2-3 and *McDonald v. McCarthy*, 966 F.2d 112, 115 (3d Cir. 1992), and noting that "[c]onspicuously absent from the catalog of costs permitted in the calculation of an appropriate sum for an appellate bond is attorneys' fees."); *Demmick v. Cellco P'ship*, 2015 U.S. Dist. LEXIS 180323, at &14-15 (D.N.J. Sept. 9, 2015) ("this Court's determination that administrative costs are not properly included in a Rule 7 bond is consistent with the vast majority of district court decisions within the Third Circuit that have considered the costs that may be included in a Rule 7 bond"); *Schwartz v. Avis Rent a Car Sys., LLC*, 2016 U.S. Dist. LEXIS 101666 (D. N.J. Aug. 3, 2016) (re-affirming *Demmick* for the same reasons, relying on *Hirschensohn* instead of *Nutella*, denying Plaintiffs' request to include administrative costs in the Rule 7 bond amount, impose a bond on objector in the amount of $15,000); *Tennille v. West Union Co.*, 774 F.3d 1249, 1255 (10th Cir. Colo. 2014) (citing *Hirschensohn* in December 2014 for the proposition that the Third Circuit restricts an appeal bond "to only costs listed in Fed. R. App. P. 39, which include "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal").

In *Tennille*, the Tenth Circuit explicitly rejected the notion that district courts can impose appeal bonds to secure such "administrative costs." *Id*. at 1256 ("What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause. But that is not the purpose of a Rule 7 bond."). The Tenth Circuit noted that the plaintiffs in *Tennille* could not identify, and the Court could not locate, any rule or statute that permits them to recover "delay damages" should they succeed in defending the merits appeal. *Id*. at 1255.

In the end, the Court in *Tennille* rejected the reasoning of cases which included administrative costs in appeal bonds as unpersuasive, particularly "in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute." *Tennille*, 774 F.3d at 1256.

Here as well, Plaintiffs fail to identify any rule or statute that allows them to recover, as costs on appeal, administrative funds spent maintaining the settlement pending this appeal. Although plenty of courts have imposed bonds covering increased administrative costs, there is no "applicable fee-shifting statute" that might justify imposition of the additional amount of bond in the present case.

Accordingly, the Court should limit the amount of the bond available to Plaintiffs under Rule 7 to those costs which are explicitly enumerated in Rule 39(e), which do not include increased settlement administration costs.

## IV.    CONCLUSION

For all of this, the Court should impose an appeal bond in the amount of $7,200, for which all of the objectors are jointly and severally liable. The Court should reject an appeal bond which would include as a component putative "increased settlement administration costs," as such costs are not enumerated in Rule 39 and are thus inappropriate for inclusion in a Rule 7 appeal bond. Finally, requiring a Rule 7 bond in the amount of $121,200 is more likely to "chill an appeal" than a bond covering more predictable costs on appeal.

-19-

Respectfully submitted, this 3rd day of October, 2016.

/s/ Miles Dumack
Miles Dumack
DUMACK LAW
1621 McKean Street
Philadelphia, PA 19145
Tel: 267-259-3962
Email: miles@dumacklaw.com

Christopher T. Cain
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Tel: (865) 525-2150
cain@scottandcain.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on October 3, 2016, a copy of the foregoing was submitted electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

*/s/ Miles Dumack*
Miles Dumack