**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL ROUGVIE, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> ASCENA RETAIL GROUP, INC. d/b/a/ <br> JUSTICE STORES <br><br> and <br><br> TWEEN BRANDS, INC. d/b/a <br> JUSTICE STORES <br><br> *Defendants*. | No. 2:15-cv-00724-MAK |

**OPPPOSITION OF OBJECTORS BARBARA COMLISH AND KATHRYN ARTLIP'S
TO PLAINTIFFS' MOTION FOR APPEAL BOND**

## INTRODUCTION

In accordance with Local Rule 7.1(c), objecting class members Barbara Comlish and Kathryn Artlip (collectively "Comlish") write in opposition to Plaintiffs' Motion for Appeal Bond ("Motion"). Dkt. 219.[1] Plaintiffs seek an aggregate bond of $121,200, consisting of $1,200 in taxable costs and $120,000 for expected administrative costs during the time that the appeal is pending. Motion 18.

However, as every precedential appellate decision to address the issue of "administrative costs" has found, in the absence of independent statutory authority allowing the shifting of those costs against unsuccessful plaintiffs, these costs may not be bonded under Fed. R. App. P. 7. *Tennille v. Western Union Co.*, 774 F.3d 1249, 1254-55 (10th Cir. 2014); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1062 (8th Cir. 2013). Plaintiffs cite neither *Tennille* nor *Uponor*, though remarkably they do cite the reversed district court dispositions in both cases. Motion 3, 15. Nor do they discuss any of the myriad appellate decisions which "consistently define 'costs on appeal' for Rule 7 purposes as appellate costs expressly provided for by a rule or statute." *Tennille*, 774 F.3d at 1255.[2] Instead, the only appellate authority plaintiffs

---

[1] Plaintiffs may assert that Comlish lacks standing to oppose their motion, but because the motion is properly before the Court, Comlish "needs only a procedural vehicle with which to place [her] arguments before the district court." *Stetson v. Grissom*, 821 F.3d 1157, 1163 (9th Cir. 2016). L.R. 7.1(c) provides that vehicle by allowing that "any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate." It is unclear whether Comlish could request oral argument as an "interested party" under L.R. 7.1(f), but it is of no consequence because she does not do so here.

[2] *Citing In re Am. President Lines, Inc.,* 779 F.2d 714, 716 (D.C. Cir. 1985) (per curiam) (holding that appeal bond is restricted to those costs listed in Fed. R. App. P. 39); *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777, 1997 U.S. App. LEXIS 13793, at *6 (3d Cir. June 10, 1997) (unpublished) ("'Costs' referred to in Rule 7 are those that may be taxed against an unsuccessful litigant under Federal Rule of Appellate Procedure 39."); *Adsani v. Miller*, 139 F.3d 67, 71-75 (2d Cir. 1998) (holding that "'costs' under Rule 7 may include the definition of 'costs'

rely upon is the second of the Third Circuit's two unpublished decisions interpreting Rule 7. Motion 17-18 n.35 (citing *In re Nutella Mktg. & Sales Prac. Litig.*, 589 Fed. Appx. 53, 61 (3d Cir. 2014), which affirmed a Rule 7 bond's inclusion of $22,000 in additional administrative costs, primarily based on the objectors' unresponsiveness to the bond request.

Plaintiffs' motion suffers from an analytic problem: while a Fed. R. App. P. 8 *supersedeas* bond can secure costs of delay[3] attributable to an appeal, a Rule 7 bond cannot. *E.g. Vaughn v. Am. Honda Motor Co*., 507 F.3d 295, 298-99 (5th Cir. 2007). A Rule 8 *supersedeas* bond is not available here because appellants have not sought to stay final judgment. *E.g*., *In re Am. President Lines, Inc*., 779 F.2d 714, 716-18 (D.C. Cir. 1985) (per curiam). Because Rule 8 is a non-starter, the plaintiffs now attempt to shoehorn a Rule 8 foot into a Rule 7 shoe. *See generally In re American Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig*., 695 F. Supp. 2d 157, 162 (E.D. Pa. 2010) (citing cases where supersedeas bond for appellant-objectors denied).

Plaintiffs' evident concern with potential extortionary demands of the Objector-Appellants, Motion 3-16, should not be addressed by issuing an unauthorized appeal bond that deters good-faith appeals to the same extent as bad-faith ones. Rather, the correct solution to unsavory objector "greenmailers" is for this Court to enjoin the plaintiffs from paying off any objectors who propose to extort a settlement out of them. Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND.

---

contained in the relevant substantive statute under which appeal is sought"); *Azizian v. Federated Dep't Stores, Inc*., 499 F.3d 950, 953-54 (9th Cir. 2007) (finding "costs" to include fees under fee-shifting statute but such costs could not be taxed against objecting class member in Rule 7 bond because attorneys' fees were not recoverable from class member); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203-04 (11th Cir. 2005) (holding that attorneys' fees could only be taxed under fee-shifting provision if statute would actually support an award of fees to appellees and district court had failed to make such determination); *Int'l Floor Crafts, Inc. v. Dziemet*, 420 Fed. Appx. 6, 17 (1st Cir. 2011) (unpublished) ("[A] Rule 7 bond may include appellate attorneys' fees if the applicable statute underlying the litigation contains a fee-shifting provision that accounts for such fees in its definition of recoverable costs and the appellee is eligible to recover them.").

[3] Examples of typical delay costs are the lost time value of money from delaying distributions or, as here, the diminishment of the common fund because of increased administrative costs.

L. REV. 1623, 1659-66 (2009) (proposing inalienability of objections and not excessive appeal bonds as the "optimal solution" to objector blackmail problem) (cited by Motion 4 n.3). This Court has the authority to issue such an order *sua sponte* under Fed. R. Civ. P. 23(d)(1)(C) and doing so would be a positive step for class action governance.

Comlish opposes any bond in excess of the $1,200 relating to appellees' potential taxable costs and encourages the Court to use its Rule 23(d) authority to make the appeals in this case inalienable unless meeting certain conditions described below.

## I.     There is no statutory basis for including class action administration costs in a Rule 7 bond imposed on objecting plaintiffs.

"The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the 'costs on appeal' incurred by his opponent." *Tennille*, 774 F.3d at 1254 (10th Cir. 2014) (citing 16A Wright et al., Federal Practice & Procedure § 3953). As noted *supra* at 1-2 n.3, every published appellate decision thus construes Rule 7 to require that "costs on appeal" be defined with reference to an underlying rule or statute that would shift costs in favor of a successful appellee. Plaintiffs though do not ground their request in any such rule or statute, presumably because none exists. In lieu of a cost-shifting rule, plaintiffs ground their request in a free-floating conception of "costs" dressed up with a lengthy screed on the bad motivations of objector-appellants and the frivolousness of their appeals. Admittedly, some district courts have, often unreflectively, allowed this free-floating conception of "costs" to enter the Rule 7 equation and determine its calculation.

But the recent Tenth Circuit decision in *Tennille* demonstrates why this is error. In *Tenille,* the $1,007,294 appeal bond entered by the district court included $647,674 for sending class members' notice of the appeal, $334,620 for increased administrative costs, and $25,000 for printing and copying costs. 774 F.3d at 1254. The Tenth Circuit reversed the district court's order, holding that a Rule 7 appeal bond could not include any amount to cover notice to class members or increased class action administrative costs. 774 F.3d at 1255. (The Tenth Circuit also found that

3

the district court abused its discretion in requiring $25,000 for copying costs and decreased the bond to $5,000. *Id.* at 1257.) Consistent with other circuits interpreting Rule 7, *see supra* at 1-2 n.3, the Tenth Circuit held that "costs on appeal" under Rule 7 are limited to those costs that are expressly permitted by rule or statute. *Id.* A Rule 7 appeal bond could not include class action administration costs because there was no rule or statute expressly permitting plaintiffs to recover such costs. 774 F.3d at 1255.[4]

*Tennille* and the appellate decisions it cites echo many district courts that have similarly concluded that settlement administration costs cannot be included in a bond amount because such costs are not authorized by rule or statute. For example:

- *Schwartz v. Avis Rent a Car Sys., LLC,* 2016 U.S. Dist. LEXIS 101666 (D.N.J. Aug. 3, 2016) (refusing to include administration costs in a Rule 7 bond "because [*Hirschensohn*] more pointedly addresses the issue of costs appropriately included under Rules 7 and 39 [than does *Nutella*]" making it proper to "credit the holding of *Hirschensohn* over that of *Nutella*")

- *Lerma v. Schiff Nutrition Int'l, Inc.*, 2016 U.S. Dist. LEXIS 24748, at *10 (S.D. Cal. Feb. 29, 2016) (disallowing $29,126 of requested bond attributable to administrative costs because of the court's "view that the courts following the rationale of Azizian have the better of the argument. Accordingly, the Court will not include administrative costs in the appeal bond.")

- *Keller v. NCAA*, 2015 WL 6178829, 2015 U.S. Dist. LEXIS 143391, *19 (N.D. Cal. Oct. 21, 2015) (rejecting bond request that included $83,839 in class action settlement administrative costs for maintaining settlement website and toll-free telephone number because "no statute authorize[ed] the shifting of such costs")

- *Demmick v. Cellco P'Ship,* 2015 U.S. Dist. LEXIS 180323, at *15 (D.N.J. Sept. 9, 2015) (deciding, even after *Nutella* that the court "will continue to follow the lead of the vast majority of district courts within this Circuit, as well as the Third Circuit's Hirshensohn decision, in holding that Plaintiffs cannot recover the

---

[4] *Tennille* distinguished *In re Cardizem CD Antitrust Litig*., 391 F.3d 812 (6th Cir. 2004) in which the court affirmed a bond that included administration costs. *Tennille* explained that "the Sixth Circuit did so because the Tennessee statute underlying that diversity case expressly provided for the recovery of 'damages incurred, including reasonable attorney's fees and costs.' … That case, then, is consistent with case law from other circuits permitting an appeal bond to cover only costs on appeal made expressly recoverable by rule or statute." 774 F.3d at 1256 n.6.

4

anticipated costs of the continued administration of the settlement fund in their Rule 7 bond.")

- *Golloher v. Todd Christopher Int'l, Inc*., 2014 U.S. Dist. LEXIS 91942, *5 (N.D. Cal. July 7, 2014) (denying bond that included $12,715 in settlement administration costs pending the appeal because "bond amounts under Rule 7 must be authorized by some rule or statutory provision")

- *In re Certainteed Fiber Cement Siding Litig.*, 2014 WL 2194513, 2014 U.S. Dist. LEXIS 71702 (E.D. Pa. May 27, 2014) (deciding to follow "the majority of decisions in this circuit" and "limit the amount of the bond available to plaintiffs under Rule 7 to those costs which are explicitly enumerated in Rule 39(e) of the Federal Rules of Appellate procedure")

- *Eisen v. Porsche*, 2014 U.S. Dist. LEXIS 59526 (C.D. Cal. Apr. 25, 2014) (declining to tax $35,634 in settlement administration costs in Rule 7 bond because they are "not within the scope of the Rule 39(e) taxable costs or another applicable fee-shifting statute") (quoting *In re Toyota Motor Corp. Unintended Acceleration Mkt'g, Sales Practices, and Prods. Liab. Litig*., No. 8:10-ml-02151-JVS, 2013 U.S. Dist. LEXIS 156986, *105-107 (C.D. Cal. Oct. 21, 2013) (denying bond for $525,000 increased settlement administrative costs)

- *Rossi v. P&G*, 2014 U.S. Dist. LEXIS 34180 (D.N.J. Mar. 17, 2014) (denying $30,000 appeal bond that attempted to include attorney's fees, settlement administrative costs based on delay, and potential rule 38 sanctions because they were not authorized by Rule 39)

- *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig*., 2013 U.S. Dist. LEXIS 125555, *20 (E.D.N.Y. Sept. 3, 2013) (denying bond request that included $57,500 in settlement administration costs for maintaining call center and website maintenance because "[n]o statute underlying the litigation authorizes the inclusion of delay costs in an appeal bond")

- *In re Navistar Diesel Engine Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 113111, *6 (N.D. Ill. Aug. 12, 2013) (denying request for bond that included $52,000 in settlement administration costs because "[t]he extra expenses of administration that plaintiffs will incur do not fall within any of the[ ] categories" of costs taxable under Rules 7 and 39)

- *Cobell v. Salazar*, 816 F. Supp. 2d 10, 13 (D.D.C. 2011) (denying bond for increased cost of settlement administration and holding that the costs referred to in Rule 7 to ensure payment of costs on appeal "are simply those that may be taxed against an unsuccessful litigant under Federal Appellate Rule 39")

*Tennille* and these other appellate and district court cases, many of which are in circuit, belie the plaintiffs' almost passing assertion that "the administrative costs related to the delayed effectuation of the settlement are also includable in the appeal bond amount." Motion 17.

5

Plaintiffs rely only on the Third Circuit's unpublished *Nutella* decision and a handful of district court cases. The unpublished non-precedential *Nutella* decision is inapt and unpersuasive for several reasons. Most significantly, it neglects to mention *Hirschensohn* or any contrary out-of-circuit authority[5] and articulates no reason for allowing the inclusion of administrative costs in the bond. It relies on the fact that "objectors were nonresponsive in their briefing objecting to the imposition of the appeal bond." 589 Fed. Appx. 53, 61. It approves the district court's decision to reduce the requested $40,000 for administrative costs to $20,000. *Id.*

The district court cases cited by plaintiffs are equally unpersuasive because they offer no underlying rule or statute that can provide the foundation for including administration costs in the bond amount.[6] In short, because plaintiffs cannot identify a rule or statute authorizing recovery of the settlement administration costs, the Rule 7 bond amount cannot include the $120,000 in estimated administration costs.[7]

---

[5] It is hard to imagine that the Third Circuit would find the "compelling basis to hold otherwise" necessary "before effecting a circuit split" with *Tennille*. *Wagner v. Pennwest Farm Credit*, 109 F.3d 909, 912 (3d Cir. 1997).

[6] *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 U.S. Dist. LEXIS 162710 (E.D. Pa. Dec. 3, 2015); *Heekin v. Anthem, Inc.*, 2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb. 27, 2013); *In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 168298 (N.D. Cal. Nov. 25, 2013); *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. Aug. 27, 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013); *In re Target Corp. Customer Data Security Breach Litig.*, 2016 WL 259676 (D. Minn. Jan. 21, 2016); *In re Polyurethane Foam Antitrust Litig.*, 2016 WL 1452005 (N.D. Ohio. Apr. 13, 2016). Moreover, in *Heekin*, a three judge panel of the Seventh Circuit stayed the bond after receiving briefing requesting an emergency stay. *See* Order, *Heekin v. Anthem, Inc.*, No. 13-1477 (7th Cir. Mar. 27, 2013). Comlish's counsel also represents an objector appealing the excessive bond to the Eighth Circuit in *Target*, with that case likely set for oral argument in November. *In re Target Corp. Customer Data Security Breach Litig.*, No. 15-3912 (8th Cir.).

[7] It is also revealing that, of the few comparably-sized Rule 7 bonds that have been imposed, Motion 18-19 n.37, the two largest were stayed on appeal and should not be considered good law. *See* Order, *Heekin v. Anthem, Inc.*, No. 13-1477, Dkt. No. 13 (7th Cir. Mar. 27, 2013) (Posner,

The $120,000 in administration costs can also not be included in the bond amount because even if plaintiffs were successful on appeal, plaintiffs could not recover such costs from objecting class members. A Rule 7 bond includes costs relating to the appeal, "that is, costs which 'the appellee stands to have **reimbursed**' should he prevail on appeal." *Tennille*, 774 F.3d at 1254 (emphasis added) (quoting *Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998)). A Rule 7 bond can only secure costs that plaintiffs could *actually* recover from appellant if appellee were successful on appeal. *See Azizian*, 499 F.3d at 959. For example, in *Azizian*, the Ninth Circuit held that although Rule 7 could potentially include attorneys' fees based on the applicable fee-shifting statute, such fees could not be used in the Rule 7 bond in *Azizian* because they were not recoverable against the appellant class member. *Id.* at 959-60. The applicable fee-shifting statute only authorized fees to be recovered from the losing *defendant* (the party that violated the antitrust laws) and not an objecting class member. *Id.*

The Eleventh Circuit reached a similar result in *Young v. New Process Steel, LP*, 419 F.3d 1201, 1207-08 (11th Cir. 2005). It explained that it is not enough to have the fee-shifting provision define attorneys' fees as part of costs, but the underlying statute must *actually* support an award of fees to the appellees. *Id.* at 1204. In *Young*, the Eleventh Circuit reversed a Rule 7 bond that included fees because the fee-shifting statute only permitted recovery of fees to defendants in exceptional cases and the district court made no finding that defendant-appellee would actually recover fees. *Id.* at 1207-08; *see also Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 U.S. App. LEXIS 13793, at *6 (3d Cir. June 10, 1997) (unpublished) (holding that Rule 7 did not authorize securing costs for attorneys' fees because underlying statute "does not authorize assessment of counsel fees on appeal to this Court").

---

Wood, and Manion, JJ.); *In re Wal-Mart Wage & Hour Empl. Prac. Litig.*, No. 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (Kozinski and Leavy JJ.) (citing *Vaughn*, staying the bond order and contempt proceedings relating to the bond order). In both cases, the appeals were eventually dismissed pursuant to Fed. R. App. P. 42(b).

In *Golloher v. Todd Christopher International, Inc.*, the district court rejected appellees' request for a Rule 7 bond that included class settlement administration costs based on *Azizian's* holding that the costs must actually be recoverable from the appellant. 2014 U.S. Dist. LEXIS 91942, *5 (N.D. Cal. July 7, 2014). The district court explained: "[m]ore fundamentally, the question is not whether an item represents a 'cost' an appellee may incur during an appeal, but whether such 'cost' is one that a losing appellant will become responsible for paying to the appellee." *Id.* The district court concluded that a Rule 7 bond securing costs for class administration costs was improper because "plaintiffs have pointed to no rule or statute that would render objectors liable for the 'administrative costs' even assuming their appeals fail." *Id.* at *5. The same is true here. Plaintiffs cannot secure administration costs in the Rule 7 bond because there is no rule or statute where objectors would be liable to plaintiffs for such costs if plaintiffs were successful on appeal.

## II.   The potential issue with bad-faith objectors should be resolved through a Rule 23(d) order, not an appeal bond.

Plaintiffs spend far more attention to their efforts to smear the objector-appellants in this case than they devote to their efforts to justify the inclusion of administrative costs in the appeal bond. Motion 3-16. Regardless of whether the appellants are professional objectors or not, that is not an appropriate reason for setting an excessive appeal bond. As repulsive as objector greenmail is, imposing a punitive appeal bond to curtail objector appeals remains improper. The question of the merits of the appeal and whether to sanction appellants for a frivolous appeal "is best left to the courts of appeals"; a district court is not permitted to prejudge the appeal and "deter" appeals it does not like through excessive appeal bonds. *Azizian*, 499 F.3d at 961; *Vaughn*, 507 F.3d at 299; *Am. President Lines*, 779 F.2d 714; *contra Adsani*, 139 F.3d at 79. Simply, "[a] district court judge ought not try to insulate his decisions from appellate review" even (especially?) when it is the appellees initiating the process of insulation. *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012). The district court ought not impose a punitive bond based on its opinion of

the merits, be it the legal arguments presented[8] or the worthiness of the appellants.

In addition to citing the now-discredited *Tennille* district court opinion, Plaintiffs cite to the Lopatka and Smith article that endorses appeal bonds as the solution to bad-faith objectors. 39 Fla. St. U. L. Rev. 865 (2012). What the plaintiffs fail to mention is that Loptaka and Smith were exhorting a change in the law that does not currently permit extravagant appeal bonds. Specifically, they note that "[d]istrict courts sometimes impose appeal bonds on objectors, but the amount of the bond is tightly constrained. Some circuits hold that bonds are limited to the relatively trivial costs identified in the Federal Rules of Appellate Procedure and a federal appellate cost statute." *Id*. at 872 (categorizing the Third Circuit under this approach). Notwithstanding their preferred prescriptive solution, their descriptive conclusion thus is that "[a]ppeal bonds, therefore, can be insubstantial." *Id.*  And if that is not clear enough, they candidly admit that "implementing the[ir] appeal bond approach" "would require changes in the law." *Id*. at 927.

But even if Lopatka and Smith's proposal were legally viable under current law, it is not preferable because it deters meritorious and good-faith objector appeals like those that the Center for Class Action Fairness regularly pursues in other cases. Even the most well-funded objectors, who believe their chances of success to be great, will not proceed if forced to risk losing hundreds of thousands or even a million dollars. A foresworn good-faith appeal is not just a loss for the objector, it is often a loss for the *class* itself because "appellate correction of a district court's errors is a benefit to the class." *Crawford v. Equifax Info Servs*., 201 F.3d 877, 881 (7th Cir. 2000).

The optimal solution—one that is also permissible under current law—is a form of Professor Fitzpatrick's inalienability rule. *See Fitzpatrick, Objector Blackmail*, 62 Vand. L. Rev. 1623, 1662. More specifically, Comlish suggests that the Court should issue a Rule 23(d)(1)(C) order enjoining the plaintiffs from settling any appeals via a personal payoff to the objector, at

---

8 Also, contrary to plaintiffs' intimation (Motion 15 n.32), the Center for Class Action Fairness believes that at least some of objector-appellants' arguments will likely be colorable, most notably the disadvantageous treatment of cash purchasers under the settlement's terms.

least in so far as those proposed settlements "do not involve a modification to the underlying class action agreement." *Id.* at 1665. Deprived of the right to sell their appeals to class counsel, bad-faith objectors who have no intention of proceeding on the merits will slink away and dismiss their appeals, simply on the agreement that everyone would bear their own costs. *Id.* at 1662. At the same time, "no legitimate objector would be discouraged." *Id.* Lopatka and Smith's main critique of an inalienability rule is that "it does not prevent professional objectors from extorting payments before the inalienable rule attaches." 39 Fla. St. L. Rev. 865, 906. This concern could easily be addressed here by an injunction that goes into immediate effect. Their additional concern that "professional objectors as a group are ethically challenged"[9] and cannot be counted on to adhere to inalienability constraints is not an issue if the injunction acts on class counsel and the named plaintiffs.

Fitzpatrick theorizes that his inalienability rule could "go beyond Rule 23" but he does not consider the avenue that Rule 23(d) provides on a case-by-case basis. Rule 23(d)(1)(C) allows the court to "issue orders that…impose conditions on the representative parties or intervenors." "Class actions serve an important function in our system of civil justice. They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. Because of the potential for abuse, a district court both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981). *Gulf Oil* sets a heightened standard —requiring a clear showing of likely abuse—to be met when First Amendment rights are circumscribed by a Rule 23(d) order. Here, however, an injunction on the plaintiffs and their counsel of the type described above would not curtail any speech or communications; it would merely prevent an abusive settlement arrangement at the class members' expense. The Court's Rule 23(d)(1)(C) authority extends beyond limiting improper communications. *See In re*

---

[9] *Id.* at 908.

*Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014). Thus, if the Court concludes that the plaintiffs have adequately made a showing of possible abuse from bad-faith objectors, the Court should exercise its discretion to issue a Rule 23(d) order enjoining the named plaintiffs and class counsel from paying in exchange for any objector's agreement to drop their appeal without obtaining a modification of the settlement agreement that is beneficial to the absent class members.

## CONCLUSION

For the foregoing reasons, Comlish requests that the Court impose no greater Rule 7 bond than $1,200, and issue a Rule 23(d)(1)(C) order consistent with above.


Dated: October 3, 2016                     Respectfully submitted,

                                           */s/ Adam E. Schulman*
                                           Adam E. Schulman
                                           COMPETITIVE ENTERPRISE INSTITUTE
                                           CENTER FOR CLASS ACTION FAIRNESS
                                           1310 L Street NW, 7th Floor
                                           Washington, DC 20005
                                           adam.schulman@cei.org
                                           (610) 457-0856

                                           *Attorney for Objectors Comlish and Artlip*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.

DATED: October 3, 2016

_/s/ Adam E. Schulman_
Adam E. Schulman