**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROL ROUGVIE, et al., | : | |
| | : | |
| Plaintiffs, | : | NO. 2:15-cv-00724-MAK |
| | : | |
| v. | : | |
| | : | |
| ASCENA RETAIL GROUP, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY TO OBJECTORS' RESPONSES TO**
**MOTION FOR APPEAL BOND**

Plaintiffs file this brief in reply to those Responses filed by certain Objectors in opposition to Plaintiffs' Appeal Bond Motion. This brief focuses on the propriety of the appeal bond under Federal Rule of Appellate Procedure 7.[1]

While the objectors represented by the Center for Class Action Fairness ("CCAF") have not filed an appeal, they have filed a Response to the Motion. CCAF posits that Local Rule 7.1 states that any party to an action may file a brief opposing any motion. CCAF omits the clause following its citation to Rule 7.1(c) which shows that that section has little (if anything) to do with one's right to brief an issue, but rather concludes that any responsive brief must be filed "within fourteen (14) days after service of the motion and supporting brief." L. R. 7.1. By CCAF's logic, when a defendant facing a cross-claim files a motion for summary judgment as to that cross-claim, a plaintiff with no interest in the cross-claim may brief the matter. That of course is not the practice of the courts. To the extent CCAF believes it has a proper interest here, it should have followed established practice by requesting leave to file an amicus brief. See e.g., U.S. v. Alkaabi, 223 F. Supp. 2d 583, 592 (D.N.J. 2002) (discussing the standard by which an

---

[1] Many Objectors did not respond to the Motion at all. Objectors have also largely failed to oppose Plaintiffs' motion as it pertains to the Court's power to impose a bond under its inherent powers.

amicus brief may be filed in the District Court).     Nonetheless, Plaintiffs reply to CCAF's Response as well.

## I.     The Ability to Pay

Certain Objectors argue that Plaintiffs have not provided evidence that Objectors are able to afford an appeal bond.[2]  To begin, Objectors suggest that the sum of an appeal bond is a cost that they will not retain following appeal.  However, the sums will be returned to them if they are engaged in meritorious litigation.  If their appeal is frivolous, they will owe such costs regardless of the bond, which is simply an instrument of security.  As to the assertion that it is Plaintiffs' burden to show that Objectors can afford to pay the bond, the law is to the contrary.  It is incumbent upon an objector to show that he or she is unable to post a bond.[3]  This must be the case in that Plaintiffs are not privy to the personal finances of the Objectors.

Further, Objector Vullings claims she cannot afford the *entirety* of the bond.  She ignores the fact that Plaintiffs' requested a bond with joint and several liability, which permits, and

---

[2] Objector Vullings alleges that there is inadequate specificity as to the sum of the bond.  However, the Declaration of the Claims Administrator explains the specific bases for the increased administrative costs.  In any event, there is no requirement that such a granular showing be made.  See In re Ins. Brokerage Antitrust Litig., CIV A 04-5184 GEB, 2007 WL 1963063, at *3 (D.N.J. Jul. 2, 2007) (rejecting Objector's argument concerning a failure to delineate costs and noting that "[Objector] does not offer any case law in support of its argument that Plaintiffs be required to make some sort of delineated showing of costs for a bond motion"); see also In re Pharm. Indus. Average Wholesale Price Litig., 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (affidavit of costs is  sufficient and including administrative costs in the sum of the bond).  Objector Vullings argues that Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc., 04-CV-74891-DT, 2008 WL 2415340 (E.D. Mich. June 12, 2008), requires a more delineated showing of costs.  However, Chiaverini merely stands for the proposition that a litigant should not simply present a number without any modicum of support or specificity.  Id. at *2 (finding that defendant had not made a proper showing where it "merely asserts that $8,000.00 is a reasonable amount of bond").  The declaration from the Claims Administrator here sets out the specific reasons for the administrative costs while Class Counsel has carefully explained its estimate for the remaining costs.  This case is a far cry from Chiaverini.

[3] See e.g., In re Air Cargo Ship. Services Antitrust Litig., 06MD1775 JG VVP, 2010 WL 1049269, at *2 (E.D.N.Y. Mar. 22, 2010) (because objectors had "not submitted any financial information," the Court "conclude[d] that the appellants ha[d] the financial ability to post the requested bond."); In re Polyurethane Foam Antitrust Litig., 1:10 MD 2196, 2016 WL 1452005, at *5 (N.D. Ohio Apr. 13, 2016) (it is the appellants burden to show they are unable to afford a Rule 7 bond); Embry v. ACER Am. Corp., C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) ("In the absence of evidence that posting a bond will pose a substantial hardship, this factor weighs in favor of requiring a bond."); Chiaverini, 2008 WL 2415340, at *2 (same); In re Netflix Priv. Litig., 5:11-CV-00379-EJD, 2013 WL 6173772, at *3 (N.D. Cal. Nov. 25, 2013) (same).

envisions, the sharing of the bond. Thus she would not be so burdened.[4] In any event, Objector Vullings' conclusory assertion that she cannot afford a bond is insufficient to meet her burden. In Marty v. Anheuser-Busch Companies, LLC, 13-23656-CIV, 2016 WL 397593, at *2 (S.D. Fla. Feb. 2, 2016), the court was faced with a remarkably similar declaration, id. at *2 n. 2, and found it to be insufficient. Id. at *2. Further, Ms. Vullings is represented by her attorney husband. As Objector admits, she has not paid her husband for his services and thus it is her husband that is funding her appeal. (Vullings Brief, Doc. 229-3).

## II.    The Merits of the Appeals & Public Policy

Several Objectors asserts that the merits and the motivations underlying the appeals may not to be the subject of inquiry. As Plaintiffs noted in their Brief in Support of the instant Motion, the law in this area is unsettled. Plaintiffs submit that regardless of this inquiry, the Motion should still be granted. Nevertheless, numerous courts, in this Circuit and elsewhere, look to the merits and motivations underlying the appeal, including the fact that appellants are professional objectors or represented by professional objectors.[5] Rather than undermining the Court of Appeal's prerogative, this protects the interests of the appellate courts by ensuring that,

---

[4] Also reflecting a lack of familiarity with the Motion at issue, Objector Vullings states that Plaintiff requested that "interest" be included in the bond, Vullings Brief, Doc. 229, at 9-10, yet there is no reference to interest in Plaintiffs' filings. These oversights suggest Objector Vullings is not engaging in a meritorious, good faith challenge of the instant Motion, which, ironically, supports requiring an appeal bond. See In re Nutella Mktg. and Sales Practices Litig., 589 Fed. Appx. 53, 61 (3d Cir. 2014) (non-precedential).

[5] See e.g., Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998); Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987); Intl. Floor Crafts, Inc. v. Dziemit, 420 Fed. Appx. 6, 17 (1st Cir. 2011) (unpublished); In re Nutella Mktg. and Sales Practices, CIV.A. 11-1086 FLW, 2012 WL 6013276, at *2 (D.N.J. Nov. 20, 2012), aff'd sub nom. Nutella, 589 Fed. Appx. 53; Glaberson v. Comcast Corp., CV 03-6604, 2015 WL 7887788, at *3 (E.D. Pa. Dec. 3, 2015); In re Merck & Co., Inc., CV 05-1151 (SRC), 2016 WL 4820620, at *2 (D.N.J. Sept. 14, 2016); In re Initial Pub. Offering Securities Litig., 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010); In re Compact Disc Minimum Advertised Price Antitrust Litig., MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003); Marty, 2016 WL 397593, at *2; see also Brief in Support of Motion for Appeal Bond, Doc. 219, at 4-5.

through the Federal Rules of Appellate Procedure, costs properly due Plaintiffs following the appeals will be paid.

Objectors also posit that public policy mandates that an appeal bond may not be larger than a few thousand dollars. The law is to the contrary.[6] In any event, public policy weighs in favor of imposing an appeal bond. Objectors to class action settlements are a miniscule portion of the class. The notion that public policy favors professional objectors, who have little, if any, interest in effectuating justice or benefiting the class, should be rejected. Any public policy analysis must weigh the problematic dynamics of professional objecting whereby millions of dollars in relief to class members is held hostage in a cynical, self-serving effort to line the pockets of bad faith objectors.[7] In imposing a $55,000 appeal bond on a single objector, the Honorable Stanley Chesler of the District of New Jersey recently recognized that:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.
>
> Under these circumstances, Fed. R. App. P. 7 makes perfect sense: by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class. Posting a bond sufficient to ensure

---

[6] See e.g., In re Polyurethane Foam Antitrust Litig., 1:10 MD 2196, 2016 WL 1452005, at *8 (N.D. Ohio Apr. 13, 2016) ("$145,463 [required of seven objectors, jointly and severally, is] an amount that will sufficiently protect the IPP class without unduly burdening Objectors' right to appeal"); see also Adsani v. Miller, 139 F.3d 67, 75 (2d Cir. 1998) ("We do not think it either bizarre or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed" and finding a $35,000 bond required of a *single* appellant to be proper); Motion for Appeal Bond Brief, Doc. 219, at 18 n. 37.

[7] This concern is so widespread that Rule 23 is currently being amended to put restraints on Objectors' practice. https://www.id.uscourts.gov/Content_Fetcher/index.cfml/Public_Comment_Period_For_Federal_Rule_Amendments_2561.pdf?Content_ID=2561.

> that the class can recoup the costs of appeal provides the class with
> an appropriate incentive to litigate the appeals and establish their
> lack of merit. And if the appeal turns out not to be frivolous despite
> initially appearing so, the objectors will get almost the entirety of
> their bond back.

In re Merck & Co., Inc., CV 05-1151 (SRC), 2016 WL 4820620, at *2 (D.N.J. Sept. 14, 2016)

(quoting In re Gen. Elec. Co. Securities Litig., 998 F. Supp. 2d 145, 152 (S.D.N.Y. 2014)).[8]  To

the extent the equities of professional objecting are considered, they favor imposing a bond.[9]

## III.   The Third Circuit & the Scope of the Bond: **Hirschensohn** and **Nutella**

Objectors argue that administrative costs are not includable in appeal bonds.  There are

only two non-precedential[10] cases from the Third Circuit that address the scope of a Rule 7 bond.

The two opinions appear to be in tension, however, a closer look shows that these cases

concerned two distinct, although not unrelated, issues.

Objectors rely on Hirschensohn v. Lawyers Title Ins. Corp., 96-7312, 1997 WL 307777,

at *1 (3d Cir. June 10, 1997) (non-precedential) and claim it controls the issue before this Court.

It does not.  In Hirschensohn, the Third Circuit was tasked with determining whether *attorneys'*

*fees* (not administrative costs) may be included in an appeal bond.  The Court provided two

---

[8] See also In re Pharm. Indus. Average Wholesale Price Litig., 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions").

[9] CCAF suggests that appeal bonds have a chilling effect on good faith objectors.  Yet CCAF, not being a party on appeal, will not be affected by any relief.  To the extent CCAF pursues good faith objections in the future, by weighing the merits and motivations of an appeal, CCAF should not be prejudiced by such an inquiry.  If CCAF is genuinely interested in protecting consumers, they should support efforts to protect the Class from the deleterious effects of frivolous appeals, not oppose them.  Further, any deterrent effect flows from appellants' underlying liability for pursuing frivolous appeals, not the bond itself, which will be returned if appellants prevail.  See Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998).

[10] Certain objectors appear to argue that unpublished decisions have no persuasive value.  That is not the case.  See e.g., U.S. v. Torres, 268 F. Supp. 2d 455, 461 n. 9 (E.D. Pa. 2003), aff'd, 383 F.3d 92 (3d Cir. 2004).  Further, certain Objectors suggest that Hirschensohn is binding precedent, but it is an unpublished, non-precedential opinion.  O'Keefe v. Mercedes-Benz USA, LLC, CIV.A. 01-CV-2902, 2003 WL 22097451, at *1 n. 2 (E.D. Pa. June 4, 2003) (noting that the Hirschensohn is non-precedential).

independent grounds for its decision that fees were not to be included in that case. The Court of Appeals first stated that Rule 7 does not, in a general sense, cover fees, consistent with the default American Rule that each litigant must bear its own fees. Id. at *2-3. Alternatively, the Court also considered the issue under a separate approach that certain Courts of Appeal employ to determine if fees are proper; that is, whether a statute related to the litigation would authorize the shifting of fees so as to make them includable in a Rule 7 bond. Id. at *3. The Court found that the statute cited by the parties simply did not provide for fee shifting. Id. While Objectors posit that Hirschensohn is controlling, they ignore that it is a dated, non-precedential opinion which addressed the discrete issue of whether attorneys' fees may be included in a Rule 7 bond and provided two separate, potentially conflicting, bases for its decision.[11] The case also did not involve a class action and predated the rise of professional objectors.

Nearly 20 years after Hirschensohn, in 2014, in another non-precedential opinion, the Court, consisting of a panel of Judges Rendell, Greenway, and Sloviter, held that the District Court's decision to include administrative costs in an appeal bond concerning class action objectors was proper. In re Nutella Mktg. and Sales Practices Litig., 589 Fed. Appx. 53, 61 (3d Cir. 2014) (non-precedential). Certain Objectors suggest the Nutella Court was somehow ignorant of Hirschensohn. However, the District Court cited Hirschensohn in its opinion. Nutella, 2012 WL 6013276, at *1. Even more clearly, Christopher Bandas (counsel for Objector Foligno), perhaps unsurprisingly, omits that he represented one of the objectors in Nutella and that he in fact argued in his Nutella brief that Hirschensohn governed the Courts of Appeals' inquiry, (Ex. A, at 17), which the Third Circuit rejected. In fact, substantially all, if not all, of

---

[11] The confusion engendered by its split holding was not lost on the judiciary. O'Keefe, 2003 WL 22097451, at *1 ("[Hirschensohn's] two tests, may provide conflicting answers, and the Third Circuit has not resolved the issue.").

the arguments presented by Objectors in this case were presented to the Third Circuit in Nutella and rejected by the Court of Appeals.  (Ex. A, 10-18).

Several Objectors[12] claim that Nutella's holding concerning administrative costs was focused on the fact that in Nutella the objectors did not adequately challenge the appeal bond in the District Court.  However, Objectors have misread the case.  Nutella, 589 Fed. Appx. at 61. As to the appeal bond, the Nutella Court was faced with two distinct[13] issues: (1) the threshold issue of whether an appeal bond was proper; and (2) the scope of the bond (i.e. whether administrative costs are includable therein).  Id.  In adjudicating the first question of whether a bond should be imposed *at all*, the Court upheld the trial court's finding than an appeal bond was warranted, explaining that not only did the objectors fail to properly challenge the bond at the trial court but also that the bond was to be shared by several appellants.  Id.  When litigants opposing a bond motion show that they are unfamiliar with the litigation, that is, as the trial court suggested, itself indicates that the objector is not engaged in a meritorious, good faith appeal. However, in adjudicating the second issue and finding administrative costs properly includable in an appeal bond, the Court did *not* rely on, or even reference, the fact that the objectors failed to adequately challenge the bond at the trial level,[14] but the Court again noted that the bond would be shared among ten objectors and that this favored the inclusion of administrative costs. Here, just as in Nutella, a large number of Objectors (more than in Nutella) would share in the proposed bond.[15]  Therefore, the case at bar is more akin to Nutella than Hirschensohn, and it

---

[12] Comlish & Artlip Brief, Doc. 225, at 6; Hipshire Brief, Doc. 224, at 16-17; Foligno Brief, Doc. 226, at 4 n. 4, Vullings Brief, Doc. 229, at 7.

[13] That these issues were distinct could hardly be clearer.  The issues are addressed in two separate paragraphs (starting with "*first*" and "*second*", no less), each addressing a distinct issue, with separate reasoning provided.

[14] The failure to adequately object to the appeal bond motion is, after all, largely irrelevant to the scope of the bond.

[15] CCAF submits that including administrative costs in an appeal bond here would create a circuit split, yet the Third Circuit already held in Plaintiffs' favor in Nutella.  Further, circuits are already split as to what is includable in an

cannot be reasonably argued that the holding in Nutella, concerning administrative costs, was related to a lack of diligence on the part of objectors at the district court.

Objectors cite to two cases following Nutella wherein a court in the District of New Jersey nonetheless found administrative costs should not be included in a Rule 7 bond, namely Demmick v. Cellco P'ship, 2015 U.S. Dist. LEXIS 180323, 11-13 (D.N.J. Sept. 9, 2015) and Schwartz v. Avis Rent a Car Sys., LLC, 2016 U.S. Dist. LEXIS 101666 (D.N.J. Aug. 3, 2016). However, Objectors omit the fact that these cases are from the same judge and that they are merely consistent with that judge's pre-Nutella case law.[16] Thus, they do not represent a trend in the law, but merely a continuation of that judge's prior pre-Nutella finding.  The other two jurists in this Circuit to address the issue since Nutella,[17] the Honorable Stanley Chesler, Merck, 2016 WL 4820620, at *2, and the Honorable John Padova, Glaberson v. Comcast Corp., CV 03-6604, 2015 WL 7887788 (E.D. Pa. Dec. 3, 2015), have held that administrative costs are includable in appeal bonds.  This is consistent with many district court cases from outside this Circuit[18] as well as case law from the First Circuit.[19]

In Comcast, Judge Padova simply followed Nutella and thus Comcast stands for the straightforward proposition that Nutella is compelling and should be followed.  Comcast, 2015 WL 7887788, at *3.  Judge Chesley's opinion in Merck differs from Judge Padova's opinion and that court's reasoning is notable as well.  In Merck, Judge Chesler recognized that there was no

---

appeal bond and what analytical framework guides that inquiry.  Compare Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987) with Tennille v. W. Union Co., 774 F.3d 1249 (10th Cir. 2014).

[16] Rossi v. Proctor & Gamble Co., CIV.A. 11-7238 JLL, 2014 WL 1050658, at *1 (D.N.J. Mar. 17, 2014)

[17] One Objector cites to United States v. Endo Pharms., Inc., No. 05-3450, 2014 U.S. Dist. LEXIS 139221, at *6 (E.D. Pa. Oct. 1, 2014); however, that is a qui tam case that did not even address the issue of administrative costs. Objectors also cite to other District Court cases from this Circuit.  However, those predate Nutella.  E.g. In re Certainteed Fiber Cement Siding Litig., 2270, 2014 WL 2194513, at *1 (E.D. Pa. May 27, 2014).

[18] See Brief in Support of Motion for Appeal Bond, Doc. 219, at 17 n.35.

[19] Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir. 1987) (looking to both Fed. R. App. P. 38 and 39 to determine the scope of a Rule 7 bond); In re Compact Disc Minimum Advertised Price Antitrust Litig., DL 1361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003) (Sckolnick permits the inclusion of administrative costs in appeal bonds).

binding precedent in the Third Circuit on the issue, yet nevertheless found administrative costs may be included in the bond, looking to a decision from Judge Denise Cote of the Southern District of New York:

> This Court finds persuasive the reasoning employed by Judge Coates in setting the appeal bond in In re GE Co. Secs. Litig., 998 F. Supp. 2d 145, 150 (S.D.N.Y. 2014). Judge Coates began by observing that the Second Circuit had not decided whether settlement administration expenses may be included in a bond under Appellate Rule 7. Id. Judge Coates found no justification for interpreting the meaning of "costs" in Appellate Rule 7 so as to exclude settlement administration expenses. Id. at 157. . . [and holding that t]he appeal bond shall include copying and record-compilation costs of $5,000.00, and an additional $50,000.00 bond to cover the administrative costs of the delay associated with an appeal.

Merck, 2016 WL 4820620, at *1-2.[20]  This is consistent with the notion that "Rule 39 does not define costs for all of the Federal Rules of Appellate Procedure," Adsani v. Miller, 139 F.3d 67, 74 (2d Cir. 1998), and thus the scope of Rule 7 and Rule 39 are not coextensive.

## IV.   Alternative Approaches to Determining the Scope of the Bond

While the Third Circuit did not determine in Hirschensohn whether the approach of certain other Circuits, see e.g., Adsani, 139 F.3d at 75, which look to the statutes underlying the litigation to determine the scope of the appeal bond, is proper, even under that approach,

---

[20] Fittingly enough, in In re Gen. Elec. Co. Securities Litig., 998 F. Supp. 2d 145 (S.D.N.Y. 2014), the bond was imposed on an objector represented by none other than Christopher Bandas. Id. at 156 ("[Objector's] relationship with Bandas, a known vexatious appellant, further supports a finding that Hampe brings this appeal in bad faith.").

Note also that Mr. Bandas claims that he has had several appellate successes. A study by the Federal Judicial Center mentions Mr. Bandas over 100 times and shows he has filed 24 notices of appeal to class action settlements in just three circuits between 2008 and March 2013. http://www.fjc.gov/public/pdf.nsf/lookup/class-action-objector-appeals-leary-fjc-2013.pdf/$file/class-action-objector-appeals-leary-fjc-2013.pdf.  Insofar as the study only covers three Circuits, just over four years of time, and given Mr. Bandas's tendency to pursue objections without entering his appearance, see e.g., Garber v. MLB, 12cv-3704, Docket No. 596 (S.D.N.Y. July 14, 2016), at 19, the true number of cases in which he has objected to and appealed is likely well above 100. It would be fair to estimate that Mr. Bandas's appellate success rate is, at best, 1-2%, consistent with his history of filing frivolous objections to settlements, not to alter their terms, but to engage in extortionate behavior.

administrative costs would still be apt.  The Sixth Circuit upheld the imposition of an appeal

bond that included fees and administrative costs in In re Cardizem CD Antitrust Litig., 391 F.3d

812, 817 (6th Cir. 2004).  In Cardizem, the underlying statute was the Tennessee Consumer

Protection Act of 1977 ("TCPA") which permits one who is sued frivolously to pursue fees and

damages.  Tenn. Code Ann. § 47–18–109(e)(1)-(2).  Notably, the statute does *not* discuss the

pursuit of fees from objectors and does not explicitly discuss administrative costs.  Nevertheless,

the statute was read broadly to apply to class action objectors, the notion being that when fees

may be provided to both plaintiff and defendant, the law must apply to objectors as well.  Given

that the case at bar involves, among other laws, Florida's consumer protection statute, Fla. Stat. §

501.211, which includes language akin to that in the Tennessee Consumer Protection Act, under

the approach set out in Cardizem and its progeny, administrative costs may be included in the

appeal bond.  Further, to the extent the Court finds the First Circuit's approach appropriate, the

bond may include administrative costs[21] by virtue of Fed. R. App. P. 38.  See In re Compact

Disc, 2003 WL 22417252, at *1.

---

[21] One group of Objectors argues that the sums out in the Settlement for administrative costs will ensure that the class is not affected by any appeal; it is quite likely that will not be the case.  Those sums are expected to be used in full during the pendency of the appeal and thus given the potential of the remaining funds to benefit the class (directly or via *cy pres*), an appeal will of course work to the detriment of the class.  While these Objectors also assert that belated discovery is needed on this matter (without moving the Court for such), they had a full and fair opportunity to perform such discovery previously but chose not to do so.  Moreover, Objector Cassidy asserts that his appeal is meritorious based on his speculation that the conduct at issue in the Settlement occurred prior to the class period; yet Mr. Cassidy did not engage in any discovery in this matter or even attend the Fairness Hearing.

## V.    Conclusion

Plaintiffs accordingly request that the Motion for Appeal Bond be granted.[22]

Dated: October 12, 2016                    Respectfully submitted,

                                           BY:  */s/ Kevin E. Raphael*
                                           William Pietragallo, II, Esquire
                                           Kevin E. Raphael, Esquire
                                           PIETRAGALLO GORDON ALFANO
                                           BOSICK & RASPANTI, LLP
                                           1818 Market Street
                                           Suite 3402
                                           Philadelphia, PA 19103
                                           Tel: 215.320.6200
                                           WP@pietragallo.com
                                           KER@pietragallo.com

                                           -and-

                                           MANSOUR GAVIN LPA
                                           Ernest Mansour, Esquire
                                           Anthony Coyne, Esquire
                                           Brendon P. Friesen, Esquire
                                           emansour@mggmlpa.com
                                           acoyne@mggmlpa.com
                                           bfriesen@mggmlpa.com
                                           1001 Lakeside Avenue, Suite 1400
                                           Cleveland, OH 44114
                                           (216) 523.1500

                                           -and-

---

[22] The Motion as concerns Objector Sweeney is moot as her appeal was dismissed for failure to timely prosecute. Also note that while Plaintiffs have moved to expedite the appeal, they have faced opposition and that motion remains pending at the Third Circuit. Mr. Bandas opposed that motion, consistent with his modus operandi. In re Hydroxycut Mktg. and Sales Practices Litig., 09CV1088 BTM KSC, 2014 WL 815394, at *1 (S.D. Cal. Mar. 3, 2014) ("Mr. Bandas explained [to defense counsel] that he could tie up the settlement for two to three years during the appeals process and that he was willing to wager that the settling parties would gladly pay him close to $400,000 to make the objections go away."); see also Perkins v. Linkedin, Docket Entries at Jun. 6, 2016 & Jul. 29, 2016 (9th Cir.) (requesting multiple extensions to file appellant's brief); Keil v. Lopez, 16-3159, Docket Entry at Aug. 25, 2016 (8th Cir.) (requesting extension to file appellant's brief).

Edward J. Westlow, Esquire
EJW@Whitehall1756.us
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219-3532
(804) 780-0305

-and-

Robert Mansour, Esquire
23611 Chagrin Blvd., Suite 270
Beachwood, Ohio 44122
(216) 514.3127
Rmansour@competitivetitle.com

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carol Rougvie, et al., | : | |
| | : | **COMPLAINT - CLASS ACTION** |
| Plaintiffs, | : | |
| | : | JURY TRIAL REQUESTED |
| v. | : | |
| | : | CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc., et al., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2016, true and correct copies of the foregoing were electronically filed and served on the following via the method indicated below:

### *VIA ELECTRONIC CASE FILING*

Daniel Goetz, Esquire
Eric Kennedy, Esquire
dgoetz@weismanlaw.com
ekennedy@weismanlaw.com
Weisman, Kennedy & Berris, CO., LPA
101 W. Prospect Ave. Midland Building Suite 1600
Cleveland, OH 44115

-and-

Gerard McCabe, Esquire
Mitts Law, LLC
1822 Spruce St.
Philadelphia, PA 19103
*Counsel for the Gallagher Objectors*

Glenn Manochi, Esquire
Lightman & Manochi
1520 Locust Street, 12th Floor
Philadelphia, PA 19102
*Counsel for Objector Foligno*

Amy M. Wilkins, Esquire
The Wilkins Law Firm PLLC
1197 East Oak Street Phoenix, AZ 85006
*Counsel for Objector Carey*

Brent Vullings, Esquire
Vullings Law Group
3953 Ridge Pike
Suite 102
Collegeville, PA 19426
*Counsel for Objector Vullings*

Mardi Harrison, Esquire
The Law Office of Mardi Harrison
125 Edison Furlong Road
Doylestown, PA 18901
*Counsel for Objector Ference*

### *OBJECTORS – ELECTRONIC MAIL*

Christopher Todd Cain, Esquire
Scott & Cain
550 South Main Street, Suite 601
Knoxville, TN 37902
*Counsel for Objector Hipshire*

Stephen Cassidy
778 Joaquin Avenue
San Leandro, CA 94577
*Pro Se*

George W. Cochran, Esquire
Law Office of George W. Cochran
1385 Russell Drive
Streetsboro, Ohio 44241
*Counsel for Objectors Mager and Schultz*

Pamela Sweeney
2590 Richardson Street
Madison, WI 53711
*Pro Se*

and

Paul A. Lawless, Esquire
160 Abbey Terrace
2nd Floor
Drexel Hill, PA 19026
*Counsel for Objectors Yoes, Harrington, & Sonnier*

By: /s/ Kevin E. Raphael
KEVIN E. RAPHAEL, ESQ.
I.D. No. 72673
1818 Market Street, Suite 3402
Philadelphia, PA  19103
(215) 320-6200

*Attorney for Plaintiffs*

15

# EXHIBIT A

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

### No. 12-3456, 12-3458, 12-4424 and 12-4629

### In re: Nutella Marketing

---

### On Appeal from the United States District
### Court for the District of New Jersey,
### No. 11-cv-01086
### The Honorable Freda L. Wolfson, District Judge

---

### BRIEF OF OBJECTORS-APPELLANTS
### JANIS JOHNSON AND CLARK HAMPE

---

Gary W. Sibley
The Tower at Citiplace
2711 N Haskell Ave., Suite 550
Dallas, Texas 75204
214-522-5222
214- 855-7878 (Fax)

Christopher A. Bandas
500 N. Shoreline, Ste 1020
Corpus Christi, TX 78401
(361) 698-5200
(361) 698-5222 (Fax)

Case: 12-3456     Document: 003111593394     Page: 2     Date Filed: 04/18/2014

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………ii

TABLE OF AUTHORITIES……………….. ……………….….……iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT…...………….1

JURISDICTIONAL STATEMENT…….………………………………1

STATEMENT OF ISSUES PRESENTED  FOR REVIEW………..…..2

STATEMENT OF THE CASE……..…………………………………3

SUMMARY OF ARGUMENT…...…………………………………..3

ARGUMENT.

    Issue 1: The District Court Abused its Discretion in Awarding
Excessive Attorneys Fees Because There is Little to No Value in
The Injunction………………………………………………4

    Issue 2:   The Order Requiring a Bond in The Amount Of
$22,500 Violates The Federal Rules……………………10

RELATED CASES……………………………………………19

CONCLUSION…………………….……………………..…………18

# TABLE OF AUTHORITIES

## CASES

*Azizian v. Federated Dep't Stores, Inc.,*
    499 F.3d 950 (9th Cir. 2007) ……….…………………………18

*Clark v. Universal Builders, Inc.,*
    501 F.2d 324 (7th Cir. 1974) …………………………………17

*Charles v. Goodyear Tire and Rubber,*
    976 F. Supp. 321,325 (D.N.J. 1997)…………………………7

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002)……………………………………………15,16,17

*Daubert v. Marrell Daw Pharmaceuticals, Inc.*
    509 U.S. 579 (1993)……………………………………..…9

*Durkin v. Equifax Check Services, Inc.,*
    406 F. 3d 410 (7th Cir. 2005)…………………………………8

*Franks v. Kroger Co.,* 649 F. 2d 1216, 1224 (6th Cir. 1981)
*Freeman v. B&B Associates,*
    790 F.2d 145 (D.C. Cir. 1986)…………………………………6

*Hirschensohn v. Lawyers Title Ins. Corp.,*
    118 F. 3d 15 75 (3rd Cir. 1997)…………………………..12

*In re American President Ines, Inc.,*
    779 F.2d 714 (D.C. Cir. 1985) …………………….…12,17

*In re Diet Drugs,*
    582 F. 3d 524,546 (3d Cir. 2009…………………………7

*In re Ins. Brokerage Antitrust Litig.,*
2007 U.S. Dist. LEXIS 47659 (D.N.J. June 29, 2007) …………12

*In re GM Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768, (3d Cir. 1995)………….………....................2

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) …………………………….15

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
    2010 WL 786513, 2010 U.S.Dist. LEXIS 21466
    (D. Nev. Mar. 8, 2010) …………………………………16

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
    10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) …………….17

*In re Wal-Mart Wage & Hour Empl. Practices Litig.*,
    09-17648, Dkt. No. 47 (9th Cir. Aug. 10, 2010) ………….17

*Int'l Floor Craft, Inc. v. Dziemit*,
    420 Fed. App'x 6 (1st Cir. 2011)………………………….2,14

*Kartman v. state Farm Auto Ins Co*,
    634 F3d 883, 888-8 (7th Cir. 2011)………………………8

*McClintic v. Lithia Motors, Inc.*,
    No. C11-859RAJ 2012 U.S. Dist. LEXIS 3846, AT *12  (W.D.
    Wash. Jan. 12, 2012)……………………………………….6

*Sullivan v. DB Investments, Inc*,
    667 Fed. 3d 273, 317 (3d Cir. 2011 en banc)……………..8

*Synfuel Tech v. DHL Express*,
  463 F. 646, 654 (7th Cir. 2006)…………………………….7

*Vaughn v. Am. Honda Motor Co.*,
    507 F.3d 295 (5th Cir. 2007) ..…………………………13,17

## STATUTES AND FEDERAL RULES

Fed. R. App. Proc. 7……………………………………………11,12

Fed. R. App. Proc. 8……………………………………………11

Fed. R. App. Proc. 30……………………………………………12

Fed. R. App. Proc. 38……………………………………………11

Fed. R. App. Proc. 39……………………………………………11,12

Fed. R. Civ. Proc. 62(d) ………………………………………11

Fed. R. Evid. 702 ………………………………………………9

28 U.S.C.§ 1291…………………………………………….....1

28 U.S.C.§1332(d)………………………………………………1

28 U.S.C. § 1920…………………………………………………12

## OTHER AUTHORITIES

Third Circuit Form for Bill of Costs, available
at
http://www.ca3.uscourts.gov/internet/Forms%20and%20Information
%20Sheets/Post-Decision/Bill_of_Costs.pdf ……………………..12

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Janis Johnson believes oral argument would benefit the court and parties.

## JURISDICTIONAL STATEMENT

The district court below had jurisdiction by virtue of  28 U.S.C. §1332(d), 1453 and 1711-1715 because:

1) The amount in controversy exceeded five million dollars and class members  were, by definition, from all 50 states.

2) This United States Court of Appeals has jurisdiction by virtue of 28 U.S.C §1291.

3) Final Judgment  was entered in the court below on July 31, 2012 (DE 104). Timely Appeal was filed by Appellant on August 29, 2012 (DE 105). A letter order was entered on November 20, 2012 (DE 122). A Motion for Reconsideration was filed by Appellant Johnson on December 17, 2012 (DE 125) and Notice of Appeal was thereafter filed on December 27, 2012 (DE 131).

4) Appellants Johnson and Hampe purchased at least one jar of Nutella at grocery stores in Dallas, Texas (Johnson) and Corpus Christi, Texas (Hampe) during the relevant time period of 2010 and 2011. They are therefore  members of the class and have standing to object and appeal.

1

## ISSUE PRESENTED FOR REVIEW

**Standard of Review:** Abuse of discretion is the standard of review of a courts' order granting or denying final approval of a class action settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 782 (3d Cir. 1995). Attorney fee awards are reviewed de novo.

**Standard of Review:**

**Issue: 1)** The District Court abused its discretion in awarding attorney fees to class counsel.

**Standard of Review:** The imposition of an Appeal Bond is reviewed for "Abuse of Discretion" but what items are included is reviewed "De Novo". *Int'l Floor Craft, Inc. v. Dziemit,* 420 Fed. App' x 6 (1ˢᵗ Cir. 2011).

**Issue: 2)** The trial court's bond requirement was excessive and violates the Federal Rules.

## STATEMENT OF RELATED CASES

Pursuant to L.A.R. 28.1(a)(2), this Appeal has been consolidated With Appeal Nos. 12-3457, 12-3458, 12-4424, and 12-4629. Issues apply to cases 12-3456 and 12-3458. The amount of the bond applies to cases 12-4424 and 12-4629.

## STATEMENT OF THE CASE

Appellant Johnson and Hampe adopt the statement of the case of Appellant Bochenek, but would add that in addition to the excessive fee issue, the District Court failed in its fiduciary duty to the class by allowing attorney fees to be paid that have little to no correlation to the class. Additionally, the court erred in setting an excessive bond.

This case is a class action filed by consumers against the makers of Nutella spread. A settlement was reached, notice sent to the class and a hearing held. After the hearing a judgment was entered (DE 104). Thereafter, in a letter order, the court ordered Appellants to post a $22,500 bond. Appellant Johnson filed a Motion for a rehearing (DE 125). From those orders this appeal is taken.

There was no showing that the injunctive relief benefitted this class and, in fact, the relief is expressly for future consumers of Nutella, not the class. The injunctive relief is itself illusory in that it accomplishes nothing of value for the class.

Additionally, nothing in the record supports a value of $500,000 for the injunction, the bond required of appellants was excessive and not allowed by the Federal Rules.

## SUMMARY OF ARGUMENT

3

Appellant adopts the Summary of the Argument of Bochenek, except for Bochenek's statement that they"... do not dispute the adequacy of the merits of the settlement"... which is expressly repudiated by Appellants Johnson and Hampe. Appellants Johnson and Hampe adopt Bochenek's Supplementary Appendix Pages SA1-SA26.

**Issue 1**: <u>**The District Court Abused its Discretion in Awarding Excessive Attorneys Fees Because There is Little to No Value in The Injunction.**</u>

**Standard of Review:**

Appellants also adopt Bochenek's sole point but would add the following:

Even though the court reduce the fees requested by class counsel, the fees eventually allowed by the court exceeded a reasonable fee. When coupled with fees, attorney compensation exceeds 50% of the settlement fund. Additionally, Class Counsel was awarded $500,000.00 as compensation for injunctive relief (DE 104 p.2) that represents no benefit to the class and, hence, does not support an attorney fee.

<u>**The Injunctive Relief**</u>

A.   The injunctive relief is illusory.  The fees are excessive because they are, among other faults, based upon a valuation of $500,000.00 for

4

injunctive relief that has no value to the class. The injunctive relief is as follows:

1.    A revised slogan which may be eliminated at Nutella's discretion (DE 62-3 p.). The slogan is now "an example of a tasty yet balanced breakfast" and may be replaced with "Turn a balanced breakfast to a tasty one". Even this "distinction without a difference" may also be disregarded at any time by Nutella. "Ferro retains the right to remove, in its sole discretion the revised statement from the Nutella label altogether." (DE 62-3).

2.    Revised Television Advertisements that are not described and that lack both binding guidelines and a mechanism to block offending commercials.

3.    Alteration of Nutella's website for the U.S. that gives no practical benefit to any of the class members. *See,* (DE 62-11).

4.    Less detailed nutritional information on the front of the jar than presently found on the back of the can. The information on the back required by law, includes total fat, trans fats, unsaturated fats, polyunsaturated fats, monounsaturated fats, cholesterol, sodium, carbohydrates, fiber, sugars, alcohol and protein. (DE 62-3 p.21-22). The injunctive addition to this detailed information (already required by law) is

the optional addition of "icons" to the front of the container.

In addition to the information on the back, the settlement requires only that "icons" of an indeterminate size "indicate" the content of calories, saturated fat, sodium and sugar. These "icons" are only required to remain on the packaging for two years.

As if the icons weren't illusory enough on their own "nothing contained herein shall limit Ferro's ability to use additional characterizing language or imaging on the label". " Ferro retains the right to remove, in its sole discretion the Revised Statement from Nutella label altogether". (DE 62-3, p.23). Additional language in the settlement that allows Nutella to be sold with old labels until they are out of stock - cutting further into the two year window in which Ferro is required to place "icons" of indeterminate size on the labels.

There is no relief to the class when a Defendant is only enjoined to do what he is currently doing. *Franks v. Kroger Co.*, 649 F. 2d 1216, 1224 (6th Cir. 1981) ("These provisions only require the company to do what the law generally requires"…) (*McClintic v. Lithia Motors, Inc.,* No. C11-859RAJ 2012 U.S. Dist. LEXIS 3846, AT *12 (W.D. Wash. Jan. 12, 2012)).

## Injunctive Relief does not benefit the Class

Class Counsel are to be paid for the benefits the class actually receives as a result of their efforts. *Synfuel Tech v. DHL Express,* 463 F. 646, 654 (7th Cir. 2006). Conversely, the cost of the settlement to the Defendant does not create a benefit to the class per se. *Charles v. Goodyear Tire and Rubber,* 976 F. Supp. 321,325 (D.N.J. 1997). In that vein, it is not whether *a* class of persons will benefit but whether *the* class will benefit. In this case they will not. Even the putative "benefits" will not help this class. It is only future customers of Nutella who could possibly benefit from the injunction. Future changes will only benefit future customers, not the current class that was mislead.

"The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries". *Synfuel* 463 F. 3d at 654. *In re Diet Drugs,* 582 F. 3d 524,546 (3d Cir. 2009) requires that, under the common benefit doctrine, Class counsel must show that their litigation conferred a "substantial benefit" on members of the class and that the costs of litigation will be spread evenly over the class.

Certainly, the injunction did not confer a substantial benefit on the class. Future changes do not benefit members of this class, especially the ones who choose not to use the product in the future. Since this class is

7

compromised of past users of Nutella, the question is, "how does the injunction benefit them? See *Kartman v. State Farm Auto Ins Co*, 634 F3d 883, 888 (7th Cir. 2011).

Class counsel has also failed to show that the settlement eliminates a significant threat of injury to the public. *Sullivan v. DB Investments, Inc*, 667 Fed. 3d 273, 317 (3d Cir. 2011 en banc). There is no basis upon which to determine the value of the settlement. The sole basis for any opinion that the injunctive relief had value is the testimony of Peter Wright, Class Counsel's, expert. (DE 68-3). His opinions are not supported by "scientific technical or otherwise specialized knowledge" of consumer welfare that would "assist the trier of fact to understand the evidence or determine a fact issue". The expert and his testimony were stricken by the court as it failed to inform the court of the "manner and method" used to come to his conclusions concerning consumer welfare. See *Durkin v. Equifax Check Services, Inc.*, 406 F. 3d 410 (7th Cir. 2005), *McDowell v. Brown*, 392 F. 3d 1283, 1300- 01 (11th Cir. 2004). Also, in *Kannankeril v. Terminix Intul, Inc.*, 128 F. 3d 802, 806 (3rd Cir. 1997) this court held that the appropriate test is whether an opinion is "based on valid reasoning and reliable methodology, "not just haphazard, intuitive inquiry". See also, *Oddi v. Ford Motor Co*, 234 F.

8

3d 135, 156 (3d Cir. 2000).

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) determined the standard for admitting expert testimony in federal courts. Following *Daubert* the trial judge should have made a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue.

Additionally, inquiry should be made, including whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation. There was no inquiry, however, a cursory reading of Peter Wright's Declaration (DE 68-3) reveals that his declarations as to whether or not the settlement improved the class are generally unsupported and do not pass the *Daubert* tests. He claims that the campaign is of great benefit to consumers, but his professional resumé does not support his ability to give such conclusions. In short, his conclusions are not supported by "scientific, technical, or otherwise specialized knowledge" of consumer welfare that would assist the trier of fact to understand the evidence or determine a fact issue". Fed. R.

Evid. 702. The trial court was required to determine whether his expert testimony was reliable and therefore admissible. Since the trial court disregarded the testimony of Wolf, there is no basis upon which to find that the injunction had value – especially $500,000.00 worth of value.

Issue 2:   **The Order Requiring a Bond in The Amount Of**

**$22,500 Violates The Federal Rules.**

**Standard of Review:**

On October, 10, 2012,   Class Counsel filed a motion to require the Objector- Appellants to post a $42,500 appeal bond as a prerequisite to Appeal, (DE 113).   Plaintiffs' Memorandum of Law in Support of Motion to Impose an Appeal Bond (DE 114) made sweeping generalizations about all Objector-Appellants; that the appeals are brought by "serial objectors"[1] seeking only to extract a fee from class counsel and that the appeals are meritless.  The Court by letter order, ordered a bond in the amount of $22,500, (DE 122). Appellant Johnson filed a Motion for reconsideration noting that the judge had calculated the bond based upon ten appellants sharing the cost. Such was not the case yet the bond was not reduce. Appellant Johnson agreed to post her proportionate share of $2,500 based upon the courts projection that ten objectors would share the bond

---

[1] Curiously, no mention was made of "serial class counsel."

cost equally. This offer was rejected.

First, and most importantly, the punitive bond set by the District Court  is simply not permitted by Fed. R. App. Proc. 7, where a court's discretion is limited to costs available under Fed. R. App. Proc. 39.  What Class Counsel sought and what the District Court granted was in reality a *supersedeas* bond. However, the Motion does  not meet the prerequisites of Fed. R. Civ. Proc. 62(d) or Fed. R. App. Proc. 8 for such bond.

Second,  Class Counsel is incorrect in alleging that there is not a good faith basis for appealing the District Court's order approving settlement.

Moreover, the merits of an appeal should be decided by the appellate court. To the extent that an appeal is "frivolous," the remedy is a motion in the appellate court under Fed. R. App. Proc. 38.

Class Counsel presented  no evidence that their costs under Fed. R. App. Proc. 39 will be anywhere near $22,500.   The only costs recoverable under Fed. R. App. Proc. 39 for an appellee, and thus allowed to be included in a Fed. R. App. Proc. 7 appeal bond, are the "necessary copies of a brief or appendix," "preparation and transmission of the record," and "the reporter's transcript."   Courts in the Third Circuit have rejected suggestions that costs besides those defined by Rule 39 can be used

to calculate a bond under Rule 7.   *See, e.g., Hirschensohn v. Lawyers Title Ins. Corp.,* 118 F. 3d 1575 (3d Cir. June 10, 1997) (*citing In re American President Lines, Inc.,* 779 F.2d 714 (D.C. Cir. 1985)*; In re Ins. Brokerage Antitrust Litig.,* 2007 U.S. Dist. LEXIS 47659 at *39 (D.N.J. June 29, 2007). *See also* 28 U.S.C. § 1920; Third Circuit Form for Bill          of          Costs,          available          at: http://www.ca3.uscourts.gov/internet/Forms%20and%20Information%20Sh eets/Post-Decision/Bill_of_Costs.pdf. But the Appellants/Objectors are the ones required to submit the record and transcript to the appellate court under Fed. R. App. Proc. 30. It is also unlikely that the appellees will have any need to supplement the record.   The Appellees sole costs under Fed. R. App. Proc. 39 are thus simply a few hundred pages for photocopying their brief. Costs for such an endeavor is unlikely to exceed a  few hundred  dollars. No showing was made that Appellants would unable to pay the costs. Indeed, the lawyers involved in this litigation have paid costs in numerous cases and have never failed to do so. Appellant Johnson is Chairman of Gourmet Catalog and will able to pay taxable costs.

The proposed amount is excessive under Fed. R. App. Proc. 7.  By failing to present any evidence of actual marginal appellate costs in their moving papers, the Class have waived the issue. Class Counsels' motion

references that the claims administrator estimates the cost of a 24 month delay in increased settlement administration costs at approximately $40,000.   Increased administrative costs are simply not allowed in this situation. See *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007), reducing a $150,000 bond to a $1,000 bond.

Requiring Appellants to pay for this delay "would be inappropriate because an objector has no obligation to ensure the availability of the judgment; the defendants, and not the objector, are charged with implementing the settlement." *In re Am. Investors Life Ins. Co.*, 695 F. Supp. 2d at 162. Nor could the District Court issue an improper bond in the amount of $22,500 divorced from any actual appeal costs. *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007).

## **Large appeal bonds for objectors should be rejected as a matter of law and policy.**

Imposing large appeal bonds on potential Appellant-Objectors is poor public policy and dubious as a matter of law.

Objectors are usually the only source of independent scrutiny during a class action settlement fairness hearing.  Settling parties typically agree to cooperate in seeking approval of class **action** settlements.  Often,

the parties stipulate that injunctive relief has significant and unrealistic value to the class, as occurred in this case. Such stipulations leave courts without adversarial guidance when considering a proposed settlement or setting reasonable attorney fee awards. Without the participation of objectors, courts must rely solely upon parties' representations to determine the fairness, reasonableness, and adequacy of a settlement. Objectors are therefore a benefit to district and appellate courts because they inject much-needed adversarial content into the proceedings. Indeed in this case the District Court did reduce the requested attorney fees for the injunctive relief and also the percentage of the common fund because of "serial objector" center for class action fairness.

Including Administrative Costs is similar to the line of cases considering whether or not attorney fees may be included in an appeal bond. A recent First Circuit case discussed this issue. *Int'l Floor Crafts Inc.,* 420 Fed. App'x 6 (1st Cir. 2011). The Court noted that the 2nd, 6th, 9th and 11th Circuits have determined that Attorney Fees may be included in an appeal bond if the underlying statute contains a free- shifting provision.

The court also noted that, in the First Circuit, the standard is abuse of discretion when a District Court imposes an appeal bond, but whether attorneys fees may be part of the "costs of appeal" under Rule 7, is a

14

question of law accorded de novo review.

## Obstructive appeal bonds frustrate the Supreme Court's framework for class-action objections.

*Devlin v. Scardelletti*, 536 U.S. 1 (2002), established the right of class action objectors to appeal without first seeking intervention. *See In re Rite Aid Corp. Sec Litig.*, 396 F.3d 294, 299 (3d Cir. 2005).   In doing so, the Supreme Court expressly rejected a formality that had been adopted by several circuits "to require class members to intervene for purposes of appeal." *Devlin*, 536 U.S. at 11.   The court found no purpose to the formal barrier to appeal given "the ease with which non-named class members who have objected at the fairness hearing could intervene for purposes of appeal." *Id.* at 12.

The Supreme Court found the formal intervention rule impractical due to the numerous issues "which should be easily addressable by a court of appeals." *Id.* at 13.   In the Court's view, requiring intervention would simply add a needless layer of complexity.   The requirement to intervene required district courts to consider issues normally considered by the appellate court such as "standing to appeal, waiver of objections below,

and consolidation of appeals." *Devlin,* at 14.   Should parties be dissatisfied with the district court's decision on intervention, then "such determinations still would most likely lead to an appeal." *Id.* 14. Appellate courts would then consider precisely the same issues analyzed by the district court.

Therefore, the formal intervention rule "would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard." *Id.* 14.

Similarly, punitive appellate bonds imposed to block purportedly vexatious appeals require district courts to consider issues (such as the frivolity of an appeal) best suited to appellate courts.   Should Appellant-Objectors be dissatisfied with their appeal bond, they can simply appeal the bond determination itself, adding another layer of complexity, which the *Devlin* court repudiated.   That is exactly what has happened in this case.

Consider the large and legally dubious $500,000 bond ordered paid by objectors in *In re: War Wage & Hour Empl. Practices Litig.,* 2010 WL 786513, 2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010).   Instead of discouraging meritless appeals, the bond order forced objectors to litigate the issue before the Ninth Circuit in a separate appeal. The district court's order to require bond was eventually stayed pending

resolution of the appeal.   *See In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 10-15516, Dkt. No. 11 (9th Cir. Jun. 3, 2010) (citing *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007)).  The appeals were eventually summarily dismissed by the Ninth Circuit.  *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 09-17648, Dkt. No. 47 (9th Cir. Aug. 10, 2010).  By requiring an appellate bond, the district court actually *multiplied* the number of appeals taken by allegedly vexatious objectors, when the issue could have  been resolved with appellate motion practice.    The *Devlin* court  warns against such unnecessary complexity.

### The Appellate Court is better qualified to determine whether an appeal lacks merit.

Moreover, "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated."  *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974).   Discouraging appeals is not a legitimate objective—even if the appeal is thought by the trial court to be frivolous.  *See, In re American President Lines*, 779 F.2d at 717 (denying bond requirement because it was not a legitimate means of protecting appellee).  Allowing trial courts to impose high bonds "where the appeals *might* be found frivolous risks 'impermissibly encumber[ing]' appellants'

right to appeal and 'effectively preempt[ing] this court's prerogative' to make its own frivolousness determination." *Azizian*, 499 F.3d at 961 (brackets in original and citation omitted).

The appellate court is the proper forum to determine whether an appeal is frivolous.

## CONCLUSION

This appeal has only two issues; attorney fees and excessive bond. The court's abuse of discretion in respect to these issues, we believe, is fairly obvious. The court awarded attorney fees to be paid on $500,000 value for an injunction that has no value. In addition, there is no foundation for a valuation of $500,000. The bond was a punitive supersedeas bond with no foundation.

Respectfully submitted,

*/s/ Gary W. Sibley*
The Tower at Citiplace
2711 N. Haskell Ave., Suite 550
Dallas, TX 75204
214-522-5222
214- 855-7878 (Fax)

*/s/Christopher A. Bandas*
500 N. Shoreline, Ste 1020
Corpus Christi, TX 78401
(361) 698-5200
(361) 698-5222 (Fax)

## RELATED CASES

Related cases is 12-3451.  This appeal was consolidated by Court Order

and the related cases arise from the approval of the Judgment by the District

Court and raise the same or closely related issues on appeal.


_/s/ Gary W. Sibley_
The Tower at Citiplace
2711 N. Haskell Ave., Suite 550
Dallas, TX 75204
214-522-5222
214- 855-7878 (Fax)


_/s/Christopher A. Bandas_
500 N. Shoreline, Ste 1020
Corpus Christi, TX 78401
(361) 698-5200
(361) 698-5222 (Fax)

19

## CERTIFICATE OF SERVICE

I hereby certify that on 18, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Gary W. Sibley
The Tower at Citiplace
2711 N. Haskell Ave., Suite 550
Dallas, TX 75204
214-522-5222
214- 855-7878 (Fax)

/s/Christopher A. Bandas
500 N. Shoreline, Ste 1020
Corpus Christi, TX 78401
(361) 698-5200
(361) 698-5222 (Fax)

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the foregoing brief is proportionately spaced, has a type-face of 14 points, and as calculated by my word processing software (Microsoft Word) contains 4,386 words.

Date:_____, 2014                    /s/ Gary W. Sibley

20