IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROUGVIE, et al. | : CIVIL ACTION |
| | : |
| vs. | : |
| | : NO. 15-724 |
| ASCENA RETAIL GROUP, INC., et al. | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                           **October 14, 2016**

Experienced class action lawyers negotiating a creative multi-million dollar cash and voucher settlement for over 18 million consumers should understand some consumers may object. We expect valid objections may increase the value of the class benefit. Unfortunately, too often the objectors are represented by lawyers who file objections to many class action settlements simply to be bought out at a higher premium than other class members. When this tactic fails, they file appeals challenging established legal issues hoping the delay may coerce the settling parties to pay them a premium from the Settlement Fund. When we view an appeal as a coercive tactic with little merit, we may grant a motion requiring the appealing objector to post a bond to cover the class' costs and demonstrated administrative expenses incurred on appeal. We are aware of court costs from public records but rely on specific descriptions of requested administrative expenses in a particular settlement.

When, as here, 20 objectors filed 11 appeals (out of an 18.4 million member Class) from our July 29, 2016 Order approving the creative settlement based on grounds fully evaluated in an extensive final fairness hearing and in our Opinion, we require a costs appeal bond for each appeal. The Class should not be penalized by risking losing these costs for these 11 appeals when there appears no certainty of recovering appellate costs from these 20 objectors after our

Court of Appeals' review. But absent a specific basis for an alleged $7,500 monthly "administrative charge", we cannot require appellants to post a bond for uncertain, speculative administrative charges particularly when, as here, the Settlement Fund must be maintained for at least another year to obtain the negotiated benefit for the Class regardless of the appeal. We decline the request for administrative fees without prejudice to Class Counsel later seeking recovery based on demonstrated additional administrative fees solely caused by, and following, the appeal. If warranted over time, we will also later consider a good faith motion to enjoin the Class from paying a premium to the Appellants simply to reward this conduct and move on.

## I. Background

On July 29, 2016, we approved a nationwide settlement between eight named class members, on behalf of over 18.4 million consumers, and pre-teen retailer Justice Stores/Tween Brands for deceptive marketing strategies relating to 40% off sales for pre-teen merchandise.[1] Justice Stores' target market is 6 to 14 year old girls. Class Members are consumers who purchased Justice Stores' merchandise from January 1, 2012 until February 28, 2015. Under the approved settlement, 430,778 Class Members elected immediate cash and 176,458 Class Members elected an immediate voucher for purchases at Justice Stores. Approximately 16.2 million Class Members did not file an affirmative claim and will receive vouchers to purchase pre-teen merchandise from Justice Stores redeemable for one year.

The Settlement Agreement required Justice Stores to deposit $50.8 million into an interest bearing escrow account to cover Class members' recovery, administrative costs, and attorneys' fees.[2] The Settlement Fund holds $8 million earmarked for administrative costs subject to increase based on *bona fide* warranted costs under our July 29, 2016 Order. The Settlement Agreement does not cap administrative costs and any excess over $8 million may be

paid from the Settlement Fund after Class Counsel represented "the reality is that is not going to happen because there will be remaining funds to cover all administrative fees."[3]

Forty-five objectors timely challenged adequacy of notice, manageability under Rule 23, commonality of damages under differing state laws, adequacy of Class Counsel's representation and the requested attorneys' fees.[4] After extensive briefing and a full-day Final Fairness Hearing, we overruled the objections to settlement terms but modified the manner in which Class Counsel is paid based upon the benefit to the Class today through cash and vouchers and from redeemed vouchers after one year. We partially granted objectors' challenges to Class Counsel's hourly fee award in our September 12, 2016 Order.[5]

Twenty objectors filed eleven notices of appeal from our July 29, 2016 Order.[6] On September 23, 2016, the Class moved for expedited briefing on the appeals. The motion is currently pending before our Court of Appeals. Class Counsel now asks we order Objectors/Appellants to jointly and severally post a $121,200 appeal bond under Federal Rule of Appellate Procedure 7.[7] The Class' request includes $1,235.52 for costs under Federal Rule of Appellate Procedure 39 and $120,000 "settlement administrative fees." The Class suggests the administrative costs will be $7,500 a month for the sixteen months to resolve the appeals.[8] The Class attached an affidavit from Frank Barkan of RMS US, LLP attesting the $7,500 a month includes expenses for (1) handling Class Member communications; (2) ad-hoc Notice request fulfillment; (3) additional maintenance fees for the Escrow Account, Post Office box, Settlement Website, and toll-free line; (4) toll-free line minutes to use; (5) physical and digital document retention; and (6) project management and systems support.[9] Mr. Barkan's Affidavit does not breakdown how the $7,500 monthly expenses is allocated over the six categories. Mr. Barkan does not describe the monthly charges.

Appellants Michelle Vullings, Manda Hipshire, Kelsey D. Foligno, Robert Gallagher, and Stephen Cassidy opposed the bond,[10] and alternatively suggest an appeal bond of $7,200[11] or a $1,235.52 appeal bond.[12] Appellant Vullings also challenges the lack of specificity in the represented "administrative fees."

## II. Analysis

In the accompanying Order, we require each continuing appeal be secured by a $1,235.52 appeal bond filed within ten (10) days to "ensure payment of costs on appeal in a civil case."[13] Ordering an appeal bond is a two-step process: we determine if an appeal bond is warranted and if so, we decide the bond amount and composition.

### A. A costs appeal bond is warranted.

In determining whether to require an appeal bond, we consider (1) whether a bond "is necessary to assure adequate security"; (2) the risk appellant will not pay costs if appellant loses the appeal; (3) appellant's ability to post the bond; (4) "whether the bond will effectively preclude pursuit of the appeal", and; (5) "the merits or frivolousness of the appeal."[14] These considerations are largely moot because the Appellants, except Appellants Vullings and Cassidy, do not oppose an appeal bond but only disagree on the amount. Appellants Vullings and Cassidy argue their appeals are not meritless so we cannot impose an appeal bond.

An appeal bond is necessary to assure adequate security because the Appellants are delaying Settlement Fund relief to the other 18.4 million class members, especially to the 607,215 Class members who submitted claims by May 20, 2016 seeking an immediate recovery.[15] As recognized at settlement approval, approximately 16.2 million Class Members who did not file an affirmative claim will receive a voucher for Justice Stores who sells clothing for pre-teen girls aged 6 to 14 only. In *In re Certainteed*, the court found the bond necessary

4

because the appeal "delays [defendant's] obligation to release the settlement fund to claimants, delaying payments to class members who have already submitted claims."[16] Here, the longer the appeals, the more pre-teen girls will outgrow the demand elasticity for Justice's temporal market, reducing the vouchers' worth, so an appeal bond is necessary to ensure adequate security.

We also find risk Appellants will not pay costs after an unsuccessful appeal. Their class recovery is substantially less than the costs they create by appealing. We do not see any benefit their objections created for the Class. Post-appeal recovery of costs will be more difficult because many reside "outside of the Third Circuit [which] will arguably make it more difficult for the settling class to collect their costs should they prevail on appeal."[17]

We do not find the limited costs bond will effectively preclude pursuit of an appeal. We have no financial evidence an objector is unable to post his or her $1,235.52 bond besides Appellant Vullings' bare assertion her "ability to post in any amount is severely limited."[18] Appellant Vullings, represented by her husband who regularly represents objectors to class action settlements, admittedly has not paid legal fees to her husband. We have no independent basis to find she is unable to post a costs bond to secure her appeal. Similarly, besides Appellant Vullings' unsupported assertion, Appellants present no evidence an appeal bond posted for each appeal will "preclude pursuit of the appeal"[19] and most Appellants suggest $1,235.52 is a reasonable bond amount. Liability on a $120,000 bond may likely preclude pursuit of an appeal. This appears to be the Class goal: the Class' proposed order requires the Appellants to jointly and severally post a $120,000 bond or dismiss their appeal.[20] This carrot and big stick approach is contrary to the right of any disappointed objector to file a notice of appeal.

While we hesitate to self-characterize our July 29, 2016 analysis as non-appealable, we find the arguments on appeal are largely filed by objectors who played minor roles in our Final

Fairness Hearing. We viewed the objections raised by the Competitive Enterprise Institute Center for Class Action Fairness to be among the strongest; the experienced Attorney Schulman representing the Center did not appeal our July 29, 2016 Order. We denied objections as to adequacy of notice, manageability under Rule 23, commonality of damages under differing state laws, and adequacy of Class Counsel's representation when we approved the settlement after exhaustive briefing and a Final Fairness Hearing. While the other factors weigh more heavily in our decision to require a costs appeal bond, we also find the appellate arguments remain unlikely to succeed. We carefully evaluated these same arguments and addressed them in our July 29, 2016 Memorandum.[21] While Class Counsel negotiated a creative settlement based on a choice between cash and a voucher knowing the vast majority of the Class would elect the voucher, the underlying settlement fairness issues under the Class Action Fairness Act and mixed settlements have been litigated in this Circuit and nationally. We did not see a basis for the Appellants' challenges to the fairness of the settlement and are aware of no change in the Law since our July 29, 2016 Opinion.

**B.  A costs bond is more appropriate absent specificity on administrative fees.**

We face a more difficult issue in setting the amount of an appeal bond. Class Counsel asks we include $1,235.52 for Rule 39 costs and $120,000 representing $7,500 per month for administrative costs managing the settlement fund for 16 months. We include Rule 39 costs but decline to include administrative costs.

In the accompanying Order, we include a fair, and largely undisputed, amount of Rule 39 costs for each appeal but not administrative expenses. We include the costs under Third Circuit Local Appellate Rule 39.3(a) estimated by the Class to be $1,235.32 and not seriously disputed by an Appellant. Objector Hipshire characterized $1,235.52 as inflated and notes $222.65 is the

6

Third Circuit average but then asks we grant an appeal bond of $7,200 representing 6 briefs at Class' $1,235.52 estimate.[22] With 11 pending notices of appeal, there are potentially 11 separate briefs on which the Class could be awarded costs.

The more difficult issue is Class Counsel's request for administrative costs. Class Counsel submitted the Barkan Affidavit attesting the $7,500 a month includes expenses for (1) handling Class Member communications; (2) ad-hoc Notice request fulfillment; (3) additional maintenance fees for the Escrow Account, Post Office box, Settlement Website, and toll-free line; (4) toll- free line minutes to use; (5) physical and digital document retention; and (6) project management and systems support but not does breakdown how the $7,500 is allocated. Mr. Barkan does not specify the efforts and we note many of the items, such as the website, toll-free line, document retention and Class Member communications would need to continue until final resolution in any event. We expect Class Counsel negotiated for these fees to be already allocated when we approved the settlement.

Class Counsel does not argue the underlying statute authorizes fee shifting between the parties. Several courts outside our Circuit found the presence of a fee shifting statute decisive in including administrative costs, delay costs, or attorneys' fees in a Rule 7 appeal bond.[23] Because Class Counsel does not argue a fee shifting provision in the underlying statute, these cases are not persuasive. Further, any fee shifting in this case under a variety of state consumer protection statutes would require payment by the Defendants who are not causing the delay.

Our Court of Appeals addressed a "cost" for a Rule 7 appeal bond in two non-precedential cases. In *Hirschensohn v. Lawyers Title Ins. Corp.*, the district court *sua sponte* dismissed a complaint for lack of subject matter jurisdiction in an insurance dispute.[24] Plaintiff appealed the dismissal and defendant requested a $7,250 appeal bond based on its estimated

attorneys' fees.[25] Our Court of Appeals addressed "whether anticipated attorneys' fees…may be considered as 'costs' on appeal and the subject of an appeal bond."[26] Our Court of Appeals analyzed Federal Rule Appellate Procedure 7, Federal Rule of Appellate Procedure 39, prior caselaw, and treatises to "conclude that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees."[27]

Seventeen years later in *In re Nutella*, our Court of Appeals analyzed an appeal bond of $22,500 based on costs and administrative expenses of managing the settlement fund during the appeal period.[28] The district court reduced the requested amount of administrative expense by 50% after the objectors did not meaningfully oppose the request. The district court allowed a reduced appeal bond "because (1) the objectors did not respond in a meaningful way to the plaintiffs' contentions that their appeals were meritless; and (2) the objectors, who were a geographically diverse group, did not provide any representations that they were able to pay the costs of an appeal."[29] Our Court of Appeals held the district court did not abuse its discretion in awarding a reduced appeal bond of $22,500 including $2,500 for briefing expenses and $20,000 for one year of administrative expenses of the settlement fund.[30]

Appellants argue we should ignore *In re Nutella*, or limit the holding to its facts. They argue *Hirschensohn* is the governing rule in our Circuit and it limited "costs" calculated in a Rule 7 appeal bond to only costs specifically mentioned in Rule 39.[31] Viewed this way, *In re Nutella* directly contradicts *Hirschensohn*.

Appellants misconstrue the breadth of the *Hirschensohn* decision. Our Court of Appeals did not provide an exhaustive definition of a Rule 7 cost; it addressed whether attorneys' fees could be included as a cost under Rule 7. The ruling "we conclude that Rule 7 does not authorize a bond to cover estimated costs of attorneys' fees" is equally narrow. Attorneys' fees

and administrative expenses of a settlement fund are different. Because the appeal bond in *In re Nutella* did not include attorneys' fees, *Hirschensohn* is not directly contrary. In *In re Nutella*, our Court of Appeals held it is within our discretion to include administrative expenses in an appeal bond.

We understand *In re Nutella* and *Hirschensohn* may chafe against each other and have led to opposing holdings in district courts since *In re Nutella*.[32] In *Schwartz v. Avis Rent a Car System, LLC*, the class requested an $69,000 appeal bond for one objector, consisting of $10,000 to $25,000 for Rule 39 costs and $59,000 for expenses in administering the settlement fund during the appeal. The court credited *Hirschensohn* over *In re Nutella* and relied on the "the *Hirschensohn* rationale in finding that administrative costs are not included in a Rule 7 bond."[33] The court imposed a bond of $15,000 for costs under Rule 39.[34]

In *Glaberson*, the class requested an appeal bond in the amount of $28,150, consisting of $550 for Rule 39 costs and $27,600 in expenses to maintain the settlement website, toll-free number, and respond to class members' inquiries during pending appeal.[35] The class submitted an affidavit <u>detailing</u> monthly costs of (1) legal notification website maintenance /hosting at $300; (2) class member communications at $250; (3) call center: interactive voice response (automated Q&A) at $400; (4) call center: 800# charges at $150; (5) call center: IVR monthly charge at $275; (6) project management fees at $750, and; (7) expenses & other charges at $175.[36] The court awarded an appeal bond in the amount of $28,150.[37] The court found administrative costs appropriate under *In re Nutella* because there is one appeal out of a class of 800,000, with only three opt-outs and three objections.[38] The court also held but for the appeal process, the class would receive their recovery and administrative costs to manage the fund

would cease.[39] Because the appeal created administrative costs and delayed benefits to the class, the court included administrative costs in the appeal bond.[40]

In the facts presented to us, we do not include administrative costs in the bond. We approved a large class action settlement similar to *In re Nutella*. We are aware of the diminishing value by delay; however, an individual appeal bond for each Appellant will also deter meritless appeals. We deny the Class' request for administrative costs because Appellants meaningfully responded to its request. In *In re Nutella*, the Appellants did not meaningfully respond to the request for an appeal bond. Here, Appellants filed four briefs responding in a meaningful way to the Class' request and defending the merits of their appeals. The Class moved for expedited briefing in our Court of Appeals hoping to shorten the appeals period.

We also deny the Class' request for administrative costs because we have no evidence the delay caused by an appeal does not create additional administrative expenses beyond those necessary to manage the Settlement Fund under the settlement agreement. The parties agreed to structure the settlement with two types of recovery. Class Members who filed an affirmative claim can receive cash or a voucher. The majority, over 16.2 million Class members, did not file an affirmative claim and will receive a voucher good for a purchase from Justice Stores for up to one year. In *Glaberson*, one appellant held up the lump sum payout of cash to the class and dissolution of the settlement fund. Here, the Settlement Agreement contemplates the Settlement Fund's existence for at least another year.

The Class does not explain how the administrative costs in the Barkan Affidavit differ from the normal administrative expenses under the Settlement Agreement. If ongoing administrative costs for the Settlement Fund over the next year or so are a problem, we wonder

10

why neither party raised the increased administrative costs in a payout during the settlement approval process.

Objector Vullings argued the Class' request for administrative costs does not contain enough details. She is correct on this issue. In a footnote, Class Counsel defends its right to not to provide "such a granular showing" of administrative costs under *In re Ins. Brokerage Antitrust Litigation*[41] where the district court required an appeal bond of $25,000 for Rule 39 costs and denied the objectors' request for plaintiff to provide affidavits regarding copy and binding costs.[42] The parties seemingly agree to the Rule 39 costs and we find Class Counsel's reliance on *In re Ins. Brokerage Antitrust Litigation* is misplaced. At a minimum, Class Counsel should specifically describe their administrative costs on a monthly basis. They will need to do so eventually to get reimbursed by providing proof of invoices and payment. We do not penalize Appellants with a bond amount based on unsupported suppositions.

We decline to set a bright line rule a class can never obtain an appeals bond including administrative expenses. For example, we find the level of detail in *Galberson*, where the Class submitted a declaration detailing the individualized monthly expenses supporting its requested $2,300 per month, to be appropriate when awarding administrative fees.[43] By comparison, we have no delineated costs as presented to Judge Padova in *Galberson*. We are unable to breakdown the $7,500. We are particularly deprived of any analysis of the costs the Class would normally incur during administration of the settlement over the next 18 months compared to administrative costs caused by the appeal delay.

### III. Conclusion.

An appeal bond is warranted for costs of each appeal. Absent any specific basis for the $7,500 monthly administrative charge, we decline to require a bond for uncertain administrative charges. In the accompanying Order, we require each notice of appeal to be secured by a $1,235.52 appeal bond filed within ten (10) days.

---

[1] ECF Doc. No. 183, *Rougvie v. Ascena Retail Group, Inc.*, No. 15-724, 2016 WL 4111320 (E.D. Pa. July 29, 2016).

[2] ECF Doc. No. 183 at p. 11, *Rougvie v. Ascena Retail Group, Inc.*, No. 15-724, 2016 WL 4111320 at *11 (E.D. Pa. July 29, 2016).

[3] ECF Doc. No. 136 at p. 13.

[4] ECF Doc. Nos. 101, 103, 105, 107, 110, 112, 113, 114, 116-124, 131.

[5] ECF Doc. Nos. 217-18 (*Rougvie v. Ascena Retail Group, Inc.*, No. 15-724, 2016 WL 4784121 (E.D. Pa. Sept. 12, 2016)).

[6] Appellants are Gretchen K. Carey, Michelle W. Vullings, Sheila Ference, Robert Gallagher, Diana Amaya, Darlene Goldman, Manda Hipshire, Kelsey D Foligno, Vicki Mager, Leah Harrington, and Stephen Cassidy ("Appellants"), No 16-3381, (3d. Cir.) ECF Doc. No. 191; ECF Doc. No. 199; ECF Doc. No. 196; ECF Doc. No. 202 (Robert Gallagher includes Robert Gallagher, Rebecca Joiner, Andrea Kallay, David Legendre, Yanesty Loor); ECF Doc. No. 203; ECF Doc. No. 204 (Darlene Goldman includes Darlene Goldman, Terri Holcomb, Emily Mohr); ECF Doc. No. 205; ECF Doc. No. 206; ECF Doc. No. 207 (Vicki Mager includes Vicki Mager and Melissa Schultz); ECF Doc. No. 208 (Leah Harrington includes Leah Harrington, Leighan Sonnier, Beth Yoes); ECF Doc. No. 209. The Court of Appeals terminated Pamela Sweeney's Appeal for failing to pay fees.

[7] ECF Doc. No. 219.

[8] The Class does not mention this 16 month period may be significantly shortened by its pending motion to expedite the appeal.

[9] ECF Doc. No. 219 at 42.

[10] ECF Doc. No. 229-4; ECF Doc. No. 231.

[11] ECF Doc. No. 224 at 1.

[12] ECF Doc. No. 226 at 2; ECF Doc. No. 230 at 4 (Robert Gallagher's request we deny the Class' appeal bond related to administrative expenses). Objectors Barbara Comlish and Kathryn Artlip also objected even though they did not appeal the settlement approval.

[13] Fed. R. App. P. 7.

[14] *See In re Certainteed Fiber Cement Siding Litig.*, MDL No. 2270, 2014 WL 2194513, at *1 (E.D. Pa. May 27, 2014); *Glaberson v. Comcast Corp.*, No. 03-6604, 2015 WL 7887788 (E.D. Pa. Dec. 3, 2015).

[15] ECF Doc. No. 167.

[16] *In re Certainteed*, 2014 WL 2194513, at *1 (holding the appeal bond is necessary because the objectors' appeal "delays [defendant's] obligation to release the settlement fund to claimants, delaying payments to class members who have already submitted claims").

[17] *Id.* at *2.

[18] ECF Doc. No. 229-3 at 1.

[19] *Glaberson*, 2015 WL 7887788 at *2.

[20] ECF Doc. No. 219.

[21] ECF Doc. No. 183 at 24-29, *Rougvie*, 2016 WL 4111320 at *24-29.

[22] ECF Doc. No. 224 at 11.

[23] *See, e.g., Lerma v. Schiff Nutrition Int'l, Inc.*, No. 11-1056, 2016 WL 773219 at *3-4 (S.D.Cal. Feb. 29, 2016); *Keller v. National Collegiate Athletic Ass'n*, Nos. 09-1967, 09-3329, 2015 WL 6178829 at *1-2 (N.D. Cal. Oct. 21, 2015); *In re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223, 2013 WL 4052673 at *1 (N.D. Ill. Aug. 12, 2013); *In re Bayer Corp. Combination Aspirin Prods. Mktg. and Sales Practices Litig.*, No. 09-2023, 2013 WL 4735641 at *3-4 (E.D.N.Y. Sept. 3, 2013).

[24] *Hirschensohn v. Lawyers Title Ins. Corp.*, No. 96-7312, 1997 WL 307777 at *1 (3d Cir. June 10, 1997).

[25] *Id.*

[26] *Id.*

[27] *Id.* at *1-2.

[28] *In re Nutella Marketing and Sales Practices Litigation*, 589 Fed.Appx. 53, 61 (3d Cir. 2014).

[29] *Id.*

[30] *Id.*

[31] Objectors also argue the Tenth Circuit's summation of our Courts of Appeals' holdings as "Third Circuit[] restrict[s] an appeal bond to only costs listed in Fed. R.App. P. 39" and its decision electing the unpublished *Hirschensohn* over unpublished *In re Nutella* means *Hirschensohn* is the binding law. We do not interpret *Tennile v. Western Union Co.*, 774 F.3d 1249, 1255 (10th Cir. 2014) as the definitive rule in our Circuit.

[32] *Schwartz v. Avis Rent a Car System, LLC*, No. 11-4052, 12-7300, 2016 WL 4149975 at *1 (D.N.J. August 3, 2015).

[33] *Id.* at 3.

[34] *Id.* at 4.

[35] *Glaberson*, 2015 WL 7887788, at *1.

[36] Exhibit A to Declaration of Joel Botzet, *Glaberson v. Comcast Corporation*, No. 03-6604 (E.D. Pa. Nov. 2, 2015), ECF Doc. No. 648-1.

[37] *Id.* at 4.

[38] *Id.* at 3.

[39] *Id.*

[40] *Id.*

[41] ECF Doc. No. 232 at 2 n.2.

[42] *In re Ins. Brokerage Antitrust Litigation*, MDL No. 1663, 2007 WL 1963063 at *2-3 (D.N.J. July 2, 2007).

[43] *See* Exhibit A to Declaration of Joel Botzet, *Glaberson v. Comcast Corporation*, No. 03-6604 (E.D. Pa. Nov. 2, 2015), ECF Doc. No. 648-1.