**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL ROUGVIE, *et al.*,<br><br>                             *Plaintiffs*,<br><br>                    v.<br><br>ASCENA RETAIL GROUP, INC. d/b/a/<br>JUSTICE STORES<br><br>and<br><br>TWEEN BRANDS, INC. d/b/a<br>JUSTICE STORES<br><br>                             *Defendants*. | No. 2:15-cv-00724-MAK |

**MEMORANDUM IN SUPPORT OF CLASS MEMBERS BARBARA COMLISH AND
KATHRYN ARTLIP'S MOTION TO INTERVENE AND TO REQUIRE DISCLOSURE
AND DISGORGEMENT OF SIDE-PAYMENTS**

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT ...............................................................................................................5

   **I.**     Intervention is warranted. ................................................................................ 5

      A.    Comlish is entitled to intervene as a matter of right. ................................... 5

      B.    Alternatively, Comlish should also be permitted to intervene under Rule 24(b). .......... 8

   **II.**    Disclosure and accounting is necessary. ........................................................... 8

   **III.**  Disgorgement is justified. ............................................................................... 13

      A.    The objector-appellants unjustly profited from their exploitation of class proceedings, justifying equitable disgorgement. ...................................................... 14

      B.    Alternatively, the court should order disgorgement under 28 U.S.C. § 1927 or to vindicate its inherent authority. ...................................................... 18

      C.    Payments to objector-appellants are otherwise inequitable and bad public policy. ..... 20

CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bell Atlantic Corp v. Bolger*, 2 F.3d 1304 (3d Cir. 1993)..................................................... 5

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). ............................................................ 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)............................................................ 18

*Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000)..................................... 11

*Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984 (7th Cir. 2002) ............................................................................................................ 19

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) ................................... 10

*Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406 (3d Cir. 2013) ........................................ 14

*Fla. Bar v. Adorno*, 60 So. 3d 1016 (Fla. 2011) ............................................................. 16

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)........................................ 14

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)................................................................. 9

*Harris v. Pernsley*, 820 F.2d 592 (3d Cir. 1987) ............................................................. 5

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)........................................... 12

*In re Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litig.*, 297 F.R.D. 90 (S.D.N.Y. 2013) ................................................................................................................ 6

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001)......................................... 12, 13

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)................................................... 5, 6

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ..................................................... 9

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013).................................................. 16

*In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)  7, 17

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979).............. 13

*In re Hager*, 812 A.2d 904 (D.C. 2002)...................................................................... 16

*In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664 (N.D. Ohio 2015)...................... 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002)  19

*In re Prudential Ins. Co. Am. Sales*, 278 F.3d 175 (3d Cir. 2002) .................................................. 1

*In re Ungar*, 25 So. 3d 101 (La. 2009) ................................................................... 16

*In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016) ........................... 16

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304 (8th Cir. 1995) ............. 7

*McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) ............................... 12

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361 (3d Cir. 1995) .......... 8

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ............................... 12, 16

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ........................... 1

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) ..................................... 15

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ............................................. 13

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ........................... 16

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .................................. 5

*Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273 (3d Cir. 2016) ...................... 16

*Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012) ................................ 15

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ............................................. 16

*Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195 (2d Cir. 2016) ................................... 6

*Safeco Ins. Co. of Amer. v. American Int'l Group, Inc.*, 710 F.3d 754 (7th Cir. 2013) .............. 15

*Spencer v. Steinman*, No. 2:96-CV-1792 ER, 1999 WL 33957391 (E.D. Pa. Feb. 26, 1999 ....... 19

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ......................................... 7

*United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994) ........................... 6

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) ...................................... 5

*US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013) ......................................... 17

*Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003) ............................................... 14

*Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016) ......................................... 5, 6

*Woolen v. Surtran Taxicabs*, 684 F.2d 324 (5th Cir. 1982) ...................................... 7

*Young v. Higbee*, 324 U.S. 204 (1945) ................................................... *passim*

**Statutes and Rules**

iv

Fed. R. Civ. P. 23(d)(1)(C) ................................................................................... 9

Fed. R. Civ. P. 23(e)(5) ....................................................................................... 14

Fed. R. Civ. P. 24(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 24(b)(1) ......................................................................................... 8

Fed. R. Civ. P. 24(b)(3) ......................................................................................... 8

Fed. R. Evid. 408 ................................................................................................ 13

L.R. 83.6.1(b) ..................................................................................................... 19

L.R. 83.6.1(c) ..................................................................................................... 19

**Other Authorities**

Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) ......................... 7

Advisory Committee Notes to 2003 Amendment of Rule 23(e)(2) ............................. 9

Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) ....................... 19

Alan B. Morrison, *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79
    Geo. Wash. L. Rev. 428 (2011) ....................................................................... 10

Alexandra D. Lahav, *Fundamental Principles for Class Action Governance*, 37 Ind. L. Rev. 65
    (2004) .......................................................................................................... 13

Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.08 (2010) .............. 10

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009) ................ 1

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors,* 2003
    U. Chi. Legal F. (2003) .................................................................................. 13

Katherine Ikeda, Note, *Silencing The Objectors*, 15 Geo. J. Legal Ethics 177 (2001) .............. 10

Marie Leary, *Study of Class Action Objector Appeals in the Second, Seventh and Ninth Circuit
    Court of Appeals*, Federal Judicial Center (2013) ............................................. 15

Restatement (Third) of Restitution and Unjust Enrichment § 48 (2010) ..................... 17

Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (2010) ................. 14

Restatement (Third) of the Law Governing Lawyers § 37 ....................................... 16

# INTRODUCTION

Bad-faith, rent-seeking, extortionate objectors—those who object not to improve the settlement on behalf of the class, but to extract a payment for themselves and their attorneys at the expense of the class—are a persistent wart on class action litigation. Legal academics have criticized "objector blackmail" as nothing more than levying a tax on the entire class action system, a tax from which "[l]iterally nothing is gained." Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1635 (2009). Numerous courts, including this one, have also expressed frustration with bad-faith objectors. *See, e.g.*, Memorandum re appeal bond, Dkt. 233 at 1 ("[T]oo often the objectors are represented by lawyers who file objections to many class action settlements simply to be bought out at a higher premium than other class members."); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors.").

Objector blackmail doesn't just increase the costs of class actions for plaintiffs, defendants, class members and courts and trammel the egalitarian ideal of treating similarly-situated class members equally, it does perhaps the greatest disservice to good-faith objectors. Objector blackmail distracts from well-intentioned arguments made by good-faith objectors, and allows settling parties to brand *every* objection as suspect. If "objector blackmail" is eradicated, good-faith objectors can reclaim their "highly important role [of] . . . rais[ing] challenges free from the burden of conflicting baggage that Class Counsel carries." *In re Prudential Ins. Co. Am. Sales*, 278 F.3d 175, 202 (3d Cir. 2002).

On September 22, 2016, the class plaintiffs condemned "squarely frivolous" and "extortionate" appeals prosecuted by counsel for, *inter alia,* objectors Gretchen Carey, Michelle Vullings, Manda Hipshire, Kelsey Foligno, Melissa Schultz, and Vicki Mager ("objector-appellants"), and moved for the court to impose an *ultra vires* appeal bond to protect the class from rent seeking and delay. Dkt. 220. Class counsel, plaintiffs announced, "ha[d] no intention of

bankrolling extortionate actors." *Id*. at 8. Non-appealing objectors Comlish and Artlip (collectively "Comlish") suggested that the Court enjoin the parties from negotiating any improper settlements of the appeal. Dkt. 225 at 8-11. In its opinion granting plaintiffs' motion in part, the Court recognized the concern with allowing appealing objectors to capture a higher premium than similarly-situated class members and declared that it would entertain a motion to enjoin such payments later if the occasion became ripe. Dkt. 233 at 1-2.

After an eight-month delay, objector-appellants settled their appeals on undisclosed terms with no apparent benefit to the rest of the class. On information and belief, class counsel and/or Ascena Retail Group, Inc. and Tween Brands, Inc. (collectively "Justice") struck deals with each objector-appellant to get them to dismiss their appeals. Objector-appellants unjustly appropriated the proceeds arising from appeals that implicated all class members' rights; the fruit of those appeals "properly belongs to all [class members]" even though the value was obtained through settlement. *Young v. Higbee*, 324 U.S. 204, 213-14 (1945).

As *Young* counsels, Comlish now moves to force disclosure of the terms of the side-agreements, and accounting and disgorgement of the inappropriately-paid objector blackmail. She moves for intervention as permitted by Fed. R. Civ. P. 24 for belt-and-suspenders reasons and to preserve any appellate rights relating to the Court's decision on disgorgement. This motion calls upon the Court's equitable powers to supervise class litigation, to enforce the existing settlement and to vindicate its own authority. This is not a challenge to the settlement that this Court has approved, from which all appeals have been dismissed.

## BACKGROUND

Following preliminary approval and notice of the settlement, forty-five class members submitted objections, including Comlish, followed by the objector-appellants. Dkts. 103, 107, 110, 113, 123, 135-2 (Ex. 15). Counsel for Comlish and three of the objector-appellants addressed the Court at the May 20, 2016 fairness hearing. Transcript, Dkt. 187. Through a combination of the

"parties address[ing] and cur[ing] meritorious objections"[1] and the Court's action sustaining certain fee objections,[2] the settlement as finally approved was a much improved result for class members. Comlish, joined by several other objectors including objector-appellant Hipshire, petitioned the Court to extend the objectors' deadline to move for attorneys' fees for their contribution to the class's benefit. Dkt. 192. The Court granted the request. Dkt. 193.

Despite the fact that the final settlement structure ameliorated most significant defects, the objector-appellants, all filed notices of appeal. Dkts. 191 (Carey), 199 (Vullings), 205 (Hipshire), 206 (Foligno), and 207 (Mager and Schultz).[3] Satisfied with the outcome below, Comlish did not appeal.

On September 22, 2016, evincing a serious concern with the motives of objector-appellants, plaintiffs sought to require objector-appellants to post exorbitant $121,200 appeal bonds. Dkt. 220. Comlish opposed, maintaining that the Court should limit the amount of the bond to the approximately $1,200 of claimed taxable costs, and that to address plaintiffs' concern, the Court should issue a 23(d) order enjoining the parties from consummating an unsavory side-settlement on appeal. Dkt. 225. In its opinion granting the bond in the lesser amount of $1,235.52, the Court recognized the concern with allowing appealing objectors to capture a higher premium than similarly-situated class members and declared it would entertain a good-faith motion to enjoin such payments if warranted later in time. Dkt. 233 at 1-2.

---

[1] Opinion, Dkt. 183 at 67.

[2] Dkt. 183 at 44-63; Memorandum re lodestar, Dkt. 217.

[3] Six other appeals were filed from the Court's final approval order, but this motion does not concern those appeals. As far as Comlish is aware, each of those appeals was dismissed (some involuntarily) before an opening brief was filed, and none of those appellants extracted a premium from the settling parties in exchange for the dismissal. The Court should seek confirmation of this fact from the settling parties.

Third Circuit proceedings continued; the objector-appellants filed opening briefs, each purporting to carry the mantle for absent class members.[4] Before plaintiffs' omnibus answering brief was filed, however, the appeals settled in Third Circuit mediation. During the week of April 24, objector-appellants Carey, Vullings, Hipshire, Mager and Schultz submitted stipulated dismissals of their respective appeals. Objector-appellant Foligno moved unopposed to dismiss her appeal. The Third Circuit immediately issued orders dismissing the cases, in lieu of formal mandates. Dkts. 246, 247, 250, 251, 252.

The terms of the settlements were not disclosed, though the circumstances suggest that objector-appellants have "sold"[5] their appeals in exchange for a side-payment from one of or both of the settling parties. Circumstances also suggest that none of the benefit obtained from the appeal has been conferred upon the class, since the settlement is not subject to change, modification or amendment without this Court's approval. Dkt. 184 at 4. Objector-appellants and their counsel settled the appeals for strictly personal gain; absent class members received nothing.

This motion to intervene, disclose and disgorge follows.

---

[4] *See, e.g.*, Opening Br. of Gretchen Carey, No. 16-3381 (3d Cir.) (arguing that settlement was unfair to cash purchasers and consumers residing in states allowing treble damage recoveries); Opening Brief of Michelle Vullings, No. 16-3421 (3d Cir.) (raising ten issues for appeal, all on behalf of absent class members or a subset thereof); Opening Br. of Manda Hipshire, No. 16-3514 (3d Cir.) (alleging a "principled challenge" to a settlement that disadvantaged class members due to class counsel's "self-dealing" and especially disadvantaged Tennessee class members through the terms of settlement relief); Opening Br. of Kelsey D. Foligno, No. 16-3515 (3d Cir.) (arguing that the settlement "is not in the best interests of the 18.4 million class members"); Notice of Joinder of Vicki Mager and Melissa Schultz, No. 16-3516 (3d Cir.) (adopting Foligno's brief).

[5] *See Young v. Higbee*, 324 U.S. 204, 207 (1945).

## ARGUMENT

## I.    Intervention is warranted.

Comlish seeks to disclose and disgorge payments authorized by class counsel and/or Justice, which unjustly enriched objector-appellants at the expense of absent class members. Comlish believes she can seek these remedies without intervention simply as a class member. *Cf. Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 287 (7th Cir. 2002) (noting that requiring intervention from an objector seeking to file a motion would be a "pointless formality"). "Assuring fair and adequate settlements outweighs concerns that non-intervening objectors will render the representative litigation 'unwieldy.'" *Bell Atlantic Corp v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993). Nevertheless, Comlish moves to intervene so that there is no controversy about her right to make her motion and to preserve any appellate rights. Intervention is appropriate because class counsel have, by either negotiating or assenting to extortionate side deals, and by failing to take steps prevent, redress or disclose those deals, ceased to adequately represent the class.

### A.    Comlish is entitled to intervene as a matter of right.

Comlish's interest in this case satisfies the requirements for intervention of right under Rule 24(a)(2). Specifically, a prospective intervenor must show that "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).

Here, Comlish's motion to intervene is timely because she is filing within only a few weeks after learning of the development necessitating intervention. Timeliness is measured from the event triggering the need for intervention. *See, e.g.*, *Wallach v. Eaton Corp.*, 837 F.3d 356, 375-376 (3d Cir. 2016); *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (holding that when settlement negotiations are conducted confidentially, potential intervenors are not put on

notice until the settlement terms are made public); *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016) (observing the "troubling consequences" of requiring premature interventions by unnamed class members). Comlish could not have known that the objector-appellants would compromise their appeal by obtaining funds that rightfully belong to the class, especially because class counsel had previously disavowed any "intention of bankrolling extortionate actors." Plaintiffs' Brief in Support of Motion for Appeal Bond, Dkt. 220 at 8. *"Where a party induces an applicant to refrain from intervening and there is reasonable reliance, the applicant's motion should not fail on timeliness grounds." United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1183 (3d Cir. 1994). Comlish has only been aware of her unrepresented interest since April 27, so intervention is timely. *See, e.g., id.* (holding that intervention 43 days after lodging of consent decree is timely); *Wallach*, 837 F.3d at 377-78 (finding that two-month delay after learning of the impairment of interest was not "unreasonable," "significant" or "meaningful").

As a class member and claimant to the approved settlement, Comlish has an interest in this case; she benefits alongside all other class members from potential disgorgement of the improper payments to individual objector-appellants. She has an interest in disclosure because it is a necessary prerequisite to disgorgement, and she is entitled to identification of the terms of settlement under Fed. R. Civ. P. 23(e)(3). *See Cmty. Bank of N. Va.*, 418 F.3d at 314 ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation. Therefore, when absent class members seek intervention as a matter of right, the gravamen of a court's analysis must be on the timeliness of the motion to intervene and on the adequacy of representation."). Without intervention, or a decision to otherwise consider Comlish's motion, the interests of Comlish (and all absent class members) will be greatly impaired because no other remedy exists. If the court were to deny this motion to intervene, class members' "interest would be extinguished for no compensation, which would eliminate [its] ability to protect its interest." *In re Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013). Even if it were possible for Comlish to file a new suit seeking disgorgement, any recovery would be decimated by duplicative

administration costs to redress the same underlying injury. In this case, the settlement administrator possesses the contact information and means to disburse recovery to unnamed class members, and this Court's final order anticipates the distribution of residual funds to class members after the coupon expiration deadline passes. Dkt. 185 at 2. Unless the improperly paid funds are disgorged and added to the existing common fund, there is no practical mechanism to secure their return to class members.

Finally, Comlish need only make a "minimal" showing "that representation of [her] interest 'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (describing the "minimal" burden to make that showing); *see also Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304, 1308 (8th Cir. 1995). The course of proceedings on appeal demonstrates that no existing party adequately represents the interests of absent class members in disgorging the objector blackmail. Here, even if they did not fund the payoff themselves, class counsel at least acquiesced in Justice's payoff to objector-appellants and may be contractually barred from pursuing disgorgement. Justice, as the defendant, naturally has "little or no interest" in "the allocation" of payments between the class and objector-appellants. *In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GM Trucks*"), 55 F.3d 768, 820 (3d Cir. 1995).

Class counsel have signaled their disinterest in seeking disgorgement and restitution for the class members. Comlish should be allowed to intervene for this reason alone. See Fed. R. Civ. P. 24(a)(2); Advisory Committee Notes on 2003 Amendment of Rule 23(e)(4)(B) ("[A] member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court").[6]

---

[6] It is important not to conflate Rule 23(a)(4) adequacy and Rule 24(a) adequacy determinations. They are "two separate and distinct" inquiries. *See Woolen v. Surtran Taxicabs*, 684 F.2d 324, 331-32 (5th Cir. 1982) (comparing the Rule 24 "adequacy" inquiry to the Rule 23(a)(4) "adequacy" inquiry). Rule 23(a)(4) is a precondition of class certification, which the Court has found satisfied and Comlish does not challenge. Rule 24(a) is a precondition for intervention and only requires a "minimal" showing of possible inadequacy.

Comlish is entitled to intervene as of right for the limited purposes of pursuing disclosure and recovery of the money unjustly paid to objector-appellants.

**B.**     **Alternatively, Comlish should also be permitted to intervene under Rule 24(b).**

Even if the Court finds Comlish is not entitled to intervene as a matter of right, Rule 24(b) allows for permissive intervention as long as (1) a timely application is made and (2) the applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). As part of this determination, courts consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). Here, Comlish's motion for intervention is timely, *see* section I.A, *supra*, and her request for disgorgement arises out of the funds equitably "inseparable"[7] from the main action. Further, her intervention will not unduly delay or prejudice the adjudication of the rights of the plaintiffs and defendants, as Comlish does not seek to invalidate the dismissal of objector-appellants' appeals or the underlying class settlement itself. Nor is there any legally-cognizable prejudice sustained by the objector-appellants. That the objector-appellants "might have to consider the [class's] legitimate interest in the funds at issue" is simply "recognizing the fundamental principal [sic] that an injured party has a legitimate right to redress." *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 370 (3d Cir. 1995).

Thus, the court should grant permissive intervention, allowing Comlish to pursue disclosure and disgorgement for the benefit of all class members.

**II.     Disclosure and accounting is necessary.**

Added to Fed. R. Civ. P. 23 in 2003, Rule 23(e)(3) mandates that "the parties seeking [settlement] approval must file a statement identifying any agreement made in connection with the proposal." It "does not change the basic requirement that the parties disclose all terms of the

---

[7] *Young v. Higbee*, 324 U.S. 204, 209 (1945).

settlement or compromise that the court must approve under Rule 23(e)(1)." Advisory Committee Notes to 2003 Amendment of Rule 23(e)(2) (now codified at 23(e)(3)). "It aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Doubts should be resolved in favor of identification." *Id.* In violation of Rule 23(e)(3), neither the objector-appellants, the plaintiffs, nor Justice has filed a statement identifying any particulars of the settlements reached in the Third Circuit.

This Court has general supervisory authority to "issue orders that . . . impose conditions on the representative parties or intervenors." Fed. R. Civ. P. 23(d)(1)(C). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The Court's Rule 23(d)(1)(C) authority is broad. *See In re Deepwater Horizon*, 739 F.3d 790, 809 (5th Cir. 2014) (upholding conditions placed on objectors as "plainly" "within its discretion"). An order requiring the settling parties or objector-appellants to submit into the record a copy of the objector-appellant side-settlements (or at the very least a full description of all material terms and consideration is no different in kind than ordering parties to divulge certain information in response to a discovery request.

The rules contemplate requiring disclosures of the settling parties that are necessary but have not been made. *See* Advisory Committee Notes to 2003 Amendment of Rule 23(e)(2) (now codified at 23(e)(3)) ("The court may direct the parties to provide to the court or other parties a summary or copy of the full terms of any agreement identified."); Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) (now codified at 23(e)(5)) ("If the objector simply abandons pursuit of the objection, the court may inquire into the circumstances."). Here, ordering full disclosure and accounting of the side-settlements would serve several salutary ends. Most importantly, it would discharge the court's fiduciary duty to class members by enabling the Court to disgorge the ill-gotten gains of objector-appellants, if indeed the terms of those settlements provided unjust enrichment. It would allow the Court and the class to assess whether class counsel

adequately represented class members when it paid off objectors. *See* Katherine Ikeda, Note, *Silencing The Objectors*, 15 Geo. J. Legal Ethics 177, 200 (2001) ("[I]t seems imperative that class counsel disclose side settlements to the district court so the court can fulfill its duty as guardian of the class and determine whether the side settlement creates any impermissible conflicts within the class.") (citing conversation with the Honorable Jack B. Weinstein). And it would increase transparency and draw general attention to the problem of self-dealing objectors.

The addition of Rule 23(e)(3)'s identification requirement and Rule 23(e)(5)'s objection withdrawal provision was spurred by a decision of the First Circuit that rebuffed the idea that courts should rigorously scrutinize objector side-agreements. *Duhaime v. John Hancock Mut. Life Ins. Co.* held that objector side-settlements were "peripheral" and that district court approval was not required. 183 F.3d 1, 4 (1st Cir. 1999). *Duhaime* suggested that opportunistic objector behavior did not implicate the fiduciary duties of the official class representatives, and that dissimilar treatment of class members through a side-settlement was acceptable because objectors hired separate counsel. *Id*. at 4-6. *Duhaime* was superseded by Rule 23(e)(3) and (e)(5)'s respective requirements of identification of side agreements and withdrawals of objections conditioned on district court approval. *See* Alan B. Morrison, *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428, 447 (2011); Am. Law Institute, *Principles of the Law of Aggregate Litig.* § 3.08, cmt. a (2010) ("The prospect of such side deals provided an incentive for insubstantial objections to be filed and often placed class counsel in a compromised position in which the failure to pay off objectors could delay or even undermine a worthwhile settlement for the class. Under the 2003 amendments to Rule 23(e), such side deals must now be disclosed to the court, thereby removing one element of strategic gamesmanship from the equation.").

Moreover, *Duhaime*'s view of the law was questionable even before the 2003 Amendments to Rule 23. *Young v. Higbee*, a decision not mentioned by *Duhaime*, so instructs. 324 U.S. 204 (1945). *Young* arose out of the proposed bankruptcy reorganization plan of a golden age Cleveland

department store,[8] when two preferred shareholders (Potts and Boag) objected to the confirmation of the plan, contending that junior debt was allocated too great a share of the plan's proposed distribution. *Id.* at 206. After the district court overruled their objections and confirmed the plan, Potts and Boag appealed to have the confirmation set aside based upon the unfair treatment of preferred shareholders like themselves. *Id.* at 206-07. But rather than proceed on that argument, they "sold" their appeal to the junior debt holders (*i.e* they settled and dismissed their appeal) for a personal payoff. *Id.* at 207. Another preferred shareholder (Young) intervened to compel the initial appellants to account and disgorge the proceeds of the sale of their appeal. *Id.* at 208. A special master, the trial court, and the circuit court of appeals all thought that because Potts and Boag "had not acted as representatives of a class" there was no justification for disgorgement. *Id.* at 208.

The Supreme Court reversed. Even though "Potts and Boag did not expressly specify that they appealed in the interest of the whole class of preferred stockholders," the Court noted that the basis of that appeal "was that every other preferred stockholder, as well as themselves, would be injured by confirmation." *Id* at 209. Simply put, their rights were "inseparable." *Id.* Because Potts and Boag appealed from a judgment that affected "a whole class of stockholders," the Court held that, "at the very least," they owed a "duty of good faith to all other stockholders whose interests they temporarily control[led] because they [we]re necessarily involved in the appeal." *Id.* at 210-12. As in *Young*, the objector-appellants here temporarily controlled the interests of absent class members through their appeals, which were "alleged to be for the benefit of [absent class members]." *Compare id.* at 214 *with* 4 n.4, *supra* (describing objector-appellants' opening briefs). To the extent that these appeals had merit, the objector settlements are losses to the class because "appellate correction of a district court's errors is a benefit to the class." *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 881 (7th Cir. 2000). To the extent that they had no merit, the

---

[8] https://en.wikipedia.org/wiki/Higbee%27s

settlements are still losses to the class because the "the money [objectors] received in excess of their own interest as [class members] was not paid for anything they owned." *Young*, 324 U.S. at 213. The fruit of the appeal "properly belongs to all [class members]." *Id.* at 214. That the value of the appeal was exacted through settlement rather than through a litigated conclusion does not change this fact. *Id.* at 213-14. *Duhaime* erred by overlooking the connection between the objector's appeals and the underlying class claims.

Just as Potts and Boag proceeded under the "statutory privilege of litigating for the interest of a class," so too did the objector-appellants in this case. That the privilege at issue was conferred under Fed. R. Civ. P. 23(e)(5), rather than the Bankruptcy Act of 1938 makes no difference. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (citing *Young* in support of the idea that the class device may not be "used to obtain leverage for one person's benefit"). Just as "one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors," *Young*, 324 U.S. at 210, a prime purpose of Rule 23(e) is ensuring an equitable allocation among class members. *See, e.g.*, Dkt. 183 at 29-30; *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013). Objectors "cannot avail themselves of the statutory privilege of litigating for the interest of a class and then shake off their self-assumed responsibilities to others by a simple announcement that henceforth they will trade in the rights of others for their own aggrandizement." *Young*, 324 U.S. at 213. "This representative responsibility is emphasized by the fact that they might have been awarded compensation for their services had they succeeded [on appeal] to the advantage of all the [absent class members]." *Id.*; *see also McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 659-60 (E.D. Pa. 2015) (awarding objector's counsel fees for benefit conferred upon the class and awarding objector an incentive award for same).

Moreover, this Circuit has a less formalistic approach to judicial review of class action proceedings than that elucidated in *Duhaime*. In *In re Cendant Corp. PRIDES Litig.*, the Third Circuit addressed the issue of whether an objecting class member had standing to challenge an attorneys' fee award, when any reduction in that award would revert to the defendant. *See* 243 F.3d 722, 727-28 (3d Cir. 2001). *Cendant* answered in the affirmative, because the integrity of

class action proceedings was of such vital importance, the "aggrieved" requirement had to be construed broadly: "the integrity and fairness of class settlements is threatened by excessive attorneys' fee awards such that class plaintiffs have standing to challenge excessive fee awards, even when they have received dollar-for-dollar recovery in the class settlement." *Id*. at 732. The same is true here. Even though Comlish and other class members will receive the full recovery allowed in the class settlement, the interest in preserving the integrity of class action proceeding militates in favor of investigating the objector-appellant settlements. *See GM Trucks*, 55 F.3d 768, 819-820 (indicating that district courts should "monitor for collusion, individual settlements, *buy-offs (where some individuals use the class action device to benefit themselves at the expense of absentees)*, and other abuses") (emphasis added). [9]

Previously, the Court indicated its willingness to entertain a good faith motion to enjoin illicit side-payments. Dkt. 233 at 2. Because that bridge has presumably been crossed, the proper way forward is to first order disclosure of the terms of the side-settlements.[10]

## III.   Disgorgement is justified.

Disgorgement is an equitable remedy within the inherent power of the court. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 397-99 (1946) ("[U]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available. . . ."); *Great-West Life & Annuity*

---

[9] *See also* Alexandra D. Lahav, *Fundamental Principles for Class Action Governance*, 37 Ind. L. Rev. 65, 124 (2004) ("Objectors who make side deals to drop objections must be required to publicly disclose the terms of all such settlements and to have them approved by the court."); Edward Brunet*, Class Action Objectors: Extortionist Free Riders or Fairness Guarantors,* 2003 U. Chi. Legal F. 403, 446 (2003) (advocating for disclosure of side deals on public policy grounds).

[10] Settlement offers are not admissible to prove liability, Fed. R. Evid. 408, but are admissible to prove the existence of the facts and terms of that settlement offer. There is no general settlement "privilege", especially given the need for transparency in the class-action context. *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979); *In re Polyurethane Foam Antitrust Litig.,* 165 F. Supp. 3d 664, 670 (N.D. Ohio 2015) (dealing with an objector greenmailer).

*Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (restitution is an equitable remedy where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). "[D]isgorgement claims seek not to compensate for a loss, but to deprive wrongdoers of ill-gotten gains." *Edmonson v. Lincoln Nat'l Life Ins. Co*., 725 F.3d 406, 415 (3d Cir. 2013) (internal quotation omitted). Here, the court ought to exercise its equitable power to disgorge profit that would otherwise result from objector-appellants' cynical misuse of the class action process to extract private gain. "The object of restitution [in the disgorgement context] . . . is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (2010).

### A.       The objector-appellants unjustly profited from their exploitation of class proceedings, justifying equitable disgorgement.

Side-agreements for private pecuniary gain siphon away funds that rightfully belong to the class. *Young*, 324 U.S. at 209-214. Courts have rightly criticized settlements where objectors "get paid to go away" because such payments "benefit only the [objectors] at the expense of all other parties to the litigation." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

At their best, such objector settlements burden the judicial system with meritless appeals calculated for individual gain. When for-profit objectors appeal, they exploit the lack of oversight afforded by the Federal Rules of Appellate Procedure. While before district courts, such objectors are at least partially deterred from making selfish settlements by the fact that withdrawal of any objection requires the district judge's consent. *See* Fed. R. Civ. P. 23(e)(5). The rule also empowers district courts to ascertain whether objections are withdrawn for private payment. No comparable appellate rule exists for objector settlements. As a result, many, perhaps most, objector appeals are filed for the sole purpose of leveraging an individual settlement. *See* Marie Leary, *Study of Class Action Objector Appeals in the Second, Seventh and Ninth Circuit Court of Appeals*, Federal Judicial Center at 11 (2013), *available at* https://www.fjc.gov/content/study-class-action-

objector-appeals-second-seventh-and-ninth-circuit-courts-appeals-report ("In the Seventh Circuit, all of the identified class action objector appeals [filed January 1, 2008 through June 1, 2013] were voluntarily dismissed pursuant to Rule 42(b).").

But much worse, such settlements may "jeopardize the interests of the unrepresented class members." *Safeco Ins. Co. of Amer. v. American Int'l Group, Inc.*, 710 F.3d 754, 755 (7th Cir. 2013) (dismissing appeals where no member of the class expressed opposition to voluntary dismissal). When an objector-appellants agrees to drop a meritorious—or even a colorable—appeal the entire class is potentially worse off because the class action settlement never receives appellate scrutiny.

Either way, such settlements constitute an abuse of the class-action system. If the settled appeals are frivolous, individual class members are receiving unearned windfall at the expense of class recovery. If the underlying objection is meritorious, the settling parties doubly disserve the class by extorting a windfall *and* precluding review of the underlying approval and fee award. *Cf. Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) ("A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review."). If it is problematic for a neutral district judge to preclude appellate review, it is surely more so for the settling parties to successfully preclude appellate scrutiny of a settlement (and class counsel's fee award) by buying off individual class members challenging it.

Comlish opposes just such extortionate side deals, and so seeks disgorgement of funds improperly paid to appellants. Payments to individual class members almost always cheat the class, and this principle is well-understood in the context of defendants attempting to "pick-off" named plaintiffs and moot their individual claims through settlement. *See, e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) ("[D]efendant may moot a class action through an offer of settlement only if he satisfies the demands of the class; an offer to one cannot moot the action because it is not an offer to all."); *Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273, 279

(3d Cir. 2016).[11] It is equally well-understood that it is improper for named plaintiffs to enter into lucrative side-agreements while freezing out the absent class. *See, e.g.*, *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013); *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013); *Murray*, 434 F.3d at 952. It is equally well-understood that class counsel should not sustain themselves while freezing out absent class members. *See, e.g.*, *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016). And it is especially improper if negotiated through a secret side-agreement with the defendant. *In re Hager*, 812 A.2d 904, 912 (D.C. 2002); *In re Ungar*, 25 So. 3d 101, 103 (La. 2009); *Fla. Bar v. Adorno*, 60 So. 3d 1016, 1036 (Fla. 2011).

When these improprieties occur to the detriment of absent class members, a "court has broad equitable power to deny attorneys' fees (or to require an attorney to disgorge fees already received)." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *see also* Restatement (Third) of the Law Governing Lawyers § 37. One might respond, like the First Circuit did in *Duhaime*, that none of the preceding scenarios is applicable because such strictures only govern those with fiduciary duties to the class (*i.e.* the named representatives and class counsel).

However, as in *Young*, a formal fiduciary duty is irrelevant, because "[e]quity looks to the substance and not merely the form." *Young*, 324 U.S. at 209. It is no answer to say that objector-

---

[11] If class counsel authorized settlement with the objector-appellants simply to protect against the possibility of successful fee challenge, disgorgement would be separately warranted for class counsel's breach of fiduciary duty to the entire class. Fee disgorgement owing to a breach of counsel's fiduciary duties is an equitable rule "founded both on principle and pragmatics." *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999). As a matter of principle, the attorney "is not entitled to be paid when he has not provided the loyalty bargained for and promised." *Id.* at 237-38. As a matter of pragmatics, "the possibility of forfeiture of compensation discourages an agent from taking personal advantage of his position of trust in every situation no matter the circumstances, whether the principal may be injured or not." *Id.* at 238. Even where the clients suffer no monetary harm from the breach, the fee should be disgorged to deter future misconduct; it is not a "windfall" for the clients to receive that disgorgement. *Id.* at 240. Comlish has seen no indication that class counsel harbored any untoward motivation rather than the proper motivation of expediting class relief.

appellants "appealed [on] behalf of themselves only and had not acted as representatives of a class." *Id.* at 208. Regardless of forms, the products of the appeal equitably belong to the class. *Id*. at 213-14.

One need not be a fiduciary to be unjustly enriched. The familiar class action "common fund" fee doctrine demonstrates as much. Absent class members owe no fiduciary duty to class counsel or the named plaintiffs, yet they would still be unjustly enriched if they were permitted to retain the full benefits of a class action proceeding without contributing to the named plaintiffs' expenses. *See US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1547 (2013) ("the common-fund doctrine has deep roots in equity . . . . set in the soil of unjust enrichment").

The flip side of spreading costs is sharing benefits. The policies of Rule 23 do not countenance using class proceedings to leverage personal benefit. Even if objector-appellants have no fiduciary duty to the class, they are appealing from a settlement that belongs to all class members and would be unjustly enriched if permitted to retain all the benefits of those appeals. Under such circumstances, the class "has a better . . . equitable right" to the proceeds of the side-settlement, and is therefore "entitled to restitution . . . to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 48 (2010).

Objector-appellants may argue that the side-payments came out of money proceeds separate from the class settlement fund, so the class suffered no prejudice. As *Young* makes clear, this distinction does not withstand scrutiny. The fruit of an appeal challenging approval of a class settlement and fee award "belongs to all the [class members]. One [class member], therefore, cannot make that fruit his own by a simple appropriation of it." *Young*, 324 U.S. at 214. Modern class action jurisprudence teaches the same lesson: all class action payments ultimately derive from resolution of the underlying claims. *GM Trucks*, 55 F.3d at 819-20 (noting that defendants care only about total liability, not the allocation of proceeds). Here, objector-appellants misused the rights of objection and appeal to divert additional funds solely to themselves, and their side-payments ultimately derive from the underlying action. The settling parties were "greenmailed" to pay because the present value of the underlying settlement and the cost of defending that settlement

on appeal gave objector-appellants leverage to extract an additional payment. Objector-appellants' leverage comes from the holding class recovery hostage, so benefits extracted based on such leverage ought to benefit all class members.

Moreover, objector-appellants and their counsel did not merely abscond with proceeds that should have been shared with the class; they actively inflicted harm on the class by precipitating an eight-month delay while extracting payments through bad-faith appeals. Perhaps, as class counsel previously asserted (Dkt. 220), this cost the class additional administrative costs in some measure. But more certainly, the delay caused prejudice by depriving more than 16 million class members of immediate receipt of their funds/coupons and the time value of money for those assets. *See* Dkt. 233 at 4 (recognizing the 607,215 class members who submitted claims seeking an immediate recovery). As the Court also observed, "the longer the appeals the more pre-teen girls will outgrow the demand elasticity for Justice's temporal market." Dkt. 233 at 5. Ironically, objector-appellant Vullings made a similar observation on appeal. Opening Brief of Michelle Vullings, No. 16-3421 (3d Cir.), at 12 ("The thirteen-year-old child who shopped at Justice in 2012 . . . is now an eighteen-year-old woman. The coupons are of no value to such a class member, who no longer meets the demographic of those shopping at Justice.").

In accordance with *Young*, this Court should order disgorgement to the class of any monies unjustly paid to objectors and their counsel.

## B.     Alternatively, the court should order disgorgement under 28 U.S.C. § 1927 or to vindicate its inherent authority.

If Comlish cannot pursue an equitable action against objector-appellants, the court should use its inherent authority to order disgorgement. When confronted with an abuse of its processes, a court has inherent authority to remedy wrongdoing and craft an equitable remedy. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("A primary aspect of [the court's inherent] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

The Court's authority is not unbounded, but it is appropriately exercised here because disgorgement complements the Federal Rules of Civil Procedure and is proportional to the wrongdoing. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49. Here the inherent authority reinforces the 2003 Amendments to Rule 23 that enable district courts to inquire into private objector settlements. *See* Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) (now restyled as 23(e)(5)). Failing to scrutinize objector appeals turns these amendments into a dead letter. Further, disgorgement perfectly "fits the crime" of bad-faith settlements, because it recovers precisely what the objector-appellants appropriated for themselves. *See Spencer v. Steinman*, No. 2:96-CV-1792 ER, 1999 WL 33957391 at *4 (E.D. Pa. Feb. 26, 1999) ("[R]equiring an attorney to comply with the Federal Rules of Civil Procedure by insuring that the has disgorged the fruits of the violation . . . clearly fall[s] within this Court's inherent powers."). District courts possess inherent authority to revert baseless attorneys' fees in order to prevent "circuity and enforce ethical conduct in litigation before it." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 986 (7th Cir. 2002). Identical reasoning applies here: the objector-appellants took vexatious ethically-dubious appeals that impaired the interests of nearly 17 million fellow class members, so their private awards should be disgorged.

Moreover, 28 U.S.C § 1927 gives the court authority to sanction attorneys that have "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) [have done] so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002); *accord* L.R. 83.6.1(b) ("No attorney shall . . . so multiply the proceedings as to increase unreasonably and vexatiously the costs thereof."); L.R. 83.6.1(c) ("Any attorney who fails to comply with (a) or (b) may be disciplined as the court shall deem just."). Attorneys for objector-appellants satisfy each of the four criteria and should be held to account to the class.

### C. Payments to objector-appellants are otherwise inequitable and bad public policy.

Good-faith objectors like Comlish and her attorneys helped enable a hard-fought and much-improved settlement for the class. Sometime in 2018, Comlish may submit a fee award seeking a fee and incentive award well-calibrated to the benefit she has conferred. It would be unjust and inequitable if bad-faith objectors and their counsel—who appeal without regard to the outcome of their district court objection and who generate no class benefit from their appeals— can realize benefits disproportionate to what they have accomplished for the class without judicial scrutiny.

Such side-payments create perverse incentives. If a bad-faith objector can realize more profit per hour by losing and selling her appeal than a good-faith objector can by bringing a successful objection and putting in the work to prosecute a successful appeal, it means that courts will be deluged with bad-faith objections designed to fail instead of good-faith objections attempting to succeed—as happened here in this very case. Thus, maybe it shouldn't be surprising that many of the objector-appellants' arguments on appeal bore no relationship to the settlement that was ultimately approved by this Court.

### CONCLUSION

For the foregoing reasons, this Court should grant Comlish's motion to intervene, issue an order requiring the settling parties to disclose the terms of the objector-appellant side agreements, and if the terms so warrant, issue an order disgorging ill-gotten gains back to the class fund.

Dated: May 12, 2017                Respectfully submitted,

                                   /s/ Adam E. Schulman
                                   Adam E. Schulman
                                   COMPETITIVE ENTERPRISE INSTITUTE
                                   CENTER FOR CLASS ACTION FAIRNESS
                                   1310 L Street, NW, 7th Floor
                                   Washington, DC 20005
                                   adam.schulman@cei.org
                                   (610) 457-0856

                                   *Attorney for Putative Intervenors Barbara Comlish and
                                   Kathryn Artlip*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.

DATED: May 12, 2017

_(s) Adam Schulman_
Adam Schulman