# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CAROL ROUGVIE, *et al.* | : | CIVIL ACTION |
|---|---|---|
| vs. | : : : | NO. 15-724 |
| ASCENA RETAIL GROUP, INC., *et al.* | : | |

**KEARNEY, J.** June 16, 2017

## MEMORANDUM

Class members objecting to the fairness of a settlement may appeal our denial of their objections. On appeal, they seek an order which presumably will increase the value of the settlement to them. Their appeal may lack merit and serve only to delay recovery, causing some to cynically wonder whether objectors file appeals solely to leverage the delay on appeal and coerce Class Counsel to pay them off earlier or for more money than the non-appealing class members. Today we address what happens when the appealing objectors settle and dismiss their appeals in exchange for payment from Class Counsel, and other non-appealing objectors want to intervene in the now-settled case to require the appealing objectors to disclose the settlement amounts under Rule 23 and, through Rule 24 intervention, convince the district court order the settling appellant objectors to disgorge the money paid to them to settle their appeals. The non-appealing objectors candidly admit a lack of authority to intervene when they seek relief different than the relief the Class sought from the defendants. The Supreme Court's very recent decision on standing to intervene in *Town of Chester v. Laroe Estates* along with an absence of specific non-speculative grounds to intervene compels our accompanying Order denying the non-appealing objectors' motion to intervene for lack of Article III standing.

**I.     Background**

Several consumers filed class actions with consumer protection and breach of contract claims for over 18.4 million consumers of Ascena Retail Group, Inc. and Tween Brands, Inc. After months of litigating and negotiating, the parties agreed to a final settlement which allowed consumer to select a cash or voucher settlement. Several objectors, including Barbara Comlish and Kathryn Artlip, objected to the fairness of the settlement and the proposed award of attorney's fees. No objector, including Ms. Comlish and Ms. Artlip, requested a settlement condition requiring an objector's appeal must be litigated through a final order in the court of appeals. After our extended final fairness hearing, we granted some objections and denied others and then approved a $50.8 million settlement and awarded over $5.3 million to Class Counsel.[1] We also allowed the Class Plaintiffs and Class Counsel to seek a final distribution, including payment of final attorney's fees and costs, based on the success of voucher distributions. The parties are presently administering the voucher distribution.

Several objectors to the settlement appealed the final fairness order based on the grounds argued to us. Most of the objectors settled their appeals after eight months through participation in our court of appeals' mediation program, including Gretchen Carey, Kelsey D. Foligno, Manda Hipshire, Vicki Mager, Melissa Schultz, and Michelle Vullings (collectively, the "Settling Objectors"). The terms of these settlement agreements are unknown, although the Settling Objectors and Class Counsel represent Class Counsel paid these appeal settlement proceeds and did not deduct funds from the Settlement Fund belonging to the Class.

Objectors Ms. Comlish and Ms. Artlip (collectively "Putative Intervenors") did not appeal our final fairness order but now move to intervene and assert cross-claims against the Settling Objectors on behalf of themselves and the Class, arguing the Settling Objectors'

retention of money paid in exchange for dismissing their appeals constitutes unjust enrichment, *quantum meruit*, and "inequitable conduct."[2] In support, Putative Intervenors allege the Settling Objectors retained the appeal settlement proceeds "at the expense of the Class"; the Settling Objectors "received ill-gotten gains that equitably belonged to the entire class"; and their conduct—characterized as "objector blackmail"—"extracts value from the underlying class action settlement."[3] Putative Intervenors do not allege the appeal settlement proceeds came from the Settlement Fund.

On June 5, 2017, the Supreme Court decided *Town of Chester v. Laroe Estates*, which requires nonparties to demonstrate Article III standing when seeking to intervene to assert a different claim of relief.[4] In light of *Laroe* and our obligation to ensure jurisdiction, we ordered supplemental briefing on whether Putative Intervenors had standing to assert the claims in their intervenor-Complaint.[5] We also held oral argument, during which Putative Intervenors withdrew their claims against Mr. Foligno. Upon review of Putative Intervenors' motion and intervenor-Complaint, and after holding oral argument, we deny the motion to intervene because the Putative Intervenors fail to demonstrate Article III standing.

## II. Analysis

As a general rule, a class member has standing by virtue of his or her interest in the settlement.[6] Although a class member has an interest in the settlement of the disputed claims, the parties have not shown and we cannot find cases addressing whether a class member seeking to intervene to assert a new claim must demonstrate standing. Nonetheless, the Supreme Court in *Town of Chester v. Laroe Estates* recently clarified "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."[7] When a nonparty seeks

3

to intervene, the applicant "must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."[8]

Putative Intervenors seek relief beyond the Class Plaintiffs' now-settled claims. Putative Intervenors assert claims for unjust enrichment, *quantum meruit*, and inequitable conduct based on the Settling Objectors' appeal settlements. As the named Class Plaintiffs did not and could not have brought these claims, Putative Intervenors must demonstrate an Article III injury with respect to each of these claims to intervene in this case.

We assess Putative Intervenors' standing using "the same standard of review we use when assessing a motion to dismiss for failure to state a claim."[9] Our inquiry is a three-step process.[10] First, we identify the elements Putative Intervenors must plead to state a claim, *i.e.* the three elements of Article III standing.[11] "Second, we eliminate from consideration any allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Third, 'where there are well-pleaded factual allegations, we assume their veracity and then determine whether they plausibly' establish the prerequisites of standing."[12] In sum, Putative Intervenors must identify facts plausibly demonstrating standing.[13] "Speculative or conjectural assertions are not sufficient."[14]

Article III's "case or controversy" requirement obliges Putative Intervenors to demonstrate: (1) an "injury in fact" or "invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and conduct"; and (3) a likelihood "the injury will be redressed by a favorable decision."[15] We measure a party's standing "by the specific common-law, statutory or constitutional claims that a party presents."[16] Our standing inquiry "requires

4

careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted.*"[17]

Putative Intervenors argue two bases for Article III standing. First, they argue they have standing because the money Settling Objectors received for settling their appeals "equitably" belong to the Class. Second, they argue they have standing based on the delay damages caused by the Settling Objectors' eight-month appeal. We disagree.

### A. Putative Intervenors do not have standing based on a purported "equitable" interest in the side-settlement proceeds.

Putative Intervenors do not plausibly demonstrate an equitable interest in funds paid by the Class Counsel to the Settling Objectors in exchange for dismissing their appeals. Their alleged "equitable" interest in the appeal settlement proceeds is a legal conclusion not entitled to the presumption of truth. Perhaps recognizing this, Putative Intervenors argue the settlement proceeds equitably belong to them because, had the Settling Objectors successfully prosecuted their appeals, the benefits of those appeals would have belonged to the Class.

This basis for standing is too speculative. Putative Intervenors do not plead facts demonstrating the Settling Objectors had a fiduciary duty to the Class obligating them to provide the side-settlement proceeds to the Class. Putative Intervenors admit the Settling Objectors have no fiduciary duty to the Class, and they admit the Settling Objectors did not formally appeal on behalf of the Class. The Settling Objectors could not have appealed on behalf of the class because—unlike the Plaintiffs represented by Class Counsel—the Settling Objectors do not act on behalf of the class. We are aware of no authority holding an objector has a fiduciary duty to the class.

Putative Intervenors nevertheless argue the Settling Objectors have a duty to the Class— albeit not a fiduciary duty—based on the Supreme Court's 1945 bankruptcy decision in *Young v.*

5

*Higbee*.[18] We disagree. In *Higbee*, the district court confirmed a corporate reorganization plan under the Bankruptcy Act, but two preferred stockholders appealed because under the plan their preferred stocks had a lower priority than certain junior debts.[19] On appeal, the stockholders settled for a larger share than what they would have acquired under the plan.[20] Young, a preferred stockholder, moved to intervene to prosecute the appeal, but the court of appeals denied his intervention.[21] Young then moved the district court to require the two settling stockholders return the difference between their settlement proceeds and the fair market value of their stock, but the district court denied relief because the two stockholders "appealed in behalf of themselves only and had not acted as representatives of a class."[22]

This issue wound up in the Supreme Court, which held the two stockholders had a statutory duty to act in good faith to the other stockholders.[23] The Court explained the statute granting the two stockholders a right to appeal "impose[d] upon them the duty of good faith to all other stockholders whose interests they temporarily control because they are necessarily involved in the appeal."[24] In finding the stockholders' "privilege of appeal" did not vest the stockholders "with an indefeasible right to sell the privilege to the disadvantage of all other stockholders in their class," the Court explained a primary purpose of bankruptcy law is to "bring about a ratable distribution among creditors of a bankrupt's assets; to protect the creditors from one another."[25] Congress did not intend certain stockholders involved in a bankruptcy reorganization plan to use their appeal rights as a means of increasing their share of the bankruptcy estate.[26]

Unlike the stockholders in *Higbee*, the Settling Objectors do not have a statutory duty of good faith to the Class. In a bankruptcy case, every settlement of an appeal necessarily draws from the bankruptcy estate. In this context, it is fair to say Congress did not intend bankruptcy

6

appellants to use their appeal rights to increase their share of the estate at the expense of others under a reorganization plan. By contrast, Putative Intervenors do not allege the Settling Objectors' settlements come from the Settlement Fund, and based on the parties' undisputed representations Class Counsel paid the proceeds of the side-settlements from their own pockets, we highly doubt Putative Intervenors could allege otherwise consistent with their Rule 11(b) obligations. Even though Settling Objectors' successful appeals could have benefited the Class, they have no statutory duty to the Class when appealing their objections.

Additionally, Putative Intervenors' interest in a larger Settlement Fund created by a successful appeal does not vest them with an interest in the privately negotiated appeal settlement proceeds. Putative Intervenors do not seek to recover the financial gains of a successfully prosecuted appeal of the objections at issue on behalf of a class, but instead seek to recover the infinitesimally small portion of the value of the settlements arising from partially prosecuted appeals. Even assuming Putative Intervenors have an interest in the financial benefits of a successful appeal, this interest does not plausibly give them an "equitable" interest in the privately negotiated side-settlements between the Settling Objectors and Class Counsel.

Putative Intervenors' claimed "equitable" interest in the appeal settlements is also speculating the appeals would have been successful. Putative Intervenors, however, make no showing the Settling Objectors were likely to prevail in their appeals of the objections we overruled. Given our earlier rulings on these objections, we would at least expect Putative Intervenors to demonstrate a plausible likelihood of success demonstrating their legal entitlement to the side-settlement proceeds. We accordingly find Putative Intervenors do not allege facts plausibly demonstrating they suffered a concrete injury based on their purported "equitable" right to the side-settlement proceeds.

**B. Putative Intervenors do not have standing based on the delay caused by Settling Objectors' appeals.**

Putative Intervenors also claim standing based on the delay damages arising from the eight-month duration of the Settling Objectors' appeals, which delayed distribution of Settlement Fund proceeds to the Class. This argument fails because this harm—the delay—is not causally related to the allegedly wrongful conduct—retention of the side-settlement proceeds. The intervenor-Complaint does not include a claim seeking relief for the delay caused by the appeals. As a practical matter, Settling Objectors' retention of the side-settlement proceeds could not have caused the delay. Putative Intervenors fail to demonstrate how this delay harm is causally related to Settling Objectors' allegedly wrongful conduct of retaining the side-settlement proceeds. Any challenge to the merits or good faith of arguments on appeal should be raised before the court of appeals.

### III. Conclusion

The Putative Intervenors do not demonstrate they have Article III standing to assert claims for unjust enrichment, *quantum meruit*, and inequitable conduct. We accordingly deny the Putative Intervenors' motion to intervene.[27]

---

[1] ECF Doc. No. 184–85. Class Counsel is Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin L.P.A., Robert Mansour, Esq., and Edward J. Westlow, Esq.

[2] ECF Doc. No. 263-2, at pp. 10–11.

[3] ECF Doc. No. 263-2, ¶¶ 34, 42, 51.

[4] *Town of Chester v. Laroe Estates, Inc.*, No. 16-605, 2017 WL 2407473, at *5 (U.S. June 5, 2017).

[5] ECF Doc. No. 285.

[6] *Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

8

⁷ *Town of Chester*, 2017 WL 2407473, at *5 (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)).

⁸ *Id.*

⁹ *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016).

¹⁰ *Id.*

¹¹ *Id.*

¹² *Id.* (footnotes and brackets omitted).

¹³ *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

¹⁴ *Id.* (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 248 (3d Cir. 2012)).

¹⁵ *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d at 633 (quoting *Lujan*, 504 U.S. at 560–61); *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 279 (3d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560–61).

¹⁶ *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991).

¹⁷ *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)) (emphasis in original).

¹⁸ *Young v. Higbee*, 324 U.S. 204 (1945).

¹⁹ *Id.* at 205–07.

²⁰ *Id.* at 207.

²¹ *Id.*

²² *Id.* at 207–08.

²³ *Id.* at 212.

²⁴ *Id.*

²⁵ *Id.* at 210.

²⁶ *Id.* at 210–13.

[27] In denying Putative Intervenors' motion to intervene, we do not opine whether a Class member may timely move under Rule 23 to challenge a Class member's duplicative payment on a claim, or to challenge the reasonableness of Class Counsel's future fee application which, as agreed, will include the amount paid by Class Counsel to the Settling Objectors from the award of a further attorneys' fees unless Class Counsel paid the Settling Objectors from other sources. We also do not opine on the effect of Class Counsel's payment if made in exchange for an assignment of settlement proceeds.