IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROUGVIE, *et al.*,<br><br>         *Plaintiffs*,<br><br>    v.<br><br>ASCENA RETAIL GROUP, INC. d/b/a/<br>JUSTICE STORES<br><br>and<br><br>TWEEN BRANDS, INC. d/b/a<br>JUSTICE STORES<br><br>         *Defendants*. | No. 2:15-cv-00724-MAK |

**MEMORANDUM IN SUPPORT OF
CLASS MEMBERS BARBARA COMLISH AND KATHRYN ARTLIP'S MOTION FOR
ATTORNEYS' FEES AND INCENTIVE AWARDS**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES ........................................................................................................ iii
BACKGROUND ............................................................................................................................1
INTRODUCTION ..........................................................................................................................1
ARGUMENT ..................................................................................................................................2
    **I.**    Comlish is entitled to fees for the class benefit attributable to her objection and opposition to class counsel's fee request. ........................................................................ 2
    **II.**   Comlish's request for fees is smaller than precedent permits............................................ 4
    **III.**  Objectors' fee awards should be funded from class counsel's fee fund. ........................... 7
    **IV.**  A lodestar cross-check confirms that $78,000 is a reasonable fee award.......................... 9
    **V.**   Comlish and Artlip are entitled to incentive awards....................................................... 11
CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)..................................................................................................13

*Blum v. Stenson*,
    465 U.S. 886 (1984)..............................................................................................................6

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*,
    903 F.3d 396 (3d Cir. 2018)................................................................................................10

*Dewey v. Volkswagen of Am.*,
    909 F. Supp. 2d 373 (D.N.J. 2012) ..............................................................................3, 5, 6, 7, 11

*Edwards v. Milk Producers Fed'n*,
    2017 WL 4581926 (N.D. Cal. Sept. 13, 2017) .................................................................3, 7

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ..............................................................................................3, 4

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*,
    212 F.R.D. 400 (E.D. Wis. 2002) ...................................................................................3, 4, 9

*Hendricks v. Starkist Co.*,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ......................................................................9

*Hunt v. Rousmnier's Adm'rs*,
    21 U.S. (8 Wheat) 174 (1823)...............................................................................................8

*In re Apple Inc. Sec. Litig.*,
    2011 WL 1877988 (N.D. Cal. May 17, 2011)............................................................. 11-12

*In re AT&T Corp. Secs. Litig.*,
    455 F.3d 160 (3d Cir. 2006)................................................................................................10

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)...............................................................................................1, 2

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................................................10

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001).................................................................................................1

*In re Citigroup Secs. Litig.*,
    2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017).......................................................... 3-4, 6, 7

*In re Classmates.com Consol. Litig.*,
    2012 WL 3854501 (W.D. Wash. Jun. 12, 2012) ...............................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009)................................................................................................5

*In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).......................................................................... 4, 5, 9-10, 13

*In re Ikon Office Solutions, Inc., Secs. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)......................................................................................4, 9

*In re Petrobras Secs. Litig.*,
    320 F. Supp. 3d 597 (S.D.N.Y. 2018)..................................................................................9

*In re Primus,*
    436 U.S. 412 (1978)............................................................................................................6

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
    273 F. Supp. 2d 563 (D.N.J. 2003) .................................................................................2, 6

*In re Prudential Ins. Co. Am. Sales Practices Litig. Actions*,
    278 F.3d 175 (3d Cir. 2002)..............................................................................................13

*In re Puerto Rican Cabotage Antitrust Litig.*,
    815 F. Supp. 2d 448 (D.P.R. 2011)...................................................................................11

*In re Rite Aid Corp. Secs. Litig.*,
    396 F.3d 294 (3d Cir. 2005).........................................................................................10, 11

*In re Sony PS3 "Other OS" Litig.*,
    2018 WL 2763337 (N.D. Cal. Jun. 8, 2018).....................................................................11

*In re Southwest Airlines Voucher Litig.*,
    898 F.3d 740 (7th Cir. 2018) ........................................................................4, 6, 7, 9, 10

*Lan v. Ludrof*,
    2008 WL 763763 (W.D. Pa. Mar. 21, 2008) .....................................................................6

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio. 2010)............................................................................12

*McDonough v. Toys "R" Us*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) .......................................................................... *passim*

*Neslin v. Wells*,
    104 U.S. 428 (1882)............................................................................................................8

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)..................................................................................................8

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010)............................................................................................................11

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) .............................................................................................4

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...............................................................................................7

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ...............................................................................................8

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...............................................................................................4

*Rodriguez v. W. Publ'g Corp.*,
    602 Fed. App'x 385 (9th Cir. 2015) ....................................................................................7

*Shadis v. Beal*,
    685 F.2d 824 (3d Cir. 1982)................................................................................................6

*United Steelworkers of Am. v. Sadlowski*,
    435 U.S. 977 (1978).............................................................................................................8

*Vought v. Bank of Am.*,
    901 F. Supp. 2d 1071 (C.D. Ill. 2012) .................................................................................9

**Statutes and Rules**
Fed. R. Civ. P. 23..................................................................................................................13

**Other Authorities**
Rob Capriccioso, *McCain Opposes Harper Nomination to the UN Council, Citing Indian Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK, Sept. 24, 2013, https://web.archive.org/web/20150411085739/http://indiancountrytodaymedianetwork.com/2013/09/24/mccain-opposes-harper-nomination-un-council-citing-indian-concerns-151434 ..................................................................................................................12

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*,
    74 TUL. L. REV. 1809 (2000) ..............................................................................................5

**BACKGROUND**

The settling parties initially proposed a settlement that reserved a $15 million fund (later reduced to $14.1 million) exclusively for the benefit of class counsel, with class members having no access to residual funds after the Court's fee award. *See* Schulman Decl. ¶6; Class Action Settlement Agreement ("Settlement"), Dkt. 71-1 ¶42. Objectors Barbara Comlish and Kathryn Artlip (collectively "Comlish") objected to this arrangement in papers and at the fairness hearing, thus spurring the settling parties to eliminate the segregated fee fund. Schulman Decl. ¶¶7-10. Comlish's subsequent opposition prompted the Court to reduce class counsel's lodestar fee request by more than $700,000, allowing that excess to be enjoyed by the absent class members rather than simply reverting to Justice. *Id.* at ¶¶14-20.

Comlish previously sought and received an extension of the time to file a motion for attorneys fees' based on the benefit she has conferred upon absent class members. *See* Dkt. 193. In its order, the Court declared that Comlish may "move for attorneys' fees contemporaneous with Plaintiffs' request for attorneys' fees under our July 29, 2016 Order (ECF Doc. No. 185)." *Id.* Pursuant to that order, this motion now follows.

**INTRODUCTION**

Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 744 (3d Cir. 2001). Here, Comlish's successful prosecution of her objection and her opposition to class counsel's fee request—at significant time and expense—has impelled the settling parties to revise the proposed settlement in a way that allows the class to benefit from Comlish's successful opposition to class counsel's lodestar fee award. As explained in *In re Baby Products Antitrust Litigation* explains, direct benefit matters. 708 F.3d 163, 170 (3d Cir. 2013) ("*Baby Products*") ("courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees"). In conformity with best practices and the Third Circuit's opinion in *Baby Products*, Comlish

1

continues to encourage the Court to assess all fee requests (including her own) against the actual amounts that will be distributed to class members. *See, e.g., Baby Products*, 708 F.3d at 179 ("In evaluating a fee award [the district court] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process."). In this case, Comlish's persistence in the face of steadfast opposition is the *sine qua non* of $702,640 in additional class benefit from the lodestar and incentive award reduction.

A benchmark common fund fee award of 25% would entitle Comlish to a fee of $175,660, but with an eye toward modesty, Comlish requests only a fee of $78,000—11.1% of this figure. Confirming the reasonableness of this request, $78,000 constitutes less than two-thirds of Comlish's counsel's accrued lodestar. Comlish and Artlip also seek $1,000 incentive award for each of themselves, less than half the size of the awards received by the named representatives, and a small fraction of the $14,000 awarded in gross to the named representatives.

These awards should all be paid from class counsel's share of the gross settlement fund, so that (1) the class is not double-charged, or otherwise penalized for the class counsel's unsustainable first settlement and lodestar fee request; and (2) future class counsel will be incentivized to swiftly negotiate satisfactory settlements without necessitating objector participation.

**ARGUMENT**

I. **Comlish is entitled to fees for the class benefit attributable to her objection and opposition to class counsel's fee request.**

The general rule governing fee awards to objectors in class action settlement proceedings is that "objectors are entitled to compensation for attorneys' fees and expenses if the settlement was improved as a result of their efforts." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 565 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004); *McDonough v. Toys "R" Us*, 80 F. Supp. 3d 626, 658-59 (E.D. Pa. 2015); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012), *aff'd* 558 Fed. Appx. 191 (3d Cir. 2014) (unpublished). One way objectors may do this is by successfully resisting class counsel's excessive fee request, thereby

augmenting the class's share of the settlement funds. *E.g. Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994); *Edwards v. Milk Producers Fed'n*, 2017 WL 4581926 (N.D. Cal. Sept. 13, 2017). When such a claim of benefit is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002). The result here has been substantially enhanced by Comlish's multi-year efforts in front of this Court.

Comlish's efforts realized a substantial pecuniary benefit for the class. Comlish made detailed arguments that, *inter alia*, (1) the settlement's segregated fee fund was improper, Dkt. 103 at 13-15; (2) the requested attorney's fee was excessive under Third Circuit precedent and procedurally improper under the Class Action Fairness Act, *id.* at 9-12, 18-19; and (3) Caroline Mansour's representation was conflicted because of a familial relationship with class counsel, *id.* at 16. In response, the parties amended the settlement to allow class members' access to the remainder from class counsel's fee fund. Schulman Decl. ¶¶8-10. On the basis of Ms. Mansour's conflict, it disallowed her proposed incentive award. Dkt. 183 at 66-67. The Court also agreed with Comlish regarding the deficiencies in the fee request and called for more briefing on a proper lodestar award. Dkt. 183 at 44-63; Dkt. 185. Again, Comlish opposed the fee request, this time on a lodestar basis. Dkt. 210. The Court sustained several of Comlish's objections leading the Court to make reductions of nearly $700,000 from the proposed lodestar figure. Schulman Decl. ¶17.

By simply filing her objection, Comlish induced the settling parties to remove the detrimental fee "kicker." *See* Dkt. 183 at 67 ("The parties addressed and cured meritorious objections"). Inducing the settling parties to make beneficial amendments justifies an objector fee award. *See, e.g., In re Citigroup Secs. Litig.*, 2017 WL 3842601 (S.D.N.Y. Sept. 1, 2017) (granting objector fee when objection induced class counsel to voluntarily revise unnecessary *cy pres* award); *McDonough*, 80 F. Supp. 3d at 659 (granting objector fee where efforts led to improved amended settlement). This amendment allowed material value for the class to be unlocked when Comlish persuaded the Court to reduce class counsel's excessive lodestar.

More abstractly, Comlish assisted the settlement process by providing independent scrutiny of a proposed settlement. Schulman Decl. ¶¶21-24. As the Court recognized, Comlish's objection was "among the strongest." Dkt. 233 at 6. "Objectors serve as a highly useful vehicle for class members, for the court and for the public generally" in evaluating the terms of a proposed settlement to ensure that it is fair, adequate, and reasonable. *Great Neck*, 212 F.R.D. at 412. Objectors improve the process by reintroducing adversarial criticism at the fairness-hearing stage – the point at which the adversarial relationship between the parties has ended. This adversarial dynamic helps the trial court ensure that the proposed settlement meets the standards of Fed. R. Civ. P. 23. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*, 55 F.3d 768, 803 (3d. Cir. 1995) ("*GMC Trucks*") ("where there is an absence of objectors, courts lack the independently derived information about the merits to oppose proposed settlements"). *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (stating that an award of fees is proper where a lawyer provided a benefit or enhanced the adversarial process); *In re Ikon Office Solutions, Inc.*, *Secs. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (awarding objector $10,000 in fees plus reimbursement of costs for "sharpen[ing] debate").

Chiefly because of the concrete benefits bestowed upon the class, however, it would be reversible error for this Court to deny the request. *E.g., In re Southwest Airlines Voucher Litig.*, 898 F.3d 740, 746 (7th Cir. 2018) ("*Southwest*") (holding it would be "inequitable for [objector's] lawyer to receive nothing despite negotiating…a tripling of relief for the class and a significant cut to [class counsel's] fees"); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) ("clearly erroneous" for district court to decide that objector counsel "did not add anything"); *Gottlieb*, 43 F.3d at 491.

II. **Comlish's request for fees is smaller than precedent permits.**

Comlish's objection and fee opposition is responsible for enabling thousands of class members to obtain compensation that would have gone to either class counsel or reverted to Justice. As long as there is a lodestar crosscheck supplementing the base percentage method, it is

advisable to award fees to objectors as the percentage of the class recovery resulting from the objection. Indeed, for the same reason that percentage-of-the-benefit is the preferred methodology for calculating fees for class counsel (*GMC Trucks*, 55 F.3d at 821), it is also preferred for calculating fees for objectors: it incentivizes objectors to make objections that make a material difference to class members rather than upend otherwise fair settlements on inconsequential grounds. *See McDonough*, 80 F. Supp. 3d at 659-60; *cf. also In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) ("the District Court correctly applied the method better designed to reward counsel for success and penalize it for failure.") (internal quotation omitted); *see generally* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809, 1812 (2000) (observing "solid consensus that the contingent approach minimizes conflicts more efficiently than the lodestar"). Courts in this Circuit have employed the percentage approach for objectors' fees. *E.g., Dewey,* 909 F. Supp. 2d at 396-97.

Under a normal percentage-of-benefit approach for awarding fees to objectors, Comlish's non-profit[1] attorneys, the Center for Class Action Fairness ("CCAF"), are entitled to 25% of the benefit conferred. *E.g., Lan v. Ludrof,* 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in the benefit to the class); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695 (3d Cir. 2004) (awarding objector same percentage as class counsel). Nevertheless, according with its customary practice of moderation, CCAF seeks only 11.1% of the $702,600 lodestar and incentive award reduction. *See, e.g., Southwest,* 898 F.3d at 746 (characterizing 10% request of the market

---

[1] While CCAF, as a non-profit, is limited in the total awards of fees it may receive in any given year-to-year period, Rev. Proc. 92-59, 1992-2 C.B. 411, its non-profit status does not preclude it from being awarded fees as any other counsel. Representation that is *pro bono* and/or by a non-profit does not preclude a request for attorneys' fees of the same size that a for-profit firm could recover. *E.g., In re Primus*, 436 U.S. 412, 429-31 (1978) (ACLU and NAACP); *Blum v. Stenson*, 465 U.S. 886, 894-95 (1984) (*pro bono publico* representation not grounds for reducing attorneys' fees). "The award of fees to legal aid offices and other groups furnishing pro bono public representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel." *Shadis v. Beal*, 685 F.2d 824, 830 (3d Cir. 1982) (quoting *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977)).

value of the benefit as "modest"); *Citigroup*, 2017 WL 3842601, at *3 (finding 8.25% request to be reasonable); *Dewey*, 909 F. Supp. 2d at 396 ("10.5% of the benefit conferred [is] well within the range of acceptable percentages-of-recovery").

This fee request satisfies the *Gunter/Prudential* factors that this Court often employs. *See McDonough*, 80 F. Supp. 3d at 660-62 (analyzing factors when awarding CCAF fees for representation of successful objector). Pursuant to the parties' proposed joint motion for final distribution of settlement proceeds, hundreds of thousands of absent class members who had made affirmative claims will benefit from six-digit augmentation to the residual fund. There have yet to be any objections to the CCAF's fee request, though, of course, the objection deadline has not passed. Comlish's counsel has demonstrated skill and efficiency. Schulman Decl. ¶¶34-51. Comlish's counsel has spent nearly three years on this case—addressing complex questions of first impression.

With respect to the risk of non-payment, because CCAF is non-profit and thus does not (and cannot) agree to *quid pro quo* settlements to withdraw appeals in exchange for self-serving cash payments that do not benefit the class as a whole, CCAF can only receive payment if its objection was ultimately successful and the parties agreed to modify the settlement. Schulman Decl. ¶39. There is no guarantee a court will honor objections and even a successful objection may merely scuttle a settlement without class benefit creating an entitlement to attorneys' fees. Class counsel often still challenge an objector's entitlement to fees even after an objection results in improvement in direct benefit to the class. *See, e.g.*, *McDonough*, 80 F. Supp. 3d at 660. In short, objection entails risk. *Rodriguez v. W. Publ'g Corp.*, 602 Fed. App'x 385 (9th Cir. 2015) (reversing district court's conclusion that class action objection is a "matter which [has] little risk").

Comlish's counsel has devoted 296.5 billable hours to the case. *See infra* § IV; Schulman Decl. ¶¶37, 41-44, 48-50. Class counsel, by comparison, expended more than 2473 hours over the slightly shorter period of time. Dkt. 340 at 20. As outlined above, awards in similar cases justify an 11.1% award. *See Southwest*; *Citigroup*; *Dewey*; *McDonough*. Lastly, Comlish acknowledges that she alone did not create the benefit produced by remodeling the class settlement and reducing

the fee award. Although her participation as an objector was necessary, the benefit could not have been achieved without Justice's willingness to eliminate the 'kicker,' class counsel's consent, and this Court's ever-vigilant oversight of the fee process.[2] It is also for this reason that Comlish seeks an award of 11.1% of the lodestar and incentive award reduction.

In sum, Comlish requests only $78,000 in attorneys' fees—11.1% of the lodestar and incentive award reduction, or even less if Comlish's efforts to seek disclosure and disgorgement of objector payoffs result in a further material gain to the class.

### III. Objectors' fee awards should be funded from class counsel's fee fund.

"[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). Where class counsel initially endorses an unfair settlement, necessitating the participation of objecting class members, the equities are clear. It would be highly inequitable to require the class to foot the bill for **both** class counsel **and** again for objector's counsel, when class counsel alone created the necessity of objection by tendering an unreasonable agreement in the first place. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("While a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin.") (quoting *Grant v. Grant*, 286 S.W. 647, 650 (Tex. Civ. App. 1926)). Class counsel's initial proposal in this case would have allocated to itself an excessive fee and precluded the class from obtaining the benefits of any reduction to that

---

[2] Even if the Court would have reduced class counsel's lodestar on its own commendable initiative, that does not negate an objector's entitlement to a fee award. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) ("lawyers who contribute materially to the proceeding" are entitled to a fee, even if the court would have *sua sponte* made the same finding without the objection); *Edwards v. Milk Producers Fed'n*, 2017 WL 4581926, at *1 (N.D. Cal. Sept. 13, 2017) (awarding objectors fees even though "the Court's own review would likely have resulted in a fee award to class counsel that was lower than the amount sought").

request. As between the class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). As the venerable Supreme Court reporter and jurist Henry Wheaton observed at oral argument in *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat) 174 (1823), "no maxim of equity is better established than this, 'that no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault.'"

The costs of Comlish's necessary participation should not be borne by the class members themselves, who had nothing to do with the initial settlement and fee request. The class should not have to pay twice for a benefit they should have received at the outset. This is why many courts across the nation have held that objector fees should be paid from class counsel's fee fund. *E.g. Southwest*, 898 F.3d at 747 (ordering objector fee payable from class counsel); *In re Petrobras Secs. Litig.*, 320 F. Supp. 3d 597, 601-02 (S.D.N.Y. 2018) (debiting objector's fees from class counsel's award); *Hendricks v. Starkist Co.*, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016), *aff'd on this point sub. nom Hendricks v. Ference*, 2018 WL 5115482, at *1 n.1 (9th Cir. Oct. 19, 2018) (finding it "appropriate and justified" to pay objector's counsel from class counsel's fee) (unpublished); *McDonough*, 80 F. Supp. 3d at 651 (decreasing class counsel's fee award to pay objector's counsel because class counsel's fiduciary responsibility was only fulfilled "on the second try); *In re Ikon Office Solutions*, 194 F.R.D. at 197 (taking objector's fee "from class counsel's award to avoid dilution of the settlement fund").

It is not punitive when objectors' fees are paid from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. There is a pertinent discussion of the issue in the *Great Neck* case. 212 F.R.D. at 416-17. There, the court recognized its equitable discretion to impose the burden of paying objector's fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds, especially in a pre-certification settlement and in light of the fact that the amount per claimant was already modest. *Id*. at 417. Instead, the *Great Neck* court

8

awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id*.

Charging all legal expenses to the initial fee pot is not merely equitable, it is also good public policy. It provides a practical incentive for class counsel to avoid proffering settlements and fee requests that have a high probability of being objectionable to class members and to courts. Plenty of unfavorable settlements are approved quickly, quietly and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); *see generally GMC Trucks*, 55 F.3d at 812 (3d Cir. 1995) (class members "have an insufficient incentive to contest an unpalatable settlement agreement because the cost of contesting exceeds the objector's pro rata benefit.") (internal quotation omitted). Add to that the reality that non-profit watchdog groups cannot be everywhere at one time, and it is readily apparent why class counsel must be encouraged to submit good settlements on their own. The principle that fee petitions ought not be "the opening bid in a quest for an award" holds even more weight in class action proceedings. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 403 (3d Cir. 2018) (internal quotation omitted). If class counsel are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to reach good settlements from the very outset.

**IV.    A lodestar cross-check confirms that $78,000 is a reasonable fee award.**

The Third Circuit encourages district courts to employ a lodestar crosscheck "to ensure that the proposed fee award does not result in class counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a "windfall" to…counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001); *see also McDonough*, 80 F. Supp. 3d at 662-63 (conducting lodestar crosscheck of objector's attorneys' fee). Nonetheless, the discretionary lodestar cross-check should not be allowed to "trump" or "displace" the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d

294, 307 (3d Cir. 2005) ("trump"); *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) ("displace"). Here, "[e]ither calculation shows that this is not a case where an objector ran up the with minimal value added." *Southwest*, 898 F.3d at 746.

Comlish counsel is requesting its lodestar be calculated on just under 300 hours performed by one attorney. Schulman Decl. ¶¶41-43. This number excludes the work of two senior attorneys, two junior attorney, and one summer associate, all who have contributed to Comlish's prosecution of this matter, but whose hours are not being counted to avoid any question of whether there was duplicative work and for reasons of moderation. *Id.* at ¶44. It also excludes all work on this motion and supporting papers, and any efforts that may be made in support of the class in the future. *Id.* at ¶43. Because CCAF is seeking an amount under the percentage of recovery, it does not provide detailed daily billing records with this motion, though it is willing to do so should the Court think it relevant. *Id.* at ¶40; *Rite Aid*, 396 F.3d at 306-07 (when petitioner is relying on a base percentage of recovery methodology, with a lodestar crosscheck, submission of detailed timesheets for "bean-counting" is not necessary); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) (same). Given the complexity of the case, the hours and total lodestar of $118,600 is reasonable. Schulman Decl. ¶¶49-50.

CCAF seeks a reasonable lodestar market rate for Adam Schulman of $400/hour. Schulman Decl. ¶¶45-47. In the past years, several courts, including the *McDonough* court in this district nearly four years ago, have credited lodestar rates for Mr. Schulman of $375/hr. *Id.* at ¶46 (citing cases). A $400 hourly rate compares favorably to those rates charged by class counsel and would also likely compare favorably to senior associate rates billed by Justice's counsel. *Id.* at ¶47.

The total lodestar for Comlish is thus $118,600. Thus, awarding the $78,000 that Young seeks for all objectors would equate to a multiplier of 0.65. Lower than the presumptively reasonable 1.0 multiplier,[3] this fractional multiplier confirms the modesty of Comlish's fee

---

[3] *Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010).

10

request. Again, this multiplier compares favorably with the 5.3 multiplier initially requested by class counsel and with the 1.75 multiplier ultimately awarded by the Court.

In light of the above analysis, a $78,000 fee award is justified.

## V.  Comlish and Artlip are entitled to incentive awards.

Comlish and Artlip each request a $1000 incentive award. It is appropriate to award objectors incentive payments for their role in conferring a benefit upon the class. *See, e.g., In re Sony PS3 "Other OS" Litig.*, 2018 WL 2763337, at *3 (N.D. Cal. Jun. 8, 2018) (awarding an objector service award of $1750 (half of that paid to the named plaintiffs)); *McDonough*, 80 F. Supp. 3d at 665 (awarding "modest" $1000 incentive payment); *Dewey*, 909 F. Supp. 2d at 398-400 (awarding $500); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011) (awarding $1000); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (awarding $500).

By objecting, Comlish exposed herself to the risk of harassing discovery and private investigation from the plaintiffs' attorneys. Other CCAF clients have faced vitriolic personal attacks, investigations and abusive discovery requests when objecting, and many potential CCAF clients genuinely upset with abusive class-action settlements have declined to object when informed of these risks. Schulman Decl. ¶¶27-28; *see also, e.g. In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *11 (W.D. Wash. Jun. 12, 2012) (describing the "hammer and tongs" approach of class counsel in one case opposing CCAF); Rob Capriccioso, *McCain Opposes Harper Nomination to UN Council, Citing Indian Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK, Sept. 24, 2013, https://web.archive.org/web/20150411085739/http://indiancountrytodaymedianetwork.com/2013/09/24/mccain-opposes-harper-nomination-un-council-citing-indian-concerns-151434 (last visited Nov. 27, 2018) (recounting how class counsel in *Cobell* case had revealed personal information of objecting class members in an attempt to intimidate them into dropping their appeal).

11

Comlish is requesting only a fraction of the $2000-$3000 incentive payments awarded to the six eligible class representatives. Dkt. 183 at 64-66. As we have now seen, objectors, if they are willing to sacrifice the larger interests of the class, are able to settle their objections for substantial sums much larger than even $10,000 incentive payments. Schulman Decl. ¶26. Comlish's willingness to seek out and retain non-profit counsel and her refusal to accept personal payment to withdraw her objection unless the class as a whole benefits generated concrete benefits. Even when *pro bono* counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery. As a result of Comlish's having come forward, the class's share of the settlement has been substantially enhanced.

## CONCLUSION

As the Third Circuit has repeatedly observed, settlement objectors improve the process by introducing adversarial criticism at the fairness-hearing stage—the point at which the adversarial relationship between the parties has ended. *See In re Prudential Ins. Co. Am. Sales Practices Litig. Actions*, 278 F.3d 175, 202 (3d Cir. 2002) ("[A] lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries."); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) ("The parties can be expected to spotlight the proposal's strengths and slight its defects. In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits.") (internal citation omitted). This adversarial dynamic helps the trial court ensure that the proposed settlement meets the standards of Fed. R. Civ. P. 23. *GMC Trucks,* 55 F. 3d at 803 ("[W]here there is an absence of objectors, courts lack the independently derived information about the merits to oppose proposed settlements."). This case is further proof that the Third Circuit is correct about the invaluable role that **good-faith** objectors play. For the foregoing reasons, Comlish is entitled to a fee and incentive award.

Dated: November 28, 2018	Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street, NW, 7th Floor
Washington, DC 20005
adam.schulman@cei.org
(610) 457-0856

*Attorney for Class Members Barbara Comlish and Kathryn Artlip*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.


DATED: November 28, 2018

<u>*(s) Adam Schulman*</u><br>
Adam Schulman