# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | COMPLAINT - CLASS ACTION |
| Plaintiffs, | JURY TRIAL REQUESTED |
| v. | CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc., et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM SUMMARIZING SETTLEMENTS WITH OBJECTOR-APPELLANTS

Plaintiffs' attorneys, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin, LPA, Robert Mansour, Esq., and Edward Westlow, Esq. ("Class Counsel") file this Memorandum pursuant to this Court's Order of December 13, 2018 (Dkt. 357), summarizing the terms of Class Counsel's settlements with certain Objector-Appellants.

### I. Background

A number of individuals objected to this class action settlement. Among them were Objectors Michelle Vullings (represented by Vullings Law Group, LLC), Manda Hipshire (represented by Scott and Cain, PLLC and Dumack Law), Gretchen Cary (represented by the Wilkins Law Firm, PLLC and Bernhardt, Rothermel & Siegel, PC), and Vicki Mager and Melissa Schulz (both represented by the Law Office of George W. Cochran) (collectively, the "Objector-Appellants"). Each of the Objector-Appellants filed appeals to the Third Circuit. While Class Counsel did not believe that the Objector-Appellants' appeals had a likelihood of success and vigorously defended same, Class Counsel was concerned that the appeals would delay the relief to the class. A delay in relief in virtually any class action settlement is detrimental to the class given the time value of money, and the problem was particularly acute here. This settlement involved

#4616040/1

both cash and voucher relief, and many Class Members affirmatively filed a claim requesting voucher relief. In addition, Class Members who did not file a claim received a voucher for the relief appropriate to their state of residence. Given the ultimate result – over $30 Million Dollars in vouchers redeemed – many Class Members did not file affirmative claims because they were content with the automatic voucher. Given that Justice's merchandise is marketed to a particular age group (approximately eight to thirteen year-old girls), the longer the appeals continued, the more likely it was that Class Members would "age out" of Justice merchandise and would be unable to fully avail themselves of their chosen voucher relief.

Accordingly, after two mediation sessions with the Third Circuit's Chief Mediator Joseph Torregrossa, Class Counsel, faced with a Hobson's choice of capitulating to invalid appeals filed only to generate (a kind word) a settlement payment versus the need to promptly conclude the case for the time-sensitive class, settled the appeals. Class Counsel settled the matters so that the appeals would be withdrawn, the matter returned to the District Court, and, consequently, the Class Members would be promptly provided their chosen relief.

## II. Settlement Terms

This information is provided in response to the directive of this Honorable Court. Each settlement with the Objector-Appellants was in writing and substantially similar in structure. Each Objector-Appellant agreed to withdraw any objections filed in the trial court and to withdraw or dismiss his or her pending appeal before the Third Circuit. The Objector-Appellants also agreed that they would forego any future claims, objections or appeals. The Objector-Appellants then dismissed their appeals consistent with the terms of the settlement agreements and moved the District Court to withdraw their objections. All the agreements also included a confidentiality provision. The one notable difference among the settlements was the sums of money paid to the

Objector-Appellants and their counsel. The amounts agreed to, pursuant to the settlements, are as follows: Mager and Schultz: $37,000; Vullings: $75,000; Hipshire: $120,000; and Carey: $100,000.

These funds were paid by Class Counsel from their own funds, but on a schedule consistent with Class Counsel's receipt of their awarded attorneys' fees.[1]

However, Class Counsel believed, as a matter of principle, that the Defendants should also participate in the resolution of the appeals. Accordingly, Class Counsel and Defendants agreed that Defendants would contribute $15,000 to the settlements. Defendants delivered $15,000 to Class Counsel contemporaneous with Class Counsel's delivery of the first scheduled payment to Objector-Appellants' counsel. Class Counsel has fully complied with all terms of the Settlement Agreements with Objector-Appellants.

### III. The Impact of the Comlish Objectors' Motion for Disgorgement on the Timing of the Additional Cash Distribution to the Class Members

At the December 13, 2018 hearing, the Court asked Class Counsel their thoughts on the timing of any additional distribution to the Class Members that the Court may order pursuant to the Parties' Joint Motion. At the time, Class Counsel was restrained from fully answering because the provisions of the settlements with Objector-Appellants were still confidential per the settlement agreements.

---

[1] Specifically, the settlement agreements set forth that:

> 50% of the [settlement] sum will be paid to the Objector Parties within 7 days of Class Counsel's receipt of 50% of Class Counsels' own attorneys' fees under the Class Settlement ("Class Counsel's fees"); the next 25% of the sum will be paid within 7 days of Class Counsel's receipt of the next 25% of Class Counsel's own fees under the Class Settlement; and the remaining 25% of the sum will be paid within 7 days of Class Counsel's receipt of the final 25% of Class Counsel's fees under the Class Settlement, all payments being consistent and contingent upon the timeline set out in the District Court's Order of July 29, 2016 in the Rougvie Matter (Dist. Ct. Dkt. No. 185).

Class Counsel respectfully submit that the known additional distribution to the Class should occur as soon as practicable, should the Court grant the Parties' Joint Motion.

The total sum paid to the five Objector-Appellants at issue here is $332,000.00. The additional distribution to each Class Member would be increased by $.55 ($332,000.00 divided by the 600,000 Class Members who affirmatively filed claims). Currently, if the Court grants all outstanding motions in full, the 600,000 Class Members will receive a check for $5.47. If the Court holds the additional distribution until the disgorgement issue is fully resolved (including any appeals), and disgorgement is effectuated, the Class Members would each get $6.02.[2]

Moreover, should the Court order disgorgement, Class Counsel believe that the Objector-Appellants will appeal the decision. This would delay the additional distribution for approximately nine months to a year or more. Class Counsel respectfully submits that the Class Members would logically prefer to receive $5.47 in early 2019 than wait until sometime in 2020 or later to receive the additional check. A time value of money analysis suggests that a check for $5.47 would be more valuable to the Class Members in 2019 than a $6.02 check would be in 2020.

Further, the Class Members are more likely to take advantage of the checks if they receive them closer in time to the distribution of the initial relief. The case will be fresh in their memories and the Class Members more likely to cash the checks, rather than considering the checks a hoax or a marketing scheme.

Finally, if the Court orders the additional distribution to the Class Members in 2019, the administration (except for the distribution of remaining Settlement Funds via cy pres) can end approximately at the end of May 2019. If the Court delays distribution until the Motion to

---

[2] Since the money used to pay these settlements was owned by Plaintiff's counsel, the Court may decide to vacate the settlements and return the money to Plaintiff's counsel, or direct the money to cy pres, or to have it shared by the entire Class.

Disgorge is ultimately resolved, and assuming an appeal by the losing party (parties), the administration of the fund would need to continue with the requisite costs until the appeal was resolved.

## IV. **The Potential Use of the Uncashed/Voided Checks Balance in the Additional Distribution of Relief to the Class**

The Court further inquired at the December 13, 2018 hearing whether the monies from the uncashed/voided checks distributed to Class Members in the initial distribution of relief might be included in any additional distribution to the Class that the Court might order pursuant to the Parties' Joint Motion. Class Counsel is now able to confirm that those funds are sufficient to cover the $332,000 at issue here. However, as the Parties indicated to the Court at the hearing, the Parties had agreed to hold that money in reserve to cover any requests for reissuance of the initial checks that likely will be made by Class Members who did not cash their first check. Class Counsel respectfully submits that the Class Members who did not cash their first checks should be provided the opportunity to obtain their full relief. In addition, assuming the same percentage of Class Members cash the second round of checks, there will not be enough remaining in the Settlement Fund to cover any requests for reissuance.[3]

Finally, if the uncashed/voided check amount is added to the money to be distributed in the second distribution, it is uncertain whether that money would be replaced as the only remaining source would be any disgorgement from Objector-Appellants.

## V. **Conclusion**

Accordingly, Class Counsel respectfully submits that the Court should order the additional distribution to occur in January or February of 2019 and accept the Parties' suggestion that the uncashed/voided checks funds remain in the Settlement Fund to cover requests for reissuance of

---

[3] $3,200,000 x 5% = $160,000.

checks from the initial check distribution. Class Counsel further submits that any monies ultimately ordered disgorged from Objector-Appellants, if any, be distributed via cy pres to the non-profits proposed in the Parties' Joint Motion, or returned to Class Counsel, who will separately donate that money via cy pres as authorized.

Dated: December 21, 2018                    Respectfully submitted,

BY: */s/ Kevin E. Raphael*_____
William Pietragallo, II, Esquire
Kevin E. Raphael, Esquire
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street
Suite 3402
Philadelphia, PA 19103
Tel: 215.320.6200
WP@pietragallo.com
KER@pietragallo.com

-and-

MANSOUR GAVIN LPA
Ernest Mansour, Esquire
Anthony Coyne, Esquire
Brendon P. Friesen, Esquire
emansour@mggmlpa.com
acoyne@mggmlpa.com
bfriesen@mggmlpa.com
1001 Lakeside Avenue, Suite 1400
Cleveland, OH 44114
(216) 523.1500

-and-

Edward J. Westlow, Esquire
EJW@Whitehall1756.us
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219-3532
(804) 780-0305

-and-

Robert Mansour, Esquire
23611 Chagrin Blvd., Suite 270
Beachwood, Ohio 44122
(216) 514.3127
Rmansour@competitivetitle.com

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carol Rougvie, et al., | : |
| Plaintiffs, | : COMPLAINT - CLASS ACTION |
| | : JURY TRIAL REQUESTED |
| v. | : |
| | : CIV. NO. 2:15-cv-00724-MAK |
| Ascena Retail Group, Inc., et al., | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.

By: */s/ Kevin E. Raphael*
KEVIN E. RAPHAEL, ESQ.
I.D. No. 72673
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200

*Attorney for Plaintiffs*

Date: December 21, 2018

#4616040/1