IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROUGVIE, *et al.*,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>ASCENA RETAIL GROUP, INC. d/b/a/<br>JUSTICE STORES<br><br>and<br><br>TWEEN BRANDS, INC. d/b/a<br>JUSTICE STORES<br><br>        *Defendants*. | No. 2:15-cv-00724-MAK |

**HEARING MEMORANDUM OF CLASS MEMBERS BARBARA COMLISH AND KATHRYN ARTLIP**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... ii
TABLE OF AUTHORITIES ........................................................................................................ iii
CONCLUSION ............................................................................................................................... 5

# TABLE OF AUTHORITIES

**Cases**

*Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1584 (11th Cir. 1986) .............................. 1-2

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ........................................................ 5

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ........................................................................ 2

*Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298 (3d Cir. 1995) ............................................. 1

*Polaris Indus., Inc. v. Arctic Cat Inc.*, 2016 WL 3541541 (D. Minn. Jun. 23, 2016) ..................... 1

*Silva v. Witschen*, 19 F.3d 725 (1st Cir. 1994) ................................................................................ 2

*Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171 (3d Cir. 2001) ................................................. 4

**Statutes and Rules**

Fed. R. Civ. P. 4 ................................................................................................................................ 1

Fed. R. Civ. P. 4(m) .......................................................................................................................... 1

Fed. R. Civ. P. 23(e) ......................................................................................................................... 1

Fed. R. Civ. P. 23(e)(5) ..................................................................................................................... 3

Fed. R. Civ. P. 23(e)(5)(B) ............................................................................................................... 1

Fed. R. Civ. P. 23(h) ......................................................................................................................... 3

**Other Authorities**

Advisory Committee Notes to 2003 Amendment of Rule 23 .......................................................... 2

Advisory Committee Notes to 2018 Amendment of Rule 23 .......................................................... 2

Duke Law Bolch Judicial Institute, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS (Aug. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf ............................................................................................................................. 4

Ronald Mann, *Argument analysis: Justices skeptical of "cy pres" class-action settlements*, http://www.scotusblog.com/2018/11/argument-analysis-justices-skeptical-of-cy-pres-class-action-settlements/ (Nov. 1, 2018) ....................................................................................... 5

In accordance with the Court's orders (Dkt. 380, 382, 386), class members Barbara Comlish and Kathryn Artlip (collectively "Comlish") file this brief hearing memorandum to address certain newly-disclosed facts related to Objector-Appellants' side agreements with Class Counsel.[1]

Comlish has based, and continues to base, her request for disgorgement under Rule 23 as it existed in 2016 and 2017, and under the Court's inherent equitable authority to regulate class action proceedings and settlement funds for the protection of absentees. Dkts. 263-1, 283, 347. Under Chief Justice Roberts' order, the as-amended version of Rule 23(e)(5)(B) applies to pending cases "insofar as just and practicable." Yet, it is unclear whether direct application of Rule 23(e)(5)(B) to conduct of the Objector-Appellants that occurred entirely during 2016 and 2017 would in fact be "just and practicable."

On one hand, under Third Circuit law, it is not always determinative that all relevant conduct occurred before the amendment's effective date. *See Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1307-08 (3d Cir. 1995) (reversing dismissal of case required under old Rule 4 because amended Rule 4(m) allowed extension of the time for service without good cause, even though complaint and the district court's decision to dismiss were decided before adoption of amended rule). And it is certainly equitable to restore money to the class that has been unjustly appropriated through objector conduct that has been condemned as "improper" by federal courts for at least fifteen years. *See Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003).

On the other hand, in other circumstances, courts have found "it would not be just for the Court to require parties to conform their conduct to rules that have merely been proposed and not yet taken effect." *Polaris Indus., Inc. v. Arctic Cat Inc.*, 2016 WL 3541541, at *1 (D. Minn. Jun.

---

[1] Comlish also writes to "address best practices under Rule 23(e)(5)(B) governing [the Court's] pending consideration of payments made to the Objector-Appellants insofar as just and practicable." Dkt. 386 at 1 n.1.

23, 2016); *see also Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581, 1583-84 (11th Cir. 1986) (declining to apply amended Rule 11 to conduct that occurred before amendment); *Silva v. Witschen*, 19 F.3d 725, 728-29 (1st Cir. 1994) (same); *see generally Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.29 (1994) (providing examples where procedural rule amendments would not apply retroactively). That said, the Court need not address this thorny matter of retroactivity, because disgorgement may be ordered under the old rules.[2]

Prior to the 2018 Rules Amendments—and operative at the time that Objectors-Appellants' appealed and negotiated personal settlement payments with Class Counsel—Rule 23(e)(5) read as follows: "Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval." As the Advisory Committee Notes to the 2018 Amendment of Rule 23 describe, the "court-approval requirement [in the former Rule 23(e)(5)] partly addresse[d] this concern" of "perpetuat[ing] a system that can encourage objections advanced for improper purposes." It did so by explicitly providing for a judicial oversight and authority when objectors agree to withdraw their objections in exchange for a side payment. *See* Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) (later restyled 23(e)(5)) ("Review also is required if the objector formally withdraws the objection."). Whereas the old Rule 23(e)(5) only anticipated withdrawals of objections, the amended Rule 23(e)(5)(B) "extend[s] the court-approval requirement" to any time consideration is received in exchange for the dismissal of objector appeals. Advisory Committee Notes to the 2018 Amendment of Rule 23.

Here, with the terms of Objector-Appellants' side settlements now openly disclosed, we have learned that, in addition to dismissing their appeals, each Objector-Appellant also "agreed to withdraw any objections filed in the trial court." Plaintiffs' Memorandum Summarizing

---

[2] Comlish incorporates by reference, but will not belabor here, her argument that disgorgement is warranted under the Court's inherent equitable authority. Dkt. 263-1 at 13-19, Dkt. 347 at 5.

Settlements with Objector-Appellants, Dkt. 378 at 2; *accord* Objector-Appellant Manda Hipshire's Memorandum Re Terms of Her Agreement With Class Counsel, Dkt. 379 at 2 ("Hipshire and her counsel agreed to…withdraw her objection…"); Objector Michelle W. Vullings' Amended Response to This Court's December 13, 2018 Order [Doc. 357] With Memoranda To Follow Pursuant to This Court's December 21, 2018 Order, Dkt. 383 at 1 ("Objector Vullings agreed to…withdraw her objections…"). The fact that, as part of their side deals, Objector-Appellants agreed to withdraw their objections brings this case within the express ambit of Rule 23(e)(5), as it existed at the time of the events in question. It disposes of any question as to whether the Court has textual authorization to investigate the side agreements and order disgorgement of unjust and unwarranted receipts.

The second thing to be gleaned from the disclosures is that the payments to Objector-Appellants and/or their counsel were made in connection with Class Counsel's scheduled receipt of attorneys' fees under this Court's initial Rule 23(h) award. *See* Dkt. 378 at 3 n.1 & accompanying text.[3] We have also learned that Justice contributed a small portion of this money that was paid to Objector-Appellants. *See* Defendants' Memorandum in Response to Order Requiring Disclosure of Specific Terms of Agreements Resulting in Dismissal, Dkt. 373. At certain times the Court has suggested that the origin of the funds constitutes a relevant factor in evaluating whether the class has a direct interest in recouping the side payments. *See* Dkt. 347 at 4-5; Dkt. 298 at 7. The facts that Objectors-Appellants' payments were paid by Class Counsel

---

[3] Before its amendment, Class Counsel's initial memorandum claimed that the payments to the Objector-Appellants were made "directly from the fee awarded to [Class Counsel] in the Court's July 29, 2016 Order." Dkt. 374 at 3. Some of the Objector-Appellants echoed this understanding. Objector Gretchen Carey's Memorandum Summarizing Disclosure of Settlement Terms, Dkt. 376 at 3 ("Ms. Carey…received money from the Court-approved award of attorneys' fees to Class Counsel"); Vullings' Response, Dkt. 383 at 1-2 ("The funds were paid out of the class Counsel's attorneys' fees and from the first payment of attorneys' fees as approved by this Court."). Regardless of the metaphysical question of whether the 1s and 0s transferred from Class Counsel's bank account to Objector-Appellants' were the same 1s and 0s obtained from the settlement fee award, there is a clear conceptual link between the settlement and the Objector-Appellants' side agreements.

upon their receipt of settlement fee funds and that Justice also contributed to those payments underscore the class's direct interest in the side payments. It provides a further equitable reason why the Court should order disgorgement back to the class.

Third, the disclosures reveal that the class obtained no benefit from the Objector-Appellants' side agreements with Class Counsel, other than removing the obstruction (*i.e.* the appeals themselves) blocking the settlement's implementation and class's relief. This, however, is not a cognizable benefit that justifies an extra payment to the Objector-Appellants.

Drafted by several prominent class action practitioners, a recent treatise explains regarding the procedure a judge should undertake in investigating objector payoffs under Rule 23:

> [A] court may not consider as a benefit to the class members the time that would otherwise be spent addressing the withdrawn objection or appeal. The sole fact that the withdrawal of an objection or dismissal of an appeal will expedite distribution of the settlement funds does not justify payment to withdraw an improper objection or dismiss an improper appeal. Otherwise every improper objection would be subject to compensation on these grounds.

Duke Law Bolch Judicial Institute, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS, 25 (Aug. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-Practices-Final-Version.pdf. Similarly, and in a related context, the Third Circuit has already rejected this broken-window fallacy. *See Zucker v. Westinghouse Elec. Corp.*, 265 F.3d 171, 176-77 (3d Cir. 2001) (contrasting a compensable benefit derived from the institution and settlement of a lawsuit, with the non-compensable benefit of peace derived from the settlement itself).

All said, the disclosures of the side settlements confirm that disgorgement is justified.

## CONCLUSION

Comlish respectfully requests that the Court issue an order requiring Objector-Appellants and/or their counsel to disgorge their ill-gotten gains back to the class fund.[4]

---

[4] For reasons Comlish has already described at length, as the fruit of Objector-Appellants' appeals, the funds subject to disgorgement equitably belong to the class. But because there currently exists a pool of $362,528.48 in uncashed checks (Dkt. 344 at 2)—an amount more than sufficient to cover the $332,000 at issue in disgorgement—the class's secondary distribution can proceed apace without waiting for disgorgement proceedings to resolve themselves. *Contra* Dkt. 378 at 4.

Thus, Comlish continues to disagree with Class Counsel's suggestion (Dkt. 378 at 5) that the **entire $362,528.48** pool from uncashed checks should be held in abeyance to cover any requests for reissuance, as opposed to including $332,000 of it in the secondary distribution. As a practical matter there are going to be extremely few requests for reissuance on $7-$20 checks received more than a year ago. In the unlikely event that more than $30,000 worth of reissuances are requested, any class members who do request reissuance after the fund is exhausted can be informed that a checks will be reissued to them if and when the money has been recovered from Objector-Appellants.

There is already going to be a very large *cy pres* residual fund owing to the nature of a secondary distribution of small-value checks. *Cy pres* relief is disfavored in this Circuit under *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013). And soon in the near future the Supreme Court may issue a decision in *Frank v. Gaos*, No. 17-961 further cabining the doctrine. *See* Ronald Mann, *Argument analysis: Justices skeptical of "cy pres" class-action settlements*, http://www.scotusblog.com/2018/11/argument-analysis-justices-skeptical-of-cy-pres-class-action-settlements/ (Nov. 1, 2018). The most equitable dispensation of the uncashed check pool is including $332,000 of it in the class's secondary distribution.

Dated: January 11, 2019 Respectfully submitted,

/s/ *Adam E. Schulman*
Adam E. Schulman
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street, NW, 7th Floor
Washington, DC 20005
adam.schulman@cei.org
(610) 457-0856

*Attorney for Class Members Barbara Comlish and Kathryn Artlip*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.


DATED: January 11, 2019

*(s) Adam Schulman*
Adam Schulman
