IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL ROUGVIE, *et al.*,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>ASCENA RETAIL GROUP, INC. d/b/a/<br>JUSTICE STORES<br><br>and<br><br>TWEEN BRANDS, INC. d/b/a<br>JUSTICE STORES<br><br>        *Defendants*. | No. 2:15-cv-00724-MAK |

**RESPONSE OF CLASS MEMBERS BARBARA COMLISH AND KATHRYN ARTLIP
TO OBJECTOR-APPELLANTS' HEARING MEMORANDA**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................................... iii

    **I.**    There are no procedural obstacles to disgorgement. ........................................................ 1

    **II.**    The class maintains an equitable interest in payments made from Class Counsel to the Objector-Appellants upon Class Counsel's receipt of settlement attorneys' fees. ............. 4

    **III.**    Disgorgement is warranted. ............................................................................................. 5

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003) ........................................ 6

*Braden v. Univ. of Pittsburgh*, 552 F.3d 948 (3d Cir. 1977) (*en banc*) ........................................... 6

*Carlough v. Amchem Prods.*, 5 F.3d 707 (3d Cir. 1993) .................................................................. 3

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) .................................................. 4

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .................................................................. 1

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ........................................................................................ 4

*Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276 (1925) .................................................. 1

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ................................................. 1

*Hospitality House, Inc. v. Gilbert*, 298 F.3d 424 (5th Cir. 2002) ................................................... 2

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................................. 1

*Leap Sys v. Moneytrax, Inc.*, 638 F.3d 216 (3d Cir. 2011) .............................................................. 1

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988) ..................................................... 1

*Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018) ........................................................ *passim*

*In re Petrobras Secs. Litig.*, 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ................................... 7

*In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664 (N.D. Ohio. 2015) ....................... 7

*Town of Chester v. Laroe Estates*, 137 S. Ct. 1645 (2017) ............................................................. 4

*Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003) ............................................................................ 7

*Wininger v. SI Mgmt. L.P.*, 244 Fed. Appx. 156 (9th Cir. 2007) .................................................... 6

*Young v. Higbee*, 324 U.S. 204 (1945) ................................................................................... 1-2, 7-8

**Statutes and Rules**

Fed. R. App. P. 42 ............................................................................................................................ 3

Fed. R. Civ. P. 23(e) ........................................................................................................................ 6

Fed. R. Civ. P. 23(e)(5) ................................................................................................................... 4

Fed. R. Civ. P. 23(e)(5)(B) .............................................................................................................. 4

iii

Fed. R. Civ. P. 23(e)(5)(C) ................................................................................................ 3

Fed. R. Civ. P. 23(h) ......................................................................................................... 6

Fed. R. Civ. P. 23(h)(1) .................................................................................................... 6

Fed. R. Civ. P. 54(d)(2) .................................................................................................... 6

Fed. R. Civ. P. 60(b) ........................................................................................................ 2

Fed. R. Civ. P. 62.1 .......................................................................................................... 3

**Other Authorities**

Advisory Committee Notes to 2003 Amendment of Rule 23 ........................................... 6

Advisory Committee Notes to 2018 Amendment of Rule 23 ...................................... 3, 6

John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to do About Them?*, 39 Fla. St. U. L. Rev. 865 (2012) ................................................................... 7

1 George E. Palmer, *The Law of Restitution* (1978) ....................................................... 7

Restatement (Third) of Restitution and Unjust Enrichment (2011) ................................. 7

In accordance with the Court's order (Dkt. 380), class members Barbara Comlish and Kathryn Artlip (collectively "Comlish") file this response to the hearing memoranda of Objectors-Appellants Vicki Mager and Melissa Schultz (Dkt. 388) ("Mager Br."), Manda Hipshire (Dkt. 389) ("Hipshire Br."), and Michelle W. Vullings (Dkt. 391) ("Vullings Br."). Many of Objector-Appellants' argument were raised in opposition to Comlish's initial motion for intervention, so she incorporates her reply memorandum in support of that motion (Dkt. 283) by reference here.

**I.      There are no procedural obstacles to disgorgement.**

Objector-Appellants argue that their appeals to the Third Circuit divested this Court of jurisdiction to consider disgorgement of their side payoffs. Hipshire Br. 6-7 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)); Dkt. 372 at 6 (same). But the appeals only divested the Court of jurisdiction relating to "those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. After appeals are filed, district courts still retain jurisdiction over matters "uniquely separable" or "collateral" from the decision being appealed. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988). Examples include requests for attorneys' fees and motions for Rule 11 sanctions. *Id*; *see also Cooter & Gell. v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990). A request for disgorgement to vindicate the Court's inherent authority and the interests of absent class members is one such collateral matter.

"The general rule is that, when a federal court has properly acquired jurisdiction over a cause, it may entertain…dependent or ancillary controversies…[that have] direct relation to property or asserts actually or constructively drawn into the court's possession or control by the principal suit." *Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276, 280 (1925). Ancillary jurisdiction doctrine permits motions to enforce or vindicate settlement agreements where the judgment expressly reserves jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Leap Sys. v. Moneytrax, Inc.*, 638 F.3d 216, 218-19 (3d Cir. 2011). Indeed, in

1

*Young v. Higbee*, the Supreme Court held that the district court possessed jurisdiction to compel an accounting of profits through its "express reservation." 324 U.S. 204, 214 (1945).

In its final approval order, the Court "retain[ed] jurisdiction to resolve disputes arising to the performance, validity, interpretation, enforcement or administration of the approved Notice, this Order or the Settlement Agreement." Dkt. 184 at 1. It also retained jurisdiction to supervise the final distribution of class funds after the coupon redemption period ended. Dkt. 185. These retentions of jurisdiction serve the interests of absent class members. *Pearson v. Target Corp.*, 893 F.3d 980, 986 (7th Cir. 2018). Consideration of the ancillary dispute regarding payoffs to Objector-Appellants fits within the rubric of the Court's reservations.

Objector Vullings erroneously asserts that jurisdiction is defeated because this Court has dismissed the underlying class claims with prejudice. Vullings Br. 4 (citing Dkt. 184). *Pearson* reveals the error: an express reservation of ancillary enforcement authority controls even when settlement judgment dismisses the class's underlying claims with prejudice. *Pearson*, 893 F.3d at 986 (citing, *inter alia*, *Kokkonen*, 511 U.S. at 381); *see also Hospitality House, Inc v. Gilbert*, 298 F.3d 424, 433 n.11 (5th Cir. 2002) (concluding that *Kokkonen* means there is no relevant distinction between "with prejudice" and "without predjudice" dismissals for purposes of retaining ancillary jurisdiction). In *Pearson*, the moving-objector needed to utilize Fed. R. Civ. P. 60(b) to reopen the proceedings because the lower court had withdrawn its retention of jurisdiction to adjudicate post-settlement proceedings. Here, because the Court has retained jurisdiction, Comlish does not and need not seek reopening of the final judgment. As such, Objector Mager's discussion[1] of Fed. R. Civ. P. 60(b) is irrelevant. Mager Br. 5-6; Dkt. 372 at 10-11; *see also* Vullings Br. 8.

Objector-Appellants suggest that review would invade the prerogatives of the Third Circuit and its mediation program. Hipshire Br. 8; Vullings Br. 5-6. As Comlish explained earlier, "[t]he relief Comlish seeks has no relation to reinstatement of the appeals; it solely addresses the proceeds generated from those appeals." Dkt. 283 at 3. Although the Third Circuit "could have provided

---

[1] Mager Br. 5-6; Dkt. 372 at 10-11.

more scrutiny at an earlier stage before granting the Federal Rule of Appellate Procedure 42 motion to dismiss the appeal voluntarily," it remains appropriate for the district court to scrutinize the side-settlement and discharge its duty to absent class members. *Pearson*, 893 F.3d at 987. The 2018 Amendment to Rule 23(e)(5) further clarifies that oversight in this context does not invade the province of the appeals court. A district court is obligated to inquire into such side settlements even "while the appeal remains pending," although in that event the process is subject to indicative ruling under Fed. R. Civ. P. 62.1.  Fed. R. Civ. P. 23(e)(5)(C).

Objector Mager asserts that, to preserve the issue of disgorgement, Comlish was required to appeal at the time her intervention was denied. Dkt. 372 at 9. Mager is incorrect; the denial of intervention was without prejudice and it was expressly contemplated that Comlish would be permitted to again raise the issue as an absent class member at the time of final accounting. *See* Dkt. 298 at 10 n.27; Dkt. 299; Tr. of Motion Hearing Jun. 13, 2017. Because of the opportunity for later participation, under Third Circuit law, it would have been premature for Comlish to appeal at the time intervention was denied. *Carlough v. Amchem Prods.*, 5 F.3d 707, 710 (3d Cir. 1993).

This same sequence of events puts to bed Vullings' contention (Vullings Br. 8) that we are now too far removed from the events in question to order disgorgement. As soon as Comlish became aware of the apparent side deals, she expeditiously moved for disclosure and disgorgement of an unjustly acquired gains. Comlish's motion was filed on May 12, 2017, just over two weeks after Objector-Appellants' Fed. R. App. P. 42 dismissals, all filed between April 24 and April 27, 2017. The Court's order denying Comlish's intervention, and the Court's questioning at the hearing on that motion, put the Objector-Appellants on notice that the issue could again be considered at final accounting after the coupon redemption period had ended. As such, it is perfectly appropriate to consider disgorgement at this time.[2]

---

[2] It is also worth noting that given the timeline of payments under this Court's fee order (Dkt. 185 ¶3) and the disclosure that Objector-Appellants were paid under the same timeline, it appears that the Objector-Appellants received payments into late 2017, so we are not actually twenty months removed from Objector-Appellants' ill-gotten gains.

Because Comlish is not participating as an intervenor, she need not demonstrate standing under *Town of Chester v. Laroe Estates*, 137 S. Ct. 1645 (2017). In any event, Comlish does have standing. *Contra* Hipshire Br. 7-8; Dkt. 372 at 7-9. As an absent class member "bound by" the settlement and judgment Comlish possesses a cognizable interest in the appeal proceedings from that settlement. *Devlin v. Scardelletti*, 536 U.S. 1, 7-11 (2002). As a class member who has objected, she has standing to press her concerns regarding the course of those appellate proceedings through a motion in district court. *Pearson*, 893 F.3d at 984. "To hold otherwise would risk 'depriving nonnamed class members of the power to preserve their own interests in a settlement.'" *Id.* (quoting *Devlin*, 536 U.S. at 10).

In reality, Comlish's standing is somewhat beside the point because, under either the former Rule 23(e)(5) or under new Rule 23(e)(5)(B), the Court has an independent obligation to address side settlements that pay objectors to withdraw their objections and dismiss their appeals. This independent judicial obligation means that standing for absent class members to press concerns must be "construed broadly." *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 728 (3d Cir. 2001). Where the "integrity and fairness of class [proceedings] is threatened," class members have standing just as a criminal defendant may challenge racially discriminatory exclusion of jurors that threatens the integrity of criminal proceedings to which he is subject. *Id.* at 731-32 (citing *Powers v. Ohio*, 499 U.S. 400 (1991)).

This Court has jurisdiction to address Comlish's request for an order disgorging Objector-Appellants' unjustly-acquired sums back into the class fund.

**II.   The class maintains an equitable interest in payments made from Class Counsel to the Objector-Appellants upon Class Counsel's receipt of settlement attorneys' fees.**

Objector-Appellants' papers contain a distinctive undercurrent that the class has no interest in the funds Class Counsel paid to objector appellants. *See, e.g.*, Mager Br. 1-2 (funds were "class counsel's exclusive property"); Hipshire Br. 3 ("completely funded by Class Counsel's own attorneys' fees, not from money otherwise belonging to the class"); Vullings Br. 2 ("exclusively

4

from the Court's initial fee award").[3] While it may be correct that "once all appeal rights regarding the award were exhausted or extinguished, these funds became Class Counsel's exclusive property,"[4] the side agreements between Objector-Appellants and Class Counsel occurred **during** the pendency of the appeal, not after all appeal rights were exhausted or extinguished. At the point in time that the side agreements were negotiated and inked, class counsel's fees emphatically **were** an aspect of the settlement's constructive common fund. This is true even where the fees are entirely segregated from class payments. Dkt. 347 at 4 (discussing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)).

And Class Counsel's fee award was not merely lurking in the background, the issue of excessive fees was directly raised by several objectors' in Third Circuit briefing. *See* Opening Brief of Appellant Manda Hipshire, No. 16-3514 at 33-44 (3d Cir. Feb. 8, 2017); Opening Brief of Appellant Kelsey D. Foligno, No. 16-3515 at 12-18 (3d Cir. Feb. 8, 2017); Opening Brief of Michelle W. Vullings, No. 16-3421 at 26-31 (3d Cir. Feb. 9, 2017). Indeed, as described in the declaration supporting Comlish's motion for fees (Dkt. 342-2), after the settling parties modified the settlement to eliminate the segregated fee fund, class members could directly benefit dollar-for-dollar from reductions in Class Counsel's fee. Dkt. 342-2 ¶¶ 6-20. Thus, the fruit of a successful fee appeal would have been enjoyed by more than 600,000 class members via a larger residual distribution. Instead, the Objector-Appellants appropriated for themselves the entirety of the settlement value of the appeals.

### III. Disgorgement is warranted.

Objector-Appellants insist that there is a plethora of reasons why disgorgement would be inequitable. None persuade.

---

[3] Mager makes the even more facially outlandish assertion that "class members have no legal rights to the settlement fund." Mager Br. 5.

[4] Mager Br. 4; Vullings Br. 2.

As an initial matter, Objector Hipshire claims the Court already "considered [Comlish's] position…and decided that [her] position was without merit." Hipshire Br. 8 (citing Dkt. 298). Not so; the Court only decided the threshold question, declining to permit Comlish to intervene. Dkt. 298 at 8. Even if the order could be construed to offer an opinion on the merits, as an interlocutory order,[5] may be amended at any time before the final order on the matter issued. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *Braden v. Univ. of Pittsburgh*, 552 F.3d 948, 954 (3d Cir. 1977) (*en banc*).

Objector Hipshire and Mager maintain that the payment was justified as a *de facto* fee award. Hipshire Br. 9; Mager Br. 7. Even assuming *arguendo* that they conferred a benefit to the class worthy of a $120,000 and $37,000 fee respectively, it was altogether improper for the Objector-Appellants to circumvent the Rule 23(h) fee approval process. "If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees." Advisory Committee Notes to 2018 Amendment of Rule 23. As both the Comlish and Kallay objectors recognized, if objectors sought a payment for their counsel's work, they were required to utilize the Rule 23(h) process. Rule 23(h) has governed all fee awards in class actions—including those by objectors—since 2003 and only permits fees by court order awarding after a duly-noticed "motion under Rule 54(d)(2)." Fed. R. Civ. P. 23(h)(1). As the committee notes observe, "any claim for an award of attorney fees must be sought by motion." Advisory Committee Notes to 2003 Amendment to Rule 23. This includes both awards to class counsel and to objectors' counsel. *Id.* (contemplating "an award to other counsel whose work produced a beneficial result for the class, such as…attorneys who represented objectors to a proposed settlement under Rule 23(e)").[6] Disgorgement is warranted to remedy Objector-Appellants' flouting of Rule 23(h).

---

[5] *See Carlough*, 5 F.3d at 710.

[6] It should be noted that not *all* of Rule 23(h)'s requirements apply equally to objectors. *See* Fed. R. Civ. P. 23(h)(1) (only requiring class counsel's motion be "directed to class members"); *Wininger v. SI Mgmt. L.P.*, 244 Fed. Appx. 156, 158 (9th Cir. 2007) (same)

6

All Objector-Appellants defend themselves as having committed no ethical lapse nor improper conduct when they leveraged the class's settlement to obtain personal payments. Mager Br. 4-6; Hipshire Br. 8-10; Vullings Br. 1-2, But, in addition to a clear violation of Rule 23(h), the simple conduct of extorting a personal payout by holding up the class settlement has been recognized as "improper" by authorities for at least fifteen years. *See Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003); John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to do About Them?*, 39 Fla. St. U. L. Rev. 865, 886, 896-98 (2012); *see also In re Polyurethane Foam Antitrust Litig.*, 165 F. Supp. 3d 664, 670 (N.D. Ohio. 2015) (imposing $10,000 sanction for objector's failed attempt to extort a payoff); *In re Petrobras Secs. Litig.*, 2018 WL 4521211, at *4-*8 (S.D.N.Y. Sept. 21, 2018) (imposing $10,000 sanction for filing a bad faith objection intended to delay). Disgorgement is narrowly "calibrated to deter objectionable conduct without deterring desirable conduct." Lopatka & Smith, 39 Fla. St. U. L. Rev. at 896.

Disgorgement, as an equitable remedy, does not seek to compensate the plaintiff's out-of-pocket loss, but rather to prevent the defendant's ill-gotten gains. Restatement (Third) of Restitution and Unjust Enrichment § 3 (2011); 1 George E. Palmer, *The Law of Restitution* §§ 2.1, 2.10 (1978). Without even needing to review the appellate briefs, *Pearson* recognized that the objectors' appeals had leveraged the claims of the class and thus the fruit of the appeal equitably belonged to the class. 893 F.3d at 985 ("To justify even the filing fee, each objector must have been advancing claims on behalf of the class as a whole."); *accord Young*, 324 U.S. at 214 (appeals were "alleged to be for the benefit of [absentees]"). Here, as Comlish has previously described, objector-appellants all advanced their appellate arguments on behalf of the whole class or a sizable subset thereof. Dkt. 263-1 at 4 n.4. A formal representative relationship is not necessary. *See*

*Pearson*; *Young*.[7] Equity concerns itself with function or "substance" rather than "merely the form." *Young*, 324 U.S. at 209.

Lastly, Objector-Appellants argue that resolving the appeals furthered the interests of class members by expediting the settlement or that, at the very least did not injure the class by diluting its recovery. Mager Br. 7-8; Hipshire Br. 9-10; Vullings Br. 2.[8] The stronger proposition—that the side settlements actually benefitted class members by expediting relief—if true, cannot justify a payoff to Objector-Appellants. Hearing Memorandum of Class Members Barbara Comlish and Kathryn Artlip (Dkt. 392) at 4. It would only be a benefit insofar as the appeals were without merit. And in that case, agreeing to delay the class's relief only by eight months instead of the full year or so[9] that may have been required for the full appeal is supposed to be a benefit?

Nor can the side-settlements be justified because they allegedly do not dilute class recovery. First, the payments to Objector-Appellants bore a direct connection to the settlement's fee fund, which is an integrated aspect of the settlement. *See* section II, *supra*. After the settling parties removed the segregated fee structure, a dilution of the fee fund also constitutes a dilution of class funds. This is so even after the Court had granted Class Counsel its initial $4.8m award, because a live dispute remained on appeal as to the reasonableness of that award.

Second and perhaps more fundamentally, regardless of the funds' origin, they were extracted through a process of the Objector-Appellants' leveraging absent class members' rights. Had they properly distributed the $332,000 settlement value to the class, Objector-Appellants

---

[7] Objector Vullings argues that disgorgement is inequitable because Comlish is not currently seeking that remedy against Foligno and her counsel. Although Comlish can agree that equity prefers to do justice in whole and "not by halves," the lack of a motion against Foligno does not speak to the propriety of ordering a remedy against Vullings. By way of analogy, the fact that a state trooper can only ticket every other speeding motorist does not invalidate the tickets as to those individuals who validly received them after speeding.

[8] Class counsel's apparent good-faith motive has nothing to do with Objector-Appllants' unjust enrichment. *Contra* Mager Br. 6.

[9] *See* Dkt. 219 at 18 n.36 (noting median time of civil appeal in the Third Circuit to be 10.5 months).

would have been eligible to seek incentive awards and a reasonable percentage of the $332,000 in attorneys' fees. Because they instead attempted to abscond with 100% of the settlement benefit, the entire $332,000 should be disgorged back to the class fund.

## CONCLUSION

Comlish respectfully requests that the Court issue an order requiring Objector-Appellants and/or their counsel to disgorge their ill-gotten gains back to the class fund.

Dated: January 16, 2019            Respectfully submitted,

/s/ Adam E. Schulman
Adam E. Schulman
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street, NW, 7th Floor
Washington, DC 20005
adam.schulman@cei.org
(610) 457-0856

*Attorney for Class Members Barbara Comlish and Kathryn Artlip*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing with the Clerk of the Court via ECF thus effectuating service on all counsel who are registered as electronic filers in this case.

DATED: January 16, 2019

*(s) Adam Schulman*
Adam Schulman

Case 2:15-cv-00724-MAK   Document 393   Filed 01/16/19   Page 14 of 14